**FILED**
JEANNE A. NAUGHTON, CLERK

DEC 1 0 2018

U.S. BANKRUPTCY COURT
TRENTON, NJ
BY _____ DEPUTY

Donna DeRosa-Ruquet
Debtor Pro Se
226 Potters Drive
Bayville, New Jersey 08721
732.278.3227

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 14-17571-KCF |
| DONNA DEROSA-RUQUET | : | |
| SCOTT RUQUET | : | CHAPTER 13 |
| DEBTOR(S) | : | MEMORANDUM IN SUPPORT OF |
| | | DEBTOR'S MOTION FOR ORDER OF |
| VS | : | CONTEMPT AND SANCTIONS FOR |
| MORGAN STANLEY MORGAN LOAN | : | VIOLATION OF THE AUTOMATIC |
| TRUST 2007-3XS, U.S. BANK | : | STAY AND THE |
| | : | DISCHARGE INJUCTION ENTERED |
| NATIONAL, AS TRUSTEE, | : | UNDER CASE NO. 10-49218 KCF |
| SUCCESSOR IN INTEREST TO | : | |
| BANK OF AMERICA, NATIONAL | : | |
| ASSOCIATION, AS TRUSTEE, | : | |
| SUCCESSOR BY MERGER TO | : | |
| LASALLE BANK NATIONAL | : | |
| ASSOCIATION, AS TRUSTEE | : | |
| AS SERVICED PRESENTLY BY | : | |
| SPECIALIZED LOAN SERVICING | : | |
| LLC AND AS FORMERLY SERVICED | : | |
| BY WELLS FARGO HOME | : | |
| MORTGAGE DBA AMERICAS | : | |
| SERVICING COMPANY | : | |
| | : | |
| CREDITOR | : | |

## INTRODUCTION

Before filing this motion, debtor repeatedly tried to resolve this dispute with
creditor over the phone and in writing. Rather than listen, creditor continues to ignore the
debtor's phone calls and only recently responded to the debtors in writing when the
creditor realized the debtors had obtained counsel. The creditor's failure to effectively

communicate with the debtors were nothing short of a willful of a violation of the debtor's rights, presumably seeing them as "easy prey" given their pro se status.

Creditor's conduct in this case is part of a larger pattern and practice included but not limited to pushing borrowers out of their HAMP Modification by failing to apply payments for the sole purpose of avoiding the payment of incentive payments under the program

Debtor now moves before this Court to seek relief asking respectfully that the Court orders the creditor to finally subject the debtor's mortgage account to a thorough audit dating back to July of 2012, which is the date the debtor's began making their Trial Payments under their HAMP Modification, and to seek imposition of compensatory sanctions that will make it profitable for creditor to listen in the future.

## FACTUAL BACKGROUND

A. Creditor is a participant in debtor's bankruptcy case filed on April 14, 2014 [Claim 19-1.] Presumably in the creditor's over zealous anticipation of a default, they added costs that were not owed to their initial proof of claim. Once the debtor made it clear to the creditor that they had no intention it of defaulting the Notice of Payment Change had to be corrected and re-filed [Claim 19-2.]

B. The Creditor was also a participant in the debtor's bankruptcy case filed on December 21, 2010 under case number 10-49218-KCF [Doc. 1.] The debt in this matter was discharged under case number 10-49218-KCF [Doc 12.]

C. On April 22, 2014 the Court found the Debtors ineligible for a discharge under this case due to repeat filing [Doc 12.]

D. On February 24, 2015 a Consent Order Resolving Debtor's Objection to US National Bank Association Claim and Curing Pre- Petition Escrow Shortage Outside the Chapter 13 Plan was filed [Doc. 78.]

E. The creditors used America's Servicing Company to service the debtor's loan until June of 2016 at which time they transferred servicing to Specialized Loan servicing. Curiously the creditor failed to notify the Court of this transfer until July 7, 2016. [Doc. 101.]

F. Ongoing and willful contempt for the violation of stay and discharge injunction has been the rule rather the exception regarding the creditor's gross mismanagement of the debtor's account. Despite the debtor's continuous attempts to have their mortgage account audited, have their payments applied properly, have their HAMP incentives applied properly, have their account re-amortized to correct past errors the creditor has failed and or refused to provide relief for almost five (5) years.

The debtors have spent hundreds of hours trying to get their account straightened out. This is evidenced by the countless letters the debtor received from the creditor saying time and time again they were hard at work trying to solve the problem [Exhibit A.] These letters do not take into account the hours upon hours the debtors spent on the phone will the creditors. If only the debtor knew then that this was in fact, a common practice to force borrowers into HAMP defaults they would have sought relief from this Court much sooner.

Specifically, creditor has refused to correct the disbursement made on April 29, 2014 in the amount of $2,673.76 appearing as "Misc disburse" on the debtor's mortgage statement dated June 6, 2014. [Exhibit B] This disbursement, the debtors have been told, was made for pre-petition water charges. April 29, 2014 was fifteen (15) days after the debtor filed their bankruptcy. The creditor was aware of the debtor's bankruptcy as evidenced by the properly applied credit to the debtor for their mortgage payment dated April 14, 2014 on the same statement. This is not only a willful, gross violation of the stay, but a glaring example of the creditor's habit of trying to capitalize on the debtor's pro se status.

The creditors have also repeatedly misapplied the debtor's payments, doing so no less than twenty-five (25) times between the months of April of 2014, through May of 2016 [Exhibit C.] Over and over again the creditors would take payment from the debtors and then keep them in a suspended account without valid reason. This has certainly affected the amount of interest the debtor has paid over time, in the creditor's favor.

In November and December of 2015 the creditors paid homeowners insurance twice on the debtors home. Once to the debtors usual company (Naraganset Bay

November 15, 2015) and once to a company the debtor has never spoken to nor did they seek coverage from (Tower Group December 15, 2015). This just makes no sense. Clearly the debtors were already insured [Exhibit D.]

The creditors acknowledged said error in a letter dated April 20, 2016 [Exhibit E] and instructed the debtors to forward said sum to them. The creditors knew the loan was being transferred in a few short weeks yet mentioned none of this in their letter to the debtors. The debtors are now stuck paying for an insurance plan that was clearly unnecessary and the creditor is collecting interest. Oddly enough on March 8, 2016 the creditor sent the debtor a letter saying that the hazard insurance on the debtor's residence was set to expire and that if the debtor didn't purchase Hazard Insurance the creditor would [Exhibit F.]

Specialized Loan Servicing also sent a similar letter in December of 2016, threatening to purchase insurance for the debtors when in fact they had already paid the premium for the policy one month prior [Exhibit G.]

The creditors sent the debtors two letters dated May 11, 2016 and May 19, 2016 advising them of that as of June 1, 2016 their mortgage loan would be serviced by Specialized Loan Servicing Company. The creditors failed to notify the Court of this transfer until July 7, 2016 [ Doc. 102] and failed to properly serve the debtors of this notice. Presumably the creditors violated the debtor's rights because the Notice of Transfer was not filed in a timely manner.

Additionally, after the transfer was complete, America's Home Servicing Company sent the debtors a final escrow analysis with a dated June 12, 2016, that again shows a transfer balance of - $6,096.00 [Exhibit H] How this amount was arrived at has yet to be explained to the debtor. It's preposterous.

The creditors have also failed to properly apply the debtor's HAMP incentives if at all. The debtor's are unsure if they received any incentive for 2013, they received $83.33 on August 28, 2014, and August 28, 2015 $416.67 from America's Servicing Company [Exhibit I and J] On August 31, 2016 $916 was credited to the debtor's account as principle according to a payment record provided by Specialized Loan Servicing [Exhibit K]. On December 29, 2016 on the same statement the debtor's escrow account was charged $2,102.00 and the

debtor does not know why. As well, Specialized Loan Servicing has not credited the debtor for an incentive for 2017 for which they are entitled. Finally, the creditor has failed to the creditor apply the five thousand (5,000) dollar six (6) year principle incentive. After six (6) months they have finally acknowledged in writing that the debtor is eligible for the incentive and further indicates that it will be applied by December 31, 2018 roughly four (4) months after it was due. All the while the debtor was paying interest on a principle balance that is incorrect.

Conversely the letter that the creditors sent to the debtors claiming that their five thousand (5,000) dollar six (6) year HAMP incentive was not applied due to a coding error in their computer that rendered the debtors ineligible [Exhibit L) The debtors find this odd at best because the current creditor in fact did apply a HAMP incentive in the amount of $916 on August 31 of 2016 [Exhibit K.] Presumably the creditors made this assertion of an error because mere clerical errors do not constitute a willful violation of the discharge injunction, however it appears they lied.

When the debtors learned that the servicing of their loan was transferred they were relieved at first. They felt that perhaps this company might handle their payments and disbursements in a more efficient manner. Instead it got worse. The debtors have received eleven (11) Notice of Payment Changes between the months of February of 2015 to present. Seven (7) of these Notice of Payment Changes have come from Specialized Loan Servicing Company alone. Specialized Loan Servicing Company has only serviced the debtor's loan for a little over two (2) years.

Many of the Notice of Payment Changes were fraught with errors and had to be redone. Only one was properly withdrawn. This is in keeping with a practice that Specialized Loan Servicing Company has regularly engaged in: that is, incurring post petition fees that they do not disclose until the bankruptcy is over. This is their way of playing fast and loose with the Court rules that govern noticing debtors of any new charges. In reality, when the debtor makes payments directly to the creditor, there is no stay to stop collection of contract advances out of the incoming stream of money from the debtor.

The creditor is actually engaging in a common practice of setting the debtor up to fail when the bankruptcy is over by allowing the debtor to accrue post petition attorneys fees without informing the debtor. Once the bankruptcy is over the creditor then sends the debtor(s) a bill or sometimes, a foreclosure notice.

The debtor, after years of successful payments is then faced with additional financial hardship. This is nothing short of cruel and Specialized Loan Servicing Company is known for it. ( In re: *Kiriazis*, No. 15-8036, 2016 WL 386586, at *4 (B.A.P. 6th Cir. Feb. 2, 2016) (unpublished) (Humphrey, Opperman, Wise)) It is also not surprising when one reads the emails sent by the debtor to Adam Schechter, Vice President of Customer Resolution that date back to September of 2016 [Exhibit L.]

It is clear the debtor has endured mental duress at the will of the creditor due to their willful, egregious violation of the stay and discharge injunction. The level of stress and frustration the debtors have felt over the last five (5) years is outrageous. One of the debtors has developed and ulcer and was hospitalized in 2015 and 2016 for treatment.

If all of this was not enough the debtors received a letter dated November 16, 2018 from the creditor informing the debtors they have been assigned to a "customer resolution specialist" because of a "potential or existing delinquency [Exhibit M]. One only need consider the debtor's eligibility for the six year HAMP incentive as testament to the of the debtor's payment ethic but to be clear the debtors, for all practical purposes have not a missed a payment on their mortgage ever. Not just since the inception of the Modification rather, since the commencement of the original loan in 2005.

To the debtors this letter serves as two things: another form of harassment aimed at making them feel as if they are in danger of losing their home and a horrible feeling of what is yet to come should they not receive the protection of the Court. This is a sad day in America.

Finally, the moment that the creditor made pre-petition payments and included them with post petition charges they not only violated the stay, but every calculation thereafter produced an improper analysis and constitutes a violation of

the stay. In conjunction every transaction also constituted a violation of the discharge injunction as well. This creditor is nothing short of scandalous in their willful disregard to both the rights of the debtor and the integrity of this Court.

## POINTS AND AUTHORITIES

A.    When a debtor files a bankruptcy case the automatic stay arises immediately. 11 U.S.C. §362(a); *Rexnord Holdings v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994). The U.S. Court of Appeals for the Second Circuit has made the following comments concerning the fundamental importance of the automatic stay in a bankruptcy case: "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."

B. In re Moore v. Comenity Capital Bank, No. 13-11325, Adv. Pro. 14-1011 (Bankr. E.D. Tenn. Sept. 29, 2014) the debtor in Moore filed an adversary complaint seeking an order of contempt based upon the creditor's violation of the discharge order entered in a prior bankruptcy case. Under Moore the Court found: "When Congress amended section 362 to include a private right of action, it did not do likewise with section 524 even though that section had long been enforceable only through contempt actions." Further: "...an action based on discharge injunction violation must be brought by motion for contempt in the main bankruptcy case." The court therefore granted the creditor's motion to dismiss the complaint for violation of the discharge injunction, but it did so without prejudice to the debtor's filing a motion for sanctions in the main bankruptcy case.

C. Authority to Enforce Bankruptcy Provisions Section 105 of Title 11 empowers bankruptcy courts to issue orders and judgments as necessary to enforce section

524's discharge provisions. Bankruptcy courts also possess inherent powers to sanction abusive practices, so long as the sanctions don't contravene express Code provisions. Law v. Siegel, 134 S. Ct. 1188, 1194 (2014); In re Wallace, B.A.P. No. NV-13-1518-JuHlPa (B.A.P. 9th Cir. Sept. 18, 2014).

D. Conduct Prohibited by a Discharge Order Section 524 provides for a broad injunction to ensure debtors receive a fresh start. Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶524.02[2] (16th ed. 2012). The injunction specifically prohibits unwanted communications that serve no legitimate purpose. In re Culpepper, 481 B.R. 650 (Bankr. D. Or. 2012) (aff'd, Mosman, J.). However, mortgage companies with valid lien rights may still generally collect voluntary payments and discuss loan modifications with debtors. In re Garske, 287 B.R. 537 (B.A.P. 9th Cir. 2002). Section 524 (i) specifically provides that "The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor."