Donna DeRosa-Ruquet
Debtor Pro Se
226 Potters Drive
Bayville, New Jersey 08721
732.278.3227

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 14-17571-KCF |
| DONNA DEROSA-RUQUET | : | |
| SCOTT RUQUET | : | CHAPTER 13 |
| | : | SUPPLEMENTAL |
| DEBTOR(S) | : | MEMORANDUM IN SUPPORT OF |
| | : | DEBTOR'S MOTION FOR ORDER OF |
| VS | : | CONTEMPT AND SANCTIONS FOR |
| MORGAN STANLEY MORGAN LOAN | : | ` VIOLATION OF THE AUTOMATIC |
| TRUST 2007-3XS, U.S. BANK | : | STAY AND THE |
| | : | DISCHARGE INJUCTION ENTERED |
| NATIONAL, AS TRUSTEE, | : | UNDER CASE NO. 10-49218 KCF |
| SUCCESSOR IN INTEREST TO | : | |
| BANK OF AMERICA, NATIONAL | : | |
| ASSOCIATION, AS TRUSTEE, | : | |
| SUCCESSOR BY MERGER TO | : | |
| LASALLE BANK NATIONAL | : | |
| ASSOCIATION, AS TRUSTEE | : | |
| AS SERVICED PRESENTLY BY | : | |
| SPECIALIZED LOAN SERVICING | : | |
| LLC AND AS FORMERLY SERVICED | : | |
| BY WELLS FARGO HOME | : | |
| MORTGAGE DBA AMERICAS | : | |
| SERVICING COMPANY | : | |
| | : | |
| CREDITOR | : | |

## INTRODUCTION

Before filing this motion, debtor repeatedly tried to resolve this dispute with creditor over the phone and in writing. Rather than listen, creditor continues to ignore the debtor's phone calls and only recently responded to the debtors in writing when the creditor realized the debtors had obtained counsel. The creditor's failure to effectively communicate with the debtors were nothing short of a willful of a violation of the debtor's rights, presumably seeing them as "easy prey" given their pro se status.

Creditor's conduct in this case is part of a larger pattern and practice included but not limited to pushing borrowers out of their HAMP Modification by failing to apply payments for the sole purpose of avoiding the payment of incentive payments under the program

Debtor now moves before this Court to seek relief asking respectfully that the Court orders the creditor to finally subject the debtor's mortgage account to a thorough audit dating back to July of 2012, which is the date the debtor's began making their Trial Payments under their HAMP Modification, and to seek imposition of compensatory sanctions that will make it profitable for creditor to listen in the future.

## FACTUAL STATEMENT

A. Creditor is a participant in debtor's bankruptcy case filed on April 14, 2014 [Claim 19-1.] Presumably in the creditor's over zealous anticipation of a default, they added costs that were not owed to their initial proof of claim. Once the debtor made it clear to the creditor that they had no intention it of defaulting the Notice of Payment Change had to be corrected and re-filed [Claim 19-2.]

B. The Creditor was also a participant in the debtor's bankruptcy case filed on December 21, 2010 under case number 10-49218-KCF [Doc. 1.] The debt in this matter was discharged under case number 10-49218-KCF [Doc 12.]

C. On April 22, 2014 the Court found the Debtors ineligible for a discharge under this case due to repeat filing [Doc 12.]

D. On April 29, 2014, the creditor made a miscellaneous disbursement (Exhibit A) and added the amount of $2634.76 to the debtor's escrow without explanation. It appears on a statement from the creditor dated June 4, 2014. For four (4) years the debtor questioned the creditor to no avail about this charge with the creditor only supplying vague answers.

E. Similarly, shortly before the creditor transferred service in May of 2016, the creditor made a miscellaneous disbursement in the amount of $1754.17 which appears on the debtor's final escrow analysis dated June 12, 2016. (Exhibit B) Again, the debtor tried to get a concrete answer from the new servicer starting in June 2016 and was given vague answers that "it went to the water."

F. Under OPRA the debtor requested the records held by the Berkeley Township Tax Collector's Office. Those records indicate that on May 14, 2016 the creditor disbursed a check in the amount of $2634.76 to the Berkeley Township Tax collector. (Exhibit C) This check was to satisfy TSC- 12-0476 dated 10/13/12. (Exhibit D)

G. On May 24, 2016 the creditor disbursed a check in the amount of $1,754.17 to the Berkeley Township Tax Collector. (Exhibit E) This check was to satisfy TSC 13-0670 dated 2/14/14 (Exhibit F)

H. The debtors were already paying TSC 13-0670 through their Chapter 13 Plan and continued to do so until 12/21/2016 at which time the creditor satisfied the lien and reimbursed the Chapter 13 Trustee some seven (7) months after the lien had been satisfied through the town (Exhibit G.) There are no words for this other than by waiting seven (7) months the creditor engaged in a willful violation of the bankruptcy laws and showed a complete and total disregard for the integrity of the Trustee.

I. This creditor was operating under Consent of Comptroller at this time for engaging in, and having been in violation of, this exact type of behavior. (Exhibit H) Again, this creditor showed a complete and total disregard for the Treasury Department of the United States of America, the Comptroller and yet again, the United States Bankruptcy Code. Apparently this creditor is above the law, as they consistently commit crimes against the American people.

J. On January 9, 2019 the debtor appeared before this Court with Andrew Spivack, Esq. appearing on behalf of the bank only because he is the attorney of record. Mr. Spivack stated he no longer respresents the creditor because he did not receive a contract to represent the new creditor.

K. While in the conference room Mr. Spivack indicated that the last thing he "did on this case" was file a Notice of Default in March of 2016. Because the debtor never defaulted, the Notice did not appear in Pacer and Mr. Spivack specifically told the debtor prior to being called that he "...didn't want to speak to them about this case anymore..." the debtor asked the Hon. Judge Ferguson to have Mr. Spivack clarify this for the record.

L. At that time Mr. Spivack stated on the record that in fact, he had received notification from the creditor to file a Notice of Default but then his computer was updated and indicated the issue was resolved. These statements support the debtor's claim that the Creditor's continuous misapplication of the debtor's payments was in fact a willful violation of the Discharge Injunction as evidenced by the letter dated March 10, 2016, that the debtor received from the creditor explaining where they made their accounting errors. (Exhibit I) It has become painfully clear that had the debtor given up or let up the creditor was in fact, already beginning default proceedings. Forcing default of HAMP loans is a known tactic of this creditor and in the debtor's case it is undeniable.

M. At the Hearing on January 9, 2019, Mr. Spivack indicated that the last "thing he did" on the file was in December of 2017 or thereabouts. The debtor understands that Mr. Spivack may have made an error and meant December of 2016, when in fact he disbursed the monies to the Trustee as a reimbursement for claim 10.1. However, as this creditor has also historically waited for debtors to complete their bankruptcy case before they hammer them with excessive bills for fees so they can foreclose, the debtor respectfully requests that the Court ask Mr. Spivack for clarification.

## POINTS AND AUTHORITIES

A. When a debtor files a bankruptcy case the automatic stay arises immediately. 11 U.S.C. §362(a); *Rexnord Holdings v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994). Under Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.), 651 F.3d 786 (7th Cir. 2011). The automatic stay prohibits "any act to create, perfect or enforce any lien against property of the estate" or "any act to collect, assess, or recover a claim". Section 362(b)(3) excepts from the stay "any act to perfect ... an interest in property to the extent that", under section 546(b)(1), the perfection would relate back so as "to be effective against an entity that acquires rights in such property before the date of perfection". Section 362(b)(9) excepts from the stay "the issuance to the debtor by a governmental unit

of a notice of tax deficiency [and] the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment". A tax is a governmental levy to support the functions of government, not a fee or reimbursement for services rendered. The New Jersey statute's treatment of the collection of the bill "as a tax" does not bring it within the meaning of "tax" in section 362(b)(9). Section 362(b)(18) excepts from the stay "the creation or perfection of a statutory lien for ... a special tax or special assessment on real property ... imposed by a governmental unit" after the petition date. A special tax or special assessment is limited to one imposed for payment for a local improvement or to enhance local property values. The utility charge does not qualify. Therefore, none of the automatic stay exceptions apply, and the creditor's disbursement constitutes a violation of the automatic stay."



**ASC** — AMERICA'S SERVICING COMPANY

Return Mail Operations
PO Box 10388
Des Moines, IA 50306-0388

*Leng*

| | |
|---|---|
| Statement date | 06/16/14 |
| Loan number | 1127131290 |
| Property address | |
| 226 POTTERS DR | |
| BAYVILLE NJ 08721 | |

**PLEASE NOTE:** If you are presently seeking relief (or have previously been granted relief) under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only.

ıllı·lllıpplıbıldıldlllllıldıdlllldlldlllıpplllllıpllıılıl

1AT 01193/012222/001853 0052   2 ACRRTE 106 012
DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721-2527

**Customer Service**   Online
mortgageaccountonline.co

Fax
1-866-453-6315

Correspondence
PO Box 10335
Des Moines, IA 50306

Telephone
1-800-274-7025

Hours of operation
Mon – Fri 7 a.m. – 8 p.m CT

Payments
PO Box 14507
Des Moines IA 50306

We accept telecommunications relay service calls.

The summaries below are based on the terms of your loan and are provided for informational purposes only.

### Payment summary

| | |
|---|---|
| Principal | $359.09 |
| Interest | $410.04 |
| Escrow | $491.33 |
| Current monthly payment 07/01/14 | $1,260.46 |
| Unpaid payment(s) 05/01/14 - 06/01/14 | $2,520.92 |
| Unpaid late charge(s) | $90.38 |
| **Total Payment** | **$3,871.76** |

### Balance summary

| | |
|---|---|
| Unpaid principal balance[2] | $246,741.69 |
| Unpaid second principal balance[2] | $2,466.97 |
| Unapplied funds balance[3] | $34.91 |
| Escrow balance | $3,474.14- |
| *(Contact Customer Service for your payoff balance)* | |
| Interest rate[4] | 2.000% |
| Maturity date | 10/52 |

### Year to date summary[5]

| | |
|---|---|
| Total received* | $6,345.9 |
| Principal | $1,780.5 |
| Interest | $2,065.0 |
| Escrow | $2,500.2 |
| Taxes disbursed | $2,158.7 |

*This total may include the Unapplied funds balance from the Balance summary section.

[2]This is a principal balance only (and does not include interest and/or fees). Your principal balance(s) is governed by the terms of your loan unless otherwise reduced by an order of the bankruptcy court.

[3]This balance represents the total amount of all unapplied funds on your account. We refer to any payment that is less than the payment established by the terms of your loan as a "partial payment". If we receive a partial payment, we will hold the partial payment until we receive additional funds that can be combined to make a full payment.

[4]This interest rate is governed by the terms of your loan unless otherwise reduced by an order of the bankruptcy court.

[5]Each component of this Summary is calculated and disclosed according to the terms of your loan.

### Important messages

This statement is for informational purposes only. Our records indicate that your loan is subject to bankruptcy. The attached coupon reflects the calendar due date, not the contractual due date of the bankruptcy case. If you have any questions regarding your loan, please contact your bankruptcy attorney or our office.

### Activity since your last statement

| Date | Description | Total | Principal | Interest | Escrow | Other |
|---|---|---|---|---|---|---|
| 05/14 | Payment | | $357.30 | $411.83 | $491.33 | Unapplied $1,260.46- |
| 05/13 | Funds received | $1,260.46 | | | | Unapplied $1,260.46 |
| 05/07 | Payment | | $356.70 | $412.43 | $491.33 | Unapplied $1,260.46- |
| 04/29 | Payment reversal | | $356.70- | $412.43- | $526.24- | Unapplied $1,295.37 |
| 04/29 | Misc disburse | | | | $2,634.76- | BERKELEY TWP (1) |
| 04/24 | City tax payment | | | | $1,079.36- | BERKELEY TWP (1) |
| 04/21 | Payment | $1,295.37 | $356.70 | $412.43 | $526.24 | |
| 04/16 | Late fee assessed | | | | | $38.46- |
| 03/17 | Payment | $1,295.37 | $356.11 | $413.02 | $526.24 | |
| 02/17 | Payment | $1,264.81 | $355.52 | $413.61 | $495.68 | |
| 01/16 | Payment | $1,264.81 | $354.93 | $414.20 | $495.68 | |
| 01/15 | City tax payment | | | | $1,079.37- | BERKELEY TWP (1) |
| 12/16 | Payment | $1,264.81 | $354.34 | $414.79 | $495.68 | |

Late charges are assessed after the close of business on the assessment date and only after all payments received

*Continued on the next page*

TRA3-D-012222/001853 ACRRTE S1-ET-M1-C003 1

**ASC** 🌟
AMERICA'S SERVICING COMPANY

PO Box 14547
Des Moines, IA 50306-4547

For informational purposes

## Final escrow account disclosure statement

0008433    ·SP    **SNGLP  T4 0 1647 08721-252726   -C01-|    NONE

DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE NJ 08721

| | |
|---|---|
| Loan number: | 1127131290 |
| Statement date: | June 12, 2016 |
| Account review period: | May 2016 - Jun 2016 |
| | |
| Customer service: | 1-800-842-7654 |
| Customer service hours: | Mon - Fri 6 a.m - 10 p.m. |
| | Sat 8 a.m. - 2 p.m. CT |

We accept telecommunications relay service calls.

Property address:
226 POTTERS DR
BAYVILLE NJ 08721-2527

**Subject: Final escrow account statement**

Dear DONNA J DEROSA-RUQUET:

Since your mortgage has been transferred to another mortgage company, we're writing to provide you with your final escrow account statement.

**Review your escrow account history**
Please take a moment to look over your Escrow Account History on the reverse side of this letter. It shows the actual and projected activity for your escrow account. The projected amounts reflect escrow activity that was scheduled to occur if your mortgage had not been transferred. For your information, prior to this transaction your monthly mortgage payment was $537.98, of which $537.98 was for your escrow account.

**Important insurance and tax information**
Now that your mortgage has been transferred, your insurance documents and escrow account also have transferred to your new mortgage company. If you are no longer the owner of the property listed above, please contact your insurance agent/company and/or taxing authority to notify them of this change in ownership and request any applicable refunds be sent to you.
For your convenience, the insurance agent/company associated with this mortgage is TOWER GROUP.

**We're here to help you**
We're happy to have you as our customer and the opportunity to help with your home financing.

Please refer to the mortgage servicing transfer letters sent to you from us and your new mortgage company for details about your mortgage transfer. If you have other questions, please contact us at the number in the information box above.

Sincerely,

Customer Service
America's Servicing Company

For informational purposes

Page :

Loan number:    112713

The following information covers your escrow account history activity from May 2016 to Jun 2016

| Date | Payments to escrow ($) | | Payments from escrow ($) | | Description | Escrow balance ($) | |
|---|---|---|---|---|---|---|---|
| | Projected | Actual | Projected | Actual | | Projected | Actual |
| May 2016 | | | | | | | |
| May 2016 | 537.98 | 0.00[1] | 0.00 | | Starting balance | 1,551.05 | 4,342.15- |
| Jun 2016 | 537.98 | 0.00[1] | 0.00 | 1,754.17[1] | MISC ESCROW | 2,089.03 | 6,096.32- |
| Totals | 1,075.96 | 0.00 | 0.00 | 6,096.32-[1] | TRANSFER BAL | 2,627.01 | 0.00 |
| | | | | 4,342.15- | | | |

1. Indicates where a difference exists between the projected and actual account activity.

Wells Fargo Home Mortgage, doing business as America's Servicing Company, is a division of Wells Fargo Bank, N.A.
© 2012 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

```
TRFF94          LIEN INTEREST CALCULATION                              DATE: 05/06/14
*============================================================================
BLK.SFX  1342        LOT.SFX    38        QUAL              INT. TO 06/23/14
PLOC: 226 POTTERS DR                      US BANK CUST FOR PRO CAPITAL I LLC
NAME RUQUET, SCOTT T & DONNA J D          50 S 16TH STREET STE 1950
COMMENTS                                  PHILADELPHIA, PA        19102
CERT.12-0476  DATE 10/03/12 CERT.AMT.      784.98 PREM     400.00
============================================================RATE=     .00
CODE    DESCRIPTION                 DUE DATE      AMOUNT DUE      INTEREST

003    COST                         10/03/12          15.39          .00
016    WATER PRINCIPAL              10/03/12         696.46          .00
017    WATER INTEREST               10/03/12          73.13          .00
006    RECORDING FEE                10/18/12          30.00          .00
007    SEARCH FEE                   10/18/12          12.00          .00
013    SEWER PRINCIPAL-SUB YEARS    07/10/13         564.38        43.01
013    SEWER PRINCIPAL-SUB YEARS    11/21/13         175.74         9.73
016    WATER PRINCIPAL              02/21/14         855.38        52.17
013    SEWER PRINCIPAL-SUB YEARS    02/25/14          86.57         5.10
        2%   PENALTY =     15.70                    2509.05       110.01
       ******GRAND-TOTAL    2634.76
```

05/16/14 79-0005    $2634.76 CHK 11

*Need*
*K ✓*
*P ✓*

Berkeley Township Tax Collector
P.O. Box B
627 Pinewald-Keswick Road
Bayville, N.J. 08721

WARNING - THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

MORTGAGE SERVICES
WELLS FARGO BANK N.A.
ESCROW DISBURSEMENT

QOM     P24     290298005
1127131280
1-877-222-7875

17-1 / 910

**MORTGAGE SERVICES**
P.O. Box 10335
Des Moines, IA 50306-0335

| CHECK NO. | M( |
|---|---|
| 1003160837 | 04/ |

FOR PAYMENT OF MISCELLANEOUS ESCROW

| AMOUNT |
|---|
| $2,634.7( |

Two Thousand Six Hundred Thirty Four and 76/100 Dollars

PAY TO
THE ORDER
OF

BERKELEY TWP (1)
DEPT TAX COLLECTOR
PO BOX B
BAYVILLE, NJ 08721

_____
AUTHORIZED SIGNATURE

⑈100316083⑈  ⑆09100001⑇  786290621⑈

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK    HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE END

Berkeley Township Tax Collector
P.O. Box B
627 Pinewald-Keswick Road
Bayville, N.J. 08721

TOWNSHIP OF BERKELEY
627 PINEWALD-KESWICK ROAD
P.O. BOX B
BAYVILLE, NJ 08721
TEL (732)244-7400 FAX (732)736-1747

REQUISITION

| NO. | |
|---|---|
| | R1401553 |

```
S
H  TAX COLLECTOR (732-244-7400)
I  627 PINEWALD KESWICK ROAD
P  BAYVILLE NJ 08721
   BERKELEY TOWN HALL ROOM # 101
T
O
```

ORDER DATE:          05/27/14
DELIVERY DATE:
STATE CONTRACT:
F.O.B. TERMS:

```
V                              VENDOR #:  USBANKC
E
N  US BANK CUS PRO CAP I, LLC
D  SUITE 1950
O  50 SOUTH 16TH. STREET
R  PHILADELPHIA, PA 19102
```

| QTY/UNIT | DESCRIPTION | ACCOUNT NO. | UNIT PRICE | TOTAL COST |
|---|---|---|---|---|
| 1.00 | REDEEM TSC#12-0476<br>BLOCK 1342 LOT 38 | T-03-00-130-000-000 | 2,634.7600 | 2,634.76 |
| | CERT:      2509.05<br>INT:       110.01<br>2% PENALTY: 15.70 | | | |
| 1.00 | REDEEM TSC#12-0476 PREMIUM<br>BLOCK 1342 LOT 38 | T-03-00-115-000-000 | 400.0000 | 400.00 |
| | TOTAL PREM:     400.00 | | | |
| | | | TOTAL | 3,034.76 |

Berkeley Township Tax Collector
P.O. Box B
627 Pinewald-Keswick Road
Bayville, N.J. 08721

REQUESTING DEPARTMENT                    DATE

# CERTIFICATE OF SALE
## FOR UNPAID MUNICIPAL LIENS

**CERTIFICATE**

**No.** 12-0476

I, GERALDINE DORSO TAX COLLECTOR , COLLECTOR OF TAXES of the taxing district of the TOWNSHIP of BERKELEY in the COUNTY of OCEAN and State of New Jersey, do hereby certify that on the 3RD day of OCTOBER .2012 at a public sale of lands for delinquent municipal liens, pursuant to the Revised Statutes of New Jersey, 1937, Title 54, Chapter 5, and the amendments and supplements thereto I sold to US BANK CUST FOR PRO CAPITAL I LLC

whose address is 50 S 16TH STREET STE 1950 PHILADELPHIA, PA 19102

for SEVEN HUNDRED EIGHTY FOUR dollars and 98 cents, the land in said taxing district described as Block No. 1342 Lot No. 38 , and known as 226 POTTERS DR BAYVILLE N J 08721-0287 , on the tax duplicate thereof and assessed thereon to RUQUET, SCOTT T & DONNA J D +LOTS 40,42,44
226 POTTERS DR BAYVILLE NJ 08721

## THE AMOUNT OF THE SALE WAS MADE UP OF THE FOLLOWING ITEMS:

| | AMOUNT | INTEREST | TOTAL |
|---|---|---|---|
| **Taxes For:** 2011 | | | |
| WATER SERVICE CHARGES | 696.46 | 73.13 | 769.59 |
| **Assessments For Improvements** | | | |
| COST OF SALE | | | 15.39 |
| PREMIUM | 400.00 | | 784.98 |

INSTR # 2012125339 OR BK 15382 PG 1975 12/07/2012 09:14:23 AM
SCOTT M. COLABELLA COUNTY CLERK, OCEAN COUNTY NEW JERSEY

Said sale is subject to redemption on repayment of the amount of sale, together with interest at the rate of .00 per centum per annum from the date of sale, and the costs incurred by the purchaser as defined by statute. The sale is subject to municipal charges accruing after 31ST DAY OF DECEMBER , 2011 ; municipal authority charges accruing after 31ST DAY OF DECEMBER , 2011 and assessment installments not yet due, amounting to dollars and interest thereon.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 10TH day of OCTOBER '2012

STATE OF NEW JERSEY
COUNTY OF: OCEAN

*Geraldine Dorso, Ctc*

SEAL

GERALDINE DORSO TAX COLLECTOR , COLLECTOR OF TAXES

BE IT REMEMBERED, that on this 10TH day of OCTOBER 2012 before me a NOTARY PUBLIC of New Jersey, personally appeared GERALDINE DORSO TAX COLLECTOR , the Collector of Taxes of the taxing district of TOWNSHIP OF BERKELEY in the County of OCEAN , who, I am satisfied, is the individual described herein, and who executed the above Certificate of Sale; and I having made known to him the contents thereof, he thereupon acknowledged to me that he signed, sealed and delivered the same as his voluntary act and deed, for the uses and purposes therein expressed.

Prepared By: *Geraldine Dorso, Ctc*
GERALDINE DORSO TAX COLLECTOR. , PREPARER, MARION E HEINTJES

*Marion E Heintjes*
Marion E. Heintjes
Notary Public of New Jersey
My Commission Expires
September 25, 2016
, NOTARY PUBLIC

NOTE: NJSA 46:15-3 requires that all signatures appearing on the certificate collector, the Notary Public who takes this acknowledgement, and the preparer shall be printed, typed or stamped underneath such signature the name of the person that signed.

DLGS Rev. 10/99

May 31, 2016
11:02 AM

TOWNSHIP OF BERKELEY
Lien Redemption Work Sheet

Page No: 1

---

Certificate: 13-0670
Prop Loc: 226 POTTERS DR

Owner: RUQUET, SCOTT T & DONNA J D
Address: 226 POTTERS DR
BAYVILLE NJ    08721

Type of Lien: Outside
Interest Rate:18.00
Apr 2: N
Premium:        0.00

Block/Lot/Qual: 1342.        38.
Sale Date: 10/02/13
Redemption Calculation Date: 06/27/16
Include Current Charges: N

Holder Name: US BANK CUST PRO CAP III, LLC
Address: 50 S 16TH ST STE 1950
PHILADELPHIA, PA 19102

Holder Id: 00000002

---

TAX SALE CERTIFICATE:

| Balance Type | Principal | Interest | Total |
|---|---|---|---|
| Water | 885.69 | 93.00 | 978.69 |

| | | |
|---|---|---|
| Cost: | 19.57 | |
| Total Certificate: | | 998.26 |
| #Days: 985 Per Diem: 0.499130 Int on Cert: | | 491.64 |
| Redemption Penalty ( 2.00 %): | | 19.97 |
| Total: | | 1,509.87 |

SUBSEQUENT CHARGES:

| Balance Type | Year | Prd | Date | Prin/Penalty | Interest Rate | Per Diem | #Days | Interest | Total |
|---|---|---|---|---|---|---|---|---|---|
| Sewer | 2014 | 1 | 09/23/14 | 177.32 | 8.00 | 0.039404 | 634 | 24.98 | 202.30 |
| | | | Total: | 177.32 | | | | 24.98 | 202.30 |

BALANCE TYPE SUMMARY:

| | Certificate Total & Subseq. Prin/Penalty | Interest | Total |
|---|---|---|---|
| Certificate Water | 978.69 | 482.00 | 1,460.69 |
| Total Water | 978.69 | 482.00 | 1,460.69 |
| | | | |
| Subseq Sewer | 177.32 | 24.98 | 202.30 |
| Total Sewer | 177.32 | 24.98 | 202.30 |
| | | | |
| Certificate Cost | 19.57 | 9.64 | 29.21 |

LIEN REDEMPTION:

| | |
|---|---|
| Principal: | 1,175.58 |
| Redemption Penalty ( 2.00 %): | 19.97 |
| Interest: | 516.62 |
| Recording Fees: | 30.00 |
| Other Fees: | 12.00 |
| TOTAL REDEMPTION: | 1,754.17 |

Total Per Diem: 0.538534

Berkeley Township Tax Collector
P.O. Box B
627 Pinewald-Keswick Road
Bayville, N.J. 08721

Berkeley Township Tax Collector
P.O. Box B
607 Pinewald-Keswick Road
Bayville, N.J. 08721

---

WARNING: THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

## CASHIER'S CHECK

17-1
910

0002960473

PAY TO THE ORDER OF      ***BERKELEY TWP***
                         01342 00038

May 24, 2016

**$1,754.17**

***One Thousand Seven Hundred Fifty Four and 17/100 Dollars***

VOID IF OVER US $1754.17

WELLS FARGO BANK, N.A.
Wells Fargo Home Mortgage
P.O. Box 10335
Des Moines, IA 50306-0335

1-866-234-8271

AUTHORIZED SIGNATURE

⑈000 2960473⑈ ⑈09 10000 19⑈      5 12 1 1 23 9 20⑈

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT

# CERTIFICATE OF SALE

## FOR UNPAID MUNICIPAL LIENS

**No.** 13-0670

I, GERALDINE DORSO TAX COLLECTOR , COLLECTOR OF TAXES of the taxing district of the TOWNSHIP of BERKELEY in the COUNTY of OCEAN and State of New Jersey, do hereby certify that on the 2ND day of OCTOBER , 2013 at a public sale of lands for delinquent municipal liens, pursuant to the Revised Statutes of New Jersey, 1937, Title 54, Chapter 5, and the amendments and supplements thereto I sold to US BANK CUST PRO CAP III, LLC .

whose address is 50 S 16TH ST STE 1950 PHILADELPHIA, PA 19102

for NINE HUNDRED NINETY EIGHT dollars and 26 cents, the land in said taxing district described as Block No. 1342 Lot No. 38 , and known as 226 POTTERS DR BAYVILLE N J 08721-0287 , on the tax duplicate thereof and assessed thereon to RUQUET, SCOTT T & DONNA J D +LOTS 40,42,44
226 POTTERS DR BAYVILLE NJ 08721

# THE AMOUNT OF THE SALE WAS MADE UP OF THE FOLLOWING ITEMS:

| | AMOUNT | INTEREST | TOTAL |
|---|---|---|---|
| **Taxes For:** 2012 | | | |
| WATER SERVICE CHARGES | 885.69 | | |
| **Assessments For Improvements** | | | |
| COST OF SALE | | | 19.57 |
| | | | 998.26 |

INSTR # 2014008853
OR BK 15739 PG 903
RECORDED 02/05/2014 10:14:41 AM
SCOTT M. COLABELLA, COUNTY CLERK
OCEAN COUNTY, NEW JERSEY

Said sale is subject to redemption on repayment of the amount of sale, together with interest at the rate of 18.00 per centum per annum from the date of sale, and the costs incurred by the purchaser as defined by statute. The sale is subject to municipal charges accruing after 31ST DAY OF DECEMBER , 2012 ; municipal authority charges accruing after 31ST DAY OF DECEMBER , 2012 and assessment installments not yet due, amounting to dollars and interest thereon.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 11TH day of OCTOBER , 2013 .

STATE OF NEW JERSEY
COUNTY OF: OCEAN

*Geraldine Dorso Ctr*
GERALDINE DORSO TAX COLLECTOR , COLLECTOR OF TAXES

SEAL

BE IT REMEMBERED, that on this 11TH day of OCTOBER 2013 before me a NOTARY PUBLIC of New Jersey, personally appeared GERALDINE DORSO TAX COLLECTOR , the Collector of Taxes of the taxing district of TOWNSHIP OF BERKELEY in the County of OCEAN , who, I am satisfied, is the individual described herein, and who executed the above Certificate of Sale; and I having made known to him the contents thereof, he thereupon acknowledged to me that he signed, sealed and delivered the same as his voluntary act and deed, for the uses and purposes therein expressed.

Prepared By: *Geraldine Dorso Ctr*
GERALDINE DORSO TAX COLLECTOR , PREPARER

*Marion E Heintjes*
MARION E HEINTJES
**Marion E. Heintjes**
**Notary Public of New Jersey**
**My Commission Expires**
**September 25, 2016**
, NOTARY PUBLIC

NOTE: NJSA 46:15-3 requires that all signatures appearing on the certificate, those of the collector, the Notary Public who takes this acknowledgement, and the preparer shall be printed, typed or stamped underneath by the name of the person that signed.

DLGS Rev. 10/99

**#2017-033**

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
OFFICE OF THE COMPTROLLER OF THE CURRENCY

| | |
|---|---|
| **In the Matter of:**  )<br>  )<br>  )<br>U.S. Bank National Association  )<br>Cincinnati, Ohio  )<br>  ) | AA-EC-2017-12 |

## CONSENT ORDER FOR A CIVIL MONEY PENALTY

The Comptroller of the Currency of the United States of America ("Comptroller"),

through his national bank examiners and other staff of the Office of the Comptroller of the

Currency ("OCC"), conducted examinations of U.S. Bank National Association, Cincinnati,

Ohio ("Bank") that identified deficiencies in the Bank's bankruptcy practices occurring from

2009 through 2014, and informed the Bank of the findings resulting from the examinations.

The Bank, by and through its duly elected and acting Board of Directors, has executed a

Stipulation and Consent to the Issuance of an Order for a Civil Money Penalty, dated April 25,

2017, that is accepted by the Comptroller ("Stipulation"). By this Stipulation, which is

incorporated herein by reference, the Bank has consented to the issuance of this Consent Order

for a Civil Money Penalty ("Order") by the Comptroller.

ARTICLE I

COMPTROLLER'S FINDINGS

The Comptroller finds, and the Bank neither admits nor denies, the following:

(1)    Between 2009 and 2014, the Bank committed various errors related to bankruptcy filings, including: (a) untimely, not filed, or inaccurately filed Proofs of Claim; (b) payment application inaccuracies resulting in overpayments by debtors or trustees; (c) untimely and/or inaccurate Payment Change Notices; (d) untimely, and/or inaccurate Post-Petition Mortgage Fees, Expenses, and Charges; (e) inaccurate Notices of Final Cure; (f) exposure of confidential customer information in court-filed documents; and (g) inconsistent application of the Bank's fee waiver practices.

(2)    The Bank's bankruptcy filing practices described in Paragraph (1) above did not comply with Bankruptcy Rules, required the Bank to undertake operational enhancements to achieve compliance, and were unsafe and unsound practices.

(3)    In addition, as a result of these practices, the Bank has made or will make approximately $29 million in remediation to approximately 22,000 account-holders.

ARTICLE II

ORDER FOR A CIVIL MONEY PENALTY

Pursuant to the authority vested in him by the Federal Deposit Insurance Act, 12 U.S.C. § 1818(i), the Comptroller orders, and the Bank consents to the following:

(1)    The Bank shall make payment of a civil money penalty in the total amount of fifteen million dollars ($15,000,000), which shall be paid upon the execution of this Order:

(a)    If a check is the selected method of payment, the check shall be made payable to the Treasurer of the United States and shall be delivered to: Comptroller of the Currency, P.O. Box 979012, St. Louis, Missouri 63197-9000.

(b)    If a wire transfer is the selected method of payment, it shall be sent in accordance with instructions provided by the Comptroller.

2

(c)     The docket number of this case (AA-EC-2017-12) shall be entered on the

payment document or wire confirmation and a photocopy of the payment

document or confirmation of the wire transfer shall be sent immediately, by

overnight delivery, to the Director of Enforcement and Compliance, Office of the

Comptroller of the Currency, 400 7th Street, S.W., Washington, D.C. 20219.

(2)     This Order shall be enforceable to the same extent and in the same manner as an

effective and outstanding order that has been issued and has become final pursuant to 12 U.S.C.

§ 1818(h) and (i).

## ARTICLE III

## OTHER PROVISIONS

(1)     This Order is intended to be, and shall be construed to be, a final order issued

pursuant to 12 U.S.C. § 1818(i)(2), and expressly does not form, and may not be construed to

form, a contract binding on the Comptroller or the United States.

(2)     This Order constitutes a settlement of the civil money penalty proceeding against

the Bank contemplated by the Comptroller, based on the practices and violations of law

described in the Comptroller's Findings set forth in Article I of this Order.  The Comptroller

releases and discharges the Bank and its subsidiaries from all potential liability for a civil money

penalty that has been or might have been asserted by the Comptroller based on the practices and

violations described in Article I of this Order, to the extent known to the Comptroller as of the

effective date of this Order.  Nothing in the Stipulation or this Order, however, shall prevent the

Comptroller from:

(a)     instituting enforcement actions other than a civil money penalty against

the Bank based on the findings set forth in Article I of this Order;

3

(b)    instituting enforcement actions against the Bank based on any other findings;

(c)    instituting enforcement actions against the Bank's institution-affiliated parties based on the findings set forth in Article I of this Order, or any other findings; or

(d)    utilizing the findings set forth in Article I of this Order in future enforcement actions against the Bank or its institution-affiliated parties to establish a pattern or the continuation of a pattern.

Further, nothing in the Stipulation or this Order shall affect any right of the Comptroller to determine and ensure compliance with the terms and provisions of the Stipulation or this Order.

(3)    The terms of this Order, including this paragraph, are not subject to amendment or modification by any extraneous expression, prior agreements, or prior arrangements between the parties, whether oral or written.

**IT IS SO ORDERED**, this 25th day of April, 2017.


_____/s/_____
Maryann H. Kennedy
Deputy Comptroller
Large Bank Supervision

4

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
COMPTROLLER OF THE CURRENCY

In the Matter of:                          )
                                           )
                                           )
U.S. Bank National Association             )          AA-EC-2017-12
Cincinnati, Ohio                           )
                                           )
                                           )

## STIPULATION AND CONSENT TO THE ISSUANCE OF A CONSENT ORDER FOR A CIVIL MONEY PENALTY

**WHEREAS**, the Comptroller of the Currency of the United States of America ("Comptroller"), based upon information derived from the exercise of his regulatory and supervisory responsibilities, intends to initiate a civil money penalty proceeding against U.S. Bank National Association, Cincinnati, Ohio ("Bank"), pursuant to 12 U.S.C. § 1818(i), for the Bank's deficient bankruptcy filing practices occurring from 2009 through 2014.

**WHEREAS**, in the interest of cooperation and to avoid additional costs associated with administrative and judicial proceedings with respect to the above matter, the Bank, through its duly elected and acting Board of Directors, has agreed to execute this Stipulation and Consent to the Issuance of a Consent Order for a Civil Money Penalty ("Stipulation"), that is accepted by the Comptroller, through his duly authorized representative;

**NOW, THEREFORE**, in consideration of the above premises, it is stipulated by the Bank that:

1

## ARTICLE I

### JURISDICTION

(1)     The Bank is a national banking association chartered and examined by the

Comptroller pursuant to the National Bank Act of 1864, as amended, 12 U.S.C. § 1 *et seq.*

(2)     The Comptroller is "the appropriate Federal banking agency" regarding the Bank

pursuant to 12 U.S.C. §§ 1813(q) and 1818(b).

(3)     The Bank is an "insured depository institution" within the meaning of

12 U.S.C. §§ 1813(c) and 1818(b)(1).

## ARTICLE II

### CONSENT

(1)     The Bank, without admitting or denying any wrongdoing, consents and agrees to

issuance of the accompanying Consent Order for a Civil Money Penalty ("Consent Order") by

the Comptroller.

(2)     The Bank consents and agrees that the Consent Order shall be deemed an "order

issued with the consent of the depository institution" pursuant to 12 U.S.C. § 1818(h)(2), and

consents and agrees that the Consent Order shall become effective upon its execution by the

Comptroller through his authorized representative, and shall be fully enforceable by the

Comptroller pursuant to 12 U.S.C. § 1818(i).

(3)     Notwithstanding the absence of mutuality of obligation, or of consideration, or of

a contract, the Comptroller may enforce any of the commitments or obligations herein

undertaken by the Bank under his supervisory powers, including 12 U.S.C. § 1818(i), and not as

a matter of contract law.  The Bank expressly acknowledges that neither the Bank nor the

Comptroller has any intention to enter into a contract.

2

(4) The Bank declares that no separate promise or inducement of any kind has been made by the Comptroller, or by his agents or employees, to cause or induce the Bank to consent to the issuance of the Consent Order and/or execute this Stipulation.

(5) The Bank expressly acknowledges that no officer or employee of the Comptroller has statutory or other authority to bind the United States, the United States Treasury Department, the Comptroller, or any other federal bank regulatory agency or entity, or any officer or employee of any of those entities to a contract affecting the Comptroller's exercise of his supervisory responsibilities.

(6) The Consent Order constitutes a settlement of the civil money penalty proceeding against the Bank and its subsidiaries contemplated by the Comptroller, based on the practices and violations of law described in the Comptroller's Findings set forth in Article I of the Consent Order. The Comptroller releases and discharges the Bank from all potential liability for a civil money penalty that has been or might have been asserted by the Comptroller based on the practices and violations described in Article I of the Consent Order, to the extent known to the Comptroller as of the effective date of the Consent Order. Nothing in this Stipulation or the Consent Order, however, shall prevent the Comptroller from:

(a) instituting enforcement actions other than a civil money penalty against the Bank based on the findings set forth in Article I of the Consent Order;

(b) instituting enforcement actions against the Bank based on any other findings;

(c) instituting enforcement actions against the Bank's institution-affiliated parties based on the findings set forth in Article I of the Consent Order, or any other findings; or

3

(d)    utilizing the findings set forth in Article I of the Consent Order in future enforcement actions against the Bank or its institution-affiliated parties to establish a pattern or the continuation of a pattern.

Further, nothing in this Stipulation or the Consent Order shall affect any right of the Comptroller to determine and ensure compliance with the terms and provisions of this Stipulation or the Consent Order.

ARTICLE III

WAIVERS

(1)    The Bank, by executing this Stipulation and consenting to the Consent Order, waives:

(a)    Any and all rights to the issuance of a Notice of Charges pursuant to 12 U.S.C. § 1818(i);

(b)    Any and all procedural rights available in connection with the issuance of the Consent Order;

(c)    Any and all rights to a hearing and a final agency decision pursuant to 12 U.S.C. § 1818(i), 12 C.F.R. Part 19;

(d)    Any and all rights to seek any type of administrative or judicial review of the Consent Order;

(e)    Any and all claims for fees, costs or expenses against the Comptroller, or any of his agents or employees, related in any way to this enforcement matter or the Consent Order, whether arising under common law or under the terms of any statute, including, but not limited to, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412;

4

(f)  Any and all rights to assert this proceeding, this Stipulation, consent to the issuance of the Consent Order, and/or the issuance of the Consent Order, as the basis for a claim of double jeopardy in any pending or future proceeding brought by the United States Department of Justice or any other governmental entity; and

(g)  Any and all rights to challenge or contest the validity of the Consent Order.

## ARTICLE IV

### CLOSING

(1)  The provisions of this Stipulation and the Consent Order shall not inhibit, estop, bar, or otherwise prevent the Comptroller from taking any other action affecting the Bank if, at any time, he deems it appropriate to do so to fulfill the responsibilities placed upon him by the several laws of the United States of America.

(2)  Nothing in this Stipulation or the Consent Order shall preclude any proceedings brought by the Comptroller to enforce the terms of the Consent Order, and nothing in this Stipulation or the Consent Order constitutes, nor shall the Bank contend that it constitutes, a release, discharge, compromise, settlement, dismissal, or resolution of any actions, or in any way affects any actions that may be or have been brought by any other representative of the United States or an agency thereof, including, without limitation, the United States Department of Justice.

(3)  The terms of this Stipulation, including this paragraph, and of the Consent Order are not subject to amendment or modification by any extraneous expression, prior agreements or prior arrangements between the parties, whether oral or written.

5

**IN TESTIMONY WHEREOF**, the undersigned, as the duly elected and acting Board of

Directors of U.S. Bank National Association, Cincinnati, Ohio, have hereunto set their hands on

behalf of the Bank.


| | |
|---|---|
| /s/ | April 12, 2017 |
| Jennie P. Carlson | Date |

| | |
|---|---|
| /s/ | April 5, 2017 |
| Andrew Cecere | Date |

| | |
|---|---|
| /s/ | April 5, 2017 |
| James L. Chosy | Date |

| | |
|---|---|
| /s/ | April 5, 2017 |
| Richard K. Davis | Date |

| | |
|---|---|
| /s/ | April 5, 2017 |
| Terrance R. Dolan | Date |

| | |
|---|---|
| /s/ | April 5, 2017 |
| John R. Elmore | Date |

| | |
|---|---|
| /s/ | April 6, 2017 |
| Leslie V. Godridge | Date |

| | |
|---|---|
| /s/ | April 10, 2017 |
| Gunjan Kedia | Date |

6

_____/s/_____
James B. Kelligrew

April 12, 2017
Date


_____/s/_____
Shailesh M. Kotwal

April 6, 2017
Date


_____/s/_____
Karen S. Lynch

April 18, 2017
Date


_____/s/_____
P.W. (Bill) Parker

April 4, 2017
Date


_____/s/_____
Katherine B. Quinn

April 4, 2017
Date


_____/s/_____
Mark G. Runkel

April 6, 2017
Date


_____/s/_____
Kent V. Stone

April 5, 2017
Date


_____/s/_____
Jeffry H. von Gillern

April 11, 2017
Date


_____/s/_____
Scott W. Wine

April 11, 2017
Date


7

Accepted by:

THE COMPTROLLER OF THE CURRENCY


_____/s/_____                          April 25, 2017_____

By:    Maryann H. Kennedy                          Date
       Deputy Comptroller
       Large Bank Supervision

8



**ASC**

AMERICA'S SERVICING COMPANY

PO Box 10335
Des Moines, IA 50306-0328

March 10, 2016

Donna J. DeRosa-Ruquet
226 Potters Drive
Bayville, NJ 08721

Subject: Resolution to the inquiry received about account number 1127131290

Dear Ms. Donna J. DeRosa-Ruquet:

Thank you for the opportunity to address your concerns. We've carefully researched these matters and are providing you with a response.

In your inquiry you raised concerns about the following:

- Payments held in unapplied funds
- Insurance payments

Please find our responses to your concerns addressed below.

**Payments held in unapplied funds**

While researching your concern about the unapplied payments, we found an error occurred and wanted to provide you with more details:

- Here's what happened: With the account being in active bankruptcy, our process is to apply the funds to the unapplied funds first, then make the payment. However, the payments on this account were not being applied to the payments.
- What we've done to resolve the issue: We have had the three monthly payments applied with the effective dates indicated as the date the funds were received. We applied the December 2015 payment with an effective date of December 16, 2015, the January 2016 payment applied with an effective date of January 20, 2016, and the February 2016 payment applied with an effective date of February 16, 2016.

During our telephone conversation you advised that you call into make the payments, please contact our Bankruptcy department to assist with the payments at 1-800-274-7025. Representatives are ready to help Monday through Friday, 6:00 a.m. to 10:00 p.m. Central Time.

We apologize for the inconvenience concerns may have caused. We know your time is valuable and appreciate the effort you took to contact us.

0321 58 21 48

Derosa-Ruquet
March 10, 2016
Page 2

**Insurance payments**

Based on our research, we've determined your account was handled appropriately and no adjustments are needed.

We wanted to share our information with you and have enclosed the documents we used in our research. If you would like to request additional documents that support our research, you may reply to me directly at the return address on this letter or by phone at the number provided in the "Going forward" section of this letter.

You have duplicate coverage through Narragansett Bay as well as through Tower Group. Each insurance company provided us a policy to be updated and paid. You would need to cancel one of the outside policies and request a refund to be sent to the escrow. As per the escrow analysis, we completed the analysis based on this information. If you cancel one of the policies and have the refund sent to us, we can complete a new analysis upon your request.

**Going forward**

We value your feedback and appreciate the time and effort you took to contact us. It's been my goal to fully address the concerns you've brought to our attention.

If you have any questions, I'm here to help. You may reach me directly at 1-800-853-8516, extension 1335621009. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Melissa King
Executive Resolution Specialist
Customer Care and Recovery Group

We understand that your clients have filed for bankruptcy. We are not attempting to collect the mortgage debt with this letter. We are required by federal law to inform you that if your client's loan is currently delinquent or in default, as the loan servicer, we will be attempting to collect a debt, and any information obtained will be used for that purpose. However, this letter should not be construed as an attempt to collect a debt or a demand for payment contrary to any protections provided by the automatic stay of your client's bankruptcy case. If your clients have received a discharge, and the loan was not reaffirmed in the bankruptcy case, we will only exercise our rights against the property and are not attempting any act to collect the discharged debt from your client personally.

EX003/KQZ/co1685069/ge5024815/cl106