Melissa N. Licker, Esq.
McCalla Raymer Leibert Pierce, LLC
485F US Highway 1 S
Suite 300
Iselin, NJ  08830
Telephone: (732) 902-5399
NJ_ECF_Notices@mccalla.com
Attorneys for Secured Creditor

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: <br><br> Donna DeRosa-Ruquet, <br> Scott Ruquet, <br><br><br><br> Debtors. | Chapter 13 <br><br> Case No. 14-17571-KCF <br><br> Hearing Date:  January 23, 2019 at 2:00 p.m. <br><br> Judge: Kathryn C. Ferguson |

**OBJECTION TO DEBTORS' MOTION FOR ORDER OF CONTEMPT AND SANCTIONS AND OBJECTION TO NOTICE OF PAYMENT CHANGE**

Specialized Loan Servicing LLC ("SLS") as servicing agent for Morgan Stanley Mortgage Loan Trust 2007-3XS, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee (the "Secured Creditor"), by its counsel, McCalla Raymer Leibert Pierce, LLC, states the following grounds as and for Objections to Debtors' Motion for Order of Contempt and Sanctions (Docket Entry #137) and Objection to Notice of Payment Change (Docket Entry #138).  Secured Creditor provides this objection to address issues Debtors raise in both pleadings and they will be collectively referred to as Debtors' Motion.

**Loan History**

On October 5, 2006, Donna J. DeRosa-Ruquet borrowed $270,000 from VirtualBank in

exchange for a mortgage given by Donna J. DeRosa-Ruquet and Scott T. Ruquet (the "Debtors") on Debtors' principal residence, the property known as 226 Potters Drive, Bayville, NJ 08721 (the "Property"). *See* Secured Creditor's Proof of Claim ("POC"), Claims Registry #19-2. The note is indorsed in blank and the mortgage was recorded pre-petition on November 2, 2006 in Ocean County, New Jersey. *Id.* Obligor Donna J. DeRosa-Ruquet entered into a Home Affordable Modification Agreement ("HAMP") with an effective date of November 1, 2012. The terms of the original mortgage and the HAMP Modification Agreement provide for the Debtors' mortgagee to advance amounts for escrow on behalf of the Debtors. *Id.* At petition filing, Debtor's first mortgage was serviced by America's Servicing Company ("ASC") and Debtors' pre-petition arrears were $4,827.93 on a total debt of $251,821.60. *Id.*

**Chapter 7 Discharge**

Debtors filed a Chapter 7 petition for relief on December 21, 2010 with the aid of counsel, case 10-49218-KCF (the "Prior Case"). At the time of that bankruptcy case, Debtors' mortgage loan was serviced by ASC and their Statement of Intention indicates they wanted to reaffirm their first mortgage debt with then-servicer, ASC, which would have excluded their mortgage loan from the discharge order entered in the Prior Case. A copy of the Debtors' Statement of Intention is attached hereto as Exhibit "1." Ultimately, no reaffirmation was entered, in the Prior Case the Debtors received a Chapter 7 discharge order (Prior Case, Docket Entry #11) and the trustee abandoned the property (Prior Case, Docket Entry #15). Debtors did not intend to discharge their first mortgage obligations in the Prior Case.

**Chapter 13 Plan**

Debtors filed the instant Chapter 13 case on April 17, 2014. On May 9, 2014, Debtors filed their Schedules and Chapter 13 Plan. Schedule D includes the first mortgagee and does not

designate this loan as disputed (Docket Entry #20). Their Plan includes their first mortgage creditor under Section 4(d) as unaffected by the Plan (Docket Entry #21) and their modified Plan provides for ongoing payments while pursuing loss mitigation with the first mortgagee on the Property (Docket Entry #37). Debtors have not participated in the Court's Loss Mitigation Program. Debtors' filed a second modified Plan in 2017 and it omits any reference to the first mortgagee (Docket Entry #123).

**Service Transfer**

Debtors thoroughly document in their Motion that ASC provided actual notice that the servicing of their first mortgage loan was transferred from ASC to SLS effective June 1, 2016. ASC sent letters advising of this dated May 11, 2016 and May 19, 2016. *See* Debtor's Motion, Exhibit H and attached hereto for ease of review as Exhibit "2." ASC also followed up on the service transfer by providing a final escrow account disclosure statement to the Donna J. DeRossa-Ruquet dated June 12, 2016. *Id.* ASC's final escrow disclosure to the Debtors shows a negative transfer balance of $6,096.32. *Id.*

Additionally, SLS filed a transfer of claim on the claims registry shortly thereafter providing updated contact and payment information that confirmed the service transfer from ASC to SLS. *See* Docket Entry #101. A certificate of service accompanied the filed transfer of claim indicating Debtors received a copy of the Transfer of Claim by regular mail. *Id.* Many of the issues complained of in Debtors' Motion relates to ASC's servicing of the loan. SLS may be able to access the transactions on the Debtors' account while ASC serviced the account, but SLS can only address servicing activity in the time that it has serviced the loan beginning June 1, 2016.

**Consent Order Addressing Pre-Petition Escrow Amounts**

On February 24, 2015, this Court entered a consent order signed by debtor Donna DeRosa-Ruquet and counsel for ASC which addressed the treatment of pre-petition arrears claimed in the POC. *See* Consent Order, Docket Entry #78 and attached hereto for ease of review as Exhibit "3." That Consent Order provides for the escrow shortage in the POC to be paid outside of the plan directly to the Secured Creditor with additional post-petition payments of $61.70 per month for thirty-six months from March 1, 2015 through February 1, 2018 for a total of $2,220.87 of pre-petition escrow arrears. *Id.* Further, the Consent Order reduced the arrears to be paid through the plan to $98.38. *Id.*

In June 2016, when SLS began servicing this loan, supplemental post-petition escrow payments continued to become due under the Consent Order. Accordingly to the last payment change notice filed by ASC on May 11, 2016, the monthly payment in effect at the time of service transfer $1,419.44. Debtors include an SLS post-petition payment history that begins with the first transaction after service transfer on June 5, 2016 and goes through January 31, 2017. *See* Debtor's Motion, Exhibit K and attached hereto for ease of review as Exhibit "4." This reverse chronological history demonstrates two important things: 1. the starting escrow balance was accurately transferred from ASC as -$6,096.32 (*see supra,* Exhibit "2;" *see also* Exhibit 4); and shows that the monthly payments received were routinely $1,419.44 or less – no supplemental payment for the POC escrow shortage was being paid during this period (*see* Exhibit 4).

**Insurance Premiums**

Upon information and belief, SLS does not have lender-placed insurance on the Property and never has. It is believed that the sole communications between SLS and the Debtors

regarding lender-placed insurance are those included as Exhibit G to Debtor's Motion. Attached hereto for ease of review as Exhibit "5." First, there is a letter to Donna J. DeRosa-Ruquet dated December 19, 2016, indicating that the hazard insurance policy on the Property had lapsed and lender placed insurance would be purchased if not promptly resolved by the homeowners. *Id.* A subsequent letter from SLS, dated December 30, 2016, advises that the lender placed insurance was cancelled. *Id.* SLS must have been provided necessary insurance information to prompt cancelling the coverage ordered on behalf of the homeowners. Debtors have provided these letters in support of their Motion and failed to demonstrate duplication of insurance policies by SLS or any resulting increase in escrow advances relating to insurance policies paid by SLS.

**Escrow Advances**

As previously discussed, Debtors' mortgage loan provides for escrow amounts to be advanced on their behalf by the mortgagee. Debtors have filed a supplemental pleading in support of their Motion at Docket Entry #44 that documents various water service charge delinquencies and two additional post-petition escrow advances made by ASC on behalf of the Debtors. *See* Escrow Documentation excerpted from Debtors' supplemental filing at Docket Entry #144, attached hereto for ease of review as Exhibit "6." Debtors' petition was filed on April 17, 2014, and ASC disbursed $2,634.76 on April 29, 2014 for the Debtors' benefit. *Id.* While the documentation provided by Debtors demonstrates that the past-due water and sewer bills accrued at dates pre-petition, ASC first advanced these funds post-petition. *Id.*

The first Certificate of Sale included by Debtors was dated October 3, 2012 and recorded December 7, 2012 in Ocean County for a total of $784.98 excluding the assessed premium. *Id.* This Certificate of Sale does not correspond to proofs of payment or other issues raised by the Debtors. Presumably, this amount was paid by ASC and otherwise previously incorporated into

the amounts Debtors owed.

The final three pages of Exhibit 6 relate to Certificate of Sale dated October 2, 2013 and recorded in Ocean County on February 5, 2014. *Id.* On May 24, 2016, ASC disbursed $1,754.17 to redeem this Certificate of Sale. *Id.* These advances were made for the Debtors' benefit at post-petition date. Neither the version of the Chapter 13 proposed at the time of the 2014 escrow advance, nor the confirmed Chapter 13 Plan at the time this amount was advanced sought loss mitigation and did not provide "cure and maintain" treatment to Debtors' mortgagee. *See* Docket Entries #21 and #37. Both of these advances occurred prior the December 1, 2016 effective date of changes to Fed. R. Bankr. Pro. 3002.1 implemented with the intent to clarify the circumstances in which a mortgagee is required to file a post-petition fee notice. It cannot be asserted that the mortgagee had an unequivocal obligation to file a notice of these post-petition advances provided its treatment through the various plans and state of the Bankruptcy Rules at the time of the advances.

**Payment Change Notices**

SLS has filed a several payment change notices in the time it has been servicing Debtors' mortgage loan for either escrow changes or interest rate change pursuant to the modification agreement. Most recently, a payment change notice was filed on November 19, 2018 advance of an increase in monthly payment due to escrow effective January 1, 2019. Debtors' objection to this payment change notice largely relates back to allegations of events while ASC serviced this loan. SLS is unclear of what issue Debtors raise with respect to the escrow analysis run with an effective date of January 1, 2019 and how this analysis relates to HAMP-related incentives addressed *infra*. Debtors seek unspecified adjustments to their account and seeks to impermissibly suspend payments that become due. These demands must be denied.

**HAMP Incentives**

It is thought that the HAMP Incentives referenced by the Debtors in their pleadings are up to $1,000.00 per year principal reduction for the first five years of payments under the modification agreement. "Borrowers who make timely payments on their modified first lien and the modified payment resulted in at least a six percent reduction from the monthly mortgage payment used to determine eligibility will receive a "Pay for Performance" incentive in the form of a principal reduction of up to $1,000 per year for five years."[1] Upon information and belief, Debtors received the following pro rata compensation in the form of principal reduction for on-time payments in the first five years of the modification agreement:

```
Compensation   $916.67    applied 8/27/2013
Compensation   $83.33     applied 8/27/2014
Compensation   $416.67    applied 8/27/2015
Compensation   $916.67    applied 8/26/2016
Compensation   $833.33    applied 12/27/2018 for 2017 payments
```

Additionally, Debtors' loan is eligible for further principal reduction in the form of a one-time, lump sum reduction of $5,000 in year six provided the account is in good standing on the opportunity to re-amortize the modified mortgage. Debtors knew they were receiving this credit at the time their Motion was filed. *See* Debtor's Motion, Exhibit "L," attached hereto for ease of review as Exhibit "7." They admit this knowledge by including a letter from SLS advising that this credit would hit their account by the end of 2018. *Id.* Upon information and belief, Debtors received this year-six incentive on December 27, 2018 in the full amount of $5,000. That same day a letter was provided to Debtors that presented the option of re-casting the loan. A copy of the Recast Letter is attached hereto as Exhibit "8." This letter provides a comparison of repayment terms if the Debtors do opt to accept the recast against maintaining the status quo. *Id.*

---

[1] Freddie Mac, Single-Family, http://www.freddiemac.com/singlefamily/service/hmp_reporting.html, accessed January 19, 2019.

**Summary**

Debtors have failed to assert any wrongdoing by Secured Creditor or other basis for relief. In their Motion, the Debtors vaguely assert violations of their Chapter 7 discharge injunction. There has been no demonstration that SLS, or any other party, has violated the discharge injunction. Debtors have always intended to retain the Property and continue to rely on statement (with the relevant bankruptcy disclaimer) to determine amounts due to maintain the mortgage. Debtors also vaguely claim violations of the automatic stay. Debtors have failed to show any attempt by SLS, or the prior servicer, to commence recovery efforts outside of bankruptcy. There has been no demonstration that SLS has violated Debtors' rights under the automatic stay. As there has been absolutely no showing of wrongdoing by SLS or by the Secured Creditor, all prayed for relief, including attorney fees and punitive damages, must be denied with prejudice.

WHEREFORE, Secured Creditor respectfully requests that the Court deny Debtors' Motion for Order of Contempt and Sanctions (Docket Entry #137) and Objection to Notice of Payment Change (Docket Entry #138) in their entirety and with prejudice for the reasons set forth above and for other relief as the Court may deem just and proper.

Dated: January 21, 2019

    McCalla Raymer Leibert Pierce, LLC
    Attorneys for Specialized Loan Servicing, LLC
    as servicing agent for Morgan Stanley Mortgage
    Loan Trust 2007-3XS, U.S. Bank National
    Association, as Trustee, successor in interest to
    Bank of America, National Association, as
    Trustee, successor by merger to LaSalle Bank
    National Association, as Trustee,

    /s/  Melissa N. Licker
By:   Melissa N. Licker, Esq.