Donna DeRosa-Ruquet
Debtor Pro Se
226 Potters Drive
Bayville, New Jersey 08721
732.278.3227

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON DIVISION

CASE NO. 14-17571-KCF

IN RE:
DONNA DEROSA-RUQUET
SCOTT RUQUET

DEBTOR(S)

VS
MORGAN STANLEY MORGAN LOAN
TRUST 2007-3XS, U.S. BANK

NATIONAL, AS TRUSTEE,
SUCCESSOR IN INTEREST TO
BANK OF AMERICA, NATIONAL
ASSOCIATION, AS TRUSTEE,
SUCCESSOR BY MERGER TO
LASALLE BANK NATIONAL
ASSOCIATION, AS TRUSTEE
AS SERVICED PRESENTLY BY
SPECIALIZED LOAN SERVICING
LLC AND AS FORMERLY SERVICED
BY WELLS FARGO HOME
MORTGAGE DBA AMERICAS
SERVICING COMPANY

CREDITOR

CHAPTER 13
SUPPLEMENTAL
CERTIFICATION NUMBER TWO
IN SUPPORT OF
DEBTOR'S MOTION FOR ORDER
FINDING
CONTEMPT AND SANCTIONS FOR

VIOLATION OF THE AUTOMATIC
STAY AND THE
DISCHARGE INJUCTION ENTERED
UNDER CASE NO. 10-49218 KCF

## INTRODUCTION

Before filing this motion, debtor repeatedly tried to resolve this dispute with creditor over the phone and in writing. Rather than listen, creditor continues to ignore the debtor's phone calls and only recently responded to the debtors in writing when the creditor realized the debtors had obtained counsel. The creditor's failure to effectively

communicate with the debtors were nothing short of a willful of a violation of the debtor's rights, presumably seeing them as "easy prey" given their pro se status. Creditor's conduct in this case is part of a larger pattern and practice included but not limited to pushing borrowers out of their HAMP Modification by failing to apply payments for the sole purpose of avoiding the payment of incentive payments under the program

Debtor now moves before this Court to seek relief asking respectfully that the Court orders the creditor to finally subject the debtor's mortgage account to a thorough audit dating back to July of 2012, which is the date the debtor's began making their Trial Payments under their HAMP Modification, and to seek imposition of compensatory sanctions that will make it profitable for creditor to listen in the future.

## FACTUAL STATEMENT

A. Creditor is a participant in debtor's bankruptcy case filed on April 14, 2014 [Claim 19-1.] Presumably in the creditor's over zealous anticipation of a default, they added costs that were not owed to their initial proof of claim. Once the debtor made it clear to the creditor that they had no intention it of defaulting the Notice of Payment Change had to be corrected and re-filed [Claim 19-2.]

B. The Creditor was also a participant in the debtor's bankruptcy case filed on December 21, 2010 under case number 10-49218-KCF [Doc. 1.] The debt in this matter was discharged under case number 10-49218-KCF [Doc 12.]

C. On April 22, 2014 the Court found the Debtors ineligible for a discharge under this case due to repeat filing [Doc 12.]

D. On December 10, 2018, the debtors filed a Motion before this Court to seek relief [Doc 137, 138].

E. Since that date the debtor has received additional documentation that the debtors believes the Court may consider important enough to rely on and without them further injury to debtors may occur.

F. On January 7, 2019, the debtors received a letter from Wells Fargo Bank N.A. that included a table of the debtors on time payments for the years 2013, 2014 and 2015. [Exhibit A]

G. One need only look to the debtor's mortgage statements submitted in their original moving papers to see that this information is false.

H. This assertion is further supported by the escrow statements that the debtor downloaded from the America's Servicing Company account website in November of 2016, promptly providing the same to Specialized Loan Servicing.

**[Exhibit B]**

I. At that time the debtors had called America's Servicing Company and explained to a customer service representative that they were having difficulty with their new servicer Specialized Loan Servicing Company and that they needed to access their account but forgot their password. The representative agreed to "unlock' the debtor's account for them and they downloaded their escrow information.

J. These escrow statements, in conjunction with the debtor's mortgage statements and the letter dated January 7, 2019 show that Wells Fargo dba America's Servicing Company willfully defaulted the debtor's on paper not once, but twice.

K. That Wells Fargo Bank N.A. dba America's Servicing Company, in an attempt to defraud the debtors and the United States government by misrepresenting their use of TARP funds in the form of HAMP incentives that were rightfully due to the debtor.

L. The letter of January 7, 2019, also states that America's Servicing Company was the servicer of origination. This is simply not true. The debtor's had many documents dated prior to October of 2012 destroyed as a result of Super Storm Sandy.

M. Therefore, although the debtor's did not recall America's Servicing Company as being their servicer of origination, they did not testify to this via Certification as the debtors understand that one's statements are generally on as good as one's documents in order to meet the burden beyond a prima facie level.

N. In February, as the debtors where gathering their tax documents to file their income tax returns, the debtor's discovered in their tax file – a file that was separated from the debtor's other archived documents for safe keeping as the storm approached in part, because the seven year retention limit had yet to expire.

O. The debtor's discovered that in fact, their recollections were correct as they located that their 2006 and 2007 1098 INT forms issued by GMAC **[Exhibit C & D]**. They also located the debtor's mortgage statement dated 12/17/07 received from America's Servicing Company. This shows a YTD interest balance of $10,152.27 with a monthly interest payment of $1446.15 **[Exhibit E]**. Finally, they located the debtor's 2007 **1098 INT SUB** received by America's Servicing Company, which based on the amount listed appears to indicated America's Servicing Company assumed the servicing of the debtor's loan in June of 2017 **[Exhibit F]**. In fact GMAC was the servicer of origination, not America's Servicing Company as stated in the letter dated January 7, 2019.

P. Bank, N.A.'s as Trustee et al Amended Proof of Claim 19-1 relies in part on a Note that is indorsed in blank to Lydian Private bank and an Assignment from MERS as Assignee for Lydian Private Bank. .

Q. Given the false statements made by America's Servicing Company in the letter dated January 7, 2019, and the discovery of these additional documents, the debtor's became concerned that the title to the real property known as 226 Potters Drive Bayville, New Jersey 08721 (the debtor's principle residence) may have clouds that would prove to difficult to bridge should the debtor's choose to sell their home or satisfy the loan.

R. The debtors also wish to reaffirm this debt and really did not anticipate any of these issues with title or servicing. They are not facing, nor have they ever, faced foreclosure on their home and thus were completely unaware of lasting affects of the foreclosure crisis regarding title issues. With that in mind the debtor's began to research Lydian Private Bank.

S. The debtor's found that Lydian Private Bank that on Friday, August 19, 2011, Lydian Private Bank, Palm Beach, FL, including its division Virtual Bank, was closed by the Office of the Comptroller of the Currency, and the Federal Deposit Insurance Corporation (FDIC) was named Receiver. **[Exhibit G]**

T. While all deposit accounts were transferred to Sabadal Bank N.A. loan holders were instructed to keep making payments as usual, which the debtor's did. With

this assumption in mind the debtor's reached out to the FDIC for assistance in locating their Note.

U. Upon returning home from Mediation on March 8, 2019, the debtors received an email dated March 8, 2019 from the FDIC, stating that they had located the debtor's loan by using the original loan number assigned at the inception of the mortgage and in fact, Morgan Stanley had purchased the mortgage in 2006.

**[Exhibit H]**

V. This is in keeping with the PSA which states under Section 2.03. Representations and Warranties of the Depositor.

"(vi) immediately prior to the transfer and assignment of the Mortgage Loans to the Trustee, the Depositor was the sole owner of record and holder of each Mortgage Loan, and the Depositor had good and marketable title thereto, and had full right to transfer and sell each Mortgage Loan to the Trustee free and clear, subject only to (1) liens of current real property taxes and assessments not yet due and payable and, if the related Mortgaged Property is a condominium unit, any lien for common charges permitted by statute, (2) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage acceptable to mortgage lending institutions in the area in which the related Mortgaged Property is located and specifically referred to in the lender's title insurance policy or attorney's opinion of title and abstract of title delivered to the originator of such Mortgage Loan, and (3) such other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage, of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement;" (pp. 54)

https://www.sec.gov/Archives/edgar/data/1390267/000090514807002545/efc7-0841_6050156ex991.txt

W. Nowhere on the Note relied upon the Proof of claim 19-1 does Morgan Stanley appear in the chain of title on the Note at the time of the 2006 purchase. In fact the Proof of Claim relies on an Assignment dated July 12, 2012, that relies on MERS as the Assignee on behalf of Lydian Private to Bank to U.S. Bank, N.A. as Trustee, et al. of the Morgan Stanley Home Loan Trust 2007-3XS. Conversely, this is also the month that the debtors began trial modification payments under

their HAMP Modification, which, for whatever reason is neither recorded at the County Clerk's Office or included in the Amended Proof of Claim.

X.  During the hearing on January 24, 2019 the debtors did assert on the record that in fact, their loan was Assigned to a Trust after the close date.

Y.  As there is an obvious gap in title it would appear that under R. 3001 Proof of Claim 19-1 does not show have standing as they do not have a perfected claim. The debtors are aware that this issue was not raised in their original moving papers and they are not trying to seek relief under R. 3001.

Z.  The debtors are also not trying to seek any relief other than stated in their original Motion by presenting these documents Rather, they are merely keeping all parties informed in the spirit of the Court as this is a fluid matter.

AA.     While the debtor's were researching Lydian Private Banks they also began researching the Trust itself and Specialized Servicing LLC using Moody's Financial. The debtor's found that curiously enough, Specialized Loan Serving LLC was not listed as a Servicer of the Trust, nor does the trust appear in their Serviced Deals [**Exhibit I & J**].

BB.     This led the debtor's to Wells Fargo's website CTS Link Direct, used by their private investors. Here, the shelf documents for the **SLS Servicer Advance Revolving Trust 1** also fail to list the Morgan Stanley Home Loan trust 2007 – 3XS as a serviced deal. [**Exhibit K**] Further, Well's Fargo deemed this Trust as inactive on March 26, 2016, but still yielding. [**Exhibit L**]

CC.     It appears that in fact, Specialized Loan Servicing LLC does not have servicing rights to the debtor's loan. Rather, based on the of Transferee Certificate For Transfers of Notes To Qualified Institutional Buyer/Qualified Purchasers titled Exhibit B, which is between Specialized Loan Servicing and Wells Fargo Bank, N.A. [**Exhibit M**] It also appears that Specialized Loan Servicing LLC as a VIE, purchased and is in possession of the debtor's Note, that it is treated as an unsecured senior loan that is backed only by a Promise to Pay and that Wells Fargo Bank N.A. Assigned the debtor's loan to the Trust for the sole purpose of collecting compensation for it under the PSA, which states in part:

"Liquidated Mortgage Loan: With respect to any Distribution Date, a defaulted Mortgage Loan (including any REO Property) which was liquidated in the calendar month preceding the month of such Distribution Date and as to which the related Servicer has certified (in accordance with its Purchase and Servicing Agreement) that it has received all amounts it expects to receive in connection with the liquidation of such Mortgage Loan including the final disposition of an REO Property.

Liquidation Proceeds: Amounts, including Insurance Proceeds, received in connection with the partial or complete liquidation of defaulted Mortgage Loans, whether through trustee's sale, foreclosure sale or otherwise or amounts received in connection with any condemnation or partial release of a Mortgaged Property and any other proceeds received in connection with an REO Property."(pp.24)

https://www.sec.gov/Archives/edgar/data/1390267/000090514807002545/efc7-0841_6050156ex991.txt

DD.     This is in keeping to with Wells Fargo's 2018 Annual Report, which clearly states   that loans in bankruptcy are treated as a default and are either liquidated or crammed down and offered to "special servicers". This report is 288 pages so the debtors have attached only the pages that are relevant to the case as bar. [**Exhibit N**]

EE.     Certainly there exists the possibility that debtor is wrong and quite honestly it would be so much easier if that is the case. However as the request for a true MERS Milestone report have gone unanswered and the request for a copy of a mortgaging servicing agreement have also gone unanswered the debtors are only left wondering why, as they are not in breech of contract under the terms and conditions of their mortgage.

FF.     Finally, the debtors have attached the majority of the monthly mortgage statements they have received from Specialized Loan Servicing thus far and they are fraught with errors including but not limited to: late fees that are unexplained, monies in suspense that are unexplained and incorrect escrow figures.

GG.     When the debtors have tried to question these figures with the customer department they are told that the statements are for "informational purposes only." Also attached are both of the 1099 INT forms received by the debtors and several

of the many Western Union receipts that the debtors received after having been made to pay a fee for making a payment over the phone.

Wells Fargo
PO Box 10335
Des Moines, IA 50306-0335



**WELLS FARGO | HOME MORTGAGE**

January 7, 2019

Donna J. Derosa Ruquet
226 Potters Drive
Bayville, NJ 08721

Subject: Response to your concerns about account number 0532990108

Dear Ms. Donna J. Derosa Ruquet:

I appreciated the opportunity to speak with you about your concerns on November 14, 2018, and November 28, 2018. I want you to know we're here to help. We're responding and want to make sure you have the information you need.

You indicated you have concerns about the following

- Requested letter addressing $5,000.00 incentive
- America's Servicing Company acquisition of your loan
- Escrow history of the account
- Incentives for 2012 modification

We've carefully researched your concerns and here is what we have found.

**Requested letter addressing $5,000.00 incentive**

You indicated you needed a copy of a letter from your file addressing a $5,000.00 incentive if you make your modification program payments. You advised me that your current servicer has been unable to find the letter in the servicing file. During our call on November 14, 2018, I sent the letter to you via secure email and you verified the letter I sent to you is the letter you are requesting. I have also included a copy of the letter with this correspondence.

**America's Servicing Company acquisition of your loan**

The loan originated with Virtualbank October 5, 2006. America's Servicing Company was the loan servicer at loan origination.

**Escrow history of the account**

The escrow account attached to this loan was initiated November 1, 2012. This was done as part of the agreement to modify the loan. In order to obtain a payment history that includes the escrow payments you will need to contact your current servicer.

Ruquet
January 7, 2019
Page 2

## Incentives for 2012 modification

The HAMP guidelines indicate, "Borrowers whose monthly mortgage payment is reduced through HAMP Tier 1 by six percent or more and who make timely payments will earn an annual "pay for performance" principal balance reduction payment equal to the lesser of: $1,000 ($83.33/month); or One-half of the reduction in the borrower's annualized monthly payment for each month a timely payment is made."

The "pay for performance" principal balance reduction payment will accrue for each month in which the borrower makes current payments. The payment will be payable annually for each of the first five years after the anniversary of the month in which the HAMP Tier 1 TPP Effective Date occurred as long as the loan is in good standing and has not been paid in full at the time the incentive is paid.

We reviewed your account history and the incentives you received prior to the loan being transferred to SLS are listed in the chart below.

| Year | Loan Number | Annual Incentive Payments Borrower | # on time (current) payments | Date payment applied to account |
|------|-------------|-------------------------------------|------------------------------|---------------------------------|
| 2013 | 0532990108 | $916.67 | 11 | 09/16/13 |
| 2014 | 0532990108 | $83.33 | 1 | 8/28/14 |
| 2015 | 0532990108 | $416.67 | 5 | 8/28/15 |

## Going Forward

We value your feedback and appreciate the time and effort you took to contact us. It's been my goal to fully address the concern you've brought to our attention.

If you have any questions, I'm here to help. You may reach me at 1-800-853-8516, extension 1335621856. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Tracy Riley
Executive Resolution Specialist
Customer Care and Recovery Group

Enclosure(s)

EX003/I2N/co8076317/cl708

| | |
|---|---|
| Borrower: | DONNA J DEROSA-RUQUET |
| Property Address: | 226 POTTERS DR |
| Loan Number: | *1290 |
| Principal Balance: | $0.00 |
| Next Payment: | $537.98 due 05/01/2016 |

## Loan Activity

### Balances

| | |
|---|---|
| Current Principal Balance | $0.00 |
| Net Escrow Balance | $0.00 |
| Unpaid Late Charges | $0.00 |
| Suspense Balance | $0.00 |
| Recoverable Corporate Advance Balance | $0.00 |

### Transaction History

Disclosure: The amounts displayed within the transaction history reflect funds that you have paid and do not necessarily represent funds that are due.

### Search Criteria

| In Date Range* | Custom |
|---|---|
| Start Date* | 11/01/2013 |
| End Date* | 02/28/2014 |

[ Search ]

The transaction search results are limited to 37 months of history and a maximum of 50 transactions.

### Search Results

| View | All Transactions |
|---|---|

4 2 errors

| | Date | Date | Description | Principal | Interest | Escrow | Paid | Balance | Balanc |
|---|---|---|---|---|---|---|---|---|---|
| ⊞ | 02/17/2014 | 02/17/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $250,278.7 |
| ⊞ | 02/17/2014 | 02/17/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($495.68) | $0.00 | $0.00 | $250,278.7 |
| ⊞ | 02/17/2014 | 02/17/2014 | Payment | $355.52 | $413.61 | $495.68 | $1,264.81 | $495.68 | $250,278.7 |
| ⊞ | 01/16/2014 | 01/16/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $250,634.2 |
| ⊞ | 01/16/2014 | 01/16/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($495.68) | $0.00 | $0.00 | $250,634.2 |
| ⊞ | 01/16/2014 | 01/16/2014 | Payment | $354.93 | $414.20 | $495.68 | $1,264.81 | $495.68 | $250,634.2 |
| ⊞ | 01/15/2014 | 01/15/2014 | City Tax Pmt | $0.00 | $0.00 | ($1,079.37) | ($1,079.37) | ($1,079.37) | $250,989.2 |
| ⊞ | 12/16/2013 | 12/16/2013 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $250,989.2 |
| ⊞ | 12/16/2013 | 12/16/2013 | Repay of Escrow Advance | $0.00 | $0.00 | ($495.68) | $0.00 | $0.00 | $250,989.2 |
| ⊞ | 12/16/2013 | 12/16/2013 | Payment | $354.34 | $414.79 | $495.68 | $1,264.81 | $495.68 | $250,989.2 |
| ⊞ | 11/15/2013 | 11/15/2013 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $251,343.5 |
| ⊞ | 11/15/2013 | 11/15/2013 | Repay of Escrow Advance | $0.00 | $0.00 | ($495.68) | $0.00 | $0.00 | $251,343.5 |
| ⊞ | 11/15/2013 | 11/15/2013 | Payment | $353.75 | $415.38 | $495.68 | $1,264.81 | $495.68 | $251,343.5 |
| ⊞ | 11/06/2013 | 11/06/2013 | Hazard Ins Pmt | $0.00 | $0.00 | ($1,553.00) | ($1,553.00) | ($1,553.00) | $251,697.3 |

| | |
|---|---|
| Borrower: | DONNA J DEROSA-RUQUET |
| Property Address: | 226 POTTERS DR |
| Loan Number: | *1290 |
| Principal Balance: | $0.00 |
| Next Payment: | $537.98 due 05/01/2016 |

## Loan Activity

### Balances

| | |
|---|---|
| Current Principal Balance | $0.00 |
| Net Escrow Balance | $0.00 |
| Unpaid Late Charges | $0.00 |
| Suspense Balance | $0.00 |
| Recoverable Corporate Advance Balance | $0.00 |

### Transaction History

Disclosure: The amounts displayed within the transaction history reflect funds that you have paid and do not necessarily represent funds that are due.

### Search Criteria

| | |
|---|---|
| In Date Range* | Custom |
| Start Date* | 03/01/2014 |
| End Date* | 08/28/2014 |

[ Search ]

The transaction search results are limited to 37 months of history and a maximum of 50 transactions.

### Search Results

| | |
|---|---|
| View | All Transactions |

|  | | | Pmt | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ⊞ | 04/21/2014 | 04/21/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $249,56 |
| ⊞ | 04/21/2014 | 04/21/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($526.24) | $0.00 | $0.00 | $249,56 |
| ⊞ | 04/21/2014 | 04/21/2014 | Payment | $356.70 | $412.43 | $526.24 | $1,295.37 | $526.24 | $249,56 |
| ⊞ | 04/16/2014 | 04/16/2014 | Late Fee | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $249,92 |
| ⊞ | 03/17/2014 | 03/17/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $249,92 |
| ⊞ | 03/17/2014 | 03/17/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($526.24) | $0.00 | $0.00 | $249,92 |
| ⊞ | 03/17/2014 | 03/17/2014 | Payment | $356.11 | $413.02 | $526.24 | $1,295.37 | $526.24 | $249,92 |

| | Date | Date | Description | Principal | Interest | Escrow | Paid | Balance | Bala |
|---|---|---|---|---|---|---|---|---|---|
| ⊞ | 08/28/2014 | 08/28/2014 | Principal Pmt | $83.33 | $0.00 | $0.00 | $83.33 | $0.00 | $248,40 |
| ⊞ | 08/20/2014 | 08/20/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $248,49 |
| ⊞ | 08/20/2014 | 08/20/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $248,49 |
| ⊞ | 08/20/2014 | 08/20/2014 | Payment | $358.49 | $410.64 | $491.33 | $0.00 | $491.33 | $248,49 |
| ⊞ | 08/18/2014 | 08/18/2014 | Payment | $0.00 | $0.00 | $0.00 | $1,260.46 | $0.00 | $248,85 |
| ⊞ | 08/01/2014 | 08/01/2014 | City Tax Pmt | $0.00 | $0.00 | ($1,128.04) | ($1,128.04) | ($1,128.04) | $248,85 |
| ⊞ | 07/17/2014 | 07/17/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $248,85 |
| ⊞ | 07/17/2014 | 07/17/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $248,85 |
| ⊞ | 07/17/2014 | 07/17/2014 | Payment | $357.89 | $411.24 | $491.33 | $0.00 | $491.33 | $248,85 |
| ⊞ | 07/15/2014 | 07/15/2014 | Payment | $0.00 | $0.00 | $0.00 | $1,260.46 | $0.00 | $249,20 |
| ⊞ | 05/14/2014 | 05/14/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $249,20 |
| ⊞ | 05/14/2014 | 05/14/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $249,20 |
| ⊞ | 05/14/2014 | 05/14/2014 | Payment | $357.30 | $411.83 | $491.33 | $0.00 | $491.33 | $249,20 |
| ⊞ | 05/13/2014 | 05/13/2014 | Payment | $0.00 | $0.00 | $0.00 | $1,260.46 | $0.00 | $249,56 |
| ⊞ | 05/07/2014 | 05/07/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $249,56 |
| ⊞ | 05/07/2014 | 05/07/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $249,56 |
| ⊞ | 05/07/2014 | 05/07/2014 | Payment | $356.70 | $412.43 | $491.33 | $0.00 | $491.33 | $249,56 |
| ⊞ | 04/29/2014 | 04/29/2014 | Misc Disburse | $0.00 | $0.00 | ($2,634.76) | ($2,634.76) | ($3,161.00) | $249,92 |
| ⊞ | 04/29/2014 | 04/29/2014 | Pmt Reversal | ($356.70) | ($412.43) | ($526.24) | $0.00 | ($526.24) | $249,92 |

*Handwritten annotations:* "2 days", "50 days", "1 day", "For Mon't", "Late", "Income CHAMP Incentive", "Pre paid debt ask", "June just disappeared in 2014 I guess", "6"

| | |
|---|---|
| Borrower: | DONNA J DEROSA-RUQUET |
| Property Address: | 226 POTTERS DR |
| Loan Number: | *1290 |
| Principal Balance: | $0.00 |
| Next Payment: | $537.98 due 05/01/2016 |

## Loan Activity

### Balances

| | |
|---|---|
| Current Principal Balance | $0.00 |
| Net Escrow Balance | $0.00 |
| Unpaid Late Charges | $0.00 |
| Suspense Balance | $0.00 |
| Recoverable Corporate Advance Balance | $0.00 |

### Transaction History

Disclosure: The amounts displayed within the transaction history reflect funds that you have paid and do not necessarily represent funds that are due.

### Search Criteria

| | |
|---|---|
| In Date Range* | Custom |
| Start Date* | 08/29/2014 |
| End Date* | 01/15/2015 |

Search

The transaction search results are limited to 37 months of history and a maximum of 50 transactions.

### Search Results

| | |
|---|---|
| View | All Transactions |

This ↓

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ⊞ | 10/17/2014 | 10/17/2014 | Payment | $0.00 | $0.00 | $0.00 | $2,520.92 | $0.00 | $248,049.7 |
| ⊞ | 09/24/2014 | 09/24/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $248,049.7 |
| ⊞ | 09/24/2014 | 09/24/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $248,049.7 |
| ⊞ | 09/24/2014 | 09/24/2014 | Payment | $359.23 | $409.90 | $491.33 | $0.00 | $491.33 | $248,049.7 |
| ⊞ | 09/22/2014 | 09/22/2014 | Payment | $0.00 | $0.00 | $0.00 | $1,260.46 | $0.00 | $248,408.9 |

2 days

2

| Date | Date | Description | Principal | Interest | Escrow | Paid | Balance | Balanc |
|---|---|---|---|---|---|---|---|---|
| 01/15/2015 | 01/15/2015 | City Tax Pmt | $0.00 | $0.00 | ($1,106.53) | ($1,106.53) | ($1,106.53) | $246,244.5 |
| 12/15/2014 | 12/15/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $246,244.5 |
| 12/15/2014 | 12/15/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $246,244.5 |
| 12/15/2014 | 12/15/2014 | Payment | $362.23 | $406.90 | $491.33 | $1,260.46 | $491.33 | $246,606.5 |
| 11/14/2014 | 11/14/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $246,606.5 |
| 11/14/2014 | 11/14/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $246,606.5 |
| 11/14/2014 | 11/14/2014 | Payment | $361.63 | $407.50 | $491.33 | $1,260.46 | $491.33 | $246,968.4 |
| 11/13/2014 | 11/13/2014 | Hazard Ins Pmt | $0.00 | $0.00 | ($1,687.00) | ($1,687.00) | ($1,687.00) | $246,968.4 |
| 11/03/2014 | 11/03/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $246,968.4 |
| 11/03/2014 | 11/03/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $246,968.4 |
| 11/03/2014 | 11/03/2014 | Payment | $361.03 | $408.10 | $491.33 | $0.00 | $491.33 | $247,329.4 |
| 10/31/2014 | 10/31/2014 | Payment | $0.00 | $0.00 | $0.00 | $1,260.46 | $0.00 | $247,329.4 |
| 10/30/2014 | 10/30/2014 | City Tax Pmt | $0.00 | $0.00 | ($1,139.35) | ($1,139.35) | ($1,139.35) | $247,329.4 |
| 10/21/2014 | 10/21/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $247,329.4 |
| 10/21/2014 | 10/21/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $247,329.4 |
| 10/21/2014 | 10/21/2014 | Payment | $360.43 | $408.70 | $491.33 | $0.00 | $491.33 | $247,689.5 |
| 10/20/2014 | 10/20/2014 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $247,689.5 |
| 10/20/2014 | 10/20/2014 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $247,689.5 |
| 10/20/2014 | 10/20/2014 | Payment | $359.83 | $409.30 | $491.33 | $0.00 | $491.33 | $247,689.5 |

*Handwritten annotations:* "4 days", "Late", "This →", "4 days", "3 days", "This →", "Could it be trued here showed up?"

DONNA J DEROSA-RUQUET
226 POTTERS DR
*1290

Borrower:
Property Address:
Loan Number:                                                                          $0.00
Principal Balance:
Next Payment:                                                         $537.98 due 05/01/2016

## Loan Activity

                                                                                      $0.00

### Balances                                                                          $0.00

Current Principal Balance

Net Escrow Balance                                                                    $0.00

                                                                                      $0.00

Unpaid Late Charges                                                                   $0.00

Suspense Balance

Recoverable Corporate Advance Balance

## Transaction History

Disclosure: The amounts displayed within the transaction history reflect funds that you have paid and do not necessarily represent funds that are due.

### Search Criteria

In Date Range*          Custom

Start Date*             01/16/2015

End Date*               07/15/2015

[ Search ]

The transaction search results are limited to 37 months of history and a maximum of 50 transactions.

### Search Results

View                    All Transactions

| | | | | | | | $0.00 | ($491.33) | $245,881.74 |
|---|---|---|---|---|---|---|---|---|---|
| ⊞ | 02/23/2015 | 02/23/2015 | Pmt Reversal | ($363.44) | ($405.69) | ($491.33) | | | |
| ⊞ | 02/23/2015 | 02/23/2015 | Pmt Reversal | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $245,518.30 |
| ⊞ | 02/16/2015 | 02/16/2015 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $245,518.30 |
| ⊞ | 02/16/2015 | 02/16/2015 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $245,518.30 |
| ⊞ | 02/16/2015 | 02/16/2015 | Payment | $363.44 | $405.69 | $491.33 | $1,260.46 | $491.33 | $245,518.30 |
| ⊞ | 01/16/2015 | 01/16/2015 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $245,881.74 |
| ⊞ | 01/16/2015 | 01/16/2015 | Repay of Escrow Advance | $0.00 | $0.00 | ($491.33) | $0.00 | $0.00 | $245,881.74 |
| ⊞ | 01/16/2015 | 01/16/2015 | Payment | $362.83 | $406.30 | $491.33 | $1,260.46 | $491.33 | $245,881.74 |

Reverse Feb 16, 2015 pymt on Feb 23. Letters
from wells says it be it was taken from a
savings not a checking Not only is that
the dumbest thing I have ever heard
I made Wells stay on the phone with me,
he 3/a verified TD Bank m and the
rep verified it was my checking account
(the same one for 6 years) and that funds
were available. I remember this day well.
It was humiliating.

| Date | Date | Description | Principal | Interest | Escrow | Paid | Balance | Balance |
|---|---|---|---|---|---|---|---|---|
| 07/15/2015 | 07/15/2015 | Payment | $0.00 | $0.00 | $0.00 | $16.51 | $0.00 | $244,424.35 |
| 07/10/2015 | 07/10/2015 | Payment | $0.00 | $0.00 | $0.00 | $1,359.67 | $0.00 | $244,424.35 |
| 06/26/2015 | 06/26/2015 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $244,424.36 |
| 06/26/2015 | 06/26/2015 | Repay of Escrow Advance | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $244,424.35 |
| 06/26/2015 | 06/16/2015 | Payment | $365.26 | $403.87 | $590.54 | $0.00 | $590.54 | $244,789.61 |
| 06/16/2015 | 06/16/2015 | Payment | $0.00 | $0.00 | $0.00 | $1,359.67 | $0.00 | $244,789.61 |
| 05/21/2015 | 05/21/2015 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $244,789.61 |
| 05/21/2015 | 05/21/2015 | Repay of Escrow Advance | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $244,789.61 |
| 05/21/2015 | 05/15/2015 | Payment | $364.65 | $404.48 | $590.54 | $0.00 | $590.54 | $245,154.26 |
| 05/15/2015 | 05/15/2015 | Payment | $0.00 | $0.00 | $0.00 | $1,359.67 | $0.00 | $245,154.26 |
| 04/24/2015 | 04/24/2015 | City Tax Pmt | $0.00 | $0.00 | ($710.46) | ($710.46) | ($710.46) | $245,154.26 |
| 04/20/2015 | 04/20/2015 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $245,154.26 |
| 04/20/2015 | 04/20/2015 | Repay of Escrow Advance | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $245,154.26 |
| 04/20/2015 | 04/15/2015 | Payment | $364.04 | $405.09 | $590.54 | $0.00 | $590.54 | $245,518.30 |
| 04/15/2015 | 04/15/2015 | Payment | $0.00 | $0.00 | $0.00 | $163.51 | $0.00 | $245,518.30 |
| 03/17/2015 | 03/17/2015 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $245,518.30 |
| 03/17/2015 | 03/17/2015 | Repay of Escrow Advance | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $245,518.30 |
| 03/17/2015 | 03/17/2015 | Payment | $363.44 | $405.69 | $590.54 | $0.00 | $590.54 | $245,881.74 |
| 03/16/2015 | 03/16/2015 | Payment | $0.00 | $0.00 | $0.00 | $1,260.46 | ($491.33) | $245,881.74 |
| 02/23/2015 | 02/23/2015 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | ($491.33) | $245,881.74 |
| 02/23/2015 | 02/23/2015 | Pmt | $0.00 | $0.00 | $0.00 | $0.00 | | |

*Handwritten annotations in margin:* "6 days", "late", "?", "3days", "1 days", "etc"

DONNA J DEROSA-RUQUET
226 POTTERS DR
*1290

Borrower:
Property Address:
Loan Number:
Principal Balance: $0.00
Next Payment: $537.96 due 05/01/2016

## Loan Activity

### Balances

| | |
|---|---|
| Current Principal Balance | $0.00 |
| Net Escrow Balance | $0.00 |
| Unpaid Late Charges | $0.00 |
| Suspense Balance | $0.00 |
| Recoverable Corporate Advance Balance | $0.00 |

### Transaction History

Disclosure: The amounts displayed within the transaction history reflect funds that you have paid and do not necessarily represent funds that are due.

### Search Criteria

| | |
|---|---|
| In Date Range* | Custom |
| Start Date* | 07/16/2015 |
| End Date* | 12/31/2015 |

[ Search ]

The transaction search results are limited to 37 months of history and a maximum of 50 transactions.

### Search Results

| | |
|---|---|
| View | All Transactions |



*Double Head Pmt*

*8 days*

*10 days*

*9 days*

| Date | Date | Description | Principal | Interest | Escrow | Paid | Balance | Balanc |
|---|---|---|---|---|---|---|---|---|
| | | | $0.00 | $0.00 | ($1,878.00) | ($1,878.00) | ($1,878.00) | $241,800.E |
| 12/16/2015 | 12/16/2015 | Hazard Ins Pmt | $0.00 | $0.00 | $0.00 | $1,359.67 | $0.00 | $241,800.E |
| 12/16/2015 | 12/16/2015 | Payment | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $241,800.E |
| 11/23/2015 | 11/23/2015 | Payment | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $241,800.E |
| 11/23/2015 | 11/23/2015 | Repay of Escrow Advance | $0.00 | $0.00 | $590.54 | $0.00 | $590.54 | $241,800.E |
| 11/23/2015 | 11/16/2015 | Payment | $369.62 | $399.51 | $0.00 | $1,359.67 | $0.00 | $242,170.' |
| 11/16/2015 | 11/16/2015 | Payment | $0.00 | $0.00 | ($1,879.00) | ($1,879.00) | ($1,879.00) | $242,170.' |
| 11/12/2016 | 11/12/2016 | Hazard Ins Pmt | $0.00 | $0.00 | ($1,183.51) | ($1,183.51) | ($1,183.51) | $242,170.' |
| 10/26/2015 | 10/26/2015 | City Tax Pmt | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $242,170.' |
| 10/26/2015 | 10/26/2015 | Payment | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $242,170.' |
| 10/26/2015 | 10/26/2015 | Repay of Escrow Advance | $0.00 | $0.00 | $590.54 | $0.00 | $590.54 | $242,170.' |
| 10/26/2015 | 10/16/2015 | Payment | $369.01 | $400.12 | $0.00 | $0.00 | $0.00 | $242,539.' |
| 10/23/2015 | 10/23/2015 | Payment | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $242,539.' |
| 10/23/2015 | 10/23/2015 | Repay of Escrow Advance | $0.00 | $0.00 | $590.54 | $0.00 | $590.54 | $242,539.' |
| 10/23/2015 | 09/25/2015 | Payment | $368.40 | $400.73 | $0.00 | $0.00 | $0.00 | $242,907.E |
| 10/23/2015 | 10/23/2015 | Payment | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $242,907.E |
| 10/23/2015 | 10/23/2015 | Repay of Escrow Advance | $0.00 | $0.00 | $590.54 | $0.00 | $590.54 | $242,907.E |
| 10/23/2015 | 09/18/2015 | Payment | $367.78 | $401.35 | $0.00 | $1,359.67 | $0.00 | $243,275.E |
| 10/16/2015 | 10/16/2015 | Payment | $0.00 | $0.00 | $0.00 | $1,359.67 | $0.00 | $243,275.E |
| 09/25/2015 | 09/25/2015 | Payment | $0.00 | $0.00 | $0.00 | $1,359.67 | $0.00 | $243,275.E |
| 09/18/2015 | 09/18/2015 | Payment | | | | | | |

*Late*

*No pmt*
*No pmt*

DONNA J DEROSA-RUQUET
226 POTTERS DR
*1290

**Borrower:**
**Property Address:**
**Loan Number:**                                                    $0.00
**Principal Balance:**                                    $537.98 due 05/01/2016
**Next Payment:**

## Loan Activity

                                                                        $0.00
**Balances**                                                            $0.00

  Current Principal Balance

. Net Escrow Balance                                                    $0.00

                                                                        $0.00
  Unpaid Late Charges
                                                                        $0.00
  Suspense Balance

  Recoverable Corporate Advance Balance

### Transaction History

Disclosure: The amounts displayed within the transaction history reflect funds that you have paid and do not necessarily represent funds that are due.

**Search Criteria**

**In Date Range\***              Custom

**Start Date\***                 12/15/2015

**End Date\***                   06/30/2016

[ Search ]

The transaction search results are limited to 37 months of history and a maximum of 50 transactions.

**Search Results**

**View**                         All Transactions



Here Is The Manufactured
Default For HAMP and I'm
Sure Liquidation Purposes

3

| Date | Date | Description | Principal | Interest | Escrow | Paid | Balance | Ba |
|---|---|---|---|---|---|---|---|---|
| | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/01/2016 | 06/01/2016 | Late Charge Adj | | | | | | |
| | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | |
| 06/01/2016 | 06/01/2016 | Loan Transfer | | | | | | |
| | | | $2,466.97 | $0.00 | $0.00 | $0.00 | $0.00 | $2,4 |
| 06/01/2016 | 06/01/2016 | Loan Transfer | | | | | | |
| | | | $237,476.16 | $0.00 | $6,096.32 | $0.00 | $0.00 | $239,9 |
| 06/01/2016 | 06/01/2016 | Repay of Escrow Advance | | | | | | |
| | | | $0.00 | $0.00 | ($6,096.32) | $0.00 | ($6,096.32) | $239,9 |
| 05/23/2016 | 05/23/2016 | Payment | | | | | | |
| | | | $0.00 | $0.00 | $0.00 | $1,307.11 | $0.00 | $239,9 |
| 05/19/2016 | 05/19/2016 | Misc Disburse | | | | | | |
| | | | $0.00 | $0.00 | ($1,754.17) | ($1,754.17) | ($1,754.17) | $239,9 |
| 04/19/2016 | 04/19/2016 | Payment | | | | | | |
| | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $239,9 |
| 04/19/2016 | 04/19/2016 | Repay of Escrow Advance | | | | | | |
| | | | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $239,9 |
| 04/19/2016 | 04/18/2016 | Payment | | | | | | |
| | | | $372.72 | $396.41 | $590.54 | $0.00 | $590.54 | $239,9 |
| 04/18/2016 | 04/18/2016 | Payment | | | | | | |
| | | | $0.00 | $0.00 | $0.00 | $1,359.67 | $0.00 | $240,3 |
| 04/13/2016 | 04/13/2016 | City Tax Pmt | | | | | | |
| | | | $0.00 | $0.00 | ($1,138.79) | ($1,138.79) | ($1,138.79) | $240,3 |
| 04/08/2016 | 04/08/2016 | Payment | | | | | | |
| | | | $0.00 | $0.00 | $0.00 | $16.14 | $0.00 | $240,3 |
| 03/23/2016 | 03/23/2016 | Payment | | | | | | |
| | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $240,3 |
| 03/23/2016 | 03/23/2016 | Repay of Escrow Advance | | | | | | |
| | | | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $240,3 |
| 03/23/2016 | 03/21/2016 | Payment | | | | | | |
| | | | $372.09 | $397.04 | $590.54 | $0.00 | $590.54 | $240,3 |
| 03/21/2016 | 03/21/2016 | Payment | | | | | | |
| | | | $0.00 | $0.00 | $0.00 | $1,359.67 | $0.00 | $240,6 |
| 03/02/2016 | 03/02/2016 | Payment | | | | | | |
| | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $240,6 |
| 03/02/2016 | 03/02/2016 | Repay of Escrow Advance | | | | | | |
| | | | $0.00 | $0.00 | ($590.54) | $0.00 | $0.00 | $240,6 |
| 03/02/2016 | 02/16/2016 | Payment | | | | | | |
| | | | $371.48 | $397.65 | $590.54 | $0.00 | $590.54 | $240,6 |

Handwritten annotations: "1 day", "On Time!! Getting ready to true.", "2 days", "K$7", "11 days"

RECIPIENT'S/LENDER'S name, address and telephone number
GMAC MORTGAGE CORPORATION
PO BOX 4622
WATERLOO IA 50704-4622
866-725-0782
23-1694840

□ CORRECTED (if checked)

* Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

OMB No. 1545-0901

**2006**

Substitute Form 1098

**Mortgage Interest Statement**

Copy B
For Payer

1 Mortgage interest received from payer(s)/ borrower(s)*

$   1,462.50

The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

PAYER'S/BORROWER'S name, street address (including apt. no.), city, state, and ZIP code
01090 14117106 09103   0002226 20070106 GA024101 1098-HE  1 02 DOM GA0241000* 146316   N9

#BWNHJPY
#KW03134F46977#
llllllllllllllllllllllllllllllllllllllllllllllllll
DONNA J DEROSA - RUQUET
226 POTTERS DRIVE
BAYVILLE NJ 08721-2527

2 Points paid on purchase of principal residence (See Box 2 below.)

$   0.00

3 Refund of overpaid interest (See Box 3 below.)

$   0.00

4 Real Estate Taxes Paid

RECIPIENT'S Federal identification no.

PAYER'S social security number
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

0.00

Account number (see instructions)
0290060376

(Keep for your records.)

Department of the Treasury - Internal Revenue Service

Substitute Form 1098

Property Address:
226 POTTERS DRIVE
BAYVILLE NJ 08721-0000

## Instructions for Payer/Borrower

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the lender has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received by the interest recipient during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible by you only in certain circumstances. Caution: If you prepaid interest in 2006 that accrued in full by January 15, 2007, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2006 even though it may be included in box 1. If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points not reported in this box may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2006 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and "Recoveries" in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

ENDER's name, address, and telephone number
\GE

\704-4622

☐ CORRECTED (if checked)

**Caution:** The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.

OMB No. 1545-0901

**2007**

Substitute
Form 1098

**Mortgage
Interest
Statement**

Copy B
For Payer

The information in boxes 1, 2, 3, and 4 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

PAYER'S/BORROWER'S name, street address (including apt. no.), city, state, and ZIP code
1401307 16.00   0013922 20071928 GL365104 1000 1TE  1 OZ DO14 GL36610000* 146310  PD
#BWNHJPY
#KW03134F46977#

||..l..l.l..l..l.l..l..ll..l.l.l..l..l..ll..l.l.l.l..l..l.l
DONNA J DEROSA – RUQUET
226 POTTERS DRIVE
BAYVILLE NJ 08721-2527

1. Mortgage interest received from payer(s)/borrower(s)*

$ 7,292.53

2. Points paid on purchase of principal residence

$ 0.00

3. Refund of overpaid interest

$ 0.00

4. Mortgage insurance premiums

$ 0.00

| RECIPIENT'S federal identification no. | PAYER'S social security number |
| --- | --- |
| 23-1694840 | 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 |

5. Real Estate Taxes Paid

$ 1,980.38

Account number (see instructions)
0290060376

(keep for your records)

Substitute Form 1098

Department of the Treasury - Internal Revenue Service

Property Address
226 POTTERS DRIVE
BAYVILLE NJ 08721

## Instructions for Payer/Borrower

**What's new.** See the instructions for box 4 for an additional interest deduction which may be available to you.

A person (including a financial institution, a governmental unit, and a cooperative housing corporation) who is engaged in a trade or business and, in the course of such trade or business, received from you at least $600 of mortgage interest (including certain points) on any one mortgage in the calendar year must furnish this statement to you.

If you received this statement as the payer of record on a mortgage on which there are other borrowers, furnish each of the other borrowers with information about the proper distribution of amounts reported on this form. Each borrower is entitled to deduct only the amount he or she paid and points paid by the seller that represent his or her share of the amount allowable as a deduction. Each borrower may have to include in income a share of any amount reported in box 3.

If your mortgage payments were subsidized by a government agency, you may not be able to deduct the amount of the subsidy. See the instructions for Form 1040, Schedule A, C, or E for how to report the mortgage interest. Also, for more information, see Pub. 936, Home Mortgage Interest Deduction, and Pub. 535, Business Expenses.

**Account number.** May show an account or other unique number the lender has assigned to distinguish your account.

**Box 1.** Shows the mortgage interest received during the year. This amount includes interest on any obligation secured by real property, including a home equity, line of credit, or credit card loan. This amount does not include points, government subsidy payments, or seller payments on a "buy-down" mortgage. Such amounts are deductible

by you only in certain circumstances. **Caution:** If you prepaid interest in 2007 that accrued in full by January 15, 2008, this prepaid interest may be included in box 1. However, you cannot deduct the prepaid amount in 2007 even though it may be included in box 1 If you hold a mortgage credit certificate and can claim the mortgage interest credit, see Form 8396, Mortgage Interest Credit. If the interest was paid on a mortgage, home equity, line of credit, or credit card loan secured by your personal residence, you may be subject to a deduction limitation.

**Box 2.** Not all points are reportable to you. Box 2 shows points you or the seller paid this year for the purchase of your principal residence that are required to be reported to you. Generally, these points are fully deductible in the year paid, but you must subtract seller-paid points from the basis of your residence. Other points may also be deductible. See Pub. 936 or Schedule A (Form 1040) instructions.

**Box 3.** Do not deduct this amount. It is a refund (or credit) for overpayment(s) of interest you made in a prior year or years. If you itemized deductions in the year(s) you paid the interest, you may have to include part or all of the box 3 amount on the "Other income" line of your 2007 Form 1040. No adjustment to your prior year(s) tax return(s) is necessary. For more information, see Pub. 936 and Recoveries in Pub. 525, Taxable and Nontaxable Income.

**Box 4.** Shows mortgage insurance premiums which may qualify to be treated as deductible mortgage interest. See the Sch. A (Form 1040) instructions.

**Box 5.** The interest recipient may use this box to give you other information, such as the address of the property that secures the debt, real estate taxes, or insurance paid from escrow.

Monthly Mortgage Statement



Return Mail Operations
America's Servicing Company
P.O. Box 10388
Des Moines, IA 50306-0388

**Customer Service**
M-F 8:00am - 6:00pm
in your time zone

*Phone*
866-224-3771

*Fax*
866-453-6315

*Online*
mortgageaccountonline.com

*Statement Date*
12/17/07
*Loan Number*
1127131290

*Regular mail payments*
P.O. Box 1820
Newark, NJ 07101-1820

*Correspondence*
PO Box 10328
Des Moines, IA 50306-0328

#BWNGKLH
#106XXFXRXWKKH123#                 012  133679

DONNA J DEROSA RUQUET
226 POTTERS DR
BAYVILLE  NJ  08721-2527

*Property address*
226 POTTERS DR
BAYVILLE NJ 08721

*Principal balance as of 12/17/07*
$266,721.76

Contact Customer Service
for your payoff balance.

*Interest rate*
6.500%

*Interest paid - year-to-date*
$10,152.27

*Taxes paid - year-to-date*
$2,193.28

*Escrow balance*
$536.18

**Important Messages**
*This is not a bill. This mortgage statement reflects drafted payment application(s). Please disregard the coupon unless you are making additional principal or escrow payments. If you are paying off your loan, please remember to cancel your draft at least ten (10) days prior to your next draft date.*

| | |
|---|---|
| Payment (Principal and/or Interest, Escrow) | $2,108.69 |
| Optional Product(s)* | $ .00 |
| Current Monthly Payment 01/01/08 | $2,108.69 |
| Overdue Payment(s) | $ .00 |
| Unpaid Late Charge(s) | $ .00 |
| Other Charges | $ .00 |
| **Total Payment Due  01/01/08** | **$2,108.69** |

Activity Since Your Last Statement

| Date | Description | Total | Principal | Interest | Escrow | Late charge | Misc |
|---|---|---|---|---|---|---|---|
| 12/17 | PAYMENT | $2,108.69 | $260.43 | $1,446.15 | $402.11 | | |

(Keep upper portion for your records.)

10359MB0

THIS IS NOT A BILL, BUT FOR YOUR INFORMATION ONLY

| | |
|---|---|
| Total Payment Due 01/01/08 | $2,108.69 |
| After 01/16/08 Add Late Fee | $85.33 |
| Total Amount Due After 01/16/08: | $2,194.02 |

DONNA J DEROSA RUQUET
226 POTTERS DR
BAYVILLE  NJ  08721

Please check this box if changes are indicated on the reverse side.

Please specify additional funds. Any additional funds not specified will be applied first to any outstanding charges.

106 Loan Number: 1127131290

Customer Service:  866-224-3771

AMERICA'S SERVICING COMPANY
PO BOX 1820
NEWARK NJ 07101-1820

| | |
|---|---|
| Monthly Payment ___ x pmt amt | $ |
| Late Charges | $ |
| Additional Principal | $ |
| Additional Escrow | $ |
| Other Charges | $ |
| **Total Amount Enclosed** | $ |

(PLEASE DO NOT SEND CASH)

106 1127131290 4 10 00 00210869 00219402 00210869 00000000 5

America's Servicing Company
Return Mail Operations
P.O. Box 10388
Des Moines, IA   50306-0388

Phone #: (866) 224-3771
Fax #: (866) 453-6315

12/31/07

**MORTGAGE INTEREST STATEMENT**

| CORRECTED (If checked) | | |
|---|---|---|
| Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901 | |
| | 2007 | |
| | Substitute Form 1098 | |

| RECIPIENT'S Federal Identification no. | Loan Type |
|---|---|
| 94-1347393 | CONV. RES |

1 Mortgage Interest received from payer(s)/borrower(s)*
$10,152.27

2 Points paid on purchase of principal residence (See Box 2 on back.)
$.00

3 Refund of overpaid Interest (See Box 3 on back.)
$.00

4 Mortgage Insurance premiums
$.00

5 Real estate taxes paid
$2,193.28

| Account No. | Payer's SSN |
|---|---|
| 1127131290 | 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 |

**Copy B For Payer**

The Information in boxes 1, 2, 3, 4, and 5 is important tax Information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

PAYER'S/BORROWER'S name, address, and zip code

35182     P

DONNA J DEROSA RUQUET
226 POTTERS DR
BAYVILLE NJ   08721

(Keep for your records.)     Department of the Treasury - Internal Revenue Service

Form 1098 Substitute

Please consult a Tax Advisor about the deductibility of any payments made by you or others

**PRINCIPAL RECONCILIATION**

$268,515.55 BEGINNING BALANCE
$1,793.79 PRINCIPAL APPLIED
$266,721.76 ENDING BALANCE

**PROPERTY ADDRESS**

226    POTTERS DR
BAYVILLE   NJ   08721

$2,108.69   TOTAL CURRENT PAYMENT
$402.11   ESCROW PORTION OF PMT

2007 INTEREST DETAIL

TOTAL INTEREST APPLIED 2007     $10,152.27

2007 MORTGAGE INTEREST RECEIVED FROM PAYER/BORROWER(S)     $10,152.27

If you have questions about your loan, you can use our automated "Personal Mortgage Information Line" at the 800 number listed at the top of this statement. By selecting one of the options listed, you can receive information regarding:

-taxes paid year-to-date
-the amount & date of your last payment
-interest paid year-to-date
-other valuable information

We believe customers come first. You can always count on us to provide the excellent service you've come to expect.

| Date | Event |
|---|---|
| 4/6/2000 | Institution established: Original name:VIRTUALBANK (35356) |
| 6/28/2002 | Changed name to **Lydian Private Bank** (35356) |
| 12/18/2003 | Moved bank headquarters from PALM BEACH GARDENS, FL to PALM BEACH, FL |
| 7/21/2011 | Changed primary regulatory agency from OFFICE OF THRIFT SUPERVISION to COMPTROLLER OF THE CURRENCY |
| 8/19/2011 | **Failed. Acquired with government financial assistance and subsequently operated as part of Sabadell United Bank, National Association (21837)** A link to FDIC closing information for Lydian Private Bank (35356): https://www5.fdic.gov/idasp/confirmation_outside.asp?inCert1=35356 |
| 8/1/2017 | **Merged into and subsequently operated as part of Iberiabank (28100) in LAFAYETTE, LA** |

<< 1 ⇕ of 1 >>

donna ruquet <ddruquet@gmail.com>

# M Gmail

Fri, Mar 8, 2019 at 3:43 PM

## FDIC Request # 1003654500

Jordan, Gwen K. <GJordan@fdic.gov>
To: donna ruquet <ddruquet@gmail.com>

Dear Donna~The mortgage was researched and Lydian Private Bank sold it on 10/30/2006 to Morgan Stanley. This sale occurred prior to the bank closing on 8/19/2011. Gwen

**From:** donna ruquet [mailto:ddruquet@gmail.com]
**Sent:** Thursday, March 07, 2019 11:46 AM
**To:** Jordan, Gwen K.
**Subject:** FDIC Request # 1003654500

Good afternoon Ms. Jordan:

[Quoted text hidden]

Case 14-17571-KCF Doc 160 Filed 04/09/19 Entered 04/11/19 10:16:36 Desc Main Document Page 33 of 76

donna ruquet <ddruquet@gmail.com>

# M Gmail

Fri, Mar 8, 2019 at 3:48 PM

## FDIC Request # 1003654500

**donna ruquet** <ddruquet@gmail.com>
To: "Jordan, Gwen K." <GJordan@fdic.gov>

Oh that's so awesome that you found the loan!! Is there any documentation you can send me that illustrates that? I'm guessing it's that there should have been an Assignment recorded.

I can't thank you enough. We just got out of mediation and I knew something was up when they hemmed and hawed over providing a title report.

Again- thank you so much for your help and have a great day!!

Donna

[Quoted text hidden]

Case 14-17571-KCF   Doc 160   Filed 04/09/19   Entered 04/11/19 10:16:36   Desc Main
Document   Page 34 of 76

donna ruquet <ddruquet@gmail.com>

# M Gmail

Mon, Mar 11, 2019 at 9:38 AM

## FDIC Request # 1003654500

**Jordan, Gwen K.** <GJordan@fdic.gov>
To: donna ruquet <ddruquet@gmail.com>

Donna~Since this occurred prior to the bank closing, there isn't documentation. Since this was a MERS mortgage, you may want to contact them at 800-464-6377. Attached is a screen print from MERS. Gwen

[Quoted text hidden]

📄 **MERS.pdf**
18K

Case 14-17571-KCF   Doc 160   Filed 04/09/19   Entered 04/11/19 10:16:36   Desc Main
Document   Page 35 of 76

.019

**www.me**

1003148



The Mortgage Industry's Utility



# Min Summary

Member is not associated with MIN

| Summary | | Inactive |
|---|---|---|
| 1002570-0000109865-4 | | MOM |
| 226 POTTERS DR | | First Lien |
| BAYVILLE, NJ 08721-2527 | | |
| Reg Date | 10/12/2006 | |
| County/Place | Ocean County | Owner Occupied    Yes |
| Primary Borrower | DEROSA-RUQUET, DONNA | |
| Note Amount | $270,000.00 | Note Date    10/05/2006 |
| Servicer | 1002856 - Wells Fargo Bank, N.A., d/b/a America's Servicing Company | |
| Investor | 1001065 - U.S. Bank as Trustee | |
| Subservicer | N/A | |
| Originating Organization | N/A | |
| Property Preservation Co. | N/A | |

https://www.mersonline.org/mers/mininfo/minsummary

# Morgan Stanley Mortgage Loan Trust 2007-3XS

Moody's Org ID: 728048319

Market Segment: Structured Finance > RMBS > Alt-A

**KEY CHARACTERISTICS**

| | |
|---|---|
| Closing Date: | 28 Feb 2007 |
| Location of Assets(at issuance): | UNITED STATES |
| MIS Collateral Type: | MBS - Alt-A |

**ORIGINATOR**
First National Bank of Nevada, Lydian Private Bank

**TRUSTEE**
U.S. Bank National Association

**SERVICER**
Wells Fargo Bank, N.A., GreenPoint Mortgage Funding, Inc. ...More

**ANALYST**

| | |
|---|---|
| Lead Rating Analyst: | Wenzhao Wu |

Go to RMBS Industry Page

Export   Results:16

Research     Ratings     Related Parties

| Role | Name | Long Term Rating | Date | Family Tree |
|---|---|---|---|---|
| | | | | Family Tree |
| Certificate Administrator | Wells Fargo Bank, N.A. | | | Family Tree |
| Custodian | LaSalle Bank N.A. | | | Family Tree |
| Depositary | Morgan Stanley Capital I Inc. | | | |
| Master Servicer | Wells Fargo Bank, N.A. | | | |
| Originator | First National Bank of Nevada | | | |
| Originator | Lydian Private Bank | | | |
| Seller | Morgan Stanley Mortgage Capital Inc. | | | |
| Servicer | Wells Fargo Bank, N.A. | | | |
| Servicer | GreenPoint Mortgage Funding, Inc. | | | Family Tree |
| Servicer | Indymac Bank, F.S.B. | | | Family Tree |
| Servicer | Wachovia Mortgage Corporation | | | Family Tree |
| Servicer | Ocwen Loan Servicing, LLC | Caa2 | 11 Dec 2018 | Family Tree |
| Servicer | GMAC Mortgage, LLC | | | |
| Sponsor | Morgan Stanley Mortgage Capital Inc. | | | Family Tree |
| Trustee | U.S. Bank National Association | | | |
| Underwriter | Morgan Stanley & Co. Incorporated | | | |

SERVICER

# Specialized Loan Servicing LLC

Moody's Org ID: 807431981    Market Segment: Structured Finance    Industry: SINGLE PURPOSE CORP    Domicile: UNITED STATES    Analyst: Francis Wissrman
Servicer Business Line: Residential Mortgage Backed Securities

Research    Ratings    Family Tree    Serviced Deals    Export    Results:1

| Parent/Subsidiary | Long Term Rating | Long Term Rating Type | Date | Domicile |
|---|---|---|---|---|
| | | | | UNITED STATES |
| Specialized Loan Servicing LLC | | | | |

**Specialized Loan Servicing LLC**
Moody's Org ID: 807431081    Market Segment: Structured Finance    Industry: SINGLE PURPOSE CORP
Servicer Business Line: Residential Mortgage Backed Securities
Domicile: UNITED STATES

SERVICER

Analyst:    Francis
            Wiseman

Research | Ratings | Family Tree | Serviced Deals

Export Results:178

Page 1 Of 2

Results 1 - 100 Of 178

Deal Name ▲

ACE Securities Corp. Home Equity Loan Trust, Series 2007-SL2
ACE Securities Corp. Home Equity Loan Trust, Series 2007-SL3
Asset Backed Securities Corporation Home Equity Loan Trust 2002-HE3
Banc of America Funding 2006-9 Trust
Banc of America Mortgage 2005-E Trust
Banc of America Mortgage 2008-A Trust
Banc of America Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2005-J
Banc of America Mortgage Securities, Pass-Through Certificates, Series 2005-7
Bear Stearns ARM Trust 2003-3
Bear Stearns ARM Trust 2004-3
CHL Mortgage Pass-Through Trust 2003-44
CHL Mortgage Pass-Through Trust 2003-HYB3
CHL Mortgage Pass-Through Trust 2003-J6
CHL Mortgage Pass-Through Trust 2005-4
CSFB Home Equity Mortgage Trust 2007-2
CWABS, Inc., Asset-Backed Certificates, Series 2003-SC1
CWHEQ Home Equity Loan Trust, Series 2006-S10
CWHEQ Revolving Home Equity Loan Trust, 2007-B
CWHEQ Revolving Home Equity Loan Trust, 2007-D
CWHEQ Revolving Home Equity Loan Trust, Series 2005-C
CWHEQ Revolving Home Equity Loan Trust, Series 2005-D
CWHEQ Revolving Home Equity Loan Trust, Series 2005-J
CWHEQ Revolving Home Equity Loan Trust, Series 2006-F
CWHEQ Revolving Home Equity Loan Trust, Series 2006-I
CWHEQ Revolving Home Equity Loan Trust, Series 2007-A
CWMBS, Inc. Mortgage Pass-Through Certificates, Series 2003-38
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-1
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-2
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-3
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-4
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-B
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-C
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2006-1
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2006-2
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2006-3
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2006-4
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2007-1
Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2007-2
Citigroup Mortgage Loan Trust 2007-AMC1
Citigroup Mortgage Loan Trust, Series 2005-HE3
Connecticut Avenue Securities, Series 2016-C01
Connecticut Avenue Securities, Series 2016-C02
Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA4
FBR Securitization Trust 2005-2
FFMLT 2007-FFB-SS, Mortgage Pass-Through Certificates, Series 2007-FFB-SS
First Franklin Mortgage Loan Trust 2005-FF11
First Franklin Mortgage Loan Trust 2005-FF2
First Franklin Mortgage Loan Trust 2005-FF8

FOR Securitization Trust 2009-2

FFMLT 2007-FFB-SS, Mortgage Pass-Through Certificates, Series 2007-FFB-SS

First Franklin Mortgage Loan Trust 2005-FF11

First Franklin Mortgage Loan Trust 2006-FF2

First Franklin Mortgage Loan Trust 2005-FF8

First Franklin Mortgage Loan Trust 2005-FFA

First Franklin Mortgage Loan Trust 2006-FF18

First Franklin Mortgage Loan Trust 2006-FF3

First Franklin Mortgage Loan Trust 2006-FF4

First Franklin Mortgage Loan Trust 2006-FF6

First Franklin Mortgage Loan Trust 2006-FF9

First Franklin Mortgage Loan Trust 2006-FFA

First Franklin Mortgage Loan Trust 2006-FFB

First Franklin Mortgage Loan Trust 2007-FFC

First Horizon ABS Trust 2006-HE2

First Horizon ABS Trust 2007-HE1

Flagstar Home Equity Loan Trust 2007-1

Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2018-2

GMACM Home Equity Loan Trust 2004-HE3

GMACM Home Equity Loan Trust 2004-HE4

GMACM Home Equity Loan Trust 2006-HE3

GMACM Home Equity Loan Trust 2006-HE4

GMACM Home Equity Loan Trust 2007-HE1

GSAA Home Equity Trust 2004-4

GSAA Home Equity Trust 2007-S1

HarborView Mortgage Loan Trust 2006-9

Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2001-C

Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2002-A

IndyMac Home Equity Mortgage Loan Asset-Backed Trust, INABS 2005-A

IndyMac Home Equity Mortgage Loan Asset-Backed Trust, INABS 2006-B

IndyMac Home Equity Mortgage Loan Asset-Backed Trust, INABS 2005-C

IndyMac Home Equity Mortgage Loan Asset-Backed Trust, INDS 2007-1

IndyMac Home Equity Mortgage Loan Asset-Backed Trust, SPMD 2004-B

IndyMac Home Equity Mortgage Loan Asset-Backed Trust, SPMD 2004-C

IndyMac Home Equity Mortgage Loan Asset-Backed Trust, Series 2007-H1

IndyMac Home Equity Mortgage Loan Asset-Backed Trust, Series SPMD 2002-B

IndyMac INDA Mortgage Loan Trust 2006-AR2

IndyMac INDA Mortgage Loan Trust 2007-AR9

IndyMac INDX Mortgage Loan Trust 2004-AR10

IndyMac INDX Mortgage Loan Trust 2004-AR4

IndyMac INDX Mortgage Loan Trust 2004-AR6

IndyMac INDX Mortgage Loan Trust 2006-AR33

IndyMac INDX Mortgage Loan Trust 2007-FLX1

Luminent Mortgage Trust 2006-1

MFRA Trust 2015-2

MSDWCC HELOC Trust 2006-1

Mastr Asset Backed Securities Trust 2007-NCW

Morgan Stanley Mortgage Loan Trust 2007-9SL

New Residential Mortgage Loan Trust 2015-1

New Residential Mortgage Loan Trust 2015-2

New Residential Mortgage Loan Trust 2016-1

New Residential Mortgage Loan Trust 2016-2

New Residential Mortgage Loan Trust 2016-3

New Residential Mortgage Loan Trust 2017-3

New Residential Mortgage Loan Trust 2018-2

New Residential Mortgage Loan Trust 2018-4

Option One Mortgage Loan Trust 2007-FXD1

Results 1 - 100 Of 170

# SLS Servicer
# Advance Revolving Trust 1

### CALCULATION AGENT REPORT

FOR THE PERIOD ENDED October 10, 2017

Per the Indenture between SLS Servicer Advance Revolving Trust 1 and Wells Fargo Bank, N.A., as Indenture Trustee & Calculation Agent ("Wells Fargo"), the following information is being reported as provided in Section 6.01(c)(i). This report (and any attachments) is for informational purposes only, and any recipient should consult their own legal or financial advisors concerning the securities referenced herein. Wells Fargo makes no representations or warranties, and shall have no liability to any recipient, concerning the completeness or accuracy of the information provided herein. The recipient assumes the risk of verifying any information used or relied upon.

**SLS Servicer Advance RevoMtg Trust 1**
Calculation Agent Report
Cutoff Date 10/5/17
Payment Date 10/30/17

| Securitization Trust | Deal Name | Loan Count | UPB | Loan count between 20-50 | UPB between 25m - $10m | Aggregate Receivables of Securitization Trusts with Loan Counts b/w 20-50 and UPB b/w $5m bnd $10m | Escrow Judicial | Escrow Non-Judicial | Corporate Judicial | Corporate Non-Judicial | PBX | Deferred Service Fee Judicial | Deferred Service Fee Non-Judicial | Aggregate CV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 105 | TMTS 2004-7HE | 51 | 8,772,446.60 | N | Y | $39,508.42 | 170,094.53 | 128,389.05 | 51,130.69 | 25,501.06 | 202,893.39 | - | - | 578,017.92 |
| 107 | TMTS 2004-9HE | 52 | 6,502,223.39 | N | Y | 123,972.65 | 19,429.13 | 15,294.05 | 8,588.29 | 14,261.03 | 49,112.46 | - | - | 101,078.61 |
| 111 | TMTS 2004-11HE | 72 | 9,577,095.59 | N | Y | 121,663.76 | 75,432.12 | 1,032.31 | 16,097.51 | 2,516.67 | - | - | - | 161,180.27 |
| 112 | TMTS 2004-19HE | 78 | 9,538,047.32 | N | Y | 333,021.69 | 114,056.47 | 1,069.73 | 24,796.46 | 6,435.61 | 212,822.24 | - | - | 288,932.96 |
| 115 | TMTS 2004-21HE | 66 | 12,702,442.67 | N | N | - | 202,594.81 | 6,461.41 | 58,359.24 | 31,527.39 | - | - | - | 337,706.33 |
| 117 | TMTS 2005-21E | 74 | 12,255,447.09 | N | R | - | 67,496.52 | 61,751.68 | 27,097.25 | 26,485.68 | 112,384.95 | - | - | 498,309.96 |
| 119 | TMTS 2005-3HE | 101 | 14,088,675.04 | N | N | - | 218,972.35 | 20,204.06 | 37,471.64 | 213,661.21 | - | - | - | 259,548.69 |
| 121 | TMTS 2005-4HE | 160 | 19,019,953.62 | N | N | - | 52,193.88 | 47,364.37 | 50,291.13 | 52,735.94 | 67,093.15 | - | - | 1,052,234.00 |
| 123 | TMTS 2005-5RE | 307 | 44,949,513.95 | N | N | - | 957,436.30 | 72,061.44 | 408,686.69 | 92,292.13 | 540,954.48 | - | - | 321,662.23 |
| 125 | TMTS 2005-10HE | 369 | 23,064,791.01 | N | N | - | 107,809.47 | 57,000.68 | 202,229.68 | 61,622.50 | - | - | - | 582,827.82 |
| 126 | TMTS 2005-12ALT | 216 | 29,052,565.43 | N | N | - | 359,439.26 | 98,634.43 | 114,555.65 | 53,288.31 | 2,115.99 | - | - | 625,039.26 |
| 129 | TMTS 2005-14HE | 316 | 36,336,051.00 | N | N | - | 599,653.49 | 46,103.80 | 128,904.35 | 66,104.79 | - | - | - | 641,008.23 |
| 130 | TMTS 2005-16HE | 307 | 55,090,162.10 | N | N | - | 430,309.23 | 102,421.29 | 80,456.36 | 58,649.94 | - | - | - | 689,526.92 |
| 131 | TMTS 2005-13ALT | 139 | 31,623,305.75 | N | N | - | 332,840.72 | 132,130.56 | 133,025.55 | 70,619.15 | 201,034.24 | - | - | 369,650.32 |
| 139 | TMTS 2006-1 | 412 | 32,121,352.60 | N | N | - | 447,960.39 | 103,039.35 | 106,637.30 | 23,713.40 | - | - | - | 610,201.15 |
| 145 | TMTS 2006-3 | 82 | 17,572,370.77 | N | R | - | 9,110.65 | 14,750.91 | 2,464.07 | 7,283.85 | - | - | - | 32,209.44 |
| 148 | TMTS 2006-5 | 80 | 16,053,465.70 | N | R | - | 339,391.09 | 29,534.31 | 120,913.12 | 25,160.15 | - | - | - | 514,976.67 |
| 151 | TMTS 2006-7 | 112 | 26,266,914.91 | N | N | - | 164,014.59 | 67,871.48 | 95,035.44 | 59,732.86 | 216,226.78 | - | - | 663,701.16 |
| 154 | TMTS 2006-9HGA | 149 | 32,160,802.40 | N | N | - | 729,579.25 | 62,090.94 | 274,449.58 | 84,887.46 | 201,482.57 | - | - | 1,589,461.50 |
| 155 | TMTS 2006-12AHS | 195 | 36,065,600.43 | N | N | - | 158,270.46 | 131,458.19 | 51,926.00 | 55,618.19 | 98,875.88 | - | - | 495,950.43 |
| 166 | TMTS 2007-2ALT | 214 | 54,200,365.14 | N | N | - | 52,218.42 | 51,085.07 | 49,282.81 | 20,964.19 | 130,772.26 | - | - | 204,423.26 |
| 169 | TMTS 2007-4HE | 347 | 26,510,948.61 | N | N | - | - | - | - | - | - | - | - | 291,396.71 |
| 173 | TMTS 2007 MICRO-FHD1 | 0 | - | N | N | - | 88,747.64 | 105,274.45 | 58,556.24 | 38,264.29 | - | - | - | 200,263.32 |
| 182 | 2007-CHL1 Group 2 | 150 | 28,062,446.85 | N | N | - | 2,302.73 | 4,712.66 | 100,428.01 | 92,639.00 | - | - | - | 325,020.69 |
| 193 | GMACH 2004-HE4 | 1565 | 47,116,504.60 | N | N | - | - | 2,436.52 | 95,620.09 | 72,243.03 | - | - | - | 1,271,498.20 |
| 195 | GMACH 2005-HE3 | 2730 | 92,244,113.71 | N | N | - | 1,001,903.09 | 53,969.54 | 208,754.41 | 14,871.75 | - | - | - | 2,339,957.73 |
| 201 | Chevy Chase 2006-1 | 348 | 104,053,320.36 | N | N | - | 1,468,902.57 | 472,454.87 | 228,730.20 | 149,859.59 | - | - | - | 1,442,198.88 |
| 203 | Chevy Chase 2006-2 | 609 | 182,435,200.01 | N | N | - | 1,005,355.73 | 157,663.27 | 182,918.84 | 95,052.58 | - | - | - | 1,556,661.40 |
| 205 | Chevy Chase 2006-3 | 399 | 144,967,315.09 | N | N | - | 1,007,067.53 | 249,205.91 | 234,334.84 | 25,553.12 | - | - | - | 1,629,057.78 |
| 207 | Chevy Chase 2006-4 | 309 | 101,676,260.41 | N | N | - | 726,331.24 | 459,760.32 | 274,405.28 | 166,039.44 | - | - | - | 3,598,479.87 |
| 209 | Chevy Chase 2007-1 | 318 | 136,830,053.40 | N | N | - | 2,121,375.00 | 225,264.26 | 331,944.62 | 65,103.94 | 343,992.95 | - | - | 137,137.82 |
| 211 | Chevy Chase 2007-2 | 391 | 161,756,163.99 | N | N | - | 10,522.45 | 431.29 | 101,673.72 | 4,509.51 | - | - | - | 674,712.08 |
| 217 | SLS for GMAC 2004-HE3 | 1864 | 43,242,429.75 | N | N | - | 332,591.48 | 126,283.71 | 53,493.66 | 64,762.07 | 319,386.17 | - | - | - |
| 220 | TMTS 2007-4ALT | 126 | 32,096,232.69 | N | N | - | - | - | - | - | - | - | - | 821,750.69 |
| 221 | RMS 1012-1 | 0 | - | N | N | - | - | - | - | - | - | - | - | 829,508.93 |
| 275 | Chevy Chase 2005-1 | 326 | 52,814,681.97 | N | N | - | 590,468.81 | 190,466.85 | 21,024.92 | 16,472.10 | - | - | - | 1,197,584.90 |
| 277 | Chevy Chase 2005-2 | 150 | 42,592,042.70 | N | N | - | 636,969.22 | 129,316.76 | 28,759.33 | 54,553.67 | - | - | - | 572,421.37 |
| 279 | Chevy Chase 2005-3 | 201 | 51,749,000.48 | N | N | - | 1,119,214.64 | 1,139.95 | 78,969.43 | 257.48 | - | - | - | 173,359.78 |
| 281 | Chevy Chase 2005-4 | 150 | 52,272,234.79 | N | N | - | 367,630.36 | 165,668.73 | 24,281.90 | 16,512.59 | - | - | - | 225,345.69 |
| 283 | Chevy Chase 2005-8 | 85 | 15,457,015.48 | N | N | - | 95,523.94 | 43,033.82 | 25,164.27 | 6,839.07 | - | - | - | 13,445.54 |
| 285 | Chevy Chase 2005-C | 100 | 45,177,793.30 | N | N | - | 568,201.63 | 143,474.27 | 8,647.64 | 5,942.66 | - | - | - | 334,325.57 |
| 304 | HEMT 2007-2 | 1690 | 62,513,241.53 | N | N | - | 73.56 | - | 8,953.29 | 4,819.69 | - | - | - | 247,103.40 |
| 307 | GMACH 2006-HE4 | 3593 | 146,076,946.12 | N | N | - | 19,440.42 | 5,002.36 | 107,716.70 | 66,066.05 | - | - | - | 14,032.30 |
| 308 | GMACH 2007-HE1 | 3031 | 114,584,802.45 | N | N | - | 70,222.60 | 35,892.57 | 67,742.63 | 73,246.63 | - | - | - | 21,678.43 |
| 309 | RFMS II 2007-HSA2 | 2756 | 57,934,047.81 | N | N | - | - | 101.14 | 2,969.54 | 11,131.42 | - | - | - | 6,239,216.21 |
| 310 | RFMS II 2007-HSA3 | 2088 | 76,226,375.93 | N | N | - | 837.51 | 1,207.60 | 6,093.22 | 13,240.10 | - | - | - | 1,395,311.64 |
| 312 | OOMC 2007-FXD1 | 1442 | 274,567,727.67 | N | N | - | 1,029,041.61 | 895,457.82 | 945,040.72 | 370,297.32 | 1,515,374.15 | - | - | 119,107.97 |
| 319 | GSAMP 2007-HSBC1 | 885 | 106,227,307.35 | N | N | - | 590,074.24 | 160,892.19 | 257,320.78 | 187,917.33 | - | - | - | 426,290.40 |
| 333 | RAMP 2002-RS1 | 120 | 5,364,315.94 | N | Y | 196,062.38 | 31,454.07 | 15,224.90 | 43,466.04 | 20,152.93 | - | - | - | 391,444.90 |
| 334 | RAMP 2002-RS3 | 139 | 8,536,475.13 | N | Y | 515,970.42 | 265,333.67 | 22,762.26 | 126,874.19 | 11,279.28 | - | - | - | 295,891.51 |
| 335 | RAMP 2002-RP1 | 76 | 4,227,205.13 | N | N | - | 114,225.00 | 15,985.12 | 39,200.60 | 21,904.10 | - | - | - | 136,156.59 |
| 336 | RAMP 2002-RR2 | 80 | 4,009,272.77 | N | N | - | 105,032.55 | 137,254.73 | 21,246.13 | 41,350.18 | - | - | - | 500,155.01 |
| 337 | RAMP 2002-RS4 | 130 | 8,243,208.42 | N | Y | 159,972.79 | 79,543.39 | 5,562.55 | 61,539.30 | 5,442.33 | - | - | - | 370,295.04 |
| 338 | RAMP 2002-RS5 | 175 | 12,007,504.94 | N | N | - | 245,274.14 | 141,738.97 | 63,261.19 | 13,060.40 | - | - | - | 159,742.07 |
| 339 | RAMP 2002-RS6 | 169 | 15,845,706.28 | N | N | - | 257,571.45 | 17,700.60 | 90,663.19 | 21,092.56 | - | - | - | 294,502.11 |
| 340 | RAMP 2002-RS7 | 111 | 11,337,738.57 | N | N | - | 77,692.94 | 15,082.02 | 45,894.25 | 14,741.24 | - | - | - | 818,331.04 |
| 341 | RAMP 2003-RS1 | 183 | 14,298,048.39 | N | N | - | 134,675.59 | 72,674.44 | 52,410.67 | - | - | - | - | 319,849.47 |
| 342 | RAMP 2003-RS2 | 319 | 20,155,280.24 | N | N | - | 464,685.31 | 148,169.05 | 133,456.39 | 71,995.55 | - | - | - | 792,151.86 |
| 343 | RAMP 2003-RS3 | 209 | 18,540,025.82 | N | N | - | 215,202.04 | 36,078.78 | 57,239.74 | 11,406.92 | - | - | - | 1,012,286.21 |
| 344 | RAMP 2003-RS4 | 328 | 28,584,923.27 | N | N | - | 493,850.94 | 76,367.18 | 179,157.00 | 42,744.63 | - | - | - | 565,792.27 |
| 345 | RAMP 2003-RS5 | 265 | 24,265,602.94 | N | N | - | 757,169.23 | 75,803.37 | 124,981.05 | 54,234.56 | - | - | - | 849,491.16 |
| 346 | RAMP 2003-RS6 | 401 | 37,391,043.56 | N | N | - | 240,994.50 | 143,637.09 | 93,672.41 | 76,091.47 | - | - | - | 1,285,774.25 |
| 347 | RAMP 2004-RS5 Trust | 564 | 55,695,177.83 | N | N | - | 310,563.42 | 260,225.60 | 173,259.21 | 145,442.46 | - | - | - | 1,365,756.17 |
| 348 | RASC 2002-RS1 | 889 | 49,318,737.53 | N | N | - | 460,806.07 | 347,489.39 | 242,001.16 | 226,377.63 | - | - | - | 354,937.04 |
| 349 | RASC 2003-KS4 | 670 | 46,341,103.21 | N | N | - | 631,260.07 | 302,644.53 | 293,058.37 | 157,905.19 | - | - | - | 1,148,086.86 |
| 350 | RASC 2003-KS5 | 372 | 25,656,772.77 | N | N | - | 41,828.54 | 66,769.94 | 52,715.59 | 52,892.97 | - | - | - | 830,699.46 |
| 351 | RASC 2003-KS9 | 667 | 51,426,153.18 | N | N | - | 558,980.20 | 185,022.02 | 301,342.41 | 102,662.12 | - | - | - | 1,616,937.92 |
| 352 | RASC 2004-KS4 | 523 | 44,155,516.97 | N | N | - | 339,041.59 | 220,030.61 | 200,156.15 | 124,420.70 | - | - | - | 614,077.41 |
| 353 | RFC 2002-RS4 | 685 | 33,650,065.33 | N | N | - | 487,808.07 | 291,550.01 | 200,160.21 | 83,914.95 | - | - | - | 102,573.48 |
| 354 | RFC 1002-KS6 | 554 | 29,662,675.50 | N | N | - | 231,458.64 | 98,514.63 | 290,160.21 | 148,039.40 | - | - | - | 451,360.22 |
| 355 | RFC 2002-KS4 | 670 | 37,767,324.84 | N | N | - | 155,255.44 | 171,954.90 | 255,303.73 | 44,781.32 | - | - | - | 23,225,009.43 |
| 356 | RFC 2004-RS5 | 543 | 53,291,765.82 | N | N | - | 267,630.94 | 65,610.84 | 114,255.12 | - | - | - | - | 1,305,630.40 |
| 422 | MABS2007 - MCW | 1671 | 337,986,081.65 | N | N | - | 7,602,686.22 | 1,414,485.23 | 2,585,973.42 | 903,950.53 | 1,920,253.84 | 1,166,516.59 | 382,026.46 | 1,588,779.60 |
| 423 | CWABS 2006-12 | 1066 | 174,344,242.53 | N | N | - | 478,469.01 | 203,467.41 | 323,564.00 | 200,150.26 | - | - | - | 1,615,602.27 |
| 424 | CWABS 2006-14 | 1457 | 284,241,200.29 | N | N | - | 767,513.49 | 274,414.62 | 653,938.53 | 232,932.98 | - | - | - | 1,659,504.60 |
| 425 | CWABS 2007-10 | 1627 | 292,965,989.46 | N | N | - | 613,480.19 | 203,623.93 | 426,822.23 | 293,671.41 | - | - | - | 663,195.16 |
| 426 | CWABS 2006-13 | 2004 | 348,442,378.06 | N | N | - | 819,615.63 | 203,778.59 | 542,308.89 | 233,801.50 | - | - | - | 1,707,226.05 |
| 427 | CWALT 2006-OA6 | 439 | 363,189,289.52 | N | N | - | 240,686.26 | 166,469.86 | 147,002.86 | 208,567.85 | - | - | - | 2,140,826.67 |
| 428 | CWALT 2006-OA10 | 1203 | 421,489,212.15 | N | N | - | 459,128.12 | 428,455.02 | 341,267.41 | 558,619.51 | - | - | - | 1,663,607.74 |
| 439 | CWABS 2007-9 | 1924 | 342,567,924.53 | N | N | - | 919,722.22 | 354,174.19 | 585,142.95 | 284,932.51 | - | - | - | 1,531,365.05 |
| 430 | CWABS 2007-6 | 1156 | 236,372,750.50 | N | N | - | 722,510.67 | 205,949.16 | 574,047.91 | 202,626.00 | - | - | - | 3,189,741.57 |
| 431 | CWABS 2007-4 | 2017 | 224,301,057.19 | N | N | - | 706,456.62 | 204,539.50 | 440,047.37 | 175,451.36 | - | - | - | 1,261,424.09 |
| 432 | CWABS 2007-1 | 1811 | 540,590,113.32 | N | N | - | 1,463,217.05 | 439,476.34 | 891,951.46 | 375,896.21 | - | - | - | 2,057,334.57 |
| 433 | CWABS 2006-15 | 1556 | 271,404,485.96 | N | N | - | 485,283.66 | 224,095.21 | 107,471.65 | 214,573.07 | - | - | - | 2,210,653.01 |
| 434 | CWABS 2006-18 | 1911 | 328,089,191.80 | N | N | - | 768,582.30 | 404,608.52 | 624,606.11 | 259,330.37 | - | - | - | 2,214,262.15 |
| 435 | CWABS 2006-22 | 1979 | 352,781,854.61 | N | N | - | 922,650.38 | 383,578.47 | 559,699.25 | 351,924.91 | - | - | - | 1,774,345.50 |
| 436 | CWABS 2006-25 | 1945 | 351,504,801.76 | N | N | - | 794,711.77 | 249,791.20 | 825,613.39 | 294,145.44 | - | - | - | - |
| 437 | CWABS 2006-26 | 1589 | 292,026,925.48 | N | N | - | 898,140.78 | 262,299.40 | 560,316.15 | 255,569.09 | - | - | - | - |

Case 14-17571-KCF   Doc 160   Filed 04/09/19   Entered 04/11/19 10:16:36   Desc Main
Document   Page 45 of 76

**WELLS FARGO**

**CTSLink®**

Donna DeRosa
About Wells Fargo

Securities Reports   Special Services   Additional Services

Home > MBS > MSML > 20073XS

# Morgan Stanley Mortgage Loan Trust (MSML) 2007 - 3XS

To download/view a single report right click on the format icon and select the "Save Target As" option from the menu or click the format icon to view the report in your browser.

To download multiple reports select one or more check boxes and click on the Zip download button. The Zip download option allows you to download a zip file containing all selected reports.

Add to MyReports - To add cyclical reports to your "MyCTSLink" portfolio select one or more check boxes and click Add to MyReports.

Add to MySeries - To add this Series to your "MyCTSLink" portfolio click Add to MySeries.

**To register as a bondholder, click here to be taken to the BondHolder Registration form.**

Periodic Reports | Deal Documents | Importable Data | Special Notices | SEC Edgar Filing | Tax Reporting | Factors

| Document Name | Format(s) [?] | Current Cycle | Next Cycle | Next Available | History [?] |
|---|---|---|---|---|---|
| Series Level Collateral File | ☐ 📄 | 04/26/2016 | Terminated | N/A | Additional History |
| Series Level Collateral File CSV Format | ☐ 📄 | 02/26/2019 | 03/26/2019 | 03/26/2019 05:00PM EDT | Additional History |

Zip Download    Add to MyReports    Add to MySeries

© 1999 - 2019 Wells Fargo. All rights reserved. NMLSR ID 399801

EXHIBIT B

FORM OF TRANSFEREE CERTIFICATE FOR TRANSFERS OF NOTES TO QUALIFIED
INSTITUTIONAL BUYERS / QUALIFIED PURCHASERS

[Date]

Wells Fargo Bank, National Association
Wells Fargo Center
Sixth and Marquette Avenue
Minneapolis, Minnesota 55479-0113
Attention: Corporate Trust Services – SLS Servicer Advance Revolving Trust 1

Re:   SLS Servicer Advance Revolving Trust 1, Advance Receivables Backed Variable
Funding Notes, Series 2012-1 (the "Notes")

Ladies and Gentlemen:

This letter is delivered to you in connection with the transfer by _____ (the "Transferor") to _____ (the "Transferee") of the Notes having a Initial Principal Balance as of [_____] of $_____. The Notes were issued pursuant to an Indenture, dated as of December 28, 2012 (the "Indenture"), between SLS Servicer Advance Revolving Trust 1 as issuer and Wells Fargo Bank, National Association as indenture trustee. All terms used herein and not otherwise defined shall have the meanings set forth in the Indenture. The Transferee hereby certifies, represents and warrants to you, as Note Registrar, that:

1.     The Transferee is a "qualified institutional buyer" (a "Qualified Institutional Buyer") as that term is defined in Rule 144A ("Rule 144A") under the Securities Act of 1933, as amended (the "1933 Act"), and has completed one of the forms of certification to that effect attached hereto as Annex 1. The Transferee is a "qualified purchaser" (a "Qualified Purchaser") as defined in Section 3(c)(7) of the Investment Company Act of 1940, as amended (the "1940 Act"). The Transferee is aware that the sale to it of the Note is being made in reliance on Rule 144A and Section 3(c)(7) of the 1940 Act. The Transferee is acquiring the Note for its own account or for the account of a Qualified Institutional Buyer (who is a Qualified Purchaser), and understands that such Note may be resold, pledged or transferred only (i) to a person reasonably believed to be a Qualified Institutional Buyer (who is a Qualified Purchaser) that purchases for its own account or for the account of a Qualified Institutional Buyer and Qualified Purchaser to whom notice is given that the resale, pledge or transfer is being made in reliance on Rule 144A and Section 3(c)(7) of the 1940 Act, or (ii) pursuant to another exemption from registration under the 1933 Act.

2.     The Transferee understands that it may not sell or otherwise transfer any Note except in compliance with the provisions of the Indenture, which provisions it has carefully reviewed, and that each Note will bear the following legend:

B-1

OHSUSA:751934283.20

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT"), OR ANY STATE SECURITIES LAWS. NEITHER THIS NOTE NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION, UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, REGISTRATION.

THE HOLDER OF THIS NOTE BY ITS ACCEPTANCE HEREOF AGREES TO OFFER, SELL OR OTHERWISE TRANSFER SUCH NOTE ONLY (A) PURSUANT TO A REGISTRATION STATEMENT WHICH HAS BEEN DECLARED EFFECTIVE UNDER THE 1933 ACT, (B) FOR SO LONG AS THIS NOTE IS ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE 1933 ACT, TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE 1933 ACT WHO IS A QUALIFIED PURCHASER UNDER SECTION 3(c)(7) OF THE INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "1940 ACT") THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER WHO IS A QUALIFIED PURCHASER UNDER SECTION 3(c)(7) OF THE 1940 ACT TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A OR (C) PURSUANT TO ANOTHER EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT, IN EACH CASE IN COMPLIANCE WITH THE REQUIREMENTS OF THE INDENTURE AND APPLICABLE STATE SECURITIES LAWS.

3.      The Transferee represents to the Issuer and the Indenture Trustee that it is not, and is not purchasing on behalf of, as a fiduciary of, a trustee of or with assets of, an employee benefit plan or other retirement arrangement, including individual retirement accounts and annuities, Keogh plans and bank collective investment funds, insurance company general accounts or other entities in which such plans, accounts or arrangements are invested, that is subject to Part 4 of Title 1 of Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or Section 4975 of the Internal Revenue Code of 1986 as amended (the "Code").

4.      The Transferee has been furnished with all information regarding (a) the Note and distributions thereon, (b) the nature, performance and servicing of the Receivables, (c) the Indenture and (d) any other matter related thereto, that it has requested.

Very truly yours,


(Transferor)


B-2

OHSUSA:751934283.20

By: _____
Name:
Title:

B-3

OHSUSA:751934283.20

ANNEX 1 TO EXHIBIT B

QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A/QUALIFIED
PURCHASER STATUS UNDER SECTION 3(C)(7)

*[for Transferees other than Registered Investment Companies]*

The undersigned hereby certifies as follows to [name of Transferor] (the "Transferor")
and [name of Note Registrar], as Note Registrar, with respect to the Note No. 1 (the "Notes")
being transferred as described in the Transferee Certificate to which this certification relates and
to which this certification is an Annex:

1.     As indicated below, the undersigned is the chief financial officer, a person
fulfilling an equivalent function, or other executive officer of the entity purchasing the
Notes (the "Transferee").

2.     The Transferee is a "qualified institutional buyer" as that term is defined
in Rule 144A under the Securities Act of 1933 ("Rule 144A") because (i) the Transferee
owned and/or invested on a discretionary basis $[_____]¹ or more in securities
(other than the excluded securities referred to below) as of the end of the Transferee's
most recent fiscal year (such amount being calculated in accordance with Rule 144A) and
(ii) the Transferee satisfies the criteria in the category marked below.

____   *Corporation, etc.* The Transferee is a corporation (other than a bank, savings and
loan association or similar institution), Massachusetts or similar business trust,
partnership, or any organization described in Section 501(c)(3) of the Internal
Revenue Code of 1986, as amended.

____   *Bank.* The Transferee (a) is a national bank or a banking institution organized
under the laws of any State, U.S. territory or the District of Columbia, the
business of which is substantially confined to banking and is supervised by the
State or territorial banking commission or similar official or is a foreign bank or
equivalent institution, and (b) has an audited net worth of at least $25,000,000 as
demonstrated in its latest annual financial statements, *a copy of which is attached
hereto,* as of a date not more than 16 months preceding the date of sale of the
Note in the case of a U.S. bank, and not more than 18 months preceding such date
of sale for a foreign bank or equivalent institution.

____   *Savings and Loan.* The Transferee (a) is a savings and loan association, building
and loan association, cooperative bank, homestead association or similar
institution, which is supervised and examined by a state or federal authority
having supervision over any such institutions or is a foreign savings and loan
association or equivalent institution and (b) has an audited net worth of at least

---

¹ Transferee must own and/or invest on a discretionary basis at least $100,000,000 in securities unless Transferee is
a dealer, and, in that case, Transferee must own and/or invest on a discretionary basis at least $10,000,000 in
securities.

B-4

OHSUSA:751934283.20

$25,000,000 as demonstrated in its latest annual financial statements, *a copy of which is attached hereto*, as of a date not more than 16 months preceding the date of sale of the Note in the case of a U.S. savings and loan association, and not more than 18 months preceding such date of sale for a foreign savings and loan association or equivalent institution.

____ *Broker-dealer.* The Transferee is a dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended.

____ *Insurance Company.* The Transferee is an insurance company whose primary and predominant business activity is the writing of insurance or the reinsuring of risks underwritten by insurance companies and which is subject to supervision by the insurance commissioner or a similar official or agency of a State, U.S. territory or the District of Columbia.

____ *State or Local Plan.* The Transferee is a plan established and maintained by a State, its political subdivisions, or any agency or instrumentality of the State or its political subdivisions, for the benefit of its employees.

____ *ERISA Plan.* The Transferee is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974, as amended.

____ *Investment Advisor.* The Transferee is an investment advisor registered under the Investment Advisers Act of 1940, as amended.

____ *Other.* (Please supply a brief description of the entity and a cross-reference to the paragraph and subparagraph under subsection (a)(1) of Rule 144A pursuant to which it qualifies.)

3. The Purchaser is a "Qualified Purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act of 1940, as amended ("Section 3(c)(7)").

4. The term *"securities"* as used herein *does not include* (i) securities of issuers that are affiliated with the Transferee, (ii) securities that are part of an unsold allotment to or subscription by the Transferee, if the Transferee is a dealer, (iii) bank deposit notes and certificates of deposit, (iv) loan participations, (v) repurchase agreements, (vi) securities owned but subject to a repurchase agreement and (vii) currency, interest rate and commodity swaps. For purposes of determining the aggregate amount of securities owned and/or invested on a discretionary basis by the Transferee, the Transferee did not include any of the securities referred to in this paragraph.

5. For purposes of determining the aggregate amount of securities owned and/or invested on a discretionary basis by the Transferee, the Transferee used the cost of such securities to the Transferee, unless the Transferee reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published, in which case the securities were valued at market. Further, in determining such aggregate amount, the Transferee may have included securities owned by subsidiaries of the Transferee, but only if such

B-5

OHSUSA:751934283.20

subsidiaries are consolidated with the Transferee in its financial statements prepared in accordance with generally accepted accounting principles and if the investments of such subsidiaries are managed under the Transferee's direction. However, such securities were not included if the Transferee is a majority-owned, consolidated subsidiary of another enterprise and the Transferee is not itself a reporting company under the Securities Exchange Act of 1934, as amended.

6. The Transferee acknowledges that it is familiar with Rule 144A and Section 3(c)(7) and understands that the Transferor and other parties related to the Notes are relying and will continue to rely on the statements made herein because one or more sales to the Transferee may in reliance on Rule 144A and Section 3(c)(7).

7. _____ _____ Will the Transferee be purchasing the Notes
Yes   No    only for the Transferee's own account?

If the answer to the foregoing question is "no," then in each case where the Transferee is purchasing for an account other than its own, such account belongs to a third party that is itself a "qualified institutional buyer" within the meaning of Rule 144A and a "qualified purchaser" under Section 3(c)(7), and the "qualified institutional buyer" and "qualified purchaser" status of such third party has been established by the Transferee through one or more of the appropriate methods contemplated by Rule 144A and such third party has represented that it is a "qualified purchaser" under Section 3(c)(7).

8. The Transferee will notify each of the parties to which this certification is made of any changes in the information and conclusions herein. Until such notice is given, the Transferee's purchase of the Notes will constitute a reaffirmation of this certification as of the date of such purchase. In addition, if the Transferee is a bank or savings and loan as provided above, the Transferee agrees that it will furnish to such parties any updated annual financial statements that become available on or before the date of such purchase, promptly after they become available.

Print Name of Transferee

By: _____
Name:
Title:
Date:

B-6

OHSUSA:751934283.20



For Additional Information, please contact
CT&Link Customer Service
(240) 585-7700
Reports Available on the World Wide Web
@ www.ctslink.com

**WELLS FARGO**

SLS SERVICER ADVANCE REVOLVING TRUST 1

Advance Receivables Backed Variable Funding Notes, Series 2012-1

TRUSTEE REPORT

For Monthly Distribution Date of: 1/11/2013

| | | |
|---|---|---|
| Available Funds | 4,314,607.63 | |
| Reimbursement Account | - | |
| Note Payment Account | - | |
| VFN Noteholder wire to Note Payment Account the Cash Purchase Price of Additional Receivables | - | |
| Hedge Account | - | |
| Interest earned on Accounts | 4,314,607.63 | |
| Total Available Funds transferred to Note Payment Account | | |
| | | |
| Indenture Waterfall | | 4,314,607.63 |
| | - | 4,314,607.63 |
| Issuer (Owner Trustee) Expenses | 3,916.67 | 4,310,690.96 |
| Calculation Agent/Indenture Trustee Fees and Expenses | - | 4,310,690.96 |
| Agent Reimbursement | 9,600.00 | 4,301,090.96 |
| Verification Agent Fees and Expenses | 32,484.24 | 4,268,226.72 |
| VFN Noteholder Interest Payment | 5,825.12 | 4,263,401.59 |
| VFN Unused line fee | (110,000.41) | 4,373,402.01 |
| Reserve Fund reimbursement Amount | | |
| | | |
| During Funding Period | 5,500,020.76 | (1,126,618.76) |
| VFN, payment of principal until Collateral Value compliance | - | (1,126,618.76) |
| Additional Receivables | - | (1,126,618.76) |
| Withdrawal from Note Payment Account (to Funding Account) | - | (1,126,618.76) |
| Increase in Note Balance (if required) | - | (1,126,618.76) |
| Agent reimbursement (other) | - | (1,126,618.76) |
| Indemnified Parties (other) | (1,126,618.76) | 0.00 |
| Available Funds to Certificateholders | | |
| | | |
| Borrowing Base amount | 52,927,146.34 | |
| Borrowing Base True-up amount | 5,500,020.76 | |
| Ending Borrowing Base amount | 58,427,167.10 | |
| | | |
| Reserve Balance | 1,165,543.34 | |
| Current Balance in Reserve Account (Before Payment Date) | 1,056,542.93 | |
| Required Reserve Amount (before true-up) | 194,786.46 | |
| (3x) monthly interest and fees from prior period | 1,056,542.93 | |
| 2% of note principal balance | (110,000.41) | |
| Excess Reserve Amount | 1,056,542.93 | |
| Ending Balance in Reserve Account (after Payment Date movements) | | |

Wells Fargo certifies that all of the payment detailed above have been processed.

**Trustee Report subject to change to comply with reporting requirements**

Page 1 of 1

Copyright 2012, Wells Fargo Bank N.A.



For Additional Information, please contact
OTSLink Customer Service
(840) 558-7700
Reports Available on the World Wide Web
@ www.ctslnk.com

**SLS SERVICER ADVANCE REVOLVING TRUST 1**

**Advance Receivables Backed Variable Funding Notes, Series 2012-1**

TRUSTEE REPORT

For Monthly Distribution Date of: 8/10/2015

**REIMBURSEMENT ACCOUNT**

| | |
|---|---|
| Beginning Period Balance - Collections Deposited during Advance Period | 26,056,258.61 |
| Interest Earned | 438.08 |
| Available Funds transferred to Note Payment Account | (26,056,696.69) |
| Ending Period Balance | 0.00 |

**NOTE PAYMENT ACCOUNT**

| | |
|---|---|
| Beginning Period Balance | (0.01) |
| Incoming Transfers for the Period | 26,468,855.23 |
| Withdrawals during Period | (26,468,855.22) |
| Ending Period Balance | 0.00 |

**TOTAL AVAILABLE FUNDS FOR DISTRIBUTION FROM NOTE PAYMENT ACCOUNT**     26,468,855.23

| | |
|---|---|
| Issuer (Owner Trustee) Expenses | 0.00 |
| Calculation Agent/Indenture Trustee Fees and Expenses | 3,918.67 |
| Agent Reimbursement | 0.00 |
| Verification Agent Fees and Expenses | 10,000.00 |
| Reserve Fund Reimbursement Amount | (412,188.64) |
| | |
| VFN Unused line fee | 5,222.46 |
| VFN Noteholder Interest Payment | 253,303.88 |
| VFN Principal Payment | 20,600,285.78 |
| Total Payment to VFN1 Issuer from Trustee | 20,853,812.11 |
| | |
| New Receivables Funding Amount | 0.00 |
| Excess Cash Amount | 5,596,126.45 |
| Adjustment | (0.01) |
| Total Distribution to SLS | 5,596,126.44 |

**RESERVE BALANCE**

| | |
|---|---|
| Beginning Period Balance | 2,629,652.38 |
| Required Reserve Amount (the greater of 6x Interest or 2% balance) | 2,217,646.66 |
| (6x) monthly interest and fees from prior period | 2,217,646.66 |
| 2% of note principal balance | 1,551,157.96 |
| Excess Reserve Amount | (412,005.72) |
| Ending Period Balance | 2,217,646.66 |

**VFN PRINCIPAL BALANCE**

| | |
|---|---|
| Beginning Note Balance | 131,482,618.98 |
| Borrowing Base True-up amount | (20,600,285.78) |
| Ending Note Balance | 110,882,333.20 |
| Collateral Value | 110,882,333.20 |
| Collateral Test (PASS/FAIL) | Pass |

**Trustee Report subject to change to comply with reporting requirements**
Wells Fargo certifies that all of the payment detailed above have been processed.

Copyright 2012, Wells Fargo Bank N.A.

Page 1 of 1

## Note 1: Summary of Significant Accounting Policies *(continued)*

type of the loan receivable, including its expected life, and (4) our current financial condition and liquidity demands. If subsequent changes, including changes in interest rates, significantly impact the ongoing profitability of certain loan products, we may subsequently change our intent to hold these loans, and we would take actions to sell such loans. Upon such management determination, we immediately transfer these loans to the MLHFS or LHFS portfolio at LOCOM.

### Loans

Loans are reported at their outstanding principal balances net of any unearned income, cumulative charge-offs, unamortized deferred fees and costs on originated loans and unamortized premiums or discounts on purchased loans. PCI loans are reported net of any remaining purchase accounting adjustments. See the "Purchased Credit-Impaired Loans" section in this Note for our accounting policy for PCI loans.

Unearned income, deferred fees and costs, and discounts and premiums are amortized to interest income over the contractual life of the loan using the interest method. Loan commitment fees are generally deferred and amortized into noninterest income on a straight-line basis over the commitment period.

We have certain private label and co-brand credit card loans through a program agreement that involves our active participation in the operating activity of the program with a third party. We share in the economic results of the loans subject to this agreement. We consider the program to be a collaborative arrangement and therefore report our share of revenue and losses on a net basis in interest income for loans, other noninterest income and provision for credit losses as applicable. Our net share of revenue from this activity represented less than 1% of our total revenues for 2018.

Loans also include direct financing leases that are recorded at the aggregate of minimum lease payments receivable plus the estimated residual value of the leased property, less unearned income. Leveraged leases, which are a form of direct financing leases, are recorded net of related non-recourse debt. Leasing income is recognized as a constant percentage of outstanding lease financing balances over the lease terms in interest income.

**NONACCRUAL AND PAST DUE LOANS** We generally place loans on nonaccrual status when:
- the full and timely collection of interest or principal becomes uncertain (generally based on an assessment of the borrower's financial condition and the adequacy of collateral, if any), such as in bankruptcy or other circumstances;
- they are 90 days (120 days with respect to real estate 1-4 family first and junior lien mortgages) past due for interest or principal, unless both well-secured and in the process of collection;
- part of the principal balance has been charged off, except for credit card loans, which are generally not placed on nonaccrual status, but are generally fully charged off when the loan reaches 180 days past due; or
- for junior-lien mortgages, we have evidence that the related first-lien mortgage may be 120 days past due or in the process of foreclosure regardless of the junior lien delinquency status.

PCI loans are written down at acquisition to fair value using an estimate of cash flows deemed to be collectible and an accretable yield is established. Accordingly, such loans are not classified as nonaccrual because they continue to earn interest from accretable yield, independent of performance in accordance of their contractual terms, and we expect to fully collect the new carrying values of such loans (that is, the new cost basis arising out of purchase accounting).

When we place a loan on nonaccrual status, we reverse the accrued unpaid interest receivable against interest income and suspend amortization of any net deferred fees. If the ultimate collectability of the recorded loan balance is in doubt on a nonaccrual loan, the cost recovery method is used and cash collected is applied to first reduce the carrying value of the loan. Otherwise, interest income may be recognized to the extent cash is received. Generally, we return a loan to accrual status when all delinquent interest and principal become current under the terms of the loan agreement and collectability of remaining principal and interest is no longer doubtful.

We typically re-underwrite modified loans at the time of a restructuring to determine if there is sufficient evidence of sustained repayment capacity based on the borrower's financial strength, including documented income, debt to income ratios and other factors. If the borrower has demonstrated performance under the previous terms and the underwriting process shows the capacity to continue to perform under the restructured terms, the loan will generally remain in accruing status. When a loan classified as a troubled debt restructuring (TDR) performs in accordance with its modified terms, the loan either continues to accrue interest (for performing loans) or will return to accrual status after the borrower demonstrates a sustained period of performance (generally six consecutive months of payments, or equivalent, inclusive of consecutive payments made prior to the modification). Loans will be placed on nonaccrual status and a corresponding charge-off is recorded if we believe it is probable that principal and interest contractually due under the modified terms of the agreement will not be collectible.

Our loans are considered past due when contractually required principal or interest payments have not been made on the due dates.

**LOAN CHARGE-OFF POLICIES** For commercial loans, we generally fully charge off or charge down to net realizable value (fair value of collateral, less estimated costs to sell) for loans secured by collateral when:
- management judges the loan to be uncollectible;
- repayment is deemed to be protracted beyond reasonable time frames;
- the loan has been classified as a loss by either our internal loan review process or our banking regulatory agencies;
- the customer has filed bankruptcy and the loss becomes evident owing to a lack of assets; or
- the loan is 180 days past due unless both well-secured and in the process of collection.

For consumer loans, we fully charge off or charge down to net realizable value when deemed uncollectible due to bankruptcy or other factors, or no later than reaching a defined number of days past due, as follows:
- 1-4 family first and junior lien mortgages – We generally charge down to net realizable value when the loan is 180 days past due.
- Automobile loans – We generally fully charge off when the loan is 120 days past due.
- Credit card loans – We generally fully charge off when the loan is 180 days past due.
- Unsecured loans (closed-end) – We generally fully charge off when the loan is 120 days past due.

**LOANS 90 DAYS OR MORE PAST DUE AND STILL ACCRUING**
Certain loans 90 days or more past due as to interest or principal are still accruing, because they are (1) well-secured and in the process of collection or (2) real estate 1-4 family mortgage loans or consumer loans exempt under regulatory rules from being classified as nonaccrual until later delinquency, usually 120 days past due. PCI loans of $370 million at December 31, 2018, and $1.4 billion at December 31, 2017, are not included in these past due and still accruing loans even when they are 90 days or more contractually past due. These PCI loans are considered to be accruing because they continue to earn interest from accretable yield, independent of performance in accordance with their contractual terms.

Table 6.14 shows non-PCI loans 90 days or more past due and still accruing by class for loans not government insured/guaranteed.

**Table 6.14: Loans 90 Days or More Past Due and Still Accruing (1)**

| (in millions) | | Dec 31, 2018 | Dec 31, 2017 |
|---|---|---|---|
| Total (excluding PCI): | $ | 8,704 | 11,532 |
| Less: FHA insured/VA guaranteed (2) | | 7,725 | 10,475 |
| **Total, not government insured/guaranteed** | $ | **979** | **1,057** |
| By segment and class, not government insured/guaranteed: | | | |
| Commercial: | | | |
| Commercial and Industrial | $ | 43 | 26 |
| Real estate mortgage | | 51 | 23 |
| Total commercial | | 94 | 49 |
| Consumer: | | | |
| Real estate 1-4 family first mortgage | | 124 | 213 |
| Real estate 1-4 family junior lien mortgage | | 32 | 60 |
| Credit card | | 513 | 492 |
| Automobile | | 114 | 143 |
| Other revolving credit and installment | | 102 | 100 |
| Total consumer | | 885 | 1,008 |
| **Total, not government insured/guaranteed** | $ | **979** | **1,057** |

(1) Financial information for the prior period December 31, 2017 has been revised to exclude MLHFS, LHFS and loans held at fair value, which reduced "Total, not government insured/guaranteed" by $6 million.

(2) Represents loans whose repayments are predominantly insured by the FHA or guaranteed by the VA.

## Note 6: Loans and Allowance for Credit Losses (continued)

IMPAIRED LOANS Table 6.15 summarizes key information for impaired loans. Our impaired loans predominantly include loans on nonaccrual status in the commercial portfolio segment and loans modified in a TDR, whether on accrual or nonaccrual status. These impaired loans generally have estimated losses which are included in the allowance for credit losses. We have impaired loans with no allowance for credit losses when loss content has been previously recognized through charge-offs and we do not anticipate additional charge-offs or losses, or certain loans are currently performing in accordance with their terms and for which no loss has been estimated. Impaired loans exclude PCI loans. Table 6.15 includes trial modifications that totaled $149 million at December 31, 2018, and $194 million at December 31, 2017.

For additional information on our impaired loans and allowance for credit losses, see Note 1 (Summary of Significant Accounting Policies).

**Table 6.15: Impaired Loans Summary**

| | | Recorded Investment | | |
| | Unpaid principal balance (1) | Impaired loans | Impaired loans with related allowance for credit losses | Related allowance for credit losses |
|---|---|---|---|---|
| (in millions) | | | | |
| **December 31, 2018** | | | | |
| **Commercial:** | | | | |
| Commercial and industrial | $ 3,057 | 2,030 | 1,730 | 319 |
| Real estate mortgage | 1,228 | 1,032 | 1,009 | 154 |
| Real estate construction | 74 | 47 | 46 | 9 |
| Lease financing | 146 | 112 | 112 | 32 |
| Total commercial | 4,505 | 3,221 | 2,897 | 514 |
| **Consumer:** | | | | |
| Real estate 1-4 family first mortgage | 12,309 | 10,738 | 4,420 | 525 |
| Real estate 1-4 family junior lien mortgage | 1,886 | 1,694 | 1,133 | 183 |
| Credit card | 449 | 449 | 449 | 172 |
| Automobile | 153 | 89 | 43 | 8 |
| Other revolving credit and installment | 162 | 156 | 136 | 41 |
| Total consumer (2) | 14,959 | 13,126 | 6,181 | 929 |
| Total impaired loans (excluding PCI) | $ 19,464 | 16,347 | 9,078 | 1,443 |
| **December 31, 2017** | | | | |
| **Commercial:** | | | | |
| Commercial and industrial | $ 3,577 | 2,568 | 2,310 | 462 |
| Real estate mortgage | 1,502 | 1,239 | 1,207 | 211 |
| Real estate construction | 95 | 54 | 45 | 9 |
| Lease financing | 132 | 99 | 89 | 23 |
| Total commercial | 5,306 | 3,960 | 3,651 | 705 |
| **Consumer:** | | | | |
| Real estate 1-4 family first mortgage | 14,020 | 12,225 | 6,060 | 770 |
| Real estate 1-4 family junior lien mortgage | 2,135 | 1,918 | 1,421 | 245 |
| Credit card | 356 | 356 | 356 | 136 |
| Automobile | 157 | 87 | 34 | 5 |
| Other revolving credit and installment | 136 | 128 | 117 | 29 |
| Total consumer (2) | 16,804 | 14,714 | 7,988 | 1,185 |
| Total impaired loans (excluding PCI) | $ 22,110 | 18,674 | 11,639 | 1,890 |

(1) Excludes the unpaid principal balance for loans that have been fully charged off or otherwise have zero recorded investment.
(2) Includes the recorded investment of $1.3 billion and $1.4 billion at December 31, 2018 and 2017, respectively, of government insured/guaranteed loans that are predominantly insured by the FHA or guaranteed by the VA and generally do not have an allowance. Impaired loans may also have limited, if any, allowance when the recorded investment of the loan approximates estimated net realizable value as a result of charge-offs prior to a TDR modification.

**NONPERFORMING ASSETS (NONACCRUAL LOANS AND FORECLOSED ASSETS)** Table 27 summarizes nonperforming assets (NPAs) for each of the last five years. We generally place loans on nonaccrual status when:

- the full and timely collection of interest or principal becomes uncertain (generally based on an assessment of the borrower's financial condition and the adequacy of collateral, if any), such as in bankruptcy or other circumstances;
- they are 90 days (120 days with respect to real estate 1-4 family first and junior lien mortgages) past due for interest or principal, unless both well-secured and in the process of collection;
- part of the principal balance has been charged off; or
- for junior lien mortgages, we have evidence that the related first lien mortgage may be 120 days past due or in the process of foreclosure regardless of the junior lien delinquency status.

Credit card loans are not placed on nonaccrual status, but are generally fully charged off when the loan reaches 180 days past due.

Note 1 (Summary of Significant Accounting Policies – Loans) to Financial Statements in this Report describes our accounting policy for nonaccrual and impaired loans.

Nonaccrual loans were $6.5 billion at December 31, 2018, down $1.2 billion from a year ago, due to a $413 million decrease in commercial and industrial nonaccruals reflecting continued credit improvement in the portfolio, as well as a decrease of $690 million in consumer real estate nonaccruals.

**Table 27: Nonperforming Assets (Nonaccrual Loans and Foreclosed Assets)**

| | | | | December 31, | | |
|---|---|---|---|---|---|---|
| (In millions) | | 2018 | 2017 | 2016 | 2015 | 2014 |
| Nonaccrual loans: | | | | | | |
| Commercial: | | | | | | |
| Commercial and Industrial | $ | 1,486 | 1,899 | 3,199 | 1,363 | 537 |
| Real estate mortgage | | 580 | 628 | 685 | 969 | 1,490 |
| Real estate construction | | 32 | 37 | 43 | 66 | 187 |
| Lease financing | | 90 | 76 | 115 | 26 | 24 |
| Total commercial | | 2,188 | 2,640 | 4,042 | 2,424 | 2,238 |
| Consumer: | | | | | | |
| Real estate 1-4 family first mortgage | | 3,183 | 3,732 | 4,516 | 6,829 | 8,056 |
| Real estate 1-4 family junior lien mortgage | | 945 | 1,086 | 1,206 | 1,495 | 1,848 |
| Automobile | | 130 | 130 | 106 | 121 | 137 |
| Other revolving credit and installment | | 50 | 58 | 51 | 49 | 41 |
| Total consumer | | 4,308 | 5,006 | 5,879 | 8,494 | 10,082 |
| Total nonaccrual loans (1)(2)(3)(4) | $ | 6,496 | 7,646 | 9,921 | 10,918 | 12,320 |
| As a percentage of total loans | | 0.68% | 0.80 | 1.03 | 1.19 | 1.43 |
| Foreclosed assets: | | | | | | |
| Government insured/guaranteed (5) | $ | 88 | 120 | 197 | 446 | 982 |
| Non-government insured/guaranteed | | 363 | 522 | 781 | 979 | 1,627 |
| Total foreclosed assets | | 451 | 642 | 978 | 1,425 | 2,609 |
| Total nonperforming assets | $ | 6,947 | 8,288 | 10,899 | 12,343 | 14,929 |
| As a percentage of total loans | | 0.73% | 0.87 | 1.13 | 1.35 | 1.73 |

(1) Financial information for periods prior to December 31, 2018, has been revised to exclude mortgage loans held for sale (MLHFS), loans held for sale (LHFS) and loans held at fair value of $390 million, $463 million, $464 million, and $528 million at December 31, 2017, 2016, 2015, and 2014, respectively.
(2) Excludes PCI loans because they continue to earn interest income from accretable yield, independent of performance in accordance with their contractual terms.
(3) Real estate 1-4 family mortgage loans predominantly insured by the FHA or guaranteed by the VA are not placed on nonaccrual status because they are insured or guaranteed.
(4) See Note 6 (Loans and Allowance for Credit Losses) to Financial Statements in this Report for further information on impaired loans.
(5) Consistent with regulatory reporting requirements, foreclosed real estate resulting from government insured/guaranteed loans are classified as nonperforming. However, both principal and interest related to these foreclosed real estate assets are collectible because the loans were predominantly insured by the FHA or guaranteed by the VA. Foreclosure of certain government guaranteed residential real estate mortgage loans that meet criteria specified by Accounting Standards Update (ASU) 2014-14, *Classification of Certain Government-Guaranteed Mortgage Loans Upon Foreclosure*, effective as of January 1, 2014, are excluded from this table and included in Accounts Receivable in Other Assets. For more information on the classification of certain government-guaranteed mortgage loans upon foreclosure, see Note 1 (Summary of Significant Accounting Policies) to Financial Statements in this Report.

Table 29 provides an analysis of the changes in nonaccrual loans.

**Table 29: Analysis of Changes in Nonaccrual Loans**

| (in millions) | Quarter ended | | | | Year ended Dec 31, | |
|---|---|---|---|---|---|---|
| | Dec 31, 2018 | Sep 30, 2018 | Jun 30, 2018 | Mar 31, 2018 | 2018 | 2017 |
| **Commercial nonaccrual loans** | | | | | | |
| Balance, beginning of period | $ 2,298 | 2,455 | 2,409 | 2,640 | 2,640 | 4,059 |
| Inflows | 662 | 774 | 726 | 605 | 2,767 | 2,893 |
| Outflows: | | | | | | |
| Returned to accruing | (45) | (122) | (43) | (113) | (323) | (417) |
| Foreclosures | (12) | — | — | — | (12) | (20) |
| Charge-offs | (193) | (191) | (133) | (119) | (636) | (630) |
| Payments, sales and other | (522) | (618) | (504) | (604) | (2,248) | (3,245) |
| Total outflows | (772) | (931) | (680) | (836) | (3,219) | (4,312) |
| Balance, end of period | 2,188 | 2,298 | 2,455 | 2,409 | 2,188 | 2,640 |
| **Consumer nonaccrual loans** | | | | | | |
| Balance, beginning of period | 4,416 | 4,671 | 4,930 | 5,006 | 5,006 | 5,879 |
| Inflows | 569 | 572 | 578 | 714 | 2,433 | 3,093 |
| Outflows: | | | | | | |
| Returned to accruing | (269) | (319) | (342) | (374) | (1,304) | (1,583) |
| Foreclosures | (35) | (41) | (40) | (50) | (166) | (218) |
| Charge-offs | (57) | (65) | (84) | (86) | (292) | (468) |
| Payments, sales and other | (316) | (402) | (371) | (280) | (1,369) | (1,697) |
| Total outflows | (677) | (827) | (837) | (790) | (3,131) | (3,966) |
| Balance, end of period | 4,308 | 4,416 | 4,671 | 4,930 | 4,308 | 5,006 |
| Total nonaccrual loans (1) | $ 6,496 | 6,714 | 7,126 | 7,339 | 6,496 | 7,646 |

(1) Financial information for periods prior to December 31, 2018, has been revised to exclude MLHFS, LHFS and loans held at fair value of $339 million, $360 million, and $380 million, at September 30, June 30, and March 31, 2018, respectively, and $390 million at December 31, 2017.

Typically, changes to nonaccrual loans period-over-period represent inflows for loans that are placed on nonaccrual status in accordance with our policy, offset by reductions for loans that are paid down, charged off, sold, foreclosed, or are no longer classified as nonaccrual as a result of continued performance and an improvement in the borrower's financial condition and loan repayment capabilities. Also, reductions can come from borrower repayments even if the loan remains on nonaccrual. While nonaccrual loans are not free of loss content, we believe exposure to loss is significantly mitigated by the following factors at December 31, 2018:

- Over 96% of total commercial nonaccrual loans and 99% of total consumer nonaccrual loans are secured. Of the consumer nonaccrual loans, 96% are secured by real estate and 87% have a combined LTV (CLTV) ratio of 80% or less.
- losses of $358 million and $1.5 billion have already been recognized on 20% of commercial nonaccrual loans and 45% of consumer nonaccrual loans, respectively. Generally, when a consumer real estate loan is 120 days past due (except when required earlier by guidance issued by bank regulatory agencies), we transfer it to nonaccrual status. When the loan reaches 180 days past due, or is active or discharged in bankruptcy, it is our policy to write these loans down to net realizable value (fair value of collateral less estimated costs to sell). Thereafter, we re-evaluate each loan regularly and record additional write-downs if needed.
- 82% of commercial nonaccrual loans were current on interest, but were on nonaccrual status because the full or timely collection of interest or principal had become uncertain.
- 72% of commercial nonaccrual loans were current on both principal and interest, but will remain on nonaccrual status until the full and timely collection of principal and interest becomes certain.
- the remaining risk of loss of all nonaccrual loans has been considered and we believe is adequately covered by the allowance for loan losses.
- of $1.9 billion of consumer loans in bankruptcy or discharged in bankruptcy, and classified as nonaccrual, $1.3 billion were current.

We continue to work with our customers experiencing financial difficulty to determine if they can qualify for a loan modification so that they can stay in their homes. Under our proprietary modification programs, customers may be required to provide updated documentation, and some programs require completion of payment during trial periods to demonstrate sustained performance before the loan can be removed from nonaccrual status.

If interest due on all nonaccrual loans (including loans that were, but are no longer on nonaccrual at year end) had been accrued under the original terms, approximately $446 million of interest would have been recorded as income on these loans, compared with $426 million actually recorded as interest income in 2018, versus $500 million and $395 million, respectively, in 2017.

87

# Note 6:  Loans and Allowance for Credit Losses (continued)

### Table 6.17:  TDR Modifications

| | Primary modification type (1) | | | | Financial effects of modifications | | |
| | Principal (2) | Interest rate reduction | Other concessions (3) | Total | Charge-offs (4) | Weighted average Interest rate reduction | Recorded Investment related to interest rate reduction (5) |
|---|---|---|---|---|---|---|---|
| (in millions) | | | | | | | |
| **Year ended December 31, 2018** | | | | | | | |
| **Commercial:** | | | | | | | |
| Commercial and industrial | $        13 | 29 | 2,310 | 2,352 | 58 | 1.18% $ | 29 |
| Real estate mortgage | — | 44 | 375 | 419 | — | 0.88 | 44 |
| Real estate construction | — | — | 25 | 25 | — | — | — |
| Lease financing | — | — | 63 | 63 | — | — | — |
| Total commercial | 13 | 73 | 2,773 | 2,859 | 58 | 1.00 | 73 |
| **Consumer:** | | | | | | | |
| Real estate 1-4 family first mortgage | 209 | 26 | 1,042 | 1,277 | 4 | 2.25 | 119 |
| Real estate 1-4 family junior lien mortgage | 7 | 41 | 113 | 161 | 5 | 2.14 | 45 |
| Credit card | — | 336 | — | 336 | — | 12.54 | 336 |
| Automobile | 13 | 16 | 55 | 84 | 30 | 6.21 | 16 |
| Other revolving credit and installment | — | 49 | 12 | 61 | — | 7.95 | 49 |
| Trial modifications (6) | — | — | 8 | 8 | — | — | 565 |
| Total consumer | 229 | 468 | 1,290 | 1,927 | 39 | 8.96 | 565 |
| Total | $       242 | 541 | 4,003 | 4,786 | 97 | 8.06% $ | 638 |
| **Year ended December 31, 2017** | | | | | | | |
| **Commercial:** | | | | | | | |
| Commercial and industrial | $        24 | 45 | 2,912 | 2,981 | 173 | 0.64% $ | 45 |
| Real estate mortgage | 5 | 59 | 507 | 571 | 20 | 1.28 | 59 |
| Real estate construction | — | 1 | 26 | 27 | — | 0.69 | 1 |
| Lease financing | — | — | 37 | 37 | — | — | — |
| Total commercial | 29 | 105 | 3,482 | 3,616 | 193 | 1.00 | 105 |
| **Consumer:** | | | | | | | |
| Real estate 1-4 family first mortgage | 231 | 140 | 1,035 | 1,406 | 15 | 2.57 | 257 |
| Real estate 1-4 family junior lien mortgage | 25 | 82 | 81 | 188 | 14 | 3.26 | 93 |
| Credit card | — | 257 | — | 257 | — | 11.98 | 257 |
| Automobile | 2 | 15 | 67 | 84 | 39 | 5.89 | 15 |
| Other revolving credit and installment | — | 47 | 8 | 55 | 1 | 7.47 | 47 |
| Trial modifications (6) | — | — | (28) | (28) | — | — | — |
| Total consumer | 258 | 541 | 1,163 | 1,962 | 69 | 6.70 | 669 |
| Total | $       287 | 646 | 4,645 | 5,578 | 262 | 5.92% $ | 774 |
| **Year ended December 31, 2016** | | | | | | | |
| **Commercial:** | | | | | | | |
| Commercial and industrial | $        42 | 130 | 3,154 | 3,326 | 360 | 1.91% $ | 130 |
| Real estate mortgage | 2 | 105 | 560 | 667 | 1 | 1.15 | 105 |
| Real estate construction | — | 27 | 72 | 99 | — | 1.02 | 27 |
| Lease financing | — | — | 8 | 8 | — | — | — |
| Total commercial | 44 | 262 | 3,794 | 4,100 | 361 | 1.51 | 262 |
| **Consumer:** | | | | | | | |
| Real estate 1-4 family first mortgage | 338 | 288 | 1,411 | 2,037 | 49 | 2.69 | 507 |
| Real estate 1-4 family junior lien mortgage | 23 | 109 | 106 | 238 | 37 | 3.07 | 130 |
| Credit card | — | 180 | — | 180 | — | 12.09 | 180 |
| Automobile | 2 | 16 | 57 | 75 | 36 | 6.07 | 16 |
| Other revolving credit and installment | 1 | 33 | 10 | 44 | 2 | 6.83 | 33 |
| Trial modifications (6) | — | — | 44 | 44 | — | — | — |
| Total consumer | 364 | 626 | 1,628 | 2,618 | 124 | 4.92 | 866 |
| Total | $       408 | 888 | 5,422 | 6,718 | 485 | 4.13% $ | 1,128 |

(1)  Amounts represent the recorded investment in loans after recognizing the effects of the TDR, if any. TDRs may have multiple types of concessions, but are presented only once in the first modification type based on the order presented in the table above. The reported amounts include loans remodified of $1.9 billion, $2.1 billion and $1.6 billion, for the years ended December 31, 2018, 2017, and 2016, respectively.

(2)  Principal modifications include principal forgiveness at the time of the modification, contingent principal forgiveness granted over the life of the loan based on borrower performance, and principal that has been legally separated and deferred to the end of the loan, with a zero percent contractual interest rate.

(3)  Other concessions include loans discharged in bankruptcy, loan renewals, term extensions and other interest and noninterest adjustments, but exclude modifications that also forgive principal and/or reduce the contractual interest rate.

(4)  Charge-offs include write-downs of the investment in the loan in the period it is contractually modified. The amount of charge-off will differ from the modification terms if the loan has been charged down prior to the modification based on our policies. In addition, there may be cases where we have a charge-off/down with no legal principal modification. Modifications resulted in legally forgiving principal (actual, contingent or deferred) of $28 million, $32 million and $67 million for the years ended December 31, 2018, 2017, and 2016, respectively.

(5)  Reflects the effect of reduced interest rates on loans with an interest rate concession as one of their concession types, which includes loans reported as a principal primary modification type that also have an interest rate concession.

(6)  Trial modifications are granted a delay in payments due under the original terms during the trial payment period. However, these loans continue to advance through delinquency status and accrue interest according to their original terms. Any subsequent permanent modification generally includes interest rate related concessions; however, the exact concession type and resulting financial effect are usually not known until the loan is permanently modified. Trial modifications for the period are presented net of previously reported trial modifications that became permanent in the current period.

Wells Fargo & Company

Table 9.1 provides the classifications of assets and liabilities in our balance sheet for our transactions with VIEs.

**Table 9.1: Balance Sheet Transactions with VIEs**

| (in millions) | VIEs that we do not consolidate | VIEs that we consolidate | Transfers that we account for as secured borrowings | Total |
|---|---|---|---|---|
| **December 31, 2018** | | | | |
| Cash and due from banks | $ — | 139 | — | 139 |
| Interest-earning deposits with banks | — | 8 | — | 8 |
| Debt securities: | | | | |
| Trading debt securities | 2,110 | 45 | 200 | 2,355 |
| Available-for-sale debt securities (1) | 2,686 | — | 317 | 3,003 |
| Held-to-maturity debt securities | 510 | — | — | 510 |
| Loans | 1,433 | 13,564 | 94 | 15,091 |
| Mortgage servicing rights | 14,761 | — | — | 14,761 |
| Derivative assets | 53 | — | — | 53 |
| Equity securities | 11,041 | 85 | — | 11,126 |
| Other assets | — | 221 | 6 | 227 |
| Total assets | 32,594 | 14,062 | 617 | 47,273 |
| Short-term borrowings | — | — | 493 | 493 |
| Derivative liabilities | 26 | — (2) | — | 26 |
| Accrued expenses and other liabilities | 231 | 191 (2) | 8 | 430 |
| Long-term debt | 3,870 | 816 (2) | 93 | 4,779 |
| Total liabilities | 4,127 | 1,007 | 594 | 5,728 |
| Noncontrolling interests | — | 34 | — | 34 |
| Net assets | $ 28,467 | 13,021 | 23 | 41,511 |
| **December 31, 2017** | | | | |
| Cash and due from banks | $ — | 116 | — | 116 |
| Interest-earning deposits with banks | — | 371 | — | 371 |
| Debt securities: | | | | |
| Trading debt securities | 1,305 | — | 201 | 1,506 |
| Available-for-sale debt securities (1) | 3,288 | — | 358 | 3,646 |
| Held-to-maturity debt securities | 485 | — | — | 485 |
| Loans | 4,274 | 12,482 | 110 | 16,866 |
| Mortgage servicing rights | 13,628 | — | — | 13,628 |
| Derivative assets | 44 | — | — | 44 |
| Equity securities | 10,740 | 306 | — | 11,046 |
| Other assets | — | 342 | 6 | 348 |
| Total assets | 33,764 | 13,617 | 675 | 48,056 |
| Short-term borrowings | — | — | 522 | 522 |
| Derivative liabilities | 106 | 5 (2) | — | 111 |
| Accrued expenses and other liabilities | 244 | 132 (2) | 10 | 386 |
| Long-term debt | 3,590 | 1,479 (2) | 111 | 5,180 |
| Total liabilities | 3,940 | 1,616 | 643 | 6,199 |
| Noncontrolling interests | — | 283 | — | 283 |
| Net assets | $ 29,824 | 11,718 | 32 | 41,574 |

(1) Excludes certain debt securities related to loans serviced for the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC) and GNMA.
(2) There were no VIE liabilities with recourse to the general credit of Wells Fargo for the periods presented.

### Transactions with Unconsolidated VIEs

Our transactions with unconsolidated VIEs include securitizations of residential mortgage loans, CRE loans, student loans, automobile loans and leases, certain dealer floorplan loans; investment and financing activities involving collateralized debt obligations (CDOs) backed by asset-backed and CRE securities, tax credit structures, collateralized loan obligations (CLOs) backed by corporate loans, and other types of structured financing. We have various forms of involvement with VIEs, including servicing, holding senior or subordinated interests, entering into liquidity arrangements, credit default swaps and other derivative contracts. Involvements with these unconsolidated VIEs are recorded on our balance sheet in debt and equity securities, loans, MSRs, derivative assets and liabilities, other assets, other liabilities, and long-term debt, as appropriate.

## Note 9: Securitizations and Variable Interest Entities (continued)

In 2018, 2017, and 2016, we recognized net gains of $270 million, $701 million and $524 million, respectively, from transfers accounted for as sales of financial assets, in which we have a continuing involvement with the transferred assets. These net gains largely relate to commercial mortgage securitizations, and residential mortgage securitizations where the loans were not already carried at fair value.

Sales with continuing involvement during 2018, 2017 and 2016 largely related to securitizations of residential mortgages that are sold to the government-sponsored entities (GSEs), including FNMA, FHLMC and GNMA (conforming residential mortgage securitizations). During 2018, 2017 and 2016 we transferred $177.8 billion, $213.6 billion and $236.6 billion, respectively, in fair value of residential mortgages to unconsolidated VIEs and third-party investors and recorded the transfers as sales. Substantially all of these transfers did not result in a gain or loss because the loans were already carried at fair value. In connection with all of these transfers, in 2018 we recorded a $1.9 billion servicing asset, measured at fair value using a Level 3 measurement technique, securities of $5.0 billion, classified as Level 2, and a $17 million liability for repurchase losses which reflects management's estimate of probable losses related to various representations and warranties for the loans transferred, initially measured at fair value. In 2017, we recorded a $2.1 billion servicing asset, securities of $1.4 billion and a $24 million liability. In 2016, we recorded a $2.1 billion servicing asset, securities of $4.4 billion and a $36 million liability.

Table 9.4 presents the key weighted-average assumptions we used to measure residential mortgage servicing rights at the date of securitization.

During 2018, 2017 and 2016, we transferred $17.9 billion, $16.7 billion and $18.3 billion, respectively, in carrying value of commercial mortgages to unconsolidated VIEs and third-party investors and recorded the transfers as sales. These transfers resulted in gains of $280 million in 2018, $359 million in 2017 and $429 million in 2016, respectively, because the loans were carried at lower of cost or fair value (LOCOM). In connection with these transfers, in 2018 we recorded a servicing asset of $158 million, initially measured at fair value using a Level 3 measurement technique, and securities of $81 million, classified as Level 2. In 2017, we recorded a servicing asset of $166 million and securities of $65 million. In 2016, we recorded a servicing asset of $270 million and securities of $258 million.

### Retained Interests from Unconsolidated VIEs

Table 9.5 provides key economic assumptions and the sensitivity of the current fair value of residential mortgage servicing rights and other interests held to immediate adverse changes in those assumptions. "Other interests held" relate to residential and commercial mortgage loan securitizations. Residential mortgage-backed securities retained in securitizations issued through GSEs, such as FNMA, FHLMC and GNMA, are excluded from the table because these securities have a remote risk of credit loss due to the GSE guarantee. These securities also have economic characteristics similar to GSE mortgage-backed securities that we purchase, which are not included in the table. Subordinated interests include only those bonds whose credit rating was below AAA by a major rating agency at issuance. Senior interests include only those bonds whose credit rating was AAA by a major rating agency at issuance. The information presented excludes trading positions held in inventory.

### Table 9.4: Residential Mortgage Servicing Rights

| | Residential mortgage servicing rights | | |
|---|---|---|---|
| | 2018 | 2017 | 2016 |
| Year ended December 31, | | | |
| Prepayment speed (1) | 10.6% | 11.5 | 11.7 |
| Discount rate | 7.4 | 7.0 | 6.5 |
| Cost to service ($ per loan) (2)  $ | 128 | 132 | 132 |

(1) The prepayment speed assumption for residential mortgage servicing rights includes a blend of prepayment speeds and default rates. Prepayment speed assumptions are influenced by mortgage interest rate inputs as well as our estimation of drivers of borrower behavior.

(2) Includes costs to service and unreimbursed foreclosure costs, which can vary period to period depending on the mix of modified government-guaranteed loans sold to GNMA.

## Note 9: Securitizations and Variable Interest Entities *(continued)*

In addition to residential mortgage servicing rights (MSRs) included in the previous table, we have a small portfolio of commercial MSRs with a fair value of $2.3 billion and $2.0 billion at December 31, 2018 and 2017, respectively. The nature of our commercial MSRs, which are carried at LOCOM, is different from our residential MSRs. Prepayment activity on serviced loans does not significantly impact the value of commercial MSRs because, unlike residential mortgages, commercial mortgages experience significantly lower prepayments due to certain contractual restrictions, impacting the borrower's ability to prepay the mortgage. Additionally, for our commercial MSR portfolio, we are typically master/primary servicer, but not the special servicer, who is separately responsible for the servicing and workout of delinquent and foreclosed loans. It is the special servicer, similar to our role as servicer of residential mortgage loans, who is affected by higher servicing and foreclosure costs due to an increase in delinquent and foreclosed loans. Accordingly, prepayment speeds and costs to service are not key assumptions for commercial MSRs as they do not significantly impact the valuation. The primary economic driver impacting the fair value of our commercial MSRs is forward interest rates, which are derived from market observable yield curves used to price capital markets instruments. Market interest rates significantly affect interest earned on custodial deposit balances. The sensitivity of the current fair value to an immediate adverse 25% change in the assumption about interest earned on deposit balances at December 31, 2018 and 2017, results in a decrease in fair value of $320 million and $278 million, respectively. See Note 10

(Mortgage Banking Activities) for further information on our commercial MSRs.

The sensitivities in the preceding paragraph and table are hypothetical and caution should be exercised when relying on this data. Changes in value based on variations in assumptions generally cannot be extrapolated because the relationship of the change in the assumption to the change in value may not be linear. Also, the effect of a variation in a particular assumption on the value of the other interests held is calculated independently without changing any other assumptions. In reality, changes in one factor may result in changes in others (for example, changes in prepayment speed estimates could result in changes in the credit losses), which might magnify or counteract the sensitivities.

### Off-Balance Sheet Loans

Table 9.6 presents information about the principal balances of off-balance sheet loans that were sold or securitized, including residential mortgage loans sold to FNMA, FHLMC, GNMA and other investors, for which we have some form of continuing involvement (including servicer). Delinquent loans include loans 90 days or more past due and loans in bankruptcy, regardless of delinquency status. For loans sold or securitized where servicing is our only form of continuing involvement, we would only experience a loss if we were required to repurchase a delinquent loan or foreclosed asset due to a breach in representations and warranties associated with our loan sale or servicing contracts.

**Table 9.6: Off-Balance Sheet Loans Sold or Securitized**

| | | Total loans | | Delinquent loans and foreclosed assets (1) | | Net charge-offs Year ended | |
|---|---|---|---|---|---|---|---|
| | | December 31, | | December 31, | | December 31, | |
| (in millions) | | 2018 | 2017 | 2018 | 2017 | 2018 | 2017 |
| Commercial: | | | | | | | |
| Real estate mortgage | $ | 105,173 | 100,875 | 1,008 | 2,839 | 739 | 1,027 |
| Total commercial | | 105,173 | 100,875 | 1,008 | 2,839 | 739 | 1,027 |
| Consumer: | | | | | | | |
| Real estate 1-4 family first mortgage | | 1,097,128 | 1,126,208 | 8,947 | 13,393 | 466 | 735 |
| Total consumer | | 1,097,128 | 1,126,208 | 8,947 | 13,393 | 466 | 735 |
| Total off-balance sheet sold or securitized loans (2) | $ | 1,202,301 | 1,227,083 | 9,955 | 16,232 | 1,205 | 1,762 |

(1) Includes $675 million and $1.2 billion of commercial foreclosed assets and $582 million and $879 million of consumer foreclosed assets at December 31, 2018 and 2017, respectively.
(2) At December 31, 2018 and 2017, the table includes total loans of $1.1 trillion at both dates, delinquent loans of $6.4 billion and $9.1 billion, and foreclosed assets of $442 million and $619 million, respectively, for FNMA, FHLMC and GNMA. Net charge-offs exclude loans sold to FNMA, FHLMC and GNMA as we do not service or manage the underlying real estate upon foreclosure and, as such, do not have access to net charge-off information.

Table 15.4: Underlying Collateral Types of Gross Obligations

| (in millions) | | Dec 31, 2018 | Dec 31, 2017 |
|---|---|---|---|
| Repurchase agreements: | | | |
| Securities of U.S. Treasury and federal agencies (1) | $ | 38,408 | 40,507 |
| Securities of U.S. States and political subdivisions | | 159 | 92 |
| Federal agency mortgage-backed securities (1) | | 47,241 | 45,336 |
| Non-agency mortgage-backed securities | | 1,875 | 1,324 |
| Corporate debt securities (1) | | 6,191 | 8,020 |
| Asset-backed securities | | 2,074 | 2,034 |
| Equity securities | | 992 | 838 |
| Other (1) | | 340 | 1,602 |
| Total repurchases | | 97,280 | 99,753 |
| Securities lending: | | | |
| Securities of U.S. Treasury and federal agencies | | 222 | 186 |
| Federal agency mortgage-backed securities | | 2 | — |
| Corporate debt securities | | 389 | 619 |
| Equity securities (2) | | 8,349 | 10,930 |
| Other | | 6 | — |
| Total securities lending | | 8,968 | 11,735 |
| Total repurchases and securities lending | $ | 106,248 | 111,488 |

(1) Amounts for December 31, 2017, have been revised to conform with the current period classification of certain collateral.
(2) Equity securities are generally exchange traded and either re-hypothecated under margin lending agreements or obtained through contemporaneous securities borrowing transactions with other counterparties.

Table 15.5 provides the contractual maturities of our gross obligations under repurchase and securities lending agreements.

Table 15.5: Contractual Maturities of Gross Obligations

| (in millions) | | Overnight/ continuous | Up to 30 days | 30-90 days | >90 days | Total gross obligation |
|---|---|---|---|---|---|---|
| December 31, 2018 | | | | | | |
| Repurchase agreements | $ | 86,574 | 3,244 | 2,153 | 5,309 | 97,280 |
| Securities lending | | 8,669 | — | 299 | — | 8,968 |
| Total repurchases and securities lending (1) | $ | 95,243 | 3,244 | 2,452 | 5,309 | 106,248 |
| December 31, 2017 | | | | | | |
| Repurchase agreements | $ | 83,780 | 7,922 | 3,286 | 4,765 | 99,753 |
| Securities lending | | 9,634 | 584 | 1,363 | 154 | 11,735 |
| Total repurchases and securities lending (1) | $ | 93,414 | 8,506 | 4,649 | 4,919 | 111,488 |

(1) Securities lending is executed under agreements that allow either party to terminate the transaction without notice, while repurchase agreements have a term structure to them that technically matures at a point in time. The overnight/continuous repurchase agreements require election of both parties to roll the trade rather than the election to terminate the arrangement as in securities lending.

OTHER COMMITMENTS  To meet the financing needs of our customers, we may enter into commitments to purchase debt and equity securities to provide capital for their funding, liquidity or other future needs. As of December 31, 2018 and 2017, we had commitments to purchase debt securities of $335 million and $194 million, respectively, and commitments to purchase equity securities of $2.5 billion and $2.2 billion, respectively.

As part of maintaining our memberships in certain clearing organizations, we are required to stand ready to provide liquidity meant to sustain market clearing activity in the event unforeseen events occur or are deemed likely to occur. This includes commitments we have entered into to purchase securities under resale agreements from a central clearing organization that, at its option, require us to provide funding under such agreements. We do not have any outstanding amounts funded, and the amount of our unfunded contractual commitment was

$9.8 billion and $2.8 billion as of December 31, 2018 and 2017, respectively.

The Parent fully and unconditionally guarantees the payment of principal, interest, and any other amounts that may be due on securities that its 100% owned finance subsidiary, Wells Fargo Finance LLC, may issue. These guaranteed liabilities were $5 million and $0 million at December 31, 2018 and 2017, respectively. These guarantees rank on parity with all of the Parent's other unsecured and unsubordinated indebtedness.

Specialized Loan

# Servicing©

Part of the Computershare Group

8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129

DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721

003896

To obtain information about your account, contact us at:
1-800-306-6057. We accept calls from relay services on behalf
of hearing impaired borrowers.

**Mortgage Statement**
Statement Date: 09/17/18

| Account Number | 1011847871 |
|---|---|
| Payment Date | 10/01/18 |
| Payment Amount | $3,286.19 |

Property Address:
226 POTTERS DR
BAYVILLE, NJ 08721



Our records show that you are a debtor in bankruptcy. We are sending this
statement to you for informational and compliance purposes only. It is not an
attempt to collect a debt against you.

If your bankruptcy plan requires you to send your regular monthly mortgage
payments to the Trustee, you should pay the Trustee instead of us. Please contact
your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us.

**Explanation of Payment Amount**

| | |
|---|---|
| Principal | $328.14 |
| Interest | $565.41 |
| Escrow (for Taxes and Insurance) | $661.27 |
| Regular Monthly Payment | $1,554.82 |
| Total Fees and Charges | $0.00 |
| Past Unpaid Amounts | $1,730.37 |
| Total Payment Amount | $3,286.19 |

The Payment Amount does not include any amount that was past due
before you filed for bankruptcy.

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $326.50 | $2,909.36 |
| Interest | $567.05 | $5,132.59 |
| Escrow (Taxes and Insurance) | $661.27 | $5,938.84 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Suspense* | $0.00 | $16.14 |
| Total | $1,554.82 | $13,996.93 |

**Account Information**

| | |
|---|---|
| Outstanding Principal | $226,493.13 |
| Deferred Principal | $2,466.97 |
| Escrow Balance | -$3,210.99 |
| Interest Rate (Until 10/01/18) | 3.00000% |
| Prepayment Penalty | No |

We may not have received all of your mortgage payments due since you filed for bankruptcy.

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or Trustee if you have questions.

*Suspense: Any partial payments listed here are not applied to your mortgage, but instead are held in one or more separate suspense accounts. Once we receive funds equal to a full monthly payment, we will apply these funds to your mortgage.

If You Are Experiencing Financial Difficulty: You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

| Paid Last Month | $0.00 | This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed |
|---|---|---|
| Total Paid During Bankruptcy | $83.67 | amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate |
| Current Balance | $14.71 | from your regular monthly mortgage payment. |

| Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/Charges | Suspense* |
|---|---|---|---|---|---|---|---|---|
| 09/27/18 | Taxes Disbursement | 1267.84 | 0.00 | 0.00 | 1267.84 | 0.00 | 0.00 | 0.00 |
| 09/04/18 | Suspense Credit | 1554.82 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1554.82 |
| 09/04/18 | Mortgage Payment | 1554.82 | 567.05 | 326.50 | 661.27 | 0.00 | 0.00 | 0.00 |
| 09/04/18 | Suspense Reversal | -1554.82 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1554.82 |

## PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.

142SL0101.MICRRegMid.o1.d.2125/003896/004555

142SLP0008 / R

Specialized Loan
## Servicing
Part of the Computershare Group



8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129

||¹||₁₁··¹||||₁₁||¹|·¹|₁|·|₁₁₁₁||¹·₁₁₁|·||₁|||||₁₁||₁|·|₁·|||||

DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721

To obtain information about your account, contact us at:
1-800-306-6057. We accept calls from relay services on behalf
of hearing impaired borrowers.

**Mortgage Statement**
### Statement Date: 10/17/18

| Account Number | 1011647871 |
|---|---|
| Payment Date | 11/01/18 |
| Payment Amount | $3,333.34 |

Property Address:
226 POTTERS DR
BAYVILLE, NJ 08721

---

**Bankruptcy Message**

Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us.

**Account Information**

| | |
|---|---|
| Principal | $306.63 |
| Interest | $635.17 |
| Escrow (for Taxes and Insurance) | $661.27 |
| Regular Monthly Payment | $1,602.97 |
| Total Fees and Charges | $0.00 |
| Past Unpaid Amounts | $1,730.37 |
| Total Payment Amount | $3,333.34 |

The Payment Amount does not include any amount that was past due before you filed for bankruptcy.

**Outstanding Principal / Account Information**

| | |
|---|---|
| Outstanding Principal | $226,165.81 |
| Deferred Principal | $2,466.97 |
| Escrow Balance | $-2,549.72 |
| Interest Rate (Until 09/01/52) | 3.37500% |
| Prepayment Penalty | No |

**Breakdown of Payments**

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $327.32 | $3,236.88 |
| Interest | $566.23 | $5,698.82 |
| Escrow (Taxes and Insurance) | $661.27 | $6,600.11 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Suspense* | $0.00 | $16.14 |
| Total | $1,554.82 | $15,551.75 |

**Important Messages**

We may not have received all of your mortgage payments due since you filed for bankruptcy.

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or Trustee if you have questions.

*Suspense: Any partial payments listed here are not applied to your mortgage, but instead are held in one or more separate suspense accounts. Once we receive funds equal to a full monthly payment, we will apply those funds to your mortgage.

If You Are Experiencing Financial Difficulty: You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**Summary of Amounts Past Due When You Filed for Bankruptcy (Additional Account)**

| | |
|---|---|
| Paid Last Month | $0.00 |
| Total Paid During Bankruptcy | $63.67 |
| Current Balance | $14.71 |

This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment.

**Transaction Activity**

| Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/Charges | Suspense* |
|---|---|---|---|---|---|---|---|---|
| 10/01/18 | Suspense* Credit | 1554.82 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1554.82 |
| 10/01/18 | Mortgage Payment | 1554.82 | 566.23 | 327.32 | 661.27 | 0.00 | 0.00 | -1554.82 |
| 10/01/18 | Suspense Reversal | -1554.82 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1554.82 |

## PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.

142SL0101.MICRRegMid.el.d.2245/010020/012725

42SLP0008 / R

Specialized Loan

# Servicing



Part of The Computershare Group

8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129

DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721

To obtain information about your account, contact us at:
1-800-306-6057. We accept calls from relay services on behalf
of hearing impaired borrowers.

Mortgage Statement

## Statement Date: 11/16/18

| Account Number | 1011847871 |
|---|---|
| Payment Date | 12/01/18 |
| Payment Amount | $3,333.34 |

Property Address:
226 POTTERS DR
BAYVILLE, NJ 08721

---

Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us.

| Principal | $307.39 |
|---|---|
| Interest | $634.31 |
| Escrow (for Taxes and Insurance) | $661.27 |
| Regular Monthly Payment | $1,602.97 |
| Total Fees and Charges | $0.00 |
| Past Unpaid Amounts | $4,730.37 |
| Total Payment Amount | $3,333.34 |

The Payment Amount does not include any amount that was past due before you filed for bankruptcy.

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $328.14 | $3,564.82 |
| Interest | $565.41 | $6,264.23 |
| Escrow (Taxes and Insurance) | $661.27 | $7,261.30 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Suspense* | $48.15 | $64.29 |
| Total | $1,602.97 | $17,164.72 |

| Outstanding Principal | $225,837.67 |
|---|---|
| Deferred Principal | $0.00 |
| Escrow Balance | $-5,409.29 |
| Interest Rate (Until 09/01/52) | 3.37500% |
| Prepayment Penalty | No |

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or Trustee if you have questions.

*Suspense: Any partial payments listed here are not applied to your mortgage, but instead are held in one or more separate suspense accounts. Once we receive funds equal to a full monthly payment, we will apply those funds to your mortgage.

If You Are Experiencing Financial Difficulty: You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

| Paid Last Month | $0.00 |
|---|---|
| Total Paid During Bankruptcy | $83.67 |
| Current Balance | $14.71 |

This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment.

| Effective Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/Charges | Suspense* |
|---|---|---|---|---|---|---|---|---|
| 10/18/18 | Taxes Disbursement | 1267.84 | 0.00 | 0.00 | 1267.84 | 0.00 | 0.00 | 0.00 |
| 11/01/18 | Suspense* Credit | 1602.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1602.97 |
| 11/01/18 | Mortgage Payment | 1554.82 | 565.41 | 328.14 | 661.27 | 0.00 | 0.00 | 48.15 |
| 11/01/18 | Suspense* Credit | 48.15 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1602.97 |
| 11/01/18 | Suspense Reversal | -1602.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11/15/18 | Insurance Disbursement | 2253.00 | 0.00 | 0.00 | 2253.00 | 0.00 | 0.00 | |

## PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.

142SL0101.MICRRegMfd.el.d.2372/016574/020835/i1

142SLP0008 / R

Specialized Loan
# Servicing
Part of the Computershare Group

To obtain information about your account, contact us at:
1-800-306-6057. We accept calls from relay services on behalf
of hearing impaired borrowers.

Mortgage Statement
Statement Date: 12/17/18

8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129

| Account Number | 1011847871 |
|---|---|
| Payment Date | 01/01/19 |
| Payment Amount | $3,487.08 |

DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721

Property Address:
226 POTTERS DR
BAYVILLE, NJ 08721

*Year End*

Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us.

| | |
|---|---|
| Principal | $308.26 |
| Interest | $633.44 |
| Escrow (for Taxes and Insurance) | $766.86 |
| Regular Monthly Payment | $1,708.56 |
| Total Fees and Charges | $0.00 |
| Past Unpaid Amounts | $1,778.52 |
| Total Payment Amount | $3,487.08 |

The Payment Amount does not include any amount that was past due before you filed for bankruptcy.

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $308.53 | $3,871.35 |
| Interest | $635.17 | $6,899.40 |
| Escrow (Taxes and Insurance) | $661.27 | $7,922.65 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Suspense¹ | $0.00 | $64.29 |
| Total | $1,602.97 | $18,757.69 |

| | |
|---|---|
| Outstanding Principal | $225,631.14 |
| Deferred Principal | $0.00 |
| Escrow Balance | $-4,748.02 |
| Interest Rate (Until 09/01/52) | 3.37500% |
| Prepayment Penalty | No |

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or Trustee if you have questions.

¹Suspense: Any partial payments listed here are not applied to your mortgage, but instead are held in one or more separate suspense accounts. Once we receive funds equal to a full monthly payment, we will apply those funds to your mortgage.

If You Are Experiencing Financial Difficulty: You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

| Paid Last Month | $0.00 |
|---|---|
| Total Paid During Bankruptcy | $83.67 |
| Current Balance | $14.71 |

This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment.

| Effective Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/Charges | Suspense¹ |
|---|---|---|---|---|---|---|---|---|
| 11/30/18 | Suspense¹ Credit | 1602.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1602.97 |
| 11/30/18 | Mortgage Payment | 1602.97 | 635.17 | 306.53 | 661.27 | 0.00 | 0.00 | -1602.97 |
| 11/30/18 | Suspense Reversal | -1602.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1602.97 |

## PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.

1428L0101.MICRRegMld.ol.d.2481/001632/002177

142SLP0008 / R



Specialized Loan

# Servicing

Part of the Computershare Group

8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129

ı|ıı·ı||ıı|ıl|ıl|ıl|ılı·ıl||ıı|ıl|ı|ı|l||ıı·ıl|ıhı|ı|ı·ı|

DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721

To obtain information about your account, contact us at:
1-800-306-6057. We accept calls from relay services on behalf
of hearing impaired borrowers.

**Mortgage Statement**
Statement Date: 01/17/19

| Account Number | 1011847871 |
|---|---|
| Payment Date | 02/01/19 |
| Payment Amount | $3,592.67 |

Property Address:
226 POTTERS DR
BAYVILLE, NJ 08721

*[handwritten]* January YTD should be $0 ... But for some reason the bank is trying hard to show they paid HAMP funds ... on 1/01/2019

## Bankruptcy Message

Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us.

## Explanation of Payment Amount

| Principal | $325.58 |
|---|---|
| Interest | $616.12 |
| Escrow (for Taxes and Insurance) | $766.86 |
| Regular Monthly Payment | $1,708.56 |
| Total Fees and Charges | $0.00 |
| Past Unpaid Amounts | $1,884.11 |
| Total Payment Amount | $3,592.67 |

*The Payment Amount does not include any amount that was past due before you filed for bankruptcy.*

## Prior Account Payments

|  | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $6,140.72 | $6,140.72 |
| Interest | $634.31 | $634.31 |
| Escrow (Taxes and Insurance) | $661.27 | -$661.27 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Suspense* | $0.00 | $64.29 |
| Total | $7,436.30 | $7,600.59 |

## Account Information

| Outstanding Principal | $219,390.42 |
|---|---|
| Deferred Principal | $2,466.97 |
| Escrow Balance | -$4,098.76 |
| Interest Rate (Until 09/01/52) | 3.37500% |
| Prepayment Penalty | No |

## Important Messages

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or Trustee if you have questions.

*Suspense: Any partial payments listed here are not applied to your mortgage, but instead are held in one or more separate suspense accounts. Once we receive funds equal to a full monthly payment, we will apply those funds to your mortgage.

If You Are Experiencing Financial Difficulty: You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

## Summary of Amounts Paid During and Before Filing for Bankruptcy

| Paid Last Month | $0.00 |
|---|---|
| Total Paid During Bankruptcy | $83.57 |
| Current Balance | $14.71 |

This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment.

## Transaction Activity (12/18/18 to 01/17/19)

| Effective Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/Charges | Suspense* |
|---|---|---|---|---|---|---|---|---|
| 12/31/18 | Suspense* Credit | 1602.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1602.97 |
| 12/31/18 | Mortgage Payment | 1602.97 | 634.31 | 307.39 | 661.27 | 0.00 | 0.00 | 0.00 |
| 12/31/18 | Suspense Reversal | -1602.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1602.97 |
| 12/31/18 | Additional Principal Payment | 5833.33 | 0.00 | 5833.33 | 0.00 | 0.00 | 0.00 | 0.00 |

**PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.**

142SL0101.MICRRegMtd.sl.d.2637/011568/017277/il

42SLP0008 / R

Specialized Loan
## Servicing
Part of the Computershare Group

6742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129

DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721

To obtain information about your account, contact us at:
1-800-306-6057. We accept calls from relay services on behalf
of hearing impaired borrowers.

Mortgage Statement
Statement Date: 02/18/19

| Account Number | 1011847871 |
|---|---|
| Payment Date | 03/01/19 |
| Payment Amount | $3,698.26 |

Property Address:
226 POTTERS DR
BAYVILLE, NJ 08721

---

Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only; it is not an attempt to collect a debt against you.

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us.

| | | Principal | $326.49 |
|---|---|---|---|
| | | Interest | $615.21 |
| | | Escrow (for Taxes and Insurance) | $766.86 |
| | | Regular Monthly Payment | $1,708.56 |
| | | Total Fees and Charges | $0.00 |
| | | Past Unpaid Amounts | $1,989.70 |
| | | Total Payment Amount | $3,698.26 |

The Payment Amount does not include any amount that was past due before you filed for bankruptcy.

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $324.66 | $6,465.38 |
| Interest | $617.04 | $1,251.35 |
| Escrow (Taxes and Insurance) | $766.86 | $1,428.13 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Suspense* | $0.00 | $64.29 |
| Total | $1,708.56 | $9,209.15 |

| Outstanding Principal | $219,065.76 |
|---|---|
| Deferred Principal | $2,466.97 |
| Escrow Balance | $4,642.46 |
| Interest Rate (Until 09/01/62) | 3.37500% |
| Prepayment Penalty | No |

This statement may not show recent payments you sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or Trustee if you have questions.

*Suspense: Any partial payments listed here are not applied to your mortgage, but instead are held in one or more separate suspense accounts. Once we receive funds equal to a full monthly payment, we will apply those funds to your mortgage.

If You Are Experiencing Financial Difficulty: You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

| Paid Last Month | $0.00 | This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment. |
|---|---|---|
| Total Paid During Bankruptcy | $83.67 | |
| Current Balance | $14.71 | |

| Effective Date | Description | | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/Charges | Suspense* |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

Please see transaction history in detail starting with page 3

## PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.

142SL0101.MICRRegMtd.el.d.2761/003130/008381

142SLP0008 / R

LOAN NUMBER: 1011847871

SPECIALIZED LOAN SERVICING LLC       Check if your address has changed and



Specialized Loan
**Servicing**
Part of the Computershare Group

| Effective Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/Charges | Suspense* |
|---|---|---|---|---|---|---|---|---|
| | | | | 0.00 | 1222.56 | 0.00 | 0.00 | 0.00 |
| 01/22/19 | Taxes Disbursement | 1222.56 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1708.56 |
| 01/30/19 | Suspense Credit | 1708.56 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 01/30/19 | Mortgage Payment | 1708.56 | 617.04 | 324.66 | 766.86 | 0.00 | 0.00 | -1708.56 |
| 01/30/19 | Suspense Reversal | -1708.56 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -1708.56 |

142SL0101.MICRRegMld.ol.d.2761/003130/008382

142SLP0008 / R

Computershare Holdings, Inc. d/b/a
Specialized Loan Servicing LLC
P.O. Box 636005
Littleton, CO 80163-6005

Customer Care Number: 1-800-315-4757
Customer Care Hours: 6:00am – 6:00pm (MT)

| IMPORTANT TAX RETURN DOCUMENT ENCLOSED |

DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721
UNITED STATES

**1098 Mortgage Interest Statement**
**TAX YEAR - 2018**

Loan Number: 1011847871

Customer Care Number:
   1-800-315-4757
Hours:   Monday through Friday
   6:00am – 6:00pm (MT)
We accept calls from relay services on
behalf of hearing impaired borrowers.

01/11/2019

Property Located:
226 POTTERS DR
BAYVILLE, NJ 08721

*[handwritten: This does not represent of HAMP Corrective Balance]*

*[handwritten: ???]*

If your mortgage loan was acquired by Specialized Loan Servicing during 2018 the beginning balances on Principal and Escrow are the amounts transferred from your previous servicer.

| PRINCIPAL | | UNAPPLIED | | ESCROW | | BUYDOWN ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|
| BEGINNING BALANCE | 229402.49 | BEGINNING BALANCE | 16.14 | BEGINNING BALANCE | -5527.43 | BEGINNING BALANCE | 0.00 |
| AMOUNT PAID | 3971.35 | AMOUNT PAID | 7484.45 | AMOUNT PAID | 7922.05 | DISBURSEMENTS | 0.00 |
| INTEREST SHORTAGE ADDED TO PRINCIPAL | 0.00 | AMOUNT DISBURSED | 0.00 | AMOUNT DISBURSED | -7143.24 | ADJUSTMENTS | 0.00 |
| AMOUNT DISBURSED | 0.00 | | | ESCROW INTEREST | 0.00 | | |
| ENDING BALANCE | 225531.14 | ENDING BALANCE | 7500.59 | ENDING BALANCE | -4748.62 | ENDING BALANCE | 0.00 |

| INTEREST PAID | | INTEREST SHORTAGE UNPAID BALANCE | | ESCROW DISBURSEMENTS | | OTHER ITEMS | |
|---|---|---|---|---|---|---|---|
| GROSS INTEREST PAID | 6899.40 | BEGINNING BALANCE | 0.00 | REAL ESTATE TAXES DISBURSED | 4880.24 | LATE CHARGES PAID | 0.00 |
| PLUS PREPAID INT. NOT ALLOWED PRIOR YEARS | 0.00 | | | | | | |
| LESS INTEREST SUBSIDY (BUYDOWN) | 0.00 | ADDED INTEREST SHORTAGE | 0.00 | INSURANCE | 2263.00 | LATE CHARGES DUE BUT UNPAID | 0.00 |
| LESS INTEREST SHORTAGE | 0.00 | | | | | | |
| LESS PREPAID INTEREST NOT ALLOWED THIS YR. | 0.00 | LESS INTEREST SHORTAGE PREPAID | 0.00 | | | LIFE AND/OR DISABILITY | 0.00 |
| PLUS INTEREST SHORTAGE PAID | 0.00 | | | | | | |
| LESS PRIOR YEAR INTEREST PAID | 0.00 | ENDING BALANCE | 0.00 | MIP/PMI | 0.00 | | |
| LESS THIRD PARTY INT PAID YTD | 0.00 | | | | | | |
| NET INTEREST PAID | 6899.40 | | | | | | |
| MORTGAGE POINTS PAID | 0.00 | | | ESCROW REFUND | 0.00 | | |
| REFUND OF OVERPAID INTEREST | 0.00 | | | MISCELLANEOUS | 0.00 | | |

**PAYMENT CALCULATION**

| PRINCIPAL INTEREST | ESCROW/IMPOUND | CREDIT INSURANCE | SERVICE CHARGE | REPLACEMENT RESERVE | MISCELLANEOUS | TOTAL PAYMENT |
|---|---|---|---|---|---|---|
| 941.70 | 661.27 | 0.00 | 0.00 | 0.00 | 0.00 | 1602.97 |

SEE BACK SIDE FOR IMPORTANT INFORMATION

The Form 1098 year-end Mortgage Interest Statement summarizes the payments you paid to your mortgage servicer(s). If no payments were received during the calendar year of 2018 (or during the time we serviced the account during the calendar year of 2018), IRS Form 1098 will reflect a zero in box 1 (no interest paid). We send this form and the accompanying notices to ensure compliance with applicable state and federal disclosure requirements.

| ☐ VOID ☐ CORRECTED (if checked) | | | |
|---|---|---|---|
| RECIPIENT'S/LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br>Computershare Holdings, Inc. d/b/a<br>Specialized Loan Servicing LLC<br>P.O. Box 636005<br>Littleton, CO 80163-6005<br>Customer Care Number: 1-800-315-4757 | *Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901<br><br>**2018**<br><br>Form 1098 | **Mortgage Interest Statement** |
| | 1 Mortgage interest received from payer(s)/borrower(s)*<br>$ 6899.40 | | Copy B<br>For Payer/<br>Borrower |
| RECIPIENT'S/LENDER'S TIN | PAYER'S/BORROWER'S TIN | 2 Outstanding mortgage principal as of 1/1/2018 | 3 Mortgage origination date | The information in boxes 1 |

*handwritten:* This does not represent of Hulric Oncations Balance

If your mortgage loan was acquired by Specialized Loan Servicing during 2018 the beginning balances on Principal and Escrow are the amounts transferred from your previous servicer.

| PRINCIPAL | | UNAPPLIED | | ESCROW | | BUYDOWN ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|
| BEGINNING BALANCE | 229402.49 | BEGINNING BALANCE | 16.14 | BEGINNING BALANCE | -5527.43 | BEGINNING BALANCE | 0.00 |
| AMOUNT PAID | 3971.35 | AMOUNT PAID | 7494.45 | AMOUNT PAID | 7922.65 | DISBURSEMENTS | 0.00 |
| INTEREST SHORTAGE ADDED TO PRINCIPAL | 0.00 | AMOUNT DISBURSED | 0.00 | AMOUNT DISBURSED | -7143.24 | ADJUSTMENTS | 0.00 |
| AMOUNT DISBURSED | 0.00 | | | ESCROW INTEREST | 0.00 | | |
| ENDING BALANCE | 226631.14 | ENDING BALANCE | 7500.59 | ENDING BALANCE | -4748.02 | ENDING BALANCE | 0.00 |

| INTEREST PAID | | INTEREST SHORTAGE UNPAID BALANCE | | ESCROW DISBURSEMENTS | | OTHER ITEMS | |
|---|---|---|---|---|---|---|---|
| GROSS INTEREST PAID | 6909.40 | BEGINNING BALANCE | 0.00 | REAL ESTATE TAXES DISBURSED | 4880.24 | LATE CHARGES PAID | 0.00 |
| PLUS PREPAID INT. NOT ALLOWED PRIOR YEARS | 0.00 | | | | | | |
| LESS INTEREST SUBSIDY (BUYDOWN) | 0.00 | ADDED INTEREST SHORTAGE | 0.00 | INSURANCE | 2263.00 | LATE CHARGES DUE BUT UNPAID | 0.00 |
| LESS INTEREST SHORTAGE | 0.00 | | | | | | |
| LESS PREPAID INTEREST NOT ALLOWED THIS YR. | 0.00 | LESS INTEREST SHORTAGE PREPAID | 0.00 | | | LIFE AND/OR DISABILITY | 0.00 |
| PLUS INTEREST SHORTAGE PAID | 0.00 | | | | | | |
| LESS PRIOR YEAR INTEREST PAID | 0.00 | ENDING BALANCE | 0.00 | MIP/PMI | 0.00 | | |
| LESS THIRD PARTY INT PAID YTD | 0.00 | | | | | | |
| NET INTEREST PAID | 6909.40 | | | | | | |
| MORTGAGE POINTS PAID | 0.00 | | | ESCROW REFUND | 0.00 | | |
| REFUND OF OVERPAID INTEREST | 0.00 | | | MISCELLANEOUS | 0.00 | | |

### PAYMENT CALCULATION

| PRINCIPAL INTEREST | ESCROW/IMPOUND | CREDIT INSURANCE | SERVICE CHARGE | REPLACEMENT RESERVE | MISCELLANEOUS | TOTAL PAYMENT |
|---|---|---|---|---|---|---|
| 941.70 | 661.27 | 0.00 | 0.00 | 0.00 | 0.00 | 1602.97 |

SEE BACK SIDE FOR IMPORTANT INFORMATION

The Form 1098 year-end Mortgage Interest Statement summarizes the payments you paid to your mortgage servicer(s). If no payments were received during the calendar year of 2018 (or during the time we serviced the account during the calendar year of 2018), IRS Form 1098 will reflect a zero in box 1 (no interest paid). We send this form and the accompanying notices to ensure compliance with applicable state and federal disclosure requirements.

☐ VOID   ☐ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br><br>Computershare Holdings, Inc. d/b/a<br>Specialized Loan Servicing LLC<br>P.O. Box 636005<br>Littleton, CO 80163-6005<br>Customer Care Number: 1-800-315-4757 | *Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901<br><br>20**18**<br><br>Form 1098 | Mortgage Interest Statement |
|---|---|---|---|
| | 1 Mortgage interest received from payer(s)/borrower(s)*<br>$ 6899.40 | | Copy B<br>For Payer/<br>Borrower |
| RECIPIENT'S/LENDER'S TIN<br><br>35-2429917 | PAYER'S/BORROWER'S TIN<br><br>XXX-XX-0594 | 2 Outstanding mortgage principal as of 1/1/2018<br>$ 229402.49 | 3 Mortgage origination date<br>10/05/06 | The information in boxes 1 through 9 is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points, reported in boxes 1 and 6; or because you didn't report the refund of interest (box 4); or because you claimed a nondeductible item. |
| | | 4 Refund of overpaid interest<br>$ 0.00 | 5 Mortgage insurance premiums<br>$ 0.00 | |
| PAYER'S/BORROWER'S name, Street address (including apt. no.) City or town, state or province, country, and ZIP or foreign postal code<br><br>DONNA J DEROSA-RUQUET<br>226 POTTERS DR<br>BAYVILLE, NJ 08721 | | 6 Points paid on purchase of principal residence<br>$ 0.00 | |
| | | 7 ☒ If address of property securing mortgage is the same as PAYER'S/BORROWER'S address, the box is checked, or the address or description is entered in box 8. | |
| | | 8 Address or description of property securing mortgage (see instructions) | |
| 9 Number of properties securing the mortgage<br><br>1 | 10 Other | | |
| Account number (see instructions)<br><br>1011847871 | | | |

Form **1098**     (Keep for your records)     www.irs.gov/form1098     Department of the Treasury - Internal Revenue Service

Computershare Holdings, Inc. d/b/a
Specialized Loan Servicing LLC
P.O. Box 636005
Littleton, CO 80163-6005
Customer Care Number: 1-800-315-4757
Customer Care Hours: 6:00am – 6:00pm (MT)

IMPORTANT TAX RETURN DOCUMENT ENCLOSED

ı||ı|ıll|ı|[ı|ı]||ıı||||ı·||ıµ||ı|ıµ|ı·ıı·||||ı|ıµ|ılı|µ|lı

DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721
UNITED STATES

1098 Mortgage Interest Statement
TAX YEAR - 2018

Loan Number: 1011847871

Customer Care Number:
          1-800-315-4757
Hours:   Monday through Friday
          6:00am – 6:00pm (MT)
We accept calls from relay services on
behalf of hearing impaired borrowers.

01/29/2019

Property Located:
226 POTTERS DR
BAYVILLE, NJ 08721

☐ VOID  ☒ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | *Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901  2018  Form 1098 | Mortgage Interest Statement |
|---|---|---|---|
| Computershare Holdings, Inc. d/b/a Specialized Loan Servicing LLC P.O. Box 636005 Littleton, CO 80163-6005 Customer Care Number: 1-800-315-4757 | | | |
| | 1 Mortgage Interest received from payer(s)/borrower(s)* $ 7533.71 | | Copy B For Payer/ Borrower |
| RECIPIENT'S/LENDER'S TIN      PAYER'S/BORROWER'S TIN | 2 Outstanding mortgage principal as of 1/1/2018 | 3 Mortgage origination date | The information in boxes 1 |
| 35-2429917                    XXX-XX-0594 | $ 229402.49 | 10/05/06 | |

☐ VOID  ☒ CORRECTED (if checked)

| RECIPIENT'S/LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br><br>Computershare Holdings, Inc. d/b/a<br>Specialized Loan Servicing LLC<br>P.O. Box 636005<br>Littleton, CO 80163-6005<br>Customer Care Number: 1-800-315-4757 | *Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person. | OMB No. 1545-0901<br><br>2018<br><br>Form 1098 | Mortgage Interest Statement |
|---|---|---|---|
|  | 1 Mortgage interest received from payer(s)/borrower(s)*<br>$ 7533.71 | | Copy B<br>For Payer/<br>Borrower |
| RECIPIENT'S/LENDER'S TIN         PAYER'S/BORROWER'S TIN<br><br>35-2429917                    XXX-XX-0594 | 2 Outstanding mortgage principal as of 1/1/2018<br>$ 229402.49 | 3 Mortgage origination date<br>10/05/06 | The information in boxes 1 through 9 is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points, reported in boxes 1 and 6; or because you didn't report the refund of interest (box 4); or because you claimed a nondeductible item. |
|  | 4 Refund of overpaid interest<br>$ 0.00 | 5 Mortgage insurance premiums<br>$ 0.00 | |
| PAYER'S/BORROWER'S name, Street address (including apt. no.) City or town, state or province, country, and ZIP or foreign postal code<br><br>DONNA J DEROSA-RUQUET<br>226 POTTERS DR<br>BAYVILLE, NJ 08721 | 6 Points paid on purchase of principal residence<br>$ 0.00 | | |
|  | 7 ☒ If address of property securing mortgage is the same as PAYER'S/BORROWER'S address, the box is checked, or the address or description is entered in box 8. | | |
|  | 8 Address or description of property securing mortgage (see instructions) | | |
| 9 Number of properties securing the mortgage<br>1                  10 Other | | | |
| Account number (see instructions)<br><br>1011847871 | | | |

Form 1098                    (Keep for your records)          www.irs.gov/form1098       Department of the Treasury - Internal Revenue Service

Specialized Loan Servicing LLC
8742 Lucent Blvd
Suite 300
Highlands Ranch CO 80129



**WESTERN UNION**

**SPEEDPAY**

‖‖|‖‖ᵐᵗᵒᵒᵐᵗᵗₗᵗₕₗₗᵗₗ₀‖‖ₗₗₕₗₗₗₕₗₗₗₑₗₗₗₐₗₗₕ‖‖ₗₕₗₕₗₕₗₗᵗₗᵗₗ‖



DONNA J DEROSA-RUQUET
226 POTTERS DR
BAYVILLE NJ 08721-2527

000116                              100216 - 115

September 27, 2016

Re: Specialized Loan Servicing LLC 1011847871

Dear Donna J Derosa-Ruquet:

This letter is to confirm that you verbally authorized a single payment to Specialized Loan Servicing LLC on 09/26/16 to the account referenced above.

Details regarding the transaction appear below:

| | |
|---|---|
| Payment Amount: | $1,419.44 |
| Fee Amount: | $9.95 |
| This Payment Scheduled On: | 09/26/16 |
| Drawn On: | TD Bank, National Association |
| Bank Account: | ******5605 |
| Confirmation Number: | 0003992800 |

Per our agreement, the above noted funds will be automatically debited from your bank account. Please retain this letter as documentation regarding the transaction. On your bank account statement, typically, you will not see a check number; you will see an ACH or EFT Debit.

If your bank does not allow for ACH transactions, your payment may be processed as a check transaction.

If you have any questions, please contact our Customer Care Center at 1-800-315-4757.

Sincerely,

Specialized Loan Servicing LLC

100216-AC-115

Specialized Loan Servicing LLC
8742 Lucent Blvd
Suite 300
Highlands Ranch CO 80129



 DONNA J DEROSA-RUQUET
226 POTTERS DR                    100216 - 364
000364  BAYVILLE NJ  08721-2527

December 01, 2016

Re: Specialized Loan Servicing LLC 1011847871

Dear DONNA J DEROSA-RUQUET:

This letter is to confirm that you verbally authorized a single payment to Specialized Loan
Servicing LLC on 11/30/16 to the account referenced above.

Details regarding the transaction appear below:

Payment Amount:          $1,419.44
Fee Amount:              $9.95
This Payment Scheduled On: 11/30/16
Drawn On:                TD Bank, National Association
Bank Account:            ******5605
Confirmation Number:     0004138037

Per our agreement, the above noted funds will be automatically debited from your bank
account. Please retain this letter as documentation regarding the transaction. On your
bank account statement, typically, you will not see a check number; you will see an ACH
or EFT Debit.

If your bank does not allow for ACH transactions, your payment may be processed as a
check transaction.

If you have any questions, please contact our Customer Care Center at 1-800-315-4757.

Sincerely,

Specialized Loan Servicing LLC

100216-AC-364    PAP-FORM-A-D