**Donna DeRosa-Ruquet**
**Debtor Pro Se**
**226 Potters Drive**
**Bayville, New Jersey 08721**
**732.278.3227**

US BANKRUPTCY COURT
FILED
TRENTON, NJ
2019 APR -9 P 12:15
JEANNE A. NAUGHTON
BY: [signature]
DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

| | |
|---|---|
| **IN RE:**<br>**DONNA DEROSA-RUQUET**<br>**SCOTT RUQUET**<br><br>**DEBTOR(S)**<br>**VS**<br>**DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2004-5 ASSET BACKED CERTIFICATES, SERIES 2004-5**<br><br>**NATIONSTAR MORTGAGE LLC**<br><br>**THE NOTE HOLDER**<br><br>**JOHN BANK, ET AL AND ITS SUCCESSORS**<br>**JANE BANK ET AL AND ITS SUCCESSORS** | **CASE NO. 14-17571-KCF**<br>**CHAPTER 13**<br><br>**SUPPLEMENT TO EVIDENCE IN SUPPORT OF DEBTOR'S MOTION TO DISALLOW NATIONSTAR MORTGAGE LLC CLAIM NO. : 8-1 PURSUANT TO RULE 3001(d) TO VOID THE LIEN ON THE REAL PROPERTY KOWN AS 621 BAY BOULEVARD BAYVILLE NJ 08721 PURSUANT TO 11 U.S.C. 502 AS VALUED AT ZERO DOLLARS AND VOID PURSUANT TO U.S.C. 506 d** |

**DEBTORS** hereby submit the following supplemental evidence in support of the above captioned matter:

1. Modification dated October 24, 2014, and accompanying documents.
2. Modification dated November 1, 2016.

3. Additional correspondence received from Shapiro and DeNardo referenced as Exhibit D in the Motion filed April 1, 2019, via email from David Shaver, Esq.
4. A copy of a check dated 04/01/2013 from Deutsche to Berkeley Township Tax collector with accompanying documentation.
5. A copy of a check date February 26, 2015 from Nationstar Mortgage LLC to Berkeley Township satisfying a special water and sewer tax lien which is a post petition payment for pre-petition debt.
6. The debtors were not made aware of these payments and are unsure if they have been satisfied under either Modification. Conversely, the latter payment coincides with a conversation the debtors had with Nationstar asking them if they would roll this lien into their loan at which time they were informed that: "Nationstar doesn't do that."
7. A clear and legible copy of the debotr's original Note which they will make available for the Court immediately upon request. The debtors did not have an attorney for this closing, rather the First National Bank of Arizona used their own attorney, Laurence Hecker, Esq.

Nationstar MORTGAGE

RETURN SERVICE ONLY
PLEASE DO NOT SEND
MAIL TO THIS ADDRESS
PO BOX 619063
DALLAS, TX 75261-9063

2-692-06645-0000011-001-1-100-000-000-000
Donna DeRosa-Ruquet (PRO
226 POTTERS DR
BAYVILLE NJ 08721-2527

Important Information

**Loan #:** 0610524662
**Case#:** 1417571, DONNA DEROSA RUQUET, SCOTT RUQUET
**Property Address:**
621 BAY BLVD
BAYVILLE NJ 8721

Dear Donna DeRosa-Ruquet (PRO:

**Congratulations!** Your client is approved for a Loan Modification. Please read this letter so that you understand all the steps your client needs to take to modify their mortgage payments.

**What you need to do...**
The final Modification Agreement will be mailed separately. To accept this offer, your client must sign and return the documents received, with **ALL** pages of the Modification Agreement to us in the accompanying, pre-paid envelope by 12/1/2014. If the Modification Agreement requires notarization your client must sign the agreement before a notary public and return the notarized agreement to us.

We encourage your client to make a copy of all documents for their records. After all required documents have been submitted, your client's mortgage will be modified (the existing loan and loan requirements remain in full force and effect and unchanged until all required documents are returned to us). **If your client does not send the signed original Modification Agreement by the above date, this offer will be terminated and your client's loan will not be modified under the Standard Modification program.**

If a "Qualifying Payment" is specified in the Modification Agreement, your client must make the Qualifying Payment for their Modification Agreement to become effective. This Qualifying Payment will be applied first to any outstanding fees and charges that are not capitalized ("capitalized" means added to the unpaid principal balance) under the terms of the Modification Agreement, next to any unpaid non-capitalized interest and finally to unpaid principal. If your client fails to make this Qualifying Payment (or such payment is returned for non-sufficient funds or otherwise denied by the issuing bank), the Modification Agreement shall be deemed invalid and Nationstar Mortgage shall have no obligation to modify your client's loan in accordance with the terms of the Modification Agreement.

Qualifying Payments must be sent via Western Union or MoneyGram.
Qualifying payments sent via Western Union should reference the following information:
**Code City: ASTAR** **Code State: TX**
Qualifying payments sent via MoneyGram should utilize reference code: **1678**

We look forward to hearing from you no later than 12/1/2014.

Sincerely,

Nationstar Mortgage LLC
Foreclosure Prevention Department
**www.MyNationstar.com**

*Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.*

EQUAL HOUSING LENDER

[Space Above This Line For Recording Data]

Loan #: 610524662

# LOAN MODIFICATION AGREEMENT
(Providing for Interest Only Payments and Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 23rd day of October, 2014 , between Scott T Ruquet and ("Borrower") and Nationstar Mortgage LLC formerly known as Centex Home Equity Company ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated March 05, 2004 and recorded in Book or Liber ________, at page(s) ________, of the ________ Records of ________

(Name of Records) (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

621 Bay Blvd Bayville NJ 08721
(Property Address)

the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of December 01, 2014 , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 138,362.14 , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 2.00 %, from November 01, 2014 . Borrower promises to make monthly payments of interest of U.S. $ 230.60 , beginning on the 1st day of December, 2014 , and continuing thereafter on the same day of each succeeding month until November 01, 2016 (the "Interest Only Period"). After expiration of the modification period, the interest rate Borrower will pay will be determined in accordance with the terms of the original Note. If on March 01, 2034 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. Failure to Timely Remit Payments: If at any time during the effective dates of this Modification Agreement the Borrower fails to timely make payments as specified hereinabove and such default or failure continues for more than thirty (31) days, then this Modification Agreement, at the option of Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in full, effective as of the date of this Modification Agreement, and the amounts due and payable under the terms of the Note shall be as originally stated therein, as if this Modification Agreement had never existed. Time is of the essence with regard to all payments specified hereunder. Nothing contained herein shall prevent or preclude Lender from enforcing any of Lender's rights or remedies under the Note, or under any document or instrument evidencing or securing the indebtedness created by or under the Note, or shall be construed as a waiver of any of Lender's rights or remedies thereby created.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

6. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_________________________ (Seal)
Nationstar Mortgage LLC-Lender

By: _________________________

[signature] _________________________ (Seal)
Scott T Ruquet -Borrower

_________________________ (Seal)
-Borrower

STATE OF New Jersey
)SS.
COUNTY OF Ocean )

On the 24th day of October, 2014 personally appeared before me Scott Ruquet, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

[signature]
Notary Public

My appointment expires: Dec. 9 2016

_________________________ [Space Below This Line for Acknowledgements] _________________________

MARY R PIZZO
Notary Public
State of New Jersey
My Commission Expires Dec 9, 2016

# AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, Scott T Ruquet and ("Borrower") desires Nationstar Mortgage LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated March 05, 2004, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Establish Escrow Account.

Scott T Ruquet -Borrower    10-24-14 Date

-Borrower    Date

# Letter of Acknowledgment

October 23, 2014

Scott T Ruquet

621 BAY BLVD BAYVILLE NJ 08721

RE: Loan Number: 610524662

Dear Scott T Ruquet ,

Attached for execution is the Modification Agreement for your loan serviced by Nationstar Mortgage, LLC. The Modification Agreement sets forth the future terms of repayment for your loan, and may include capitalization of certain outstanding past due amounts. **The specific terms are identified in the Modification Agreement, and may include a period of time for which your payment will consist only of interest payments (resulting in no principal reduction) and/or change in the amortization term of your loan** (Such a change may result in you owing a lump sum payment upon maturity of your loan.).

By executing this Letter of Acknowledgment and the Modification Agreement, you are agreeing to make a qualifying payment of $0.00 dollars ("Qualifying Payment") for your Modification Agreement to become effective. This Qualifying Payment will be applied first to any outstanding fees and charges that are not capitalized under the terms of the Modification Agreement, next to any unpaid non-capitalized interest and finally to unpaid principal. If you fail to make this qualifying payment (or such payment is returned for non-sufficient funds or otherwise denied by the issuing bank), the Modification Agreement shall be deemed invalid and Nationstar Mortgage, LLC shall have no obligation to modify your loan in accordance with the terms of the Modification Agreement.

In addition to the foregoing, in consideration of Nationstar Mortgage agreeing to the modification of you loan account, You acknowledge and agree that Nationstar Mortgage may maintain an escrow account to collect funds for the payment of future taxes and insurance in accordance with the terms of the attached Agreement to Maintain Escrow Account.

Should you have any questions regarding the terms of this Letter of Acknowledgment or the Modification Agreement, please do not hesitate to contact ____________________ at ______________________.

Sincerely,

Nationstar Mortgage, LLC

Acknowledged and agreed to by:

[signature] 10/24/14

Scott T Ruquet - (Borrower Name) (Date)

____________________ ____________________

- (Borrower Name) (Date)

[redacted]

## Third Party Authorization Form

Natmstar Mtge
**Mortgage Lender/Servicer Name**

610524662
**[*Account*][*Loan*] Number**

The undersigned Borrower and Co-Borrower (if any) (individually and collectively, "Borrower" or "I"), authorize the above mortgage lender/servicer and its successors and assigns (individually and collectively, "Servicer") and the following third parties

**[Counseling Agency]**

**[Agency Contact Name and Phone Number]**

**[State HFA Entity]**

**[*State HFA Contact Name and Phone Number*]**

Donna DeRosa Ruquet
**[Other Third Party]**

732.278.3227
**[Third Party *Contact Name and Phone Number*]**

Spouse
**[Relationship of Other Third Party to Borrower and Co-Borrower]**

(individually and collectively, "Third Party") to obtain, share, release, discuss, and otherwise provide to and with each other public and non-public personal information contained in or related to the mortgage loan of the Borrower. This information may include (but is not limited to) the name, address, telephone number, social security number, credit score, credit report, income, government monitoring information, loss mitigation application status, account balances, program eligibility, and payment activity of the Borrower. I also understand and consent to the disclosure of my personal information and the terms of any agreements under the Making Home Affordable or Hardest Hit Fund Programs by Servicer or State HFA to the U.S. Department of the Treasury or their agents in connection with their responsibilities under the Emergency Economic Stabilization Act.

The Servicer will take reasonable steps to verify the identity of a Third Party, but has no responsibility or liability to verify the identity of such Third Party. The Servicer also has no responsibility or liability for what a Third Party does with such information.

**Before signing this Third Party Authorization, beware of foreclosure rescue scams!**

- It is expected that a HUD-approved housing counselor, HFA representative or other authorized third party will work directly with your lender/mortgage servicer.
- Please visit http://makinghomeaffordable.gov/counselor.html to verify you are working with a HUD-approved housing counseling agency.
- Beware of anyone who asks you to pay a fee in exchange for a counseling service or modification of a delinquent loan.

This Third-Party Authorization is valid when signed by all borrowers and co-borrowers named on the mortgage and until the Servicer receives a written revocation signed by any borrower or co-borrower.

**I UNDERSTAND AND AGREE WITH THE TERMS OF THIS THIRD-PARTY AUTHORIZATION:**

**Borrower**

Scott T. Ruquet
**Printed Name**

[signature]
**Signature**

5/6/2014
**Date**

SIGN

**Co-Borrower**

**Printed Name**

**Signature**

**Date**

SIGN

Copy

**After Recording Return To:**
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**
**855-369-2410**

**This Document Prepared By:**
Ana Habibija
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**
**888-480-2432**

_____________________ [Space Above This Line For Recording Data] _____________________

Original Loan Amount: **$140,800.00** Loan No: [redacted]
New Money: **$621.20**

# LOAN MODIFICATION AGREEMENT

**(Providing for Fixed Interest Rate)**

This Loan Modification Agreement ("Agreement"), made this **19th** day of **October, 2016**, between **SCOTT RUQUET** ("Borrower") and **NATIONSTAR MORTGAGE LLC**, whose address is **8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated ______________, ____ and recorded in Book/Liber **N/A**, Page **N/A**, Instrument No: **N/A**, of the Official Records of _____________ **County, NJ** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at **621 BAY BLVD, BAYVILLE, NJ 08721**, the real property described being set forth as follows:

**Tax Parcel No.:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **November 1, 2016**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$138,983.34**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

[redacted] [redacted]

Copy

(d) Our records indicate that you are the Debtor in an active bankruptcy proceeding. Please be advised that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If approval of the loan modification is required, Nationstar will not honor the loan modification agreement until evidence of the required approval is provided.

(e) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(f) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(g) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(h) That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original loan documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

(i) In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

(j) Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which the borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

[redacted] [redacted]

Copy

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Commencing **November 01, 2016** and continuing through **October 31, 2018**, interest will be charged on the Unpaid Principal Balance at the yearly rate of **2.000%** (the "Rate Reduction Period"). Borrower promises to make monthly payments of principal and interest of U.S. **$420.88** beginning **December 1, 2016** during the Rate Reduction Period, after which, commencing on the **1st** day of **November, 2018**, the interest rate will be charged at **3.875%**. Principal and interest Borrower will pay thereafter may change in accordance of the terms of the original Note or terms of an active modification to the original Note. If on **June 1, 2034** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

[redacted] [redacted]

Copy

In Witness Whereof, the Lender and I have executed this Agreement.

_______________________________ Date: 11/7/2016

SCOTT RUQUET -Borrower

NATIONSTAR MORTGAGE LLC

By: _______________________________(Seal) - Lender

Name: Azra Habibija

Title: Assistant Secretary

11/22/16

Date of Lender's Signature

[redacted] [redacted]

Copy

Loan No.: [redacted]
Borrower: SCOTT RUQUET

# AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, SCOTT RUQUET ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated _____________, ____, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency

[redacted] [redacted]

Copy

Loan No.: [redacted]
Borrower: SCOTT RUQUET

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

SCOTT RUQUET -Borrower

Date: 11/7/2016

[redacted]

[redacted]

Copy

# ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number: [redacted]

Date: October 19, 2016

Borrower(s): SCOTT RUQUET

Property Address: 621 BAY BLVD, BAYVILLE, NJ 08721

Lender: NATIONSTAR MORTGAGE LLC

In consideration of **NATIONSTAR MORTGAGE LLC** (the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses. Borrower's failure to comply with all such requests within such 30 day time period will result in the Lender adjusting the modified terms without the borrower's consent.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

SCOTT RUQUET -Borrower

Date: 11/7/2016

[redacted]



[redacted]

Copy

# LETTER OF ACKNOWLEDGEMENT

October 19, 2016

SCOTT RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721
RE: Loan number: [redacted]

Dear SCOTT RUQUET,

Attached for execution is the Modification Agreement for your loan serviced by NATIONSTAR MORTGAGE LLC. The Modification Agreement sets forth the future terms of repayment for your loan, and may include capitalization of certain outstanding past due amounts. **The specific terms are identified in the Modification Agreement, and may include a period of time for which your payment will consist only of interest payments (resulting in no principal reduction) and/or change in the amortization term of your loan** (Such a change may result in you owing a lump sum payment upon maturity of your loan).

In addition to the foregoing, in consideration of Nationstar Mortgage agreeing to the modification of your loan account, you acknowledge and agree that Nationstar Mortgage may maintain an escrow account to collect funds for the payment of future taxes and insurance in accordance with the terms of the attached Agreement to Maintain Escrow Account.

Your estimated total monthly payment will be **$1,097.06**, which includes your initial monthly escrow payment of **$676.18.**

Additionally, a Mobile Notary will come to your place of convenience, at no cost to you to assist in signing and notarizing the modification documents, please call to setup your free appointment.

Should you have any questions regarding the terms of this Letter Acknowledgement or the Modification Agreement, please do not hesitate to contact Ashley Jenkins at 972-316-5980.

Sincerely,
NATIONSTAR MORTGAGE LLC

Acknowledged and agreed to by:

[signature]

**SCOTT RUQUET** -Borrower

Date: 11/7/2016

[redacted]

[redacted]

CXE 16-017202
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080
Krystin M. Kane - 171402015
Kathleen M. Magoon - 040682010
Charles G. Wohlrab - 016592012
ATTORNEYS FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2004-5 ASSET-BACKED CERTIFICATES, SERIES 2004-5

| | |
|---|---|
| IN RE:<br><br>DONNA DEROSA-RUQUET AND<br>SCOTT RUQUET, DEBTORS | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br>CASE NO.: 14-17571-KCF<br>CHAPTER 13 |

**NOTICE OF MOTION TO VACATE THE AUTOMATIC STAY FOR COURT APPROVAL OF LOAN MODIFICATION AGREEMENT**

**ORAL ARGUMENT ONLY REQUESTED IF OPPOSITION IS FILED**

TO: Rodney J Alberto, Attorney for Debtors
Alberto Brothers Law Firm
949 Lacey Road
Lower Level
Forked River, NJ 08731

Albert Russo, Trustee, Trustee
Standing Chapter 13 Trustee
CN 4853
Trenton, NJ 08650

Donna DeRosa-Ruquet and Scott Ruquet, Debtors
226 Potters Drive
Bayville, NJ 08721

The creditor has filed papers with the court for an Order approving the loan modification, and other such relief as the Court may deem appropriate.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to approve the loan modification, or if you want the Court to consider your views on the motion, then within seven (7) days prior to the scheduled hearing you or your attorney must:

File a written response in opposition to this motion explaining your position(s) and send it to:

United States Bankruptcy Court
Mitchell H. Cohen U.S. Courthouse
400 Cooper Street
Camden, NJ 08101

If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

You must also mail a copy to:

Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080

Albert Russo
Trustee
Standing Chapter 13 Trustee
CN 4853
Trenton, NJ 08650

**IF YOU OPPOSE THE RELIEF REQUEST HEREIN YOU SHOULD ATTEND THE HEARING TO BE SCHEDULED UPON FILING OF OPPOSITION:**

Honorable Kathryn C. Ferguson
United States Bankruptcy Court
Clarkson S. Fisher US Courthouse
402 East State Street
Trenton, NJ 08608

Pursuant to D.N.J. LBR 9013-1 (d) et seq., if you wish to contest the within motion, you must file with the Office of the Clerk of the Bankruptcy Court, responding papers stating with particularity the basis of your opposition to the within Motion. A copy of the Proposed Order which is sought is enclosed with this Motion

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

Date: ________________ Signature ____________________________

Charles G. Wohlrab, Esquire
Shapiro & DeNardo, LLC
14000 Commerce Parkway
Suite B
Mount Laurel, NJ 08054

CXE 16-017202
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080
Krystin M. Kane - 171402015
Kathleen M. Magoon - 040682010
Charles G. Wohlrab - 016592012
ATTORNEYS FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2004-5 ASSET-BACKED CERTIFICATES, SERIES 2004-5

| IN RE: | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY |
|---|---|
| DONNA DEROSA-RUQUET AND<br>SCOTT RUQUET, DEBTORS | |
| | CASE NO.: 14-17571-KCF<br>CHAPTER 13 |

**ORAL ARGUMENT ONLY REQUESTED IF OPPOSITION IS FILED**

**DEBTOR'S CERTIFICATION IN SUPPORT OF SECURED CREDITOR'S MOTION FOR COURT APPROVAL OF LOAN MODIFICATION**

I, ______________________________, Debtor and I, ______________________________ Joint Debtor hereby certify as follows:

1. I make this certification in support of the Secured Creditor's motion for Court approval of the loan modification.

2. I, Donna DeRosa-Ruquet and Scott Ruquet ("Debtor") applied for a loan modification for the mortgage and have received approval from the Loss Mitigation Department of Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2004-5 ASSET-BACKED CERTIFICATES, SERIES 2004-5 subject to bankruptcy Court approval. A copy of the executed Loan Modification Agreement is attached.

3. Under the terms of the modification, the prior delinquencies would be paid through the new loan.

4. The modification would adjust my monthly Principal and Interest payment to approximately $420.88 beginning December 1, 2016. I understand that the Interest rate and Monthly Principal and Interest will change pursuant to the Loan Modification's listed payment schedule until the Principal and Interest are paid in full.

5. Escrow payment may be adjusted periodically in accordance with applicable law and therefore the total monthly payments might change accordingly.

6. I request that the loan modification agreement with the Secured Creditor be approved.

I certify that the foregoing is true to the best of my information, knowledge and belief. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date:______________________ Signature:______________________
Donna DeRosa-Ruquet, Debtor

Date:______________________ Signature:______________________
Scott Ruquet, Debtor

CXE 16-017202
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080
Krystin M. Kane - 171402015
Kathleen M. Magoon - 040682010
Charles G. Wohlrab - 016592012
ATTORNEYS FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2004-5 ASSET-BACKED CERTIFICATES, SERIES 2004-5

| | |
|---|---|
| IN RE:<br><br>DONNA DEROSA-RUQUET AND<br>SCOTT RUQUET, DEBTORS | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br>CASE NO.: 14-17571-KCF<br>CHAPTER 13 |

**ORDER APPROVING LOAN MODIFICATION**

The relief set forth on the following page, numbered two (2), is hereby **ORDERED.**

THIS MATTER having come before the Court upon the Secured Creditor's Notice of Motion for an Order approving a loan modification agreement, and Court having examined the evidence presented, and for good cause shown, it is hereby **ORDERED** as follows:

1. The Court hereby authorizes Secured Creditor and the debtor(s), to enter into a loan modification.
2. The loan modification agreement between the Secured Creditor and the Debtor, attached as an Exhibit to the Secured Creditor's motion, is approved.
3. In the event a loan modification is completed and the pre-petition arrears are capitalized into the loan, Secured Creditor shall amend the arrearage portion of its Proof of Claim to zero or withdraw the claim within thirty (30) days of completion of the loan modification.
4. The Chapter 13 Trustee shall suspend disbursements to secured creditor pending completion of loan modification and all money that would otherwise be paid to secured creditor, be held until the arrearage portion of the claim is amended to zero or the claim is withdrawn, or the Trustee is notified by the secured creditor that the modification was not consummated.
5. In the event the modification is not consummated, the secured creditor shall notify the Trustee and debtor's attorney of same. Any money that was held by the Trustee pending completion of the modification shall then be paid to secured creditor.
6. In the event the Proof of Claim is amended to zero or withdrawn, the Trustee may disburse the funds being held pursuant to this order to other creditors in accordance with the provisions of the confirmed plan.
7. Debtors shall file an amended Schedule J and Modified Plan within twenty (20) days of this order.
8. With respect to any post-petition orders, claims for post-petition mortgage arrears, and orders for creditor's attorney's fees which are being capitalized into the loan, secured creditor will amend any and all post-petition orders or claims within 30 days after completion of the loan modification.
9. The attorney's fees associated with the Secured Creditor's filing of this motion, in the amount of $350.00 are deemed recoverable from the Debtor.
10. Communication and/or negotiations between Debtor and mortgagees/ mortgage servicers about the loan modification, and the recording of the loan modification, shall not be deemed as violation of the automatic stay; and any such communication or negotiation shall not be used by either party against other in any subsequent litigation.

CXE 16-017202
Shapiro & DeNardo, LLC
14000 Commerce Parkway, Suite B
Mount Laurel, NJ 08054
(856)793-3080
Krystin M. Kane - 171402015
Kathleen M. Magoon - 040682010
Charles G. Wohlrab - 016592012
ATTORNEYS FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2004-5 ASSET-BACKED CERTIFICATES, SERIES 2004-5

| | |
|---|---|
| IN RE:<br><br>DONNA DEROSA-RUQUET AND<br>SCOTT RUQUET, DEBTORS | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br>CASE NO.: 14-17571-KCF<br>CHAPTER 13 |

**CERTIFICATION OF SERVICE**

I, Michael Kaiza
1.

☐ represent the ______________________ in the above-captioned matter.

☒ am the secretary/paralegal for Charles G. Wohlrab, Esquire, who represents the Secured Creditor in the above-captioned matter.

☐ am the _____________________ in the above case and am representing myself.

2. On ________________, I sent a copy of the following pleadings and/or documents to the parties listed in the chart below:

Notice of Motion to Vacate the Automatic Stay for Court Approval of Loan Modification Agreement,
Debtor's Certification in Support of Secured Creditor's Motion for Court Approval of Loan Modification,
Proposed Order,
Certification of Service,

3. I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Date: _______________ Signature ______________________
Michael Kaiza

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Rodney J Alberto<br>Alberto Brothers Law Firm<br>949 Lacey Road<br>Lower Level<br>Forked River, NJ 08731 | | ☐ Hand-delivered<br>☒ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other ______________<br>(as authorized by the court*) |
| Albert Russo<br>Trustee<br>Standing Chapter 13 Trustee<br>CN 4853<br>Trenton, NJ 08650 | | ☐ Hand-delivered<br>☒ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other ______________<br>(as authorized by the court*) |
| Donna DeRosa-Ruquet and Scott Ruquet<br>226 Potters Drive<br>Bayville, NJ 08721 | | ☐ Hand-delivered<br>☒ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other ______________<br>(as authorized by the court*) |
| | | ☐ Hand-delivered<br>☐ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other ______________<br>(as authorized by the court*) |

* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.

TREF94 LIEN INTEREST CALCULATION

DATE : 03/22/13

BLK.SFX 1373 LOT.SFX 41 QUAL

PLOC: 621 BAY BLVD

NAME RUQUET, SCOTT & DONNA D ETAL SOHEHA

COMMENTS P O BOX 9416

TRENTON, NJ 08650

CERT.12-0491 DATE 10/03/12 CERT.AMT. 682.81 PREM .00

RATE= 18.00

| CODE | DESCRIPTION | | DUE DATE | AMOUNT DUE | INTEREST |
|---|---|---|---|---|---|
| 003 | COST | | 10/03/12 | 15.00 | 1.97 |
| 016 | WATER PRINCIPAL | | 10/03/12 | 604.35 | 79.15 |
| 017 | WATER INTEREST | | 10/03/12 | 63.46 | 8.31 |
| 006 | RECORDING FEE | | 10/18/12 | 30.00 | .00 |
| 007 | SEARCH FEE | | 10/18/12 | 12.00 | .00 |
| | 2% PENALTY = | 13.66 | | | |
| | ******GRAND-TOTAL | 827.90 | | 724.81 | 89.43 |

04/01/13 79-0006 $827.90 CHK 11

R✓

P✓

0422190 8

Berkeley Township Tax Collector
P.O. Box B
627 Pinewald-Keswick Road
Bayville, N.J. 08721

**Deutsche Bank**

CASHIERS CHECK

211278108
Date 03 28 2013
1-103/210

Amount

$827.90

Pay to the order of: BERKELEY TOWNSHIP (OCEAN) TAX COLL

The sum of: [redacted]

BANK OF AMERICA HOME LOANS
Reference: E6422i908CR
Payable at DBTCo Americas New York. Non-Negotiable after 180days

Authorized Signature

⑈211278108⑈ ⑆021001033⑆ 0090514⑈

1373/41

12-0491

Berkeley Township Tax Collector
P.O. Box B
627 Pinewald-Keswick Road
Bayville, N.J. 08721

THE REVERSE SIDE OF THIS DOCUMENT INCLUDES MICROPRINTED ENDORSEMENT LINES • TRUE WATERMARK · HOLD TO LIGHT TO VIEW

**Nationstar Mortgage LLC**
First American (Escrow Disb)
P.O. BOX 961229
Fort Worth, TX 76161-9809

Wells Fargo Bank, N.A.
San Francisco, CA 94103
11-24
1210

0003521858

| CHECK/AUDIT NO. | DATE |
|---|---|
| 0003521858 | 02/26/15 |

PAY ************************1,991 DOLLARS AND 19 CENTS $1,991.19

TO THE ORDER OF
BERKELEY TOWNSHIP
BERKELEY TWP - COLLECTOR
P.O. BOX B
BAYVILLE NJ 08721

Nationstar Mortgage

VOID IF NOT CASHED WITHIN 180 DAYS

HEAT SENSITIVE RED IMAGE DISAPPEARS WITH HEAT
THIS DOCUMENT IS PRINTED ON TONER ADHESION PAPER

⑈3521858⑈ ⑆121000248⑆ 4121888218⑈

Juan Guerrero
480-467-0644
X

I certify this to be a
copy of the original.

Laurence Hecker, Esq.

# NOTE

| MARCH 5, 2004 | MCLEAN | VIRGINIA |
|---|---|---|
| [Date] | [City] | [State] |

621 BAY BLVD.BAYVILLE,NJ 08721
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 140,800.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is FIRST NATIONAL BANK OF ARIZONA

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.7500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on APRIL 1, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O.. BOX 9490, SCOTTSDALE, AZ 85252-9490 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 913.23

**4. BORROWER'S RIGHT TO PREPAY** THIS SECTION IS SUPERCEDED BY THE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.