THE DANN LAW FIRM
BY: Javier L. Merino, Esq. #078112014
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone No. (201) 355-3440
Attorneys for Debtor

---

|  |  |  |
|---|---|---|
|  |  | UNITED STATES BANKRUPTCY COURT |
|  |  | FOR THE DISTRICT OF NEW JERSEY |
|  | x | CHAPTER 13 |
| IN RE: | x | CASE NO.: 14-17571-KCF |
|  | x |  |
| Richard Paliotta | x | HEARING DATE: 01/23/2019 at 2:00 p.m. |
|  | x |  |
| Debtor | x | Judge: Kathryn C. Ferguson |
|  | x |  |

**REPLY TO OBJECTION TO DEBTORS' MOTION FOR ORDER FOR CONTEMPT
AND SANCTIONS AND OBJECTION TO NOTICE OF PAYMENT CHANGE**

1. This is an action for actual damages, statutory damages, punitive damages, and legal fees and expenses filed by the Debtors against Specialized Loan Servicing, LLC ("SLS") for their illegal actions and conduct which are not in compliance with and are in fact in violation of the Automatic Stay Provisions (11 U.S.C. 362); the Order of Discharge (11 U.S.C. 727).

2. The Debtors allege that in order to carry out the provision of the Code and to maintain its integrity this court must impose actual damages, punitive damages, and legal fees against SLS pursuant to the provisions of 11 U.S.C. §105. See In re Majestic Star Casino, LLC, 716 F.3d 737, 750 (3rd. Cir. 2013) ("Section 362 also provides that "an individual injured

by any willful violation of [the] stay…shall recover actual damages, including costs and attorneys' fees , and, in appropriate circumstances, may recover punitive damages.").

3. Once a debtor has been discharged, § 524 of the Bankruptcy Code, mandates that the discharge: "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Such provision furthers a fundamental goal of the bankruptcy system i.e., to provide debtors with a "fresh start" by relieving of them their debt. Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 250 (3d Cir. 2001). "Discharge is the legal embodiment of the 'fresh start.' It is the barrier that prevents creditors from reaching the wages, property, and other assets of debtors in bankruptcy." Walker v. M&M Dodge (In re Walker), 180 B.R. 834, 840-41 (Bankr. W.D. La. 1995). The discharge injunction prevents not only formal collection processes such as lawsuits or garnishment, but even informal actions such as phone calls, letters, and personal contact if they seek to coerce payment of a discharged debt. Id. at 842.

4. In the instant matter, ASC, SLS's prior servicer, charged two simultaneous, unjustified insurance premiums against the Debtors in December 2015. Specifically, the Debtors were charged $1,879.00 for an insurance premium paid to "Narragansett Bay Insurance Company" then were simultaneously charged $1,878.00 for an insurance premium to "Tower Group." See ASC's Escrow Account Disclosure Statement attached as **Exhibit A**.

5. This double premium charged forced the Debtors into an excess escrow shortage which the Debtors continued to pay after SLS assumed servicing of the loan. SLS has provided

no justification as to why there were two insurance premiums placed on the home. This double premium charged contributed significantly to the Debtors' $5,893.21 escrow shortage which forced the Debtors to pay an extra $163.70 over a period of 36 months.

6. Despite SLS's awareness of this double premium charge, they refuse to correct the Debtors account, resulting in the Debtors continuing to pay an improperly increased escrow shortage.

7. Furthermore, SLS is sending the Debtors mortgage statements which assess an excess $625.14 in "Unpaid Amounts." One need not look further than SLS's own transaction history submitted in their certification in opposition for proof that SLS is sending misleading mortgage statements. A copy of the Debtors' mortgage statement is attached as *Exhibit B*.

8. Specifically, SLS's transaction history provides that as of May 1, 2019, the Debtor only owed for her May 1, 2019 payment in the total amount of $1,708.56. See Certification of Shane Ellis in Opposition to Debtors' Motion (the "Ellis Cert."), Exhibit A.

9. Last, SLS reported the Debtors' account as "Failed to Pay" for the month of March 2017 despite the debt having been previously discharge in bankruptcy. An excerpt of the Debtors' credit report is attached as *Exhibit C*.

10. Reporting a discharged debt on a credit report can be grounds for sanctions as a violation of the discharge injunction if the creditor fails to update the credit report as a means of inducing the Debtor to make a payment on the debt. McKenzie-Gilyard v. HSBC Bank Nev. N.A. (In re McKenzie-Gilyard), 388 B.R. 474 (Bankr. E.D.N.Y. 2007) ("[A] creditor's intentional failure to update a credit report with the hope that this will lead the debtor to repay the debt may amount to contempt of the discharge injunction."); see also

Puller v. Credit Collections USA, Inc. (In re Puller), 2007 Bankr. LEXIS 2017, 2007 WL

1811209, at *7 (Bankr. N.D. W.Va. 2007). A copy of the Unpublished Puller decision is

attached hereto as *Exhibit D*.

11. SLS's willful actions here in reporting the Debtors' loan as delinquent in March 2017

when in fact the Debtors' transaction history reveals they were current further evidences

SLS's willful disregard of the Bankruptcy Code.

12. SLS's actions in failing to correct the Debtors' account relative to the insurance

disbursements constitute violations of the automatic stay and discharge injunction.

13. SLS's actions in sending the Debtors false and misleading mortgage statements which

contradict filings with this Court also constitute violations of the automatic stay and

discharge injunction.

I hereby certify that the foregoing statements are true and correct to the best of my

knowledge, information, and belief. I am aware that if any of the foregoing statements are

willfully false, I am subject to punishment.

 /s/ Javier L. Merino
Javier L. Merino, Esq.

Dated:      July 23, 2019

.