# **EXHIBIT D**

Positive
As of: July 24, 2019 2:41 AM Z

# *Puller v. Credit Collections USA, Inc. (In re Puller)*

United States Bankruptcy Court for the Northern District of West Virginia

June 20, 2007, Decided

Case No 05-1881, Chapter 7, Adv. Proc. No. 06-157

**Reporter**
2007 Bankr. LEXIS 2017 *; 58 Collier Bankr. Cas. 2d (MB) 290

IN RE: JACQUITA L. PULLER, Debtor; JACQUITA L. PULLER, Plaintiff, v. CREDIT COLLECTIONS USA, INC., Defendant.

## Core Terms

Collections, injunction, credit reporting agency, update, cases, summary judgment, post-petition, reporting, *credit report*, discharged, discovery, pre-petition, summary judgment motion, parties, contempt, genuine, bankruptcy petition, cause of action, deny a motion, allegations, non-moving, tradeline, violating, deleted, material fact, supplied, damages, coerce

## Case Summary

### Procedural Posture

Plaintiff debtor filed an adversary proceeding against defendant collection agency to vindicate an alleged violation of her *discharge* injunction. Specifically, she alleged that, by providing information to credit reporting agencies pre-petition, and by failing to timely correct that information post-*discharge*, it engaged in an act to collect a discharged debt. The case was before the court on the collection agency's motion for summary judgment.

### Overview

The collection agency argued that it took no action after debtor filed her bankruptcy petition to collect any debt from her; therefore, it contended, it could not have committed any violation of her *11 U.S.C.S. § 524 discharge* injunction. Debtor asserted, inter alia, that the collection agency originally furnished information to the credit reporting agencies in an attempt to coerce her into paying the debts. By not timely updating the information post-*discharge*, she argued, it violated the injunction. The court stated that, to the extent that debtor could proved that the collection agency

intentionally failed to report, or intentionally delayed reporting, updated collection information in the hopes that she might voluntarily repay her discharged debt in an effort to clean-up her *credit report*, then such actions could be viewed as setting a trap and then lying in wait to see if the bait is taken. Trap hunting could constitute a violation of the *discharge* injunction. Consequently, debtor stated a cause of action for a violation of the injunction, and she was entitled to conduct discovery related to that cause of action before fully responding to the motion for summary judgment.

### Outcome

The court denied the collection agency's motion for summary judgment only to the extent that it argued that its inaction could not, under any circumstances, constitute a prohibited "act" within the meaning of the *discharge* injunction.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

*HN1*[ ] Summary judgment is appropriate when the matters presented to the court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *Fed. R. Bankr. P. 7056*. The party

moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

> Civil Procedure > ... > Summary
> Judgment > Entitlement as Matter of
> Law > Appropriateness

> Civil Procedure > ... > Summary
> Judgment > Entitlement as Matter of Law > Genuine
> Disputes

### *HN2*[⬇] **Appropriateness**

In ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. A fact is not genuinely disputed unless the factual conflict between the parties requires a trial of the case for resolution.

> Bankruptcy Law > ... > Automatic Stay > Violations
> of Stay > Contempt Actions

> Bankruptcy Law > ... > ***Discharge*** &
> Dischargeability > Effect of ***Discharge*** > Protection
> of Debtors

### *HN3*[⬇] **Contempt Actions**

The ***discharge*** injunction provided by *11 U.S.C.S. § 524* of the Bankruptcy Code prohibits a creditor from attempting to collect on a debt that has been discharged in a bankruptcy proceeding. A debt is not extinguished by the ***discharge*** injunction; rather, it is merely uncollectible as a personal liability of the debtor. *11 U.S.C.S. § 524(a)(1)*, *(2)* provides that a ***discharge*** voids any judgment to the extent that the judgment is a determination of the personal liability of the debtor, and that creditors are enjoined from attempting to collect the

debt as a personal liability of the debtor. The ***discharge*** injunction is effective as of the date that a debtor receives a ***discharge***. *11 U.S.C.S. § 524(a)*. A violation of the ***discharge*** injunction is punished by contempt of court.

> Civil
> Procedure > Remedies > Injunctions > Contempt

### *HN4*[⬇] **Contempt**

Determining whether a party may be held liable for civil contempt is a two part inquiry: (1) did the party know of the lawful order of the court, and (2) did the defendant comply with it.

> Civil Procedure > ... > Defenses, Demurrers &
> Objections > Motions to Dismiss > Failure to State
> Claim

### *HN5*[⬇] **Failure to State Claim**

A plaintiff's burden in overcoming a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss is often described as exceedingly low, and the moving party must show beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

> Civil Procedure > ... > Summary
> Judgment > Entitlement as Matter of Law > Genuine
> Disputes

> Civil Procedure > ... > Summary
> Judgment > Burdens of Proof > Nonmovant
> Persuasion & Proof

> Civil Procedure > ... > Summary
> Judgment > Entitlement as Matter of
> Law > Materiality of Facts

### *HN6*[⬇] **Genuine Disputes**

On summary judgment, a non-moving party that bears the burden of proof at trial must set forth specific facts showing that there is a genuine issue of material fact with respect to an essential element of an alleged cause of action, and that a triable issue of fact remains in light of the party's substantive evidentiary burden at trial.

Bankruptcy Law > Procedural Matters > Adversary Proceedings > Judgments

Civil Procedure > ... > Summary Judgment > Opposing Materials > Motions for Additional Discovery

### *HN7*[⤓]  **Judgments**

*Fed. R. Civ. P. 56(f)*, as made applicable to bankruptcy adversary proceedings by *Fed. R. Bankr. P. 7056*, provides that: should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot present facts essential to justify the party's opposition, the court may order a continuance to permit affidavits to be obtained or discovery to be had. Non-moving parties are not to be railroaded into opposing summary judgment in the absence of discovery; generally speaking, only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.

Bankruptcy Law > ... > *Discharge* & Dischargeability > Effect of *Discharge* > Protection of Debtors

### *HN8*[⤓]  **Protection of Debtors**

A violation of the *discharge* injunction may occur if a creditor takes the position that it would not correct the report (update a debtor's account with a credit reporting agency) unless the debtor paid the debt.

Bankruptcy Law > ... > *Discharge* & Dischargeability > Effect of *Discharge* > Protection of Debtors

### *HN9*[⤓]  **Protection of Debtors**

"Trap hunting" can constitute a violation of the *11 U.S.C.S. § 524 discharge* injunction.

**Counsel:  [*1]** For Jacquita L Puller aka Jacquita L Plater, Debtor (3:05-bk-01881): Kirk H. Bottner, Law Office of Kirk H. Bottner, PLLC, Charles Town, WV.

Trustee (3:05-bk-01881): Robert W. Trumble MMartinsburg, WV.

For Jacquita L Puller, Plaintiff (3:06-ap-00157): Kirk H. Bottner, LEAD ATTORNEY, Law Office of Kirk H. Bottner, PLLC, Charles Town, WV.

For Credit Collections USA, LLC, Defendant (3:06-ap-00157): Debra Lee Hovatter, Spilman, Thomas & Battle, PLLC, Morgantown, WV.

**Judges:** Patrick M. Flatley, United States Bankruptcy Judge.

**Opinion by:** Patrick M. Flatley

# Opinion

### MEMORANDUM OPINION

Jacquita L. Puller (the "Debtor") filed this adversary proceeding against Credit Collections, USA, LLC ("Credit Collections"), to vindicate, inter alia, an alleged violation of the Debtor's *discharge* injunction. More specifically, the Debtor alleges that, by providing information to credit reporting agencies pre-petition, and by failing to timely correct that information post-*discharge*, Credit Collections engaged in an act to collect a discharged debt. This case is before the court on Credit Collections's motion for summary judgment.

The court held a hearing on the motion on March 8, 2007, in Martinsburg, West Virginia at which time the court **[*2]** gave the parties additional time to submit post-hearing briefs solely on the issue of whether or not Credit Collections is entitled to summary judgment on the Debtor's allegation that it violated the *discharge* injunction. More specifically, the court directed the parties to only address the issue of whether Credit Collections's alleged failure to timely and affirmatively notify credit reporting agencies that the Debtor's accounts were discharged in bankruptcy is actionable under *11 U.S.C. § 524* as a violation of the *discharge* injunction. The court also temporarily suspended further discovery pending adjudication of this issue.

For the reasons stated herein, the court will deny Credit Collections's motion for summary judgment only to the extent that it argues that its inaction cannot, under any circumstances, constitute a prohibited "act" within the meaning of the *discharge* injunction.

### I. STANDARD OF REVIEW

Javier Merino

*HN1*[⬆] Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; *Fed. R. Bankr. P. 7056*; *Celotex v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. **[*3]** The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co., 398 U.S. 144, 161, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)*. Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)* (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. *HN2*[⬆] In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id. at 255*. **[*4]** A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe, 79 F.3d 1285, 1291 (2d Cir. 1996)* ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

According to the affidavit of Linda Wolf, chief operating officer of Credit Collections, the Debtor owed Pediatric Associates of Winchester, Virginia $ 27.80. When this account went unpaid, Pediatric Associates turned it over to Credit Collections. On three occasions in 1999, Credit Collections attempted to contact the Debtor to collect the unpaid debt. In March 1999, Credit Collections furnished information regarding that account to credit reporting agencies.

In January 2004, Pediatriac Associates of Winchester,

Virginia placed a second, $ 131.54 account with Credit Collections that was owed by the Debtor. Between January 2004 and May 2004, Credit Collections attempted to contact the Debtor twelve times with regard to her account. In March 2004, Credit Collections reported information concerning **[*5]** the Debtor's $ 131.54 unpaid account to credit reporting agencies.

Nearly a year later, on April 27, 2005, the Debtor filed her Chapter 7 bankruptcy petition. Credit Collections states that on May 8, 2005, it furnished information to credit reporting agencies asking that the Debtor's 2004 tradeline be deleted. Subsequently, notice of the Debtor's August 3, 2005 *discharge* was sent to Credit Collections. Credit Collections states that in November 2005, it furnished information to the credit reporting agencies asking that the tradeline for the Debtor's 1999 account be deleted.

In March 2006, the Debtor attempted to obtain a loan to purchase a home. The Debtor alleges that her loan application was denied, in part, based on her credit score. When the Debtor obtained a copy of her *credit report* from CBCInnovis, dated March 28, 2006, she noticed that the 2004 debt placed with Credit Collections was listed as being in "collection" in the amount of $ 131 -- it was not listed as "included in bankruptcy" with a zero balance being due. On August 22, 2006, the Debtor filed this adversary complaint against Credit Collections for allegedly violating the *discharge* injunction, and on September 17, 2006, **[*6]** Credit Collections represented that it again furnished information to the credit reporting agencies asking them to delete its tradelines for the Debtor's 1999 and 2004 accounts.

## III. DISCUSSION

Credit Collections argues in its motion for summary judgment that it took no action after the Debtor filed her bankruptcy petition to collect any debt from the Debtor; therefore, it contends, it cannot have committed any violation of the Debtor's *discharge* injunction.

The Debtor asserts that Credit Collections originally furnished information to the credit reporting agencies in an attempt to coerce the Debtor into paying the debts. By not timely updating the information post-*discharge*, the Debtor argues, Credit Collections violated the *discharge* injunction in that the "continued" reporting of an unpaid balance as legally enforceable is itself an attempt to collect a discharged debt. Any purported updating of the Debtor's account by Credit Collections,

the Debtor contends, was inadequate considering that the debt was still appearing on her credit reports as late as March 2006.

**HN3**[⬆] The *discharge* injunction provided by *§ 524 of the Bankruptcy Code* prohibits a creditor from attempting to collect on a debt **[*7]** that has been discharged in a bankruptcy proceeding. A debt is not extinguished by the *discharge* injunction; rather, it is merely uncollectible as a personal liability of the debtor. *E.g.,* *11 U.S.C. § 524(a)(1-2)* (providing that a *discharge* voids any judgement to the extent that the judgment is a determination of the personal liability of the debtor, and that creditors are enjoined from attempting to collect the debt as a personal liability of the debtor); *United States v. Alfano, 34 F. Supp. 2d 827, 841 (E.D.N.Y. 1999)* ("Part of the conceptual difficulty may arise from the interplay between a *discharge* of the debtor's debt and an extinguishment of the creditor's claim. The key point is that although a debtor's debt may be personally discharged in bankruptcy, the underlying debt is not extinguished.").

The *discharge* injunction is effective as of the date that a debtor receives a *discharge*. *11 U.S.C. § 524(a)*. A violation of the *discharge* injunction is punished by contempt of court. *E.g.,* *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir. 2005)* ("A party who knowingly violates the *discharge* injunction can be held in contempt . . . ."); *Bessette v. Avco Fin. Servs., 230 F.3d 439, 445 (1st Cir. 2000)* **[*8]** ("[A] bankruptcy court is authorized to invoke *§ 105* to enforce the *discharge* injunction imposed by *§ 524* and order damages . . . . Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief . . . when creditors have engaged in conduct that violates *§ 524*."); *In re Nat'l Gypsum Co., 118 F.3d 1056, 1063 (5th Cir. 1997)* ("The *discharge* injunction granted by *section 524(a)* is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt . . . .").

**HN4**[⬆] Determining whether a party may be held liable for civil contempt is a two part inquiry: (1) did the party know of the lawful order of the court, and (2) did the defendant comply with it. *Burd v. Walters (In re Walters), 868 F.2d 665, 670 (4th Cir. 1989)*; *see also ZiLOG, Inc., 450 F.3d at 1007*. (same); *Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)* (stating that to establish civil contempt, the movant must establish four elements by clear and convincing evidence: "'(1) the existence of a valid decree of which

the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's **[*9]** 'favor'; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.'") (citation omitted).

No dispute exists between the parties that Credit Collections had notice of the Debtor's *discharge* injunction; the only issue is whether Credit Collections complied with the terms of the *discharge* injunction by not immediately correcting the information that it supplied to credit reporting agencies nearly one-year before the Debtor filed her bankruptcy petition. [1]

The Debtor cites numerous cases standing for the proposition that a creditor's transfer of information to a credit reporting agency could be -- under the right circumstances -- a prohibited attempt to collect a discharged, pre-petition debt. Most of the cases cited by the Debtor, however, are factually distinct because in those cases the creditor engaged in some affirmative act after entry of the debtor's *discharge* to report the debt as being owed. *See, e.g.,* *Batchelor v. First Nat. Bank of Blue Island, No. 92 C 5073, 1993 U.S. Dist. LEXIS 520 (N.D. Ill. Jan. 20, 1993)* (denying a motion to dismiss the debtor's cause of action for a violation of the automatic stay when the creditor transferred information to a credit reporting agency, post-petition, stating that the debt was still owed, and when the creditor also made post-petition telephone collection calls); *Norman v. Applied Card Sys., Inc., (In re Norman), No. 06-1133, 2006 Bankr. LEXIS 2576 (Bankr. M.D. Ala. Sept. 29, 2006)* **[*11]** (denying a motion to dismiss when the creditor, post-petition, reported the indebtedness to credit reporting agencies as a "charged off account"); *Daniel v. Mitsubishi Motor Credit of Am., Inc., (In re*

---

[1] According to Credit Collections, it transferred information to credit reporting agencies less than two weeks after the Debtor filed her bankruptcy petition asking that the Debtor's tradelines be deleted. Credit Collections also asserts that nearly three months after the Debtor received her August 3, 2005 *discharge*, it again furnished information to credit reporting agencies asking the Debtor's tradelines be deleted. The Debtor, however, has produced a *credit report* from March 2006 showing that the tradeline from the 2004 account placed with Credit Collections was not deleted. Drawing **[*10]** all inferences in favor of the Debtor as the non-moving party, an issue of fact exists as to whether Credit Collection timely updated the Debtor's account information with respect to the credit reporting agencies.

*Daniel), 06-1139, 2006 Bankr. LEXIS 2376 at *4 (Bankr. E.D. Va. Sept. 14, 2006)* ("One may fairly debate whether [post-petition] reporting of a discharged debt as "charged off" constitutes a violation of the *discharge* injunction."); *Smith v. Am. Gen. Fin., Inc., (In re Smith), No. 05-9085, 2005 Bankr. LEXIS 2481 (Bankr. N.D. Iowa Dec. 12, 2005)* (denying a motion to dismiss when the creditor, post-*discharge*, reported the debt owed to it to credit reporting agencies as being "charged off," "past due," and "written off"); *Helmes v. Wachovia Bank, NA (In re Helmes), 336 B.R. 105 (Bankr. E.D. Va. 2005)* (reporting a debt as past due to a credit reporting agency post-petition might, under the right circumstances, violate the *discharge* injunction); *In re Weinhoeft, No. 00-7072, 2000 WL 33963628 (Bankr. C.D. Ill. Aug. 1, 2000)* (denying a motion to dismiss and holding that the post-petition and post-*discharge* reporting of pre-petition obligations as being delinquent to credit reporting agencies, **[*12]** "if made with the intent to harass or coerce a debtor into paying a pre-petition debt," could be deemed a violation of the automatic stay and/or the *discharge* injunction); *Singley v. Am. Gen. Fin. (In re Singley), 233 B.R. 170 (Bankr. S.D. Ga. 1999)* (denying summary judgment on the basis that the post-petition transfer of information to credit reporting agencies may be a violation of the automatic stay if made with the intent to harass or coerce a debtor into paying a pre-petition debt); *In re Sommersdorf, 139 B.R. 700 (Bankr. S.D. Ohio 1992)* (noting that, subsequent to the order for relief, the creditor caused a ***credit report*** notation to be made indicating that the creditor had taken a profit and loss write off on the account; damages were appropriate because the court determined that the credit reporting information "most certainly must be done if an effort to effect collection of the account."). The court specifically requested that the Debtor brief the issue of whether inaction, i.e., the failing to timely update information previously supplied to credit reporting agencies after receiving notice that the Debtor had filed bankruptcy, could constitute a violation of the *discharge* **[*13]** injunction; consequently, the above-cited cases are inapposite.

Unlike the above-cited cases, here, Credit Collections transferred accurate information to credit reporting agencies nearly one-year before the Debtor filed her April 27, 2005 bankruptcy petition. Credit Collections made no affirmative effort to recover that pre-petition debt after the Debtor filed her bankruptcy by supplying collection information to the credit reporting agencies.

The court is aware of seven analogous cases that directly address an alleged violation of the *discharge* injunction when a creditor reports accurate information to a credit reporting agency pre-petition and then allows that information to remain unchanged post-petition. [2] Four of those cases have declined to recognize any violation of the *discharge* injunction. *See Smith v. Qualified Emergency Specialists, Inc., (In re Smith), No. 06-1279, 2007 Bankr. LEXIS 1038 at *7 (Bankr. S.D. Ohio April 3, 2007)* ("[B]ecause the debt was reported on Plaintiff's credit history well before the bankruptcy petition was even filed, Plaintiff's allegation that this constituted an improper collection activity attenuates. Accordingly, no violation of the *discharge* injunction **[*14]** occurred in this case."); *Bruno v. First USA Bank, NA (In re Bruno), 356 B.R. 89, 91-92 (Bankr. W.D.N.Y. 2006)* ("[I]t is this court's view that the fact that the adverse *credit report*, which was true and accurate when it was made, occurred prior to the bankruptcy filing, renders the cases under those other Acts [finding a violation of the *discharge* injunction] inapplicable. . . . [N]o affirmative step is compelled by *11 U.S.C. § 524*. Rather, . . . attorneys . . . should be advising their clients, after issuance of the bankruptcy *discharge*, to obtain a copy of their *credit report* . . . and follow the established process . . . for updating the record . . . ."); *Irby v. Fashion Bug (In re Irby), 337 B.R. 293, 296-97 (Bankr. N.D. Ohio 2005)* (denying entry of a default judgment and holding that when a creditor reports a debt to a credit reporting agency before the debtor files bankruptcy, and subsequently fails to affirmatively act to remove the prior report, no "action" or "act" has occurred post-petition to collect on the claim; thus, no viable cause of action exists for a violation of the *discharge* injunction); *Vogt v. Dynamic Recovery Serv., (In re Vogt), 257 B.R. 65, 70 (Bankr. D. Colo. 2000)* **[*15]** (refusing to enter a default judgment in favor of the debtor for an alleged violation of the *discharge* injunction when the creditor accurately reported the status of a debt pre-petition and failed to update the

_____

[2] Credit Collections supplemented its briefing with the case of *In re Mahoney, No. 06-5187, 368 B.R. 579, 2007 Bankr. LEXIS 1457, 2007 WL 1217851 (Bankr. W.D. Tex. April 23, 2007)*. A review of the record in that case shows that the debtor received a *discharge* on October 5, 2002, and that the creditor furnished information to credit reporting agencies in December 2005 stating that the debtor's account was charged off as uncollectible. Accordingly, like the cases cited by the Debtor, *Mahoney,* is factually distinct from this case. *Mahoney's* conclusion that no violation of the *discharge* injunction incurred and that the creditor was entitled to summary judgment is cumulative of the other cases discussed herein by the court.

information post-petition; for a violation of the ***discharge*** injunction to have occurred, the creditor must have taken the position that it would not correct the report unless the debtor paid the debt).

The fifth case, *Mayer v. Huntington Nat'l Bank (In re Mayer), 254 B.R. 396 (Bankr. S.D. Ohio 2000)*, [*16] awarded damages to the debtor based on the creditor's failure to timely update account information post-petition; however, the court's opinion does not contain any analysis of the issue. The court did state, however, that the creditor failed to rectify the information contained in the ***credit report*** after being asked to do so by the debtor. *Id. at 398*. Notwithstanding the uncontested nature of the relief being sought, the court reduced the $ 34,000 in damages being sought by the debtor to $ 250 in compensatory damages and $ 700 in attorney's fees. *Id.*

The sixth and seventh cases determined that the debtor had presented enough of a claim to withstand the creditor's motion to dismiss the case under the standards set forth in *Fed. R. Civ. P. 12(b)(6)*. In denying the motion to dismiss, the Bankruptcy Court for the Northern District of Ohio summarized the issue as follows:

> If Plaintiff Philip Lohmeyer can prove that Defendant inaccurately reported or failed to update the status of the debt as a current liability of Plaintiff's as shown on the April 4, 2006, document for the purpose of coercing payment by Plaintiffs notwithstanding the ***discharge***, which would essentially amount to lying in passive [*17] wait, then in this court's view a violation of the ***discharge*** injunction will have occurred without other overt collection action such as letters or harassing telephone calls. Defendant's motive in making a credit notation is material. Putting together two paragraphs of the Complaint with Exhibit C, Plaintiffs do make the barest of allegations in the complaint that Defendant has continued to report the debt as due or intentionally failed to update the report by leaving the erroneous current balance in place in order to collect the debt. Simply put, additional overt collection actions do not have to be pleaded or necessarily proven in order for Plaintiffs to prevail on a theory of contempt of court. . . . The court cannot find from the allegations therein and existing non-binding precedent that Plaintiffs can prove no set of facts that would entitle them to relief.

*Lohmeyer v. Alvin's Jewelers (In re Lohmeyer), 365 B.R. 746, 2007 Bankr. LEXIS 909 at *10-12 (Bankr.N.D. Ohio March 13, 2007)*. *See also Torres v. Chase Bank USA, NA, (In re Torres), No. 06-1576, 06-1917, 367 B.R. 478, 2007 Bankr. LEXIS 1478 at *31-32 (Bankr. S.D.N.Y. May 3, 2007)* (denying a motion to dismiss when the creditor failed to update a ***credit*** [*18] ***report*** post-petition despite being requested to do so by the debtor: "[D]etermining Chase's motion involves drawing lines between coercive and non-coercive behavior. . . . [H]ere, Chase has not articulated any valid reason for refusing to correct its outstanding report. . . . One may infer, therefore, that something is wrong with Chase's decision to rebuff the plaintiff's legitimate request to make the record right, which puts Chase, for purposes of this motion, on the wrong side of the line under *section 524(a)*.").

Importantly, *Lohmeyer* and *Torres* were decided in the context of a motion to dismiss for failure to state a claim under *Fed. R. Civ. P. 12(b)(6)*. **HN5**[⬆] The plaintiff's burden in overcoming a *Rule 12(b)(6)* motion to dismiss is often described as "exceedingly low," *Day v. Taylor, 400 F.3d 1272, 1275 (11th Cir. 2005)*, and the moving party must show "'beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lohmeyer, 365 B.R. 746, 2007 Bankr LEXIS 909 at *6* (citation omitted); *see also Torres, 367 B.R. 478, 2007 Bankr. LEXIS 1478 at *8* (same).

Here, Credit Collections moved for summary judgment, which is governed by different standards: **HN6**[⬆] the Debtor as [*19] the non-moving party that bears the burden of proof at trial must set forth specific facts showing that there is a genuine issue of material fact with respect to an essential element of an alleged cause of action, and that a triable issue of fact remains in light of the Debtor's substantive evidentiary burden at trial. *See generally* 11 *Moore's Federal Practice -- Civil* § 56.13[3] (2007). The Debtor has not produced any evidence, however, either circumstantial or direct, that Credit Collections had knowledge that it was violating the ***discharge*** injunction by not taking more immediate action to update the Debtor's accounts with the various credit reporting agencies. For example, no evidence exists outside the Debtor's complaint in this case to support her allegations that Credit Collections: (1) "willfully and knowingly" attempted to collect a debt by improperly reporting a debt included in the Debtor's bankruptcy as being owed; (2) ignored the credit reporting industry standard protocol METRO 2 that directs that accounts discharged in bankruptcy be

reported as "Included in Bankruptcy" with no balance being owed; (3) knew that reporting a balance on an account to a credit reporting agency **[\*20]** increased the chances that the debt would be paid notwithstanding the bankruptcy ***discharge*** on the grounds that inexperienced, frightened, or ill-counseled debtors may seek to voluntarily repay the debt to clean-up their ***credit report***; or (4) knew that its existing reporting system is inaccurate based on the hundreds of Fair Credit Reporting disputes it receives each year, and that a substantial rate of improper reporting leads to a number of accounts being paid by poorly advised debtors, which is a practice or pattern of conduct undertaken by it to collect debts.

Under the unique procedural posture of this case, however, the lack of any evidence substantiating proof of the Debtor's allegation regarding Credit Collections's intent to violate the ***discharge*** injunction is not fatal to the Debtor at this stage of the litigation. On the motion of Credit Collections, the court temporarily stayed discovery in this matter pending adjudication of the narrow issue that the court framed for the parties of whether inaction can constitute action for purposes of violating the ***discharge*** injunction. In opposing the motion to stay discovery, the Debtor argued that Credit Collections was attempting to **[\*21]** "force the [Debtor] into summary judgment without providing all of the discoverable factual information which will support the Plaintiff's claims as stated in the Complaint." (Document No. 28). More specifically, the Debtor complained that the actionable conduct by Credit Collections was its:

> willful and intentional decision to misrepresent the legal status and amount of the discharged debt in an attempt to coerce and pressure the Debtor into paying said debt. . . . Further discovery discernment of the facts is necessary with regards to the intent of the Defendant in willfully choosing to exclude the bankruptcy related information from its reporting.

(*Id.*).

**HN7**[⬆] *Fed. R. Civ. P. 56(f)*, as made applicable to bankruptcy adversary proceedings by *Fed. R. Bankr. P. 7056*, provides that "[s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot . . . present . . . facts essential to justify the party's opposition, the court may . . . order a continuance to permit affidavits to be obtained or . . . discovery to be had . . . ." Non-moving parties are not to be railroaded into opposing summary judgment in the absence of discovery; generally speaking, **[\*22]** "only in the rarest of cases may summary judgment be granted

against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000)*. Accordingly, because the court has stayed further discovery in this case for the purposes of determining whether the Debtor had even stated a cause of action for a violation of the ***discharge*** injunction, the court will not grant summary judgment to Credit Collections -- at this time -- based on the lack of the Debtor's evidentiary support in opposing the motion for summary judgment.

Accordingly, finding that the procedural posture of this case, based on the court's instructions to the parties, is more akin to a motion to dismiss than a motion for summary judgment, the court must determine whether the Debtor has met the exceedingly low threshold that the Debtor can prove no set of facts in support of her claim that Credit Collections violated her ***discharge*** injunction.

In this regard, the court is not persuaded by the reasoning of *Smith*, *Bruno*, or *Irby*, *supra*, to the extent that those cases hold that, under no circumstances, can a failure to update a debtor's account **[\*23]** with a credit reporting agency be subject to a cause of action for a violation of the ***discharge*** injunction. Rather, as recognized by *Vogt, 257 B.R. at 70*, **HN8**[⬆] a violation of the ***discharge*** injunction may occur if a creditor takes "the position that it would not correct the report unless the debtor paid the debt." Here, the Debtor has alleged in her complaint that Credit Collections knew of the Debtor's ***discharge*** and that it willfully and knowingly refused to timely update the Debtor's account with credit reporting agencies. To the extent that the Debtor can prove that Credit Collections intentionally failed to report, or intentionally delayed reporting, updated collection information in the hopes that the Debtor may voluntarily repay her discharged debt in an effort to clean-up the Debtor's ***credit report***, then such actions may be viewed as setting a trap for the Debtor and then lying in wait to see if the bait is taken. In this court's view, **HN9**[⬆] trap hunting can constitute a violation of the ***discharge*** injunction. *Accord Torres, 367 B.R. 478, 2007 Bankr. LEXIS 1478 at \*31-32*; *Lohmeyer, 365 B.R. 746, 2007 Bankr. LEXIS 909 at \*10-12*. Consequently, the Debtor has stated a cause of action for a violation of the ***discharge*** injunction, **[\*24]** and the Debtor is entitled to conduct discovery related to that cause of action before fully responding to Credit Collections's motion for summary judgment pursuant to *Fed. R. Civ.*

*P. 56(f)*. [3]

This is not **[\*25]** to say that the Debtor's burden in proving her allegations will be easy; indeed, it appears that, based on affidavit of Credit Collection's chief operating officer, that Credit Collections may have acted appropriately in supplying information to credit reporting agencies after the entry of the Debtor's ***discharge***. Importantly, to succeed in her case of action, the Debtor must demonstrate not only that Credit Collections continued to transmit inaccurate information to credit reporting agencies, but also that Credit Collections did so in knowing disregard of the ***discharge*** injunction. As stated by the court in *Vogt,* and as reiterated by numerous other cases, including *Lohmeyer* and *Torres,* Credit Collection's motive in its alleged failure to timely update information supplied to credit reporting agencies is directly at issue.

## IV. CONCLUSION

The court will deny Credit Collections motion for summary judgment, in part, and set a status hearing with the parties regarding further scheduling consistent with the Order entered contemporaneously herewith.

---

**End of Document**

---

[3] In a well-written article, one commentator directly addressed the need for discovery in cases where a debtor alleges a violation of the ***discharge*** injunction for a failure to update information furnished to a credit reporting agency pre-petition:

> From a practical standpoint, these holdings would, in nearly all cases, require a minimal amount of discovery to determine if there is any evidence -- other than furnishing or not furnishing credit information to the CRAs -- that the creditor attempted to collect a debt. Absent such evidence, a *§ 362* or *§ 524* must fail.

Debra Lee Hovatter, *Sommersdorf's Progeny: Can Wrong **Credit Report** Trigger a Debtor Claim under the Code?* 26 A.B.I.J. No. 5, 14, 75 (June 2007).

Indeed, the court's holding today provides the Debtor with the opportunity to prove that genuine facts exist showing that Credit Collections's acts, or lack thereof, were something more than rote -- that such acts, or lack thereof, were a coercive attempt to collect a discharged debt.

Javier Merino