UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
Donna DeRosa-Ruquet
Scott Ruquet
226 Potters Drive
Bayville, NJ  08721

U.S BANKRUPTCY COURT
FILED
TRENTON, NJ

2020 FEB 11  P 12: 08

JEANNE A. NAUGHTON

BY
DEPUTY CLERK

| | |
|---|---|
| In Re:<br>DeRosa-Ruquet, et al.<br><br>        Debtors | Case No.:        14-17571-KCF<br><br>Chapter:        13<br><br>Hearing Date:        February 18, 2020<br><br>Judge:        Kathryn C. Ferguson |

## RESPONSE TO OPPOSITION TO ENFORCE LOAN MODIFICATION

Debtor Scott Ruquet makes this Response to the Opposition of his Motion to Enforce the Loan Modification made by Deutsche Bank National Trust Company, as Trustee for the GSAA Home Equity Trust2004-5 ABC, Series 2004-5 ("the creditor"):

1.  On August 6, 2019 the Counsel for the creditor filed a Motion To Approve Loan Modification. [Doc #175, attached hereto as Exhibit A]

2.  The Motion states that the terms of the Modification commenced on December 1, 2016 with **180 payments remaining.**

3.  Attached to the Motion was a copy of the Loan Modification which clearly states that **the maturity date is June 1, 2034**. [Attached hereto as Exhibit B]

4.  On September 23, 2019, this Court entered and Order approving the Loan Modification. [Doc #189]

5.  On January 29, 2020, Counsel for the Creditor, in response to Debtor Scott Ruquet's Motion To Enforce Loan Modification, filed an Opposition which states, in part, that the terms of the Modification commenced on December 1, 2016 with **480 payments remaining and a maturity date of March 1, 2034.** [Doc #213, page 4]

6. Counsel for the Creditor claims: "Debtor knew or should have known from the time of the HAMP that there was a balloon payment at maturity."

7. As the HAMP Mod was not introduced to this Court as part of the creditors Motion To Approve Loan Modification, Debtor Scott Ruquet wonders if the creditor feels this Court "...knew or should have known from the time of the HAMP that there was a balloon payment at maturity" when considering it for approval.

8. Debtor Scott Ruquet is not a mind reader. He relied on the Loan Modification he signed which makes no provisions for a balloon payment. One vague sentence about additional monies owed as "....amended by the agreement..." does not a balloon modification make when there is no amendment.

9. Additionally, Debtor Scott Ruquet relied on the letter he received from NSM dba Mr. Cooper on July 21, 2016, which congratulated him on completing the 2014 Loan Modification. [Attached hereto as Exhibit C]

10. **The letter also states that on November 01, 2016, the interest rate would change to 3.875% with a monthly principal and interest payment of $914.45, an escrow payment of $769.26 and a total monthly payment of $1,683.71. Payments were to commence on December 1, 2016 with 208 payments remaining.**

11. Clearly, the 2014 Loan Modification was never for a term of 40 months as claimed by the creditor in their Opposition because 208 months dived by 12 equals 17.333 years. **Additionally, using the principal and interest figure of $914.45 in that letter produces a $0 balance upon maturity.**

12. Shortly thereafter, the current Loan Modification was negotiated with an interest rate of 2% for the first two (2) years, with a step up cap of 3.875% for the life of the loan to commence on December 01, 2018. As well, the escrow payment amount was adjusted properly. Clearly, there was no reason for the debtor to rely on anything other than the documents he received and signed.

13. Finally, at present debtor Scott Ruquet relies in part, on the letter he received while the 2014 Modification was still in place dated April 10, 2015 which states:

"Nationstar recently completed a review of your client's loan modification agreement and identified the following clause:

6. Borrower understands and agrees that:

c. Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

This clause is a waiver of rights and will not be enforced by Nationstar at any time." [Attached hereto as Exhibit D]

For all intents and purposes this letter admits that debtor Scott Ruquet does in fact, have a right to seek a set-off and defend any obligations he may have under both the Note and the "Security Instrument."

14. In support of debtor Scott Ruquet's assertions that NSM dba Mr. Cooper spread this loan out to 49 years, Counsel for the creditor submitted, in their Opposition, a copy of several telephone logs [page 4, paragraph 18]

15. The logs state that on December 13, 2019, 3rd party debtor Donna DeRosa-Ruquet was "...upset that the terms are 589 months yet only has 14 years and 7 months left." **589 months divided by 12 equals 49 years.**

16. In support of debtor Scott Ruquet's assertions that NSM dba Mr. Cooper told 3rd party debtor Donna DeRosa-Ruquet that she would not be able to obtain a copy of the Loan Amortization.

17. The logs state that on December 13, 2019, **"...as per research dept they don't currently provide amortization scheduled (sic)...".**

18. The logs support debtor Scott Ruquet's assertion that NSM dba Mr. Cooper told debtor Donna DeRosa-Ruquet that "...cust can make higher payments whenever they want..." however, it appears the logs may have been altered at that point because instead of showing that 3rd part debtor Donna DeRosa-Ruquet was told to use Bank Rate to keep track of the loan balance, the logs state **"...and to see if they are applied correctly we can always send out a transaction history."**

19. So are the debtors to believe that NSM dba Mr. Cooper, after having tried to leave this case with an undisclosed $106,000.00 balloon payment attached to debtor

Scott Ruquet's Loan Modification, (and having played fast and loose with this Court), will properly credit any additional payments properly and all they need to do is request a transaction history to "...make sure the payments are applied correctly"?

20. No. Because had the creditor provided the pre-trial discovery so Ordered by this Court on December 17, 2019, under Adversarial Proceeding 19-02175, debtor Scott Ruquet would be able to show the Court that roughly just one short week later, 3rd party debtor Donna DeRosa-Ruquet spoke to a very nice gentleman that identified himself as "Russell", who works in the Modification Department.

21. Russell did tell 3rd party debtor Donna DeRosa-Ruquet that in fact, any extra principal payments that may be sent in by debtor Scott Ruquet would never be applied to the "...balloon payment".

22. Finally, the logs states that : "....the mods are invalid and only valid if approved by the Judge (sic)." This is true, at least according to Counsel for the creditor, which was why they filed the Motion to Approve Loan Modification some three and half years after debtor Scott Ruquet signed it.

23. As for 3rd party debtor "screaming", using "abusive language" and "repeatedly asking "legal questions": after Kimberly Hojak, a customer service representative in the Loss Mitigation Department told her that she would be "...writing in the notes..." that 3rd party debtor Donna DeRosa-Ruquet agreed to everything she had said including the balloon payment, yes, 3rd part debtor Donna DeRosa-Ruquet lost her temper and definitely let a few cuss words loose. As well, if asking a Loss Mitigation rep about their knowledge of RESPA constitutes "legal questions" then 3rd party debtor Donna DeRosa-Ruquet is guilty of that too. When 3rd party debtor advised Ms. Hojak she could be called as a witness at trial she laughed and she "...didn't care...".

24. All off this was said in a sing-song tone of voice as if this were all a game. This isn't funny. This isn't even remotely okay. When one reads her log entries it appears as if Kimberly Hojak did in fact start out to do as she said she would, but instead decided the truth matters because it is a recorded call, after all.

25. A person can only take so much, really and one need not look farther than the letter dated March 6, 2019 which 3rd party debtor Donna DeRosa-Ruquet received from NSM dba Mr. Cooper to get an idea of what both debtor's have endured. [Attached hereto as Exhibit E]

26. The Motion To Approve Loan Modification was filed after a solid year of threats by Counsel (s) to file said Motion, telling debtor Scott Ruquet that the present Loan Modification would be "invalid" unless the Judge approved it. This is nothing short of emotional and psychological harassment because it simply is not true.

27. Apparently, blue collar working people could not *possibly* understand the basic tenets of contract law, which allows, summarily speaking, that once payments are accepted, the contract is ratified.

28. It is clear now, that beginning in or around September of 2018, Counsel(s) for the creditor repeatedly lied to the debtors in anticipation that their pre-conceived inexperience would precede what they would or would not believe.

29. While there is no law against lying, there are laws against Counsel misleading the Court to benefit their client.

30. Moreover, the ABA's original ethics rules, the "1908 Canons of Ethics", included Canon 22, which said: "The conduct of the lawyer before the court and with other lawyers should be characterized by candor and fairness."

31. While both debtors are aware that they are not lawyers, one would think this candor and fairness would apply to any person in an adversarial position, whether they are a lawyer or not.

32. In the instant case it is not a stretch to say the there has been no candor and no fairness on Counsel's (s) part, in fact there was a lack thereof which seems to have gone far beyond what the direction of the creditor may have been. Rather, it seems there is a "win at all costs" mentality going on here with all five (5) lawyers that are or have been involved in this case.  It is for these reasons above that debtor Scott Ruquet with great respect and humility prays this Court Overrule the secured creditor's Objection to his Motion to Enforce the Loan Modification.

## POINTS AND AUTHORITES

Under 12 CFR § 1026.37 (a)(10)(ii)(D):

"(D) **Balloon payment**. If the terms of the legal obligation include a "balloon payment," as that term is defined in paragraph (b)(5) of this section, the creditor shall disclose that the loan has a "Balloon Payment" feature."

Under 12 CFR § 1026.37 (b)(5)

"**(5) Balloon payment.** A statement of whether the transaction includes a balloon payment, labeled "Balloon Payment." For purposes of this paragraph (b)(5), "balloon payment" means a payment that is more than two times a regular periodic payment. "Balloon payment" includes the payment or payments under a transaction that requires only one or two payments during the loan term."

Under 12 CFR § 1026.37 (c)(2)(ii)(A)

"(A) A balloon payment that is scheduled as a final payment under the terms of the legal obligation shall always be disclosed as a separate periodic payment or range of payments, in which case all events requiring disclosure of additional separate periodic payments or ranges of payments described in paragraph (c)(1)(i)(A) through (D) of this section occurring after the second separate periodic payment or range of payments disclosed, other than the balloon payment that is scheduled as a final payment, shall be disclosed as a single range of payments.

Under 12 CFR § 1026.37 (a)(10)(ii)(4)

"iv. **Balloon payment.** If a loan product includes a "balloon payment," as that term is defined in § 1026.37(b)(5), the disclosure of the balloon payment feature, including the year the payment is due, precedes the disclosure of the loan product. Thus, if the loan product is a step rate with an introductory rate that lasts for three years and adjusts each year thereafter until the balloon payment is due in the seventh year of the loan term, the disclosure required is "Year 7 Balloon Payment, 3/1 Step Rate." If the loan product includes more than one balloon payment, only the earliest year that a balloon payment is due shall be disclosed."

Under 12 CFR § 1026.37 (b)(7)(ii)

"1. **Additional information regarding balloon payment.** A creditor complies with the requirement under § 1026.37(b)(7)(ii) to disclose additional information indicating the maximum amount of the balloon payment and the due date of such payment using the phrases "You will have to pay" and "at the end of."

**WHEREFORE,** debtor Scott Ruquet with great respect and humility requests that this Court Overrule the Secured Creditor's Objection and grant debtor Scott - Ruquet's Motion to Enforce Loan Modification in its entirety, and for such other relief as the Court any deems appropriate and just.

02/10/2020

February 10, 2020        Scott Ruquet