B

B

After Recording Return To:
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019
855-369-2410

This Document Prepared By:
Asra Habibija
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019
888-480-2432

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: **$140,800.00**                                  Loan No: ██████████

New Money: **$621.20**

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **19th** day of **October, 2016**, between **SCOTT RUQUET** ("Borrower") and **NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated _____, ____ and recorded in Book/Liber **N/A**, Page **N/A**, Instrument No: **N/A**, of the Official Records of _____ **County, NJ** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at **621 BAY BLVD, BAYVILLE, NJ 08721**, the real property described being set forth as follows:

**Tax Parcel No.:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **November 1, 2016**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$138,983.34**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.



*(page 1 of 4)*

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Commencing **November 01, 2016** and continuing through **October 31, 2018**, interest will be charged on the Unpaid Principal Balance at the yearly rate of **2.000%** (the "Rate Reduction Period"). Borrower promises to make monthly payments of principal and interest of U.S. **$420.88** beginning **December 1, 2016** during the Rate Reduction Period, after which, commencing on the **1st** day of **November, 2018**, the interest rate will be charged at **3.875%**. Principal and interest Borrower will pay thereafter may change in accordance of the terms of the original Note or terms of an active modification to the original Note. If on **June 1, 2034** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

5. Borrower understands and agrees that:

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c)   In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

 

*(page 2 of 4)*

(d)     Our records indicate that you are the Debtor in an active bankruptcy proceeding. Please be advised that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If approval of the loan modification is required, Nationstar will not honor the loan modification agreement until evidence of the required approval is provided.

(e)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(f)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(g)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(h)     That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original loan documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

(i)     In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

(j)     Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which the borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

 

*(page 3 of 4)*

In Witness Whereof, the Lender and I have executed this Agreement.

_____    Date: 11/7/2016

**SCOTT RUQUET** -Borrower

**NATIONSTAR MORTGAGE LLC**

By: _____    (Seal) - Lender
Name: Ava Habibia
Title: **Assistant Secretary**

_____  11/22/16
Date of Lender's Signature




*(page 4 of 4)*

Loan No.: ███████
Borrower: SCOTT RUQUET

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, SCOTT RUQUET ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated _____, _____, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency



Loan No.: ████████
Borrower: SCOTT RUQUET

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_____          Date: 11/7/2016

SCOTT RUQUET  -Borrower

# ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number [REDACTED]                                                                                     Date: **October 19, 2016**

Borrower(s):    **SCOTT RUQUET**

Property Address:    **621 BAY BLVD, BAYVILLE, NJ 08721**

Lender:   **NATIONSTAR MORTGAGE LLC**

In consideration of **NATIONSTAR MORTGAGE LLC** (the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs, or any municipal bonding authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.  Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses. Borrower's failure to comply with all such requests within such 30 day time period will result in the Lender adjusting the modified terms without the borrower's consent.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____                Date: 11/7/2016

**SCOTT RUQUET** -Borrower

## LETTER OF ACKNOWLEDGEMENT

October 19, 2016

SCOTT RUQUET
226 POTTERS DR
BAYVILLE, NJ 08721

RE: Loan number: ███████

Dear SCOTT RUQUET,

Attached for execution is the Modification Agreement for your loan serviced by NATIONSTAR MORTGAGE LLC. The Modification Agreement sets forth the future terms of repayment for your loan, and may include capitalization of certain outstanding past due amounts. **The specific terms are identified in the Modification Agreement, and may include a period of time for which your payment will consist only of interest payments (resulting in no principal reduction) and/or change in the amortization term of your loan** (Such a change may result in you owing a lump sum payment upon maturity of your loan).

In addition to the foregoing, in consideration of Nationstar Mortgage agreeing to the modification of your loan account, you acknowledge and agree that Nationstar Mortgage may maintain an escrow account to collect funds for the payment of future taxes and insurance in accordance with the terms of the attached Agreement to Maintain Escrow Account.

Your estimated total monthly payment will be **$1,097.06**, which includes your initial monthly escrow payment of **$676.18**.

Additionally, a Mobile Notary will come to your place of convenience, at no cost to you to assist in signing and notarizing the modification documents, please call to setup your free appointment.

Should you have any questions regarding the terms of this Letter Acknowledgement or the Modification Agreement, please do not hesitate to contact Ashley Jenkins at 972-316-5980.

Sincerely,
NATIONSTAR MORTGAGE LLC

Acknowledged and agreed to by:

_____
SCOTT RUQUET  -Borrower

Date: 11/7/2016