UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Scott Ruquet**
**226 Potters Drive**
**Bayville, NJ 08721**

FILED
JEANNE A. NAUGHTON, CLERK

NOV 2 0 2020

U.S. BANKRUPTCY COURT
TRENTON, NJ
BY_____DEPUTY

In Re:
DeRosa-Ruquet *et al.,*

    Debtors

| | |
|---|---|
| Case No.: | 14-175-71-KCF |
| Chapter: | 13 |
| Hearing Date: | December 15, 2020 |
| Judge: | Hon. Kathryn C. Ferguson |

<u>**DEBTOR'S RESPONSE TO CREDITOR'S RESPONSE AT #272 TO DEBTOR'S NOTICE OF MOTION TO ENFORCE ORDER ON MOTION TO ENFORCE MORTGAGE MODIFICATION [#246] ORDER GRANTING MOTION TO AMEND THE COURT'S ORDER ON MOTION TO ENFORCE MORTGAGE MODIFICATION [#253] AND ORDER GRANTING CROSS MOTION [#254]**</u>

Debtor Scott Ruquet files his Response to Creditor's Response [#274] To Debtor's Notice Of Motion To Enforce Order On Motion To Enforce Mortgage Modification [#246] Order Granting Motion To Amend The Court's Order On Motion To Enforce Mortgage Modification [#253] And Order Granting Cross Motion [#254] and certifies as follows:

Debtor Scott Ruquet would like to make clear the letter Response he filed November 5, 2020, objecting to Nationstar's Response, was an objection limited to the excuses put forth by Nationstar as the reason for their inability to file a valid Assignment. Neither the Court nor the debtor are responsible for Nationstar's inability to clear the title.

Nationstar Mortgage filed a Proof of Claim on June 23, 2014 [Exhibit A Claim 8-1] The claim amount totaled $133,151.98 and included pre-Petition balance of $7,148.89. On October 23, 2014, debtor Scott Ruquet entered in the first of two Modifications (herein Mod 1) with Nationstar Mortgage. Mod 1 is dated October 23, 2014, with the first

payment of $931.00 due on December 1, 2014. Mod 1 included the full amount of the claim ($133,151,98), plus an additional $5,210.16 for charges accrued after the date of the POC was filed, for a total of $138,362.14. The terms of Mod 1 were 2% interest of the unpaid principle balance only for a period of 24 months after which the interest rate interest rate would be determined in accordance with the original Note. [Exhibit B]

For a period of two (2) years, the debtor paid $230.60 in interest payments monthly. He also paid $769.26 ($254.82 over the projected amount of $514.44) to his escrow account each month. [Exhibit C] These payments were supposed to cover the cost of property taxes and homeowners insurance and, in accordance with a verbal agreement made between debtor Donna DeRosa-Ruquet and then VP of Customer Resolutions Toby Gallegos, the additional $254 was supposed to be directly credited to the principle balance each month to offset the additional pre-petition balance.

Total payments made to debtor's escrow acco≥lo99unt for 2016 year was $10,000.38. Taxes and insurance totaled $6,563.63, which left $3,436.75. It has become painfully clear as the debtor prepares this Response that for those two years no additional money was ever credited to debtor Scott Ruquet's principle balance for either year. If the monies were applied in the accordance of the statements made by Toby Gallegos and relied upon Debtor Donna DeRosa-Ruquet, at the completion of Mod 1 debtor Scott Ruquet would have had an unpaid principle balance in the approximate amount of $131,488.64. Where this money went the debtor does not know but at the end of Mod 1 he stilled owed $138,983.34 as evidenced by the second modification he signed (herein Mod 2) on November 7, 2016. [Exhibit D]

Regardless, for the period commencing December 2014 running through November 2016, debtor Scott Ruquet made monthly mortgage payment of $999.86. After subtracting the cost of property taxes and insurance ($514.44) a balance of $485.86 was left, which represents the monthly amount Nationstar Mortgage collected from the debtor they were not entitled to collect because they are not the Lender of record and have failed to procure and file a valid Assignment. Over the course of the period commencing December 2014 running through November 2016, Nationstar Mortgage collected a total of $11,660.64 from the debtor Scott Ruquet they were not entitled to collect because they are not the Lender of record and have failed to procure and file a valid Assignment.

Beginning December 1, 2016, through the present November 13, 2020, a total of 48 months, in accordance with the Orders of this Court in the instant including, but not limited to, the approved mortgage modification (Mod 2), Nationstar has collected $542 monthly for principle and interest payments that they were not entitled to collect because they are not the Lender of record and have failed to procure and file a valid Assignment. Over the course of the period commencing December 1, 2016 running through November 13, 2020, Nationstar Mortgage collected a total of $26,016.00 from the debtor Scott Ruquet that they were not entitled to collect because they are not the Lender of record and have failed to procure and file a valid Assignment.

**In total, Nationstar Mortgage has collected $37,676.64 from debtor Scott Ruquet that they were not entitled to collect because they are not the Lender of record and have failed to procure and file a valid Assignment.**

As Nationstar Mortgage has failed to clear title to the real property known as 621 Bay Boulevard they have no right to any right title or interest in said property. They also have no right, title or interest in any debt that may be owed by debtor Scott Ruquet, securing said interest as a lack of Assignment voids any mortgage debt Nationstar Mortgage may lay claim to. In short: they have no valid contract under which they are entitled to collect any money from debtor Scott Ruquet.

It is clear that Nationstar Mortgage had prior knowledge that they did not have a valid Assignment nor did they have clear title when they filed an Ammended Proof of Claim [Claim 8-2] and a Motion with this Court to approve a mortgage modification between debtor Scott Ruquet and Nationstar Mortgage. One need only consider the letter dated **March 6, 2019**, [Exhibit E pp 1 & 2 paragraph four (4)] addressed to interested third party Donna DeRosa-Ruquet and signed by Ruth Terry that states:

> **"After speaking to with you, I sent the information to our Bankruptcy and Assignment Mortgage teams to assist in researching and reviewing the account. After reviewing the account, we were able to identify and confirm that at the time the loan was originated, per title policy, you were in title; however, you were not included in the mortgage to acknowledge the debt associated with the property. In addition, we were able to identify that there was an invalid Assignment from bank of America to Nationstar Mortgage LLC doing business as Mr. Cooper."**

Nationstar Mortgage LLC thus owes debtor Scott Ruquet actual damages in the amount of $37, 676.74 and treble damages in the amount of $63, 692.64, for a total of $113,030.22. Additionally, debtor Scott Ruquet is owed $687.00 in PACER fees, $250 in postage fees and $1500 in copy fees (3,000 copies @ .50 a copy.) Debtor Scott Ruquet respectfully requests that this Court consider these damages along with any sanctions imposed to make the instant Motion a dispositive one. Debtor Scott Ruquet also requests that Nationstar Mortgage LLC is Ordered to immediately send debtor Scott Ruquet the balance in his escrow account.

Finally, a check of the records filed with the Ocean County clerk for the years 2012 and 2013 shows that MERS Assigned 2,254 mortgages to Bank of America, and that during the same period Bank of America Assigned 1,837 mortgages Nationstar Mortgage LLC. Most of these loans originated with Countrywide, as did debtor Scott Ruquet and most of these loans remain senior loans yet they have inactive MIN numbers. Gnerally speaking, MIN numbers are pnly retired when the loan has been paid off, refinanced or was tied to a MERS loan package that was so void of clear title the Note that backs it has been sold

wholesale outside of MERS as underperforming and or high risk. More importantly, a majority of these loans have multiple Assignments and some have multiple Modifications. One must wonder if those loans contain undisclosed balloon payments along with severely clouded titles. Apparently debtor Scott Ruquet's loan is not the only loan on record that has title and or Modification issues.

[Exhibit F]

## POINTS AND AUTHORITIES

The New Jersey Supreme Court in Cox specifically held that a debt which is illegally or improperly created constituted an ascertainable loss under the New Jersey Consumer Fraud Act. This interpretation of the application of the Consumer Fraud Act by the New Jersey Supreme Court is consistent with the statutory framework pertaining to remedies for fraud. Indicative of Nationstar's intent is its failure to have a valid Mortgage Assignment, yet they proceeded to file not only an Amended POC, but filed a Motion to have a fraudulent Modification approved as well. Apparently, the defendant attempted to hide their illegal and improper actions when they filed the original Proof of Claim in which they buried Assignment held by the true Lender of record Deutsche Bank National Trust Company, et al.

**N.J.S.A. 2A:32-1 allows:**

> **"Whenever there is fraud in the execution or consideration of a contract, the person defrauded at any time thereafter may institute a civil action, to recover the money owing on such contract although, by its terms, the debt contracted or the money secured to be paid thereby is not then due or payable; and the person defrauded may, upon discovery of the fraud, either rescind the contract entirely and recover the money or property obtained by the fraud, or, sue on the contract to recover thereon. The plaintiff in such an action shall have all rights to which he would be entitled if the debt or obligation was due and payable at the time of the commencement of the action."**

The aforementioned statute clearly permits the plaintiff to obtain the entirety of the monies that were obtained by fraud. See also Jones v. Sportelli 166 N.J. Super 383, 392 (Law Div. 1979); Cogar v. T &R Motors 331 N.J. Super 1997 (App. Div. 2000); This should be the entire contract or the entire amount the debtor paid to Nationstar. The specific statute creates the ascertainable loss of the contract price. Thereafter, the trebling is mandatory under the New Jersey Consumer Fraud Act. Moreover, the rights secured under the New Jersey Consumer Fraud Act are cumulative to other rights and remedies and not exclusive. See N.J.S.A. 56:8-2.13.

Generally, fraud on the court is a fraud "directed to the judicial machinery itself and is not fraud between the parties or fraudulentdocuments . . . . It is thus fraud where . . . the impartial functions of the court have been directly corrupted." Robinson v. Audi Aktiengesellschaft, 56 F.3d 1259, 1266 (10th Cir. 1995) (emphasis added) (citation omitted). The term "fraud on the court" is only mentioned in Rule 60(d)(3) of the Federal Rules of Civil Procedure, yet courts have also used this doctrine to order dismissal or default under other rules where a litigant has stooped to the level of fraud on the court. (See, e.g., Combs v. Rockwell Int'l Corp., 927 F.2d 486, 488 (9th Cir. 1991) (relying on Rule 11 where counsel made thirty-six changes on a deposition errata sheet after the client advised that the transcript was accurate and the testimony was correct); Brockton

Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11–12 (1st Cir. 1985) (affirming district court's entry of default judgment under court's inherent powers in response to defendant's abusive litigation practices); Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983) ("[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."); Eppes v. Snowden, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986) (finding that where fraud is committed upon the court, the court's power to dismiss is inherent "to protect the integrity of its proceedings"). (C.B.H. Resources, Inc. v. Mars Forging Co., 98 F.R.D. 564, 569 (W.D. Pa. 1983) (dismissing under Fed. R. Civ. P. 41(b) where party's fraudulent scheme, including use of a bogus subpoena, was "totally at odds with the . . . notions of fairness central to our system of litigation"). 16 NEV. L. J. 707, HAGUE, p. 726

When Rule 60(d)(3) was added in 1948 the framer's intentions may be best considered in the Advisory's Committee's discussion of the rule:

> "The amendment . . . mak[es] fraud an express ground for relief by motion; and under the saving clause, fraud may be urged as a ground for relief by independent action insofar as established doctrine permits. And the rule expressly does not limit the power of the court . . . to give relief under the savings clause. As an illustration of the situation, see Hazel-Atlas Glass Co. v. Hartford Empire Co.[322 U.S. 238 (1944)].150

Under Hazel-Atlas Glass Co. v. Hartford Empire Co., The Supreme Court, in an opinion authored by Justice Black, held that the judgment must be vacated: *Id. At 251*

> [T]he general rule [is] that [federal courts will] not alter or set aside their judgments after the expiration of the term at which the judgments were finally entered. . . . [but]. . . [e]very element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals. *Id 244-45*

and

> "Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they

must always be mute and helpless victims of deception and fraud. *Id 246*

Nearly all of the principles that govern a claim of fraud on the court come from the Hazel-Atlas case. (Id at 251) First, the power to set aside a judgment exists in every court. (Wright et al., supra note 151) Second, in whichever court the fraud was committed, that court should consider the matter. (Wright et al supra note 151) Third, while parties have the right to file a motion requesting the court to set aside a judgment procured by fraud, the court may also proceed on its own motion. *Id. (citing Universal Oil Prods. Co. v. Root Refining Co., 328 U.S. 575 (1946) (other citations omitted)).* 16 NEV. L. J. 707, HAGUE, p. 728

Indeed, one court stated that the facts that had come to its attention "not only justify the inquiry but impose upon us the duty to make it, even if no party to the original cause should be willing to cooperate, to the end that the records of the court might be purged of fraud, if any should be found to exist."(Root Refining Co. v. Universal Oil Prods. Co., 169 F.2d 514, 521–23 (3d Cir. 1948)(emphasis added.) Fourth, unlike just about every other remedy or claim existing under the rules of civil procedure or common law, there is no time limit on setting aside a judgment obtained by fraud, nor can laches bar consideration of the matter. The logic is clear: "[T]he law favors discovery and correction of corruption of the judicial process even more than it requires an end to lawsuits." (See WRIGHT ET AL., supra note 151.)

A number of courts have held that a "fraud on the court" occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." (Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989) (emphasis added) (citing Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989)); Pfizer Inc. v. Int'l Rectifier Corp., 538 F.2d 180, 195 (8th Cir. 1976); England v. Doyle, 281 F.2d 304, 309 (9th Cir.1960); United Bus. Commc'ns, Inc. v. Racal-Milgo, Inc., 591 F. pp. 1172, 1186–87 (D.Kan. 1984) United States v. ITT Corp., 349 F. Supp. 22, 29 (D. Conn. 1972), aff'd mem.,410 U.S. 919 (1973).)

*And:*

> Fraud on the court is a very high bar. The Tenth Circuit has held that it is fraud "directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents . . . . It is thus fraud where . . . the impartial functions of the court have been directly corrupted."( Robinson v. Audi Aktiengesellschaft, 56 F.3d 1259, 1266 (10th Cir. 1995) (emphasis added).

And

> "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated,

will constitute a fraud on the court." Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978).

Some courts require the moving party to meet certain elements in order to set aside a judgment for fraud on the court. For example, in the Third Circuit, fraud on the court applies to only "the most egregious misconduct directed to the court itself" (Herring v. United States, 424 F.3d 384, 386–87 (3d Cir. 2005). and requires the following elements: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." Id. at 386. Furthermore, fraud on the court under Rule 60(d)(3) does not encompass "ordinary fraud," and must also be distinguished from "fraud" under Rule 60(b)(3)—i.e., those frauds which are not directed to the judicial machinery itself. See United States v. Buck, 281 F.3d 1336, 1342 (10th Cir. 2002). Rule 60(b)(3) provides relief from judgment where there is "fraud . . . misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(3) "Fraud upon the court as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication." King v. First Am. Investigations, Inc. 287 F.3d 91, 95 (2d Cir. 2002) (internal quotations omitted). Accordingly, the standard for establishing fraud on the court under Rule 60(d)(3) "is higher and distinct from the more general standard for fraud under Rule 60(b)(3)." In re Old Carco LLC, 423 B.R. 40, 52 (Bankr. S.D.N.Y. 2010). 16 NEV. L. J. 707, HAGUE, p. 729

The case at the bar reads like a carbon copy of Hazel substituting a mortagage modification submitted to the Court, for a fraudulent article submitted to the Patent Office. Nationstar Mortgage LLC filed a fraudulent POC and made Motion to have a fraudulent mortgage modification approved by this Court. The Court relied heavily on the documents attached to the Amended Proof of Claim and the Modification documents to decide both matters. However, the Proof of Claim was invalid as Nationstar Mortgage is not the Lender as it asserts on page 3. As well, Nationstar has no valid Assignment rendering the Modification void as a matter of law. Yet Nationstar, through its Counsel, engaged in a pattern of deception for almost two years, stopping at nothing to lie, cheat and steal to and from both the Court and the debtors.

11/19/20

DISTRICT OF NEW JERSEY

**Scott Ruquet**
**226 Potters Drive**
**Bayville, NJ 08721**

| | |
|---|---|
| Case No.: | 14-17571-KCF |
| Chapter: | 13 |
| Hearing Date: | December 15, 2020 |
| Judge: | Hon. Kathryn C. Ferguson |

DeRosa-Ruquet *et al.*

Debtors

## CERTIFICATION OF SERVICE

1. I, Scott Ruquet:

   am the Debtor in this case and am representing myself.

2. On *November 19, 2020*, I sent a copy of the following pleadings and/or documents to the parties listed in the chart below.

3. **Debtor's Response to Response of Nationstar [#272] to Debtor's Notice Of Motion To Enforce Order On Motion To Enforce Mortgage Modification [#246] Order Granting Motion To Amend The Court's Order On Motion To Enforce Mortgage Modification [#253] And Order Granting Cross Motion [#254]**

4. I certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Date: _____
November 19, 2020

Scott Ruquet

_____
//Scott Ruquet

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
| --- | --- | --- |
| **Jay Bray**<br>Chief Executive Officer at Mr. Cooper<br>8950 Cypress Waters Blvd<br>Coppell, TX 75019 | *Executive Officer* | ☐ Hand-delivered<br>☑ Regular mail<br>☐ Certified mail/ Return receipt requested<br>☐ Other email<br>(As authorized by the court or rule. Cite the rule if applicable.) |
| David Neeren Esq.<br>~~Laura M. Egerman, Esq.~~<br>RAS Citron, LLC<br>130 Clinton Road<br>Ste Lobby B, Suite 202<br>Fairfield, NJ 07004<br>973-575-0707<br>bkyecf@rasflaw.com | *Counsel for Creditor* | ☐ Hand-delivered<br>☑ Regular mail<br>☐ Certified mail/ Return receipt requested<br>☑ Other email<br>(As authorized by the court or rule. Cite the rule if applicable.) |
| **Christian Sewing, CEO**<br>Deutsche Bank<br>60 Wall Street<br>New York, NY 10005 | *Executive Officer* | ☐ Hand-delivered<br>☑ Regular mail<br>☐ Certified mail/ Return receipt requested<br>☐ Other _____<br>(As authorized by the court or rule. Cite the rule if applicable.) |
| **Elizabeth Wassall, Esq.**<br>Shapiro & DeNardo, LLC<br>14000 Commerce Parkway<br>Mt. Laurel, NJ 08054<br>Suite B<br>856-793-3080 | *Counsel for Creditor* | ☐ Hand-delivered<br>☑ Regular mail<br>☐ Certified mail/ Return receipt requested<br>☐ Other _____<br>(As authorized by the court or rule. Cite the rule if applicable.) |
| | | ☐ Hand-delivered<br>☐ Regular mail<br>☐ Certified mail/ Return receipt requested<br>☐ Other _____<br>(As authorized by the court or rule. Cite the rule if applicable.) |

A



B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY (TRENTON) | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| Name of Debtor:<br>DONNA DEROSA-RUQUET AND SCOTT RUQUET | Case Number: 1417571 |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2004-5

**COURT USE ONLY**

Name and address where notices should be sent:
NATIONSTAR MORTGAGE, LLC
Attn: Bankruptcy Department
PO Box 630267
Irving, TX 75063
**With a copy to Weinstein, Pinson & Riley, BK Services**
2001 Western Ave. #400, Seattle, WA 98121

Telephone number: 877-343-5602(NS)/206-269-3490(WPR)    email: bncmail@w-legal.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**
 (*If known*)

Filed on:

Name and address where payment should be sent (if different from above):
NATIONSTAR MORTGAGE, LLC
Bankruptcy Department
350 Highland Drive
Lewisville, TX 75067
Telephone number: (877) 343-5602    email: bncmail@w-legal.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $133,151.98

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money Loaned
    (See instruction #2)

| **3. Last four digits of any number** by which creditor identifies debtor:<br>XXXXXX4662 | **3a. Debtor may have scheduled account as:**<br><br>Nationstar Mortgage, LLC<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:** 621 Bay Blvd Bayville, NJ 08721

**Value of Property:** $_____

**Annual Interest Rate** 3.875% ☒ Fixed or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ 7,148.89

**Basis for perfection:** Mortgage/Note

**Amount of Secured Claim:** $133,151.98

**Amount Unsecured:**

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (04/13)                                                                                              2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☒ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
or their authorized agent.    (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Max A. Zaleski
Title:        Representative for Nationstar Mortgage, LLC
Company:     WEINSTEIN, PINSON & RILEY, P.S.            /s/ Max A. Zaleski                          June 20, 2014
Address and telephone number (if different from notice address above):    (Signature)                          (Date)

Telephone number:                    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10A (Attachment A) (12/11)

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | | |
|---|---|---|---|---|
| **Name of debtor:** | DONNA DEROSA-RUQUET AND SCOTT RUQUET | **Case number:** | 1417571 | |
| **Name of creditor:** | Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2004-5 | **Last four digits** of any number you use to identify the debtor's account: | XXXXXX4662 | |

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due                                                                                      (1)  $ 127,891.71

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 3.875 % | 2/1/2014 | 3/31/2014 | $825.97 |
| 3.875 % | 4/1/2014 | 4/17/2014 | $230.82 |
| % | | | + $ |

Total interest due as of the petition date   $1,056.79   Copy total here ▶   (2)  + $ 1,056.79

3. Total principal and interest due                                                             (3)  $ 128,948.50

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | | (1) | $ |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ |
| 3. Attorney's fees | | (3) | $ |
| 4. Filing fees and court costs | | (4) | $ |
| 5. Advertisement costs | | (5) | $ |
| 6. Sheriff/auctioneer fees | | (6) | $ |
| 7. Title costs | | (7) | $ |
| 8. Recording fees | | (8) | $ |
| 9. Appraisal/broker's price opinion fees | | (9) | $ |
| 10. Property inspection fees | 11/22/2013, 1/21/2014 | (10) | $27.00 |
| 11. Tax advances (non-escrow) | | (11) | $ |
| 12. Insurance advances (non-escrow) | | (12) | $ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $6,036.67 |
| 14. Property preservation expenses. Specify: | | (14) | $ |
| 15. Other. Specify: | | (15) | $ |
| 16. Other. Specify: | | (16) | $ |
| 17. Other. Specify: | | (17) | + $ |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $6,063.67 |

B 10A (Attachment A) (12/11)                                                                                            Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

☐ No

☒ Yes    Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | |
|---|---|---|
| 1. Installment payments due | Date last payment received by creditor | 3/17/2014 |
| | | mm/dd/yyyy |
| | Number of installment payments due | (1)  2 |
| 2. Amount of installment payments due | 2    installments @ $542.61 | $ 1,085.22 |
| | ____ installments @ | $_____ |
| | ____ installments @ | + $_____ |
| | Total installment payments due as of the petition date   $1,085.22 | Copy total here ▶   (2)  $1,085.22 |
| 3. Calculation of cure amount | **Add** total prepetition fees, expenses, and charges | Copy total from Part 2 here ▶    +  $6,063.67 |
| | **Subtract** total of unapplied funds (funds received but not credited to account) | -  $_____ |
| | **Subtract** amounts for which debtor is entitled to a refund | -  $_____ |
| | **Total amount necessary to cure default as of the petition date** | (3)  $7,148.89 |

The post petition in the amount of $1,162.67 and is due on 5/1/2014.

Copy total onto Item 4 of Proof of Claim form

**Re: Mod for Loan # 0610524662 /Scott Ruquet**

Hide Ad

---

**toby.gallegos@nationstarmail.com**                                    10/23/2014 5:12 PM   🔖

**To** ruquet1@comcast.net

Reply      Forward      Delete      ≡

✎  3 attachments ▸      View      Download

Ms. DeRosa-Ruquet,

Please find the documents below.  Please note there is no down payment requirement and total modified payment
including escrow is estimated at $ 931.38 with the first payment due in December.

Thank you and I hope this helps,

Toby Gallegos

| | |
|---|---|
| From: | ruquet1@comcast.net |
| To: | Toby Gallegos <Toby.Gallegos@nationstarmail.com> |
| Date: | 10/21/2014 07:53 PM |
| Subject: | Re: Mod for Loan # 0610524662 /Scott Ruquet |

Yes that is perfect. I'll have my phone in hand.

Thanks and hope your evening recharges you for tomorrow's day!!

Donna DeRosa

---

**From:** Toby Gallegos
**To:** ruquet1
**Sent:** Tuesday, October 21, 2014 6:48:54 PM
**Subject:** Re: Mod for Loan # 0610524662 /Scott Ruquet

Thanks for the response Ms. DeRosa-Ruquet,

I can call at 9.30am your time if that works for you?

Thanks and have a great day as well!

Toby Gallegos

Ad Info
(//my.xfi

| | |
|---|---|
| From: | ruquet1 <ruquet1@comcast.net> |
| To: | Toby Gallegos@nationstarmail.com |

B

B



SCOTT    T RUQUET

621 BAY BLVD
BAYVILLE   NJ 08721

0610524662
10/223/2014
**Payments must be made Via western union or moneygram.**
**Money gram Receive code is 1678**
**Western Union code city is ASTAR and the state is TX**
Payment and signed documents must be received by, 12/1/2014 in the amount of $0.00.

**Your modified payment is $ 230.60 (excluding your escrow of $ 700.78 – subject to change upon escrow analysis). Your estimated total payment per month is $ 931.38.**

This letter is to inform you of the requirements to complete your loan modification that was recently granted to you by Nationstar Mortgage.  Complete the following steps to finalize your loan modification.

- Both Borrowers need to Sign and notarize the loan modification agreement.
- Sign this cover letter
- Fax a copy of all documents to  as soon as they are signed and notarized.
- Send the original modification documents via **Fed-ex or Overnight** as soon as they are signed and notarized to:
  - o Attention: ABS Division Foreclosure Prevention Dept.
    350 Highland Drive
    Lewisville, Texas 75067
- Complete your loan modification by making your payment by the date agreed between you and Nationstar Mortgage.
- If originals are not returned to the address listed within 30 days, the modification terms may be reversed.

_____         _____
*Customer 1 Signature*                        *Customer 2 Signature*
**Nationstar Mortgage must receive your qualifying payment by the agreed upon date to complete your loan modification.**

Copy



SCOTT   T RUQUET

621 BAY BLVD
BAYVILLE   NJ 08721

10/223/2014
**Payments must be made Via western union or moneygram.**
**Money gram Receive code is 1678**
**Western Union code city is ASTAR and the state is TX**
Payment and signed documents must be received by, 12/1/2014 in the amount of $0.00.

**Your modified payment is $ 230.60 (excluding your escrow of $ 700.78 -- subject to change upon escrow analysis). Your estimated total payment per month is $ 931.38.**

This letter is to inform you of the requirements to complete your loan modification that was recently granted to you by Nationstar Mortgage. Complete the following steps to finalize your loan modification.

- Both Borrowers need to Sign and notarize the loan modification agreement.
- Sign this cover letter
- Fax a copy of all documents to  as soon as they are signed and notarized.
- Send the original modification documents via **Fed-ex or Overnight** as soon as they are signed and notarized to:
    - o  Attention: ABS Division Foreclosure Prevention Dept.
      350 Highland Drive
      Lewisville, Texas 75067
- Complete your loan modification by making your payment by the date agreed between you and Nationstar Mortgage.
- If originals are not returned to the address listed within 30 days, the modification terms may be reversed.

_____          _____
*Customer 1 Signature*                                    *Customer 2 Signature*
*Nationstar Mortgage must receive your qualifying payment by the agreed upon date to complete your loan modification.*

Copy

Ack. Ltr. – Escrow – No Fees                                          1 of 1                                          10/23/2014

## Letter of Acknowledgment

October 23, 2014

Scott T Ruquet

621 BAY BLVD BAYVILLE NJ 08721

RE: Loan Number:  610524662

Dear Scott T Ruquet ,

Attached for execution is the Modification Agreement for your loan serviced by Nationstar Mortgage, LLC.  The Modification Agreement sets forth the future terms of repayment for your loan, and may include capitalization of certain outstanding past due amounts.  The specific terms are identified in the Modification Agreement, and may include a period of time for which your payment will consist only of interest payments (resulting in no principal reduction) and/or change in the amortization term of your loan  (Such a change may result in you owing a lump sum payment upon maturity of your loan.).

By executing this Letter of Acknowledgment and the Modification Agreement, you are agreeing to make a qualifying payment of $0.00 dollars ("Qualifying Payment") for your Modification Agreement to become effective.  This Qualifying Payment will be applied first to any outstanding fees and charges that are not capitalized under the terms of the Modification Agreement, next to any unpaid non-capitalized interest and finally to unpaid principal.  If you fail to make this qualifying payment (or such payment is returned for non-sufficient funds or otherwise denied by the issuing bank), the Modification Agreement shall be deemed invalid and Nationstar Mortgage, LLC shall have no obligation to modify your loan in accordance with the terms of the Modification Agreement.

In addition to the foregoing, in consideration of Nationstar Mortgage agreeing to the modification of you loan account, You acknowledge and agree that Nationstar Mortgage may maintain an escrow account to collect funds for the payment of future taxes and insurance in accordance with the terms of the attached Agreement to Maintain Escrow Account.

Should you have any questions regarding the terms of this Letter of Acknowledgment or the Modification Agreement, please do not hesitate to contact _____ at _____.

Sincerely,

Nationstar Mortgage, LLC

Acknowledged and agreed to by:

Scott T Ruquet  (Borrower Name)                                          10/24/14
                                                                          (Date)

· (Borrower Name)                                                        (Date)

Copy

_____ ... _____ ...... [Space Above This Line For Recording Data] _____ . . _____

Loan #: ▮▮▮▮▮▮

# LOAN MODIFICATION AGREEMENT
(Providing for Interest Only Payments and Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this   23rd day of October, 2014  , between   Scott T Roquet   and
("Borrower") and Nationstar Mortgage LLC   formerly known as Centex Home Equity Company   ("Lender"), amends and
supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if
any, dated   March 05, 2004   and recorded in Book or Liber _____ at page(s) _____, of the
_____ _____ Records of . . . . _____ _____ . .
(Name of Records)                                         (County and State, or other Jurisdiction)
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property
described in the Security Instrument and defined therein as the "Property", located at

621 Bay Blvd Bayville Nj 08721
(Property Address)

the real property described being set forth as follows:

        In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding
anything to the contrary contained in the Note or Security Instrument):

1. As of   December 01, 2014  , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is
U.S. $   138,362.14  , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts
capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the
Unpaid Principal Balance at the yearly rate of   2.00 %, from   November 01, 2014  . Borrower promises to make monthly
payments of interest of U.S. $   230.60  , beginning on the   1st day of December, 2014  , and continuing thereafter on the same day
of each succeeding month until   November 01, 2016   (the "Interest Only Period"). After expiration of the modification period, the
interest rate Borrower will pay will be determined in accordance with the terms of the original Note. If on   March 01, 2034   (the
"Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower
will pay these amounts in full on the Maturity Date.

3. Failure to Timely Remit Payments: If at any time during the effective dates of this Modification Agreement the Borrower fails to
timely make payments as specified hereinabove and such default or failure continues for more than thirty (31) days, then this
Modification Agreement, at the option of Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in
full, effective as of the date of this Modification Agreement, and the amounts due and payable under the terms of the Note shall be as
originally stated therein, as if this Modification Agreement had never existed. Time is of the essence with regard to all payments
specified hereunder. Nothing contained herein shall prevent or preclude Lender from enforcing any of Lender's rights or remedies
under the Note, or under any document or instrument evidencing or securing the indebtedness created by or under the Note, or shall
be construed as a waiver of any of Lender's rights or remedies thereby created.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a
beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment
in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than
30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.
If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security
Instrument without further notice or demand on Borrower.

Copy

LOAN MODIFICATION AGREEMENT-- Cap Fixed(Temp 3O)                                                      10/23/2014    (page 2 of 3)

Loan #: ████

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

6. Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_____ (Seal)

Nationstar Mortgage LLC-Lender

_____ (Seal)
                                                                             Scott T Ruquet -Borrower

By: _____

_____ (Seal)
                                                                             -Borrower

STATE OF    New Jersey
                              )SS.
COUNTY OF   Ocean          )

On the 24th day of October, 2014 personally appeared before me Scott Ruquet, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

_____
Notary Public                          My appointment expires: Dec. 9 2016

_____ [Space Below This Line for Acknowledgements] _____

MARY R PIZZO
Notary Public
State of New Jersey
My Commission Expires Dec 9, 2016

Copy

AGREEMENT TO ESTABLISH ESCROW ACCOUNT                                            10/23/2014   (page 3 of 3)

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, Scott T Ruquet and    ("Borrower") desires Nationstar Mortgage LLC    ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated March 05, 2004 , (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Establish Escrow Account.

_____                                    10-24-14
Scott T Ruquet -Borrower                                          Date

_____                                    _____
- Borrower                                                        Date



**Nationstar**
**MORTGAGE**

MyNationstar.com | 8950 Cypress Waters Blvd | Coppell, TX 75019

P.O.BOX 619063
DALLAS, TX 75261-9063

October 3, 2016

4-692-70978-0000028-001---

DONNA DEROSA RUQUET
SCOTT RUQUET
226 POTTERS DR
BAYVILLE NJ  08721-2527

RE:   Loan Number:  0610524662
Case #: 1417571
DONNA DEROSA RUQUET
SCOTT RUQUET
Property Address:
621 BAY BLVD
BAYVILLE,NJ 08721

Dear DONNA DEROSA RUQUET, SCOTT RUQUET:

**Why am I receiving this letter?**
An escrow analysis was performed on your account.

**What do I need to know?**
Our records indicate your loan is currently in an active bankruptcy proceeding. The enclosed escrow account disclosure statement is for informational purposes only and should not be construed as an attempt to collect a debt.

**What do I need to do?**
If you are represented by an attorney in your bankruptcy, please forward a copy of this letter to such attorney and provide such attorney's name, address and telephone number to us.

If you have any questions, please call us at 1-877-343-5602. Our hours of operation are 8am to 8pm (CT), Monday through Thursday, 8am to 6pm (CT), Friday, and 8am to 2pm (CT) on Saturday.

Sincerely,

Nationstar Mortgage LLC
Bankruptcy Department

Enclosure: Escrow Account Disclosure Statement

*This communication is for informational purposes only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the U.S. Bankruptcy Code.*

CBEAPFDV0215

November 14, 2014



DONNA DEROSA RUQUET
PRO SE
226 POTTERS DRIVE
BAYVILLE, NJ 08721

RE:    DONNA DEROSA RUQUET

        SCOTT RUQUET

        CASE NO.  1417571
        ACCOUNT NO.  610524662

DEAR SIR OR MADAM,

PLEASE CEASE ALL PRE-PETITION DISBURSEMENTS ON THE ABOVE REFERENCED ACCOUNT AS
THE LOAN MODIFICATION COMPLETED ON   11/13/2014 HAS BROUGHT THE LOAN CURRENT.
THEREFORE NO FURTHER DISTRIBUTIONS ARE NECESSARY FOR THIS CLAIM.

SHOULD YOU HAVE ANY QUESTIONS OR NEED ANY ADDITIONAL INFORAMTION, PLEASE
CONTACT OUR OFFICE.

REGARDS,

BANKRUPTCY DEPARTMENT
NATIONSTAR MORTGAGE, LLC
PO BOX 630267
IRVING, TX   75069
(877)343-5602

CC:
DONNA DEROSA RUQUET
SCOTT RUQUET
226 POTTERS DR
BAYVILLE, NJ  087212527

ALBERT RUSSO
CN 4853
TRENTON, NJ  8650

C

C

**Nationstar**
MORTGAGE

RETURN SERVICE ONLY
PLEASE DO NOT SEND MAIL TO
THIS ADDRESS
P.O.BOX 619063
DALLAS, TX 75261-9063

4-692-70978-0000028-001----

DONNA DEROSA RUQUET
226 POTTERS DR
BAYVILLE NJ  08721-2527

## Escrow Account Disclosure Statement

Customer Service : 1-888-480-2432
Mon-Thurs 8 am to 8 pm, Fri 8 am to 6 pm, Sat 8 am to 2 pm CT

Tax/Insurance: 1-888-297-2432
Mon-Thurs 8 am to 5 pm CT

Your Loan Number: 0610524662
Statement Date: 10/03/2016

| | |
|---|---|
| **Why am I receiving this?** | Nationstar completed an analysis of your escrow account to ensure that the account is funded correctly, determine any surplus or shortage, and adjust your monthly payment accordingly. Nationstar maintains an escrow cushion equal to two months' estimated taxes and insurance (unless limited by your loan documents or state law). This measure helps to avoid a negative balance in the event of changing tax and insurance amounts. |
| **What does this mean for me?** | At this time, your Escrow Account has less money than needed and there is a shortage of $0.00. Due to this shortage and changes in your taxes and insurance premiums,  **your monthly escrow payment will decrease by ($222.29). Effective 12/01/2016,  your new total monthly payment will be $1,461.42.** |
| **What do I need to do?** | You may either **1) make the new monthly payment** listed of $1,461.42 or **2) pay the shortage in part or in full** by sending the full or partial shortage amount along with the completed coupon below. If you choose to pay in full, please note your new monthly payment will be  **$1,461.42**, which includes adjustments made for changes in taxes and insurance premiums.   No action is required at this time as the shortage amount = $0. |

| Total Payment | Current Monthly Payment | Payment Changes | New Monthly Payment |
|---|---|---|---|
| PRINCIPAL AND INTEREST | $230.60 | $683.85 | $914.45 |
| ESCROW | $769.26 | ($222.29) | $546.97 |
| **Total Payment** | **$999.86** | **$461.56** | **$1,461.42** |

*See below for shortage calculation*

**What is a Shortage?** A shortage is the difference between the **lowest projected balance** of your account for the coming year and your **minimum required balance** . To prevent a negative balance, the total annual shortage is divided by 12 and added to your monthly escrow payment, as shown below.

| Minimum Required  Balance | Lowest Projected Balance |
|---|---|
| $1,093.94 | $1,093.94 |

$0.00 / 12 = $0.00
*Please see the Coming Year Projections table on the back for more details.*

| Escrow Payment Breakdown | Current Annual Disbursement | Annual Change | Anticipated Annual Disbursement |
|---|---|---|---|
| TOWN TAX | $4,032.48 | $0.00 | $4,032.48 |
| HAZARD SFR | $2,531.15 | $0.00 | $2,531.15 |
| **Annual Total** | **$6,563.63** | **$0.00** | **$6,563.63** |

*If you have questions about changes to your property taxes or homeowners' insurance premiums, please contact your local taxing authority or insurance provider. For more information about your loan, please sign in at MyNationstar.com.*

This communication is for informational purpose only and is not intended as an attempt to collect, assess, or recover a claim against, or demand payment from, any individual protected by the U.S. Bankruptcy Code.

------------------------------------------------------------------------------------------------

## This Area Intentionally Left Blank

INTERNET REPRINT

The change in your escrow payment may be based on one or more of the following factors:

| Payment(s) | Taxes | Insurance |
|---|---|---|
| • Monthly payment(s) received were less than or greater than expected | • Tax rate and/or assessed value changed | • Premium changed |
| • Monthly payment(s) received earlier or later than expected | • Exemption status lost or changed | • Coverage changed |
| • Previous overage returned to escrow | • Supplemental/Delinquent tax paid | • Additional premium paid |
| | • Paid earlier or later than expected | • Paid earlier or later than expected |
| | • Tax installment not paid | • Premium was not paid |
| | • Tax refund received | • Premium refund received |
| | • New tax escrow requirement paid | • New insurance escrow requirement paid |
| | | • Force placed insurance premium paid |

### Prior Year Account History and Coming Year Projections

This is a statement of the actual activity in your escrow account from 12/15 through 11/16. This statement itemizes your actual escrow account transactions since your previous analysis statement or initial disclosure, and projects payments, disbursements and balances for the coming year. The projections from your previous escrow analysis are included with the actual payments and disbursements for the prior year. By comparing the actual escrow payment with the previous projections listed, you can determine where a difference may have occurred. When applicable, the letter "E" beside an amount indicates that a payment or disbursement has not yet occurred but is estimated to occur as shown.

Projections are included to ensure sufficient funds are available to pay your taxes and/or insurance for the coming year. Under Federal Law (RESPA) the lowest monthly balance in your escrow account should be no less than $1,093.94 or 1/6th of the total annual projected disbursement from your escrow account, unless your mortgage documents or state law specifies otherwise. Your projected estimated lowest account balance of $1,093.94 will be reached in March 2017. When subtracted from your minimum required balance of $1,093.94, an Escrow Shortage results in the amount of $0.00. These amounts are indicated with an arrow (<).

*This escrow analysis is based on the assumption that all escrow advances made on your loan prior to your bankruptcy filing date are included in your bankruptcy plan and will be paid in the plan. This analysis considers insurance, taxes and other amounts that will come due after the filing of your bankruptcy case.*

| Month | Projected Payment | Actual Payment | Projected Disbursement | Actual Disbursement | Description | Projected Balance | Actual Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Start | $2,777.77 | ($1,031.19) |
| 12/15 | $514.44 | $769.26 * | $0.00 | $0.00 | | $3,292.21 | ($261.93) |
| 01/16 | $0.00 | $0.00 | $0.00 | $980.35 * | TOWN TAX | $3,292.21 | ($1,242.28) |
| 02/16 | $0.00 | $1,538.52 * | $0.00 | $0.00 | | $3,292.21 | $296.24 |
| 03/16 | $0.00 | $769.26 | $0.00 | $2,363.00 * | HAZARD SFR | $3,292.21 | ($1,297.50) |
| 04/16 | $0.00 | $769.26 | $0.00 | $980.35 * | TOWN TAX | $3,292.21 | ($1,508.59) |
| 05/16 | $0.00 | $769.26 | $0.00 | $168.15 * | HAZARD SFR | $3,292.21 | ($907.48) |
| 06/16 | $0.00 | $769.26 * | $0.00 | $0.00 | | $3,292.21 | ($138.22) |
| 07/16 | $0.00 | $769.26 * | $0.00 | $0.00 | | $3,292.21 | $631.04 |
| 08/16 | $0.00 | $769.26 | $0.00 | $1,035.89 * | TOWN TAX | $3,292.21 | $364.41 |
| 09/16 | $0.00 | $1,538.52 * | $0.00 | $0.00 | | $3,292.21 | $1,902.93 |
| 10/16 | $0.00 | $769.26 E | $0.00 | $0.00 | Anticipated Payments 10/16-10/16 | $3,292.21 | $2,672.19 |
| 11/16 | $0.00 | $769.26 | $0.00 | $1,035.89 E | TOWN TAX | $3,292.21 | $2,405.56 |
| Total | $514.44 | $10,000.38 | $0.00 | $6,563.63 | Total | $3,292.21 | $2,405.56 |

| Month | Projected Payment | | Projected Disbursements | | Description | Current Balance | Required Balance Projection |
|---|---|---|---|---|---|---|---|
| | | | | | Start | $2,405.56 | $2,405.56 |
| 12/16 | $546.97 | | $0.00 | | | $2,952.53 | $2,952.53 |
| 12/16 | $12.00 | | $0.00 | | BK ADJ | $2,964.53 | $2,964.53 |
| 01/17 | $546.97 | | $0.00 | | | $3,511.50 | $3,511.50 |
| 02/17 | $546.97 | | $980.35 | | TOWN TAX | $3,078.12 | $3,078.12 |
| 03/17 | $546.97 | | $2,531.15 | | HAZARD SFR | $1,093.94 | $1,093.94 < |
| 04/17 | $546.97 | | $0.00 | | | $1,640.91 | $1,640.91 |
| 05/17 | $546.97 | | $980.35 | | TOWN TAX | $1,207.53 | $1,207.53 |
| 06/17 | $546.97 | | $0.00 | | | $1,754.50 | $1,754.50 |
| 07/17 | $546.97 | | $0.00 | | | $2,301.47 | $2,301.47 |
| 08/17 | $546.97 | | $1,035.89 | | TOWN TAX | $1,812.55 | $1,812.55 |
| 09/17 | $546.97 | | $0.00 | | | $2,359.52 | $2,359.52 |
| 10/17 | $546.97 | | $0.00 | | | $2,906.49 | $2,906.49 |
| 11/17 | $546.97 | | $1,035.89 | | TOWN TAX | $2,417.57 | $2,417.57 |
| Total | $6,575.64 | | $6,563.63 | | Total | $2,417.57 | $2,417.57 |

**Bankruptcy Adjustment** - The Prior Year Account History and Coming Year Projections section of the Annual Escrow Account Disclosure Statement may contain a line item called "Bankruptcy Adjustment". This amount is a credit based upon the unpaid portion of the escrow funds listed on the proof of claim to be paid through the Chapter 13 plan. The amount of the credit is calculated and applied to reach the minimum required balance for the escrow account as allowed under the loan documents and applicable non-bankruptcy law. The credit may not represent the total outstanding amount of escrow funds owed in the proof of claim but ensures that any escrow funds listed on the proof of claim to be paid through the plan will not be collected through the escrow shortage or surplus listed in the

4-692-70978-0000028-001----



Annual Escrow Account Disclosure Statement. In some instances, only a portion of the proof of claim escrow funds are listed as a credit to reach the required minimum account balance.

You will receive an Annual Escrow Account Disclosure Statement reflecting the actual disbursements at the end of the next escrow analysis cycle. However, you should keep this statement for your own records for comparison. If a previous escrow analysis statement was sent to you by your previous servicer, please refer to that statement for comparison purposes. If you have any questions about this statement, please call our **Customer Service Department toll-free at 1-888-480-2432.**

Note: Any disbursements listed after the date of this statement are assumed to be projected or estimated.

D

D

(Page 1 of 8) Case 14-17571-KCF Doc 253-3 Filed 01/29/20 Entered 01/29/20 18:13:15 Desc Main
Exhibit C- 2016 Loan Modification Page 31 of Page 2 of 9

Copy

After Recording Return To:
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019
855-369-2410

This Document Prepared By:
Avra Habibija
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019
888-480-2432

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: $140,800.00     Loan No: ▮▮▮▮▮▮
New Money: $621.20

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **19th** day of **October, 2016**, between **SCOTT RUQUET** ("Borrower") and **NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated _____, ____ and recorded in Book/Liber **N/A**, Page **N/A**, Instrument No: **N/A**, of the Official Records of _____ County, **NJ** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at **621 BAY BLVD, BAYVILLE, NJ 08721**, the real property described being set forth as follows:

**Tax Parcel No.:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **November 1, 2016**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$138,983.34**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

 

LOAN MODIFICATION AGREEMENT - NSFixedTempRateReduction
9394 11/14                                          (page 1 of 4)

(Page 2 of 8) Case 14-17571-KCF Doc 275-3 Filed 11/20/20 Entered 11/20/20 16:33:15 Desc Main
Exhibit C- 2016 Loan Modification Document Page 32 of 34 Page 3 of 9

Copy

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Commencing **November 01, 2016** and continuing through **October 31, 2018**, interest will be charged on the Unpaid Principal Balance at the yearly rate of **2.000%** (the "Rate Reduction Period"). Borrower promises to make monthly payments of principal and interest of U.S. **$420.88** beginning **December 1, 2016** during the Rate Reduction Period, after which, commencing on the **1st** day of **November, 2018**, the interest rate will be charged at **3.875%**. Principal and interest Borrower will pay thereafter may change in accordance of the terms of the original Note or terms of an active modification to the original Note. If on **June 1, 2034** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest In Borrower Is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.
   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower Is obligated to make under the Security Instrument.

5. Borrower understands and agrees that:

   (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c)    In the event that I was discharged In a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

 

LOAN MODIFICATION AGREEMENT - NSFixedTempRateReduction
9394 11/14

*(page 2 of 4)*

Copy

(d)     Our records indicate that you are the Debtor in an active bankruptcy proceeding. Please be advised that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If approval of the loan modification is required, Nationstar will not honor the loan modification agreement until evidence of the required approval is provided.

(e)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(f)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(g)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(h)     That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original loan documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

(i)     In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

(j)     Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which the borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

 

LOAN MODIFICATION AGREEMENT - NSFixedTempRateReduction
9394 11/14

Copy

In Witness Whereof, the Lender and I have executed this Agreement.

_____    Date: __11/7/2016__

**SCOTT RUQUET**  -Borrower

**NATIONSTAR MORTGAGE LLC**

By: _____     (Seal) - Lender
Name: _____
Title: **Assistant Secretary**

_____
Date of Lender's Signature    11/22/16

LOAN MODIFICATION AGREEMENT - NSFixedTempRateReduction
9394 11/14



*(page 4 of 4)*