# Exhibit "F"

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY (TRENTON) | PROOF OF CLAIM |
|---|---|

**Name of Debtor:**
DONNA DEROSA-RUQUET AND SCOTT RUQUET

Case Number: 1417571

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2004-5

**COURT USE ONLY**

Name and address where notices should be sent:
NATIONSTAR MORTGAGE, LLC
Attn: Bankruptcy Department
PO Box 630267
Irving, TX 75063
**With a copy to Weinstein, Pinson & Riley, BK Services**
2001 Western Ave. #400, Seattle, WA 98121

Telephone number: 877-343-5602(NS)/206-269-3490(WPR)     email: bncmail@w-legal.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**
   (*If known*)

Filed on:

Name and address where payment should be sent (if different from above):
NATIONSTAR MORTGAGE, LLC
Bankruptcy Department
350 Highland Drive
Lewisville, TX 75067
Telephone number: (877) 343-5602     email: bncmail@w-legal.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $133,151.98

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money Loaned
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** XXXXXX4662 | **3a. Debtor may have scheduled account as:** Nationstar Mortgage, LLC (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other
**Describe: 621 Bay Blvd Bayville, NJ 08721**

**Value of Property:** $_____

**Annual Interest Rate** 3.875% ☒ Fixed or ☐ Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$ 7,148.89

**Basis for perfection:** Mortgage/Note

**Amount of Secured Claim:** $133,151.98

**Amount Unsecured:**

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

**Amount entitled to priority:**

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (04/13)                                                                                                                    2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

**Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.**

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.   ☒ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Max A. Zaleski
Title:            Representative for Nationstar Mortgage, LLC
Company:    WEINSTEIN, PINSON & RILEY, P.S.                    /s/ Max A. Zaleski                                        June 20, 2014
Address and telephone number (if different from notice address above):        (Signature)                                        (Date)
_____
_____
_____
Telephone number:                        email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10A (Attachment A) (12/11)

## Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | DONNA DEROSA-RUQUET AND SCOTT RUQUET | **Case number:** | 1417571 |
| **Name of creditor:** | Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2004-5 | **Last four digits** of any number you use to identify the debtor's account: | XXXXXX4662 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due** (1) $ 127,891.71

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 3.875 % | 2/1/2014 | 3/31/2014 | $825.97 |
| 3.875 % | 4/1/2014 | 4/17/2014 | $230.82 |
| % | | | + $ |
| **Total interest due as of the petition date** | | $1,056.79 | Copy total here ▶ (2) + $ 1,056.79 |

3. **Total principal and interest due** (3) $ 128,948.50

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. **Late charges** | | (1) | $ |
| 2. **Non-sufficient funds (NSF) fees** | | (2) | $ |
| 3. **Attorney's fees** | | (3) | $ |
| 4. **Filing fees and court costs** | | (4) | $ |
| 5. **Advertisement costs** | | (5) | $ |
| 6. **Sheriff/auctioneer fees** | | (6) | $ |
| 7. **Title costs** | | (7) | $ |
| 8. **Recording fees** | | (8) | $ |
| 9. **Appraisal/broker's price opinion fees** | | (9) | $ |
| 10. **Property inspection fees** | 11/22/2013,1/21/2014 | (10) | $27.00 |
| 11. **Tax advances (non-escrow)** | | (11) | $ |
| 12. **Insurance advances (non-escrow)** | | (12) | $ |
| 13. **Escrow shortage or deficiency** (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $6,036.67 |
| 14. **Property preservation expenses. Specify:** | | (14) | $ |
| 15. **Other. Specify:** | | (15) | $ |
| 16. **Other. Specify:** | | (16) | $ |
| 17. **Other. Specify:** | | (17) + | $ |
| 18. **Total prepetition fees, expenses, and charges. Add all of the amounts listed above.** | | (18) | $6,063.67 |

Case 14-17571-KCF  Claim 8-1  Filed 06/23/14  Desc Main Document  Page 4 of 34

B 10A (Attachment A) (12/11)                                                                                          Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes    Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | |
|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | 3/17/2014 |
| | | mm/dd/yyyy |
| | Number of installment payments due | (1) 2 |
| 2. **Amount of installment payments due** | 2    installments @ $542.61 | $ 1,085.22 |
| | _____ installments @ | $ _____ |
| | _____ installments @ | + $ _____ |

| | | | |
|---|---|---|---|
| | **Total installment payments due as of the petition date** | $1,085.22 | Copy total here ▶ (2) $1,085.22 |
| 3. **Calculation of cure amount** | **Add** total prepetition fees, expenses, and charges | | Copy total from Part 2 here ▶ + $6,063.67 |
| | **Subtract** total of unapplied funds (funds received but not credited to account) | | - $ _____ |
| | **Subtract** amounts for which debtor is entitled to a refund | | - $ _____ |
| | **Total amount necessary to cure default as of the petition date** | | (3) $7,148.89 |

The post petition in the amount of $1,162.67 and is due on 5/1/2014.

Copy total onto Item 4 of Proof of Claim form

# NOTE

| MARCH 5, 2004 | MCLEAN | VIRGINIA |
|---|---|---|
| [Date] | [City] | [State] |

### 621 BAY BLVD, BAYVILLE, NJ 08721
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 140,800.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is FIRST NATIONAL BANK OF ARIZONA

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.7500    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1ST    day of each month beginning on    APRIL 1, 2004    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    MARCH 1, 2034    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 9490, SCOTTSDALE, AZ 85252-9490

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 913.23

## 4. BORROWER'S RIGHT TO PREPAY THIS SECTION IS SUPERCEDED BY THE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

327RUQUET.SC002

**MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**-5N** (0207)    MW 05/00    **Form 3200 1/01**
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3    Initials:

610   064221908   N   001   001

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5         % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

327RUQUET,SC002

VMP-5N (0207)                                   Page 2 of 3                                   Form 3200 1/01

Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
SCOTT T. RUQUET                  -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                          -Borrower

*[Sign Original Only]*

327RUQUET.SC002

PRE-PAYMENT PENALTY

NOTICE TO THE BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for re-payment in the loan agreement.

This Note Addendum is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note or Fixed Rate Note, as applicable ("Note") of the same date executed by the undersigned and payable to **FIRST NATIONAL BANK OF ARIZONA**

(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The Note Addendum provides for a penalty with respect to pre-payments of the obligation represented by the Note made within **3** years from the date I executed the Note. I am executing this Note Addendum in consideration of the Lender's having charged me a lesser interest rate and/or points in connection with the Note than if I had selected a loan program which permits pre-payments without penalty.

Section 5 of the Note for an Adjustable Rate Note or Section 4 for a Fixed Rate Note is amended to read as follows:

**BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "pre-payment". When I make a pre-payment, I will tell the Note Holder in writing that I am doing so.

The first **36** months of the loan term is called the "Penalty Period". In any twelve month period during the Penalty Period, I may prepay up to 20% of the original principal amount of this Note without paying a penalty. If I make a pre-payment in excess of 20% of the original principal amount in any twelve month period during the Penalty Period, I will pay a penalty. The penalty will be **2.00** % ( **TWO** Percent) of any amount prepaid in excess of 20% of the original principal amount of this Note..

No pre-payment penalty will be assessed for any pre-payment made after the Penalty Period. No pre-payment penalty will be assessed with any pre-payment that is (a) concurrent with a bona fide sale of the Property securing this Note to an unrelated third party and (b) made after the first twelve months of the loan term. The Note Holder may require reasonable documentation at the time identifying the pre-payment as being in connection with the sale of the Property. A pre-payment penalty will be assessed in connection with a pre-payment made during the first twelve months of the Penalty Period, regardless of whether the Property has been sold.

The Note Holder will use all of my pre-payments to reduce the amount of principal that I owe under this Note. If I make a partial pre-payment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my loan is an Adjustable Rate Note, a partial pre-payment may reduce the amount of my monthly payments after the first change date following my partial pre-payment. However, any reduction due to partial pre-payment may be offset by an Interest Rate increase.

The Note Holder's failure to collect a pre-payment penalty at the time a pre-payment is received shall not be deemed a waiver of such penalty and any such penalty calculated in accordance with this section shall be payable upon demand.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

3-5-04

SCOTT T. RUQUET      DATE

LOAN #: ███████

Form 234

PPP Alt-A
NJ2%, NC1%, GA1%, MI1%, SC1%
12/30/2003

BANK OF NEVADA

**14635 North Kieland Blvd., Suite 201**
**Scottsdale, AZ 85254**
**Office (480) 609-5500 Fax (480) 609-5569**

## ALLONGE TO NOTE

LOAN NUMBER: ▮▮▮▮▮▮▮
BORROWER:        **RUQUET**
IN THE AMOUNT OF:  **$140,800.00**

PAY TO THE ORDER OF:

**FIRST NATIONAL BANK OF NEVADA**

WITHOUT RECOURSE BY:

**AMY HAWKINS, SHIPPING OFFICER**
**FIRST NATIONAL BANK OF ARIZONA**

PAY TO THE ORDER OF:

WITHOUT RECOURSE BY:

**AMY HAWKINS, SHIPPING OFFICER**
**FIRST NATIONAL BANK OF NEVADA**



# BANK OF ARIZONA

14635 North Kierland Blvd, Suite 201
Scottsdale, AZ 85254
Office (480) 609-5500  Fax (480) 609-5574

## ALLONGE TO NOTE

LOAN NUMBER: ███████
BORROWER: **RUQUET**
IN THE AMOUNT OF: **$140,800.00**

PAY TO THE ORDER OF:

WITHOUT RECOURSE BY:

**AMY HAWKINS, SHIPPING OFFICER**
**FIRST NATIONAL BANK OF ARIZONA**

Return To:
FIRST NATIONAL BANK OF ARIZONA
P.O. BOX 66604
PHOENIX, AZ 85082

INSTR # 2004054389
OR BK 11959 PG 1815
RECORDED 03/12/2004 12:14:32 PM
CARL W. BLOCK, COUNTY CLERK
OCEAN COUNTY, NEW JERSEY

OW - ▬▬▬▬

FNBA - ▬▬▬▬

G50405

▬▬▬▬▬▬

Prepared By:
MARCI LYTLE
1760 OLD MEADOW RD. 3RD FLOOR
MCLEAN, VA 22102

———————————————[Space Above This Line For Recording Data]———————————————

# MORTGAGE

MIN 1001355-3274016806-5



610  064221908   D2   001   002

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated          MARCH 5, 2004                ,
together with all Riders to this document.
**(B) "Borrower"** is SCOTT T. RUQUET

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

327RUQUET.SC002          ▬▬▬▬▬▬
**NEW JERSEY** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**          Form 3031 1/01

**VMP®** -6A(NJ) (0005)

Page 1 of 15          MW 05/00          Initials:

VMP MORTGAGE FORMS - (800)521-7291

(16)  180.00 cash

PJM
3-11

## LEGAL DESCRIPTION

Commitment Number: ▮▮▮▮▮

### SCHEDULE C
### PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

ALL that tract or parcel of land and premises, situate, lying and being in the Township of Berkeley, County of Ocean and State of New Jersey, more particularly described as follows:

TRACT 1

BEING known and designated as Lot Nos. 45, 47 Block 30 on Map of Holly Park on Barnegat Bay, Berkeley Township, A-305, Ocean County, New Jersey, Arthur C. King, C.E., filed April 3, 1926 in the Clerk's Office of Ocean County, New Jersey, being a Plot of Ground 50 feet by 125 feet.

TRACT 2

BEING known and designated as Lot Nos. 41 and 43 Block 30, as shown on Map of Holly Park on Barnegat Bay, Berkeley Township, A-305, Ocean County, Arthur C. King, C.E., filed April 3, 1926 in the Clerk's Office of Ocean County, New Jersey.

THE above described premises are more particularly described in accordance with a survey prepared by Horn, Tyson and Yoder, Inc., dated September 7, 1985.

BEING known and designated as Lot Nos. 41, 43, 45 and 47 Block 30 as shown on a map of Holly Park on Barnegat Bay Berkeley Township, A-305, Ocean County, Arthur C. King, C.E., filed April 3, 1926 in the Clerk's Office of Ocean County, New Jersey, Map #A305.

BEGINNING at a point in the intersection of the Northerly line of Bay Boulevard with the Westerly line of North Bayview Avenue (Formerly 7th Avenue); thence

1. North 88 degrees 45 minutes West, along Bay Boulevard 100.00 feet to a point; thence

2. North 10 degrees 15 minutes East, 125.00 feet to a point; thence

3. South 88 degrees 45 minutes East, 100.00 feet to South Westerly line of North Bayview Avenue; thence

4. Along same South 10 degrees 15 minutes West, 125.00 feet to place of BEGINNING.

ALSO known as Lots 41, 43, 45 and 47 Block 1373.30 on the Township of Berkeley Tax Map.

ALTA Commitment
Schedule C

(B-40554.PFD/B-40554/7)

**(D) "Lender"** is FIRST NATIONAL BANK OF ARIZONA

Lender is a CORPORATION
organized and existing under the laws of      UNITED STATES OF AMERICA
Lender's address is 1760 OLD MEADOW ROAD, 3RD FLR, MCLEAN, VA 22102

**(E) "Note"** means the promissory note signed by Borrower and dated     MARCH 5, 2004 .
The Note states that Borrower owes Lender ONE HUNDRED FORTY THOUSAND EIGHT HUNDRED AND NO/100                     Dollars
(U.S. $140,800.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     MARCH 1, 2034 .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

327RUQUET,SC002

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements
under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the COUNTY of OCEAN :

[Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION

Property Account Number: B:1373 L:410           which currently has the address of
621 BAY BLVD                                                            [Street]
BAYVILLE                                    [City], New Jersey     08721     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

327RUQUET,SC002

Initials:

-6A(NJ) (0005)           Page 3 of 15           Form 3031 1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

327RUQUET,SC002

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

327RUQUET.SC002

**-6A(NJ)** (0005)                    Page 5 of 15          Initials: ____          **Form 3031 1/01**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

327RUQUET,SCO02

-6A(NJ) (0005)                    Page 6 of 15        Initials:                    Form 3031 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

327RUQUET,SC002

-6A(NJ) (0005)　　　　　　Page 7 of 15　　　Initials:　　　Form 3031 1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

327RUQUET,SC002

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

327RUQUET.SC002

Initials

-6A(NJ) (0005)    Page 9 of 15    Form 3031 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

327RUQUET,SC002

-6A(NJ) (0005)                Page 11 of 15          Initials:              Form 3031 1/01

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

327RUQUET,SC002

-6A(NJ) (0005)
®

Page 12 of 15

Initials

Form 3031 1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

327RUQUET,SC002



Initials:

-6A(NJ) (0005)                    Page 13 of 15                    Form 3031 1/01

Case 14-17571-KCF    Claim 8-1    Filed 06/23/14    Desc Main Document    Page 24 of 34

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____(Seal)
SCOTT T. RUQUET                                                    -Borrower

_____(Seal)
                                                                          -Borrower

_____(Seal)        _____(Seal)
                    -Borrower                                                          -Borrower

_____(Seal)        _____(Seal)
                    -Borrower                                                          -Borrower

_____(Seal)        _____(Seal)
                    -Borrower                                                          -Borrower

327RUQUET,SCO02

-6A(NJ) (0005)                    Page 14 of 15                    Form 3031 1/01

**STATE OF NEW JERSEY,** *Ocean*                     **County ss:**

On this      5th      day of     March, 2004           , before me, the subscriber,
personally appeared    SCOTT T. RUQUET

                                                  who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

Notary Public *Laurence A. Hecker*
*An attorney at law of N.J.*

327RUQUET,SCO02

**-6A(NJ)** (0005)                 Page 15 of 15        Initials: _____        Form 3031 1/01



GS0405
w/D
County wide

## Ocean County
## Document Summary Sheet

OCEAN COUNTY

PO BOX 2191

COURTHOUSE

TOMS RIVER NJ 08754

INSTR # 2012054321
OR BK 15213 PG 1203
RECORDED 05/31/2012 09:20:01 AM
SCOTT M. COLABELLA, COUNTY CLERK
OCEAN COUNTY, NEW JERSEY

**Official Use Only**

| Transaction Identification Number | 1739441 | 927489 |
|---|---|---|

| | | Return Address *(for recorded documents)* |
|---|---|---|
| Submission Date *(mm/dd/yyyy)* | 05/30/2012 | BANK OF AMERICA |
| No. of Pages *(excluding Summary Sheet)* | 1 | 1800 TAPO CANYON ROAD |
| Recording Fee *(excluding transfer tax)* | $40.00 | SIMI VALLEY, CA 93063 |
| Realty Transfer Tax | $0.00 | |
| Total Amount | $40.00 | |

| Document Type | ASSIGNMENT/MORTGAGE |
|---|---|

**Municipal Codes**

BERKELEY TOWNSHIP        6

**Batch Type**

L2 - LEVEL 2 (WITH IMAGES)

### Bar Code(s)

134602

### Additional Information (Official Use Only)

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF OCEAN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

1780022_5M30D(17H43M30S936)/1739441 927489

Page 1 of 2



610   064221908   D8   002   003



## Ocean County
## Document Summary Sheet

| | | |
|---|---|---|
| **Type** | ASSIGNMENT/MORTGAGE | |
| **Consideration** | | |
| **Submitted By** | BANK OF AMERICA (INGEO SYSTEMS INC) | |
| **Document Date** | 05/30/2012 | |

**ASSIGNMENT/MORTGAGE**

| Reference Info | | | | |
|---|---|---|---|---|
| **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
| OR | 11959 | 1815 | 2004054389 | |

| MORTGAGOR | Name | Address |
|---|---|---|
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | |

| ASSIGNEE | Name | Address |
|---|---|---|
| | DEUTSCHE BANK NATL TRUST CO | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF OCEAN COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 2 of 2

CFN 2012054321 O DOC_TYPE ASSN MTG BK 15213 PG 1204 PAGE 2 OF 3

This space for Recorder's use

DocID#   1666422190898702

Property Address:
621 Bay Blvd
Bayville, NJ 08721-2203
Property Location:
Township of BERKELEY
NJ0v2-AM 18454067          5/22/2012

| Recording Requested By: | When recorded mail to: |
|---|---|
| Bank of America | CoreLogic |
| Prepared By: | 450 E. Boundary St. |
| Bank of America | Attn: Release Dept. |
| 800-444-4302 | Chapin, SC 29036 |
| 1800 Tapo Canyon Road | |
| Simi Valley, CA 93063 | |

MIN #:                          MERS Phone #:

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE GSAA HOME EQUITY TRUST 2004-5, ASSET-BACKED     CERTIFICATES, SERIES 2004-5 whose address is 1761 E ST ANDREW PL, SANTA ANA, CA 92705 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Original Lender: | **FIRST NATIONAL BANK OF ARIZONA** |
| Borrower(s): | **SCOTT T. RUQUET** |
| Date of Mortgage: | **3/5/2004** |
| Original Loan Amount: | **$140,800.00** |

Recorded in Ocean County, NJ on: 3/12/2004, book 11959, page 1815 and instrument number 2004054389

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
__ MAY 25 2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Raymond Marquez
Assistant Secretary

State of California
County of Ventura

On __ MAY 25 2012 __ before me, _____ Kim Williams _____, Notary Public, personally appeared _____ Raymond Marquez _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____ Kim Williams _____          (Seal)
My Commission Expires: _____ October 23, 2014

KIM WILLIAMS
COMM. #1910043
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires OCT. 23, 2014

CFN 2012054321 O  DOC_TYPE ASSN MTG BK 15213 PG 1205 PAGE 3 OF 3

# Annual Escrow Account
# Disclosure Statement

**Nationstar** MORTGAGE℠

5/15/2014

350 Highland Drive
Lewisville, Texas 75067

SCOTT T RUQUET

621 BAY BLVD
BAYVILLE, NJ 08721

| Loan Number | |
| --- | --- |
| Analysis Date | April 22, 2014 |
| **Previous Payment** | |
| Principal & Interest | $ 542.61 |
| Escrow | $ 517.46 |
| **Total** | $ 1,060.07 |
| **New Payment** | |
| Effective Date | May 1, 2014 |
| Principal & Interest | $ 542.61 |
| Escrow | $ 620.06 |
| **Total** | **$ 1,162.67** |

The purpose of the Coming Year Escrow Projection is to determine the lowest balance "Low Point" to which your escrow account will decline over the upcoming year. The purpose of the Low Balance Summary is to compare the projected and allowable low point amounts. If the projected low point is greater than the allowable low point, there is a surplus. If the projected low point is less than the allowable low point, there is a shortage and/or deficiency which will be recovered by an adjustment to your monthly payment over a specified number of months. The adjustment amount(s) appears in the Low Balance Summary and New Payment information.

**Our records indicate that you have filed a bankruptcy.** This statement is sent for informational purposes only and is not an attempt to collect a debt. It does not alter or affect the terms of your bankruptcy proceedings. Please disregard the payment information if it conflicts with any order or requirement of the court.

If you filed a Chapter 13, any unpaid amounts prior to the filing of your bankruptcy petition may be paid through and in accordance with your bankruptcy plan. If you are a Chapter 13 debtor whose plan requires you to make regular post petition payments directly to the Chapter 13 trustee, any payment should be remitted to the trustee directly and not to Nationstar Mortgage LLC.

### Escrow Accounts Summary

| | |
| --- | --- |
| Tax | $ 3,754.73 |
| Insurance | $ 3,686.00 |
| Lender-Placed Insurance | $ - |
| Mortgage Insurance | $ - |
| **Annual Total** | **$ 7,440.73** |
| **Approximate Monthly Deposit** | **$ 620.06** |
| **Monthly Deposit Without Mortgage Insurance** | **$ 620.06** |
| **RESPA Cushion (About Two Monthly Deposits)\*** | **$ 1,240.12** |

### Escrow Included in Proof of Claims

| | |
| --- | --- |
| Bankruptcy Filing Date | April 17, 2014 |
| Total Escrow Funds Advanced by Your Servicer at Filing Date | $ 4,176.48 |
| **Plus** Balance Required at Filing to Maintain RESPA Minimum | $ 2,514.61 |
| **Minus** Escrow Account Balance at Filing Date | $ - |
| **Total Shortage at Filing Date** | **$ 6,691.09** |

This column shows your new monthly escrow deposits over the next escrow cycle.

These columns show when each of your escrow accounts is expected to be paid during the next escrow cycle.

This column shows what your escrow balance would be without any additional funds.

This column shows the calculation of the amount of funds needed to maintain your RESPA cushion\* through the next escrow cycle.

### Escrow Balance Projection

| Month | Escrow Payment | Tax Disbursements | Insurance Disbursements | LPI Disbursements | Mortgage Insurance Disbursements | Balance | Required Balance |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Beginning Balance | | | | | | $ - | $ 2,514.61 |
| May 2014 | $ 620.06 | $ - | $ - | $ - | $ - | $ 620.06 | $ 3,134.67 |
| Jun 2014 | $ 620.06 | $ - | $ - | $ - | $ - | $ 1,240.12 | $ 3,754.73 |
| Jul 2014 | $ 620.06 | $ - | $ - | $ - | $ - | $ 1,860.18 | $ 4,374.79 |
| Aug 2014 | $ 620.06 | $ 3,754.73 | $ - | $ - | $ - | $ (1,274.49) | $ 1,240.12 \* |
| Sep 2014 | $ 620.06 | $ - | $ - | $ - | $ - | $ (654.43) | $ 1,860.18 |
| Oct 2014 | $ 620.06 | $ - | $ - | $ - | $ - | $ (34.37) | $ 2,480.24 |
| Nov 2014 | $ 620.06 | $ - | $ - | $ - | $ - | $ 585.69 | $ 3,100.30 |
| Dec 2014 | $ 620.06 | $ - | $ - | $ - | $ - | $ 1,205.75 | $ 3,720.36 |
| Jan 2015 | $ 620.06 | $ - | $ - | $ - | $ - | $ 1,825.81 | $ 4,340.42 |
| Feb 2015 | $ 620.06 | $ - | $ - | $ - | $ - | $ 2,445.87 | $ 4,960.48 |
| Mar 2015 | $ 620.06 | $ - | $ 3,686.00 | $ - | $ - | $ (620.07) | $ 1,894.54 |
| Apr 2015 | $ 620.06 | $ - | $ - | $ - | $ - | $ (0.01) | $ 2,514.60 |
| Totals | $ 7,440.72 | $ 3,754.73 | $ 3,686.00 | $ - | $ - | | |
| Balance Required at Filing to Maintain RESPA Cushion\* | | | | | | | $ 2,514.61 |

\* - The cushion allowed by federal law (RESPA) is two times your monthly escrow payment excluding any mortgage insurance payments, unless your state's laws specify a lower amount. The highlighted value in the Required Balance column indicates where the RESPA cushion limit is set--this is lowest balance your Escrow account will reach during the next Escrow cycle and all of the other values in the column are based on it.

*Page 1 of 6*



## Annual Escrow Account Disclosure Statement

5/15/2014

350 Highland Drive
Lewisville, Texas  75067

### Escrow Account Transactions Prior to Bankruptcy Filing

| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
|---|---|---|---|---|---|---|---|
| 5/8/2013 | Beginning bal | $ 2,431.83 | $ - | $ - | $ 2,431.83 | $ - | $ 2,431.83 |
| 5/13/2012 | Payment | $ - | $ 439.73 | $ 439.73 | $ - | $ - | $ 1,992.10 |
| 6/14/2013 | Payment | $ - | $ 439.73 | $ 439.73 | $ - | $ - | $ 1,552.37 |
| 6/27/2013 | County tax payment | $ 954.04 | $ - | $ - | $ 954.04 | $ - | $ 2,506.41 |
| 8/2/2013 | Payment | $ - | $ 439.73 | $ - | $ - | $ 439.73 | $ 2,506.41 |
| 8/2/2013 | Escrow Advance Recovery | $ - | $ - | $ 439.73 | $ - | $ - | $ 2,066.68 |
| 9/16/2013 | Payment | $ - | $ 439.73 | $ - | $ - | $ 439.73 | $ 2,066.68 |
| 9/16/2013 | Escrow Advance Recovery | $ - | $ - | $ 439.73 | $ - | $ - | $ 1,626.95 |
| 10/11/2013 | Monthly Mortgage Payment | $ - | $ 439.73 | $ - | $ - | $ 439.73 | $ 1,626.95 |
| 10/11/2013 | Escrow Advance Recovery | $ - | $ - | $ 439.73 | $ - | $ - | $ 1,187.22 |
| 10/28/2013 | Escrow Advance - Tax | $ 948.18 | $ - | $ - | $ - | $ 948.18 | $ 2,135.40 |
| 10/28/2013 | Escrow Disbursement - County Tax | $ - | $ - | $ - | $ 948.18 | $ - | $ 2,135.40 |
| 11/15/2013 | Monthly Mortgage Payment | $ - | $ 439.73 | $ - | $ - | $ 439.73 | $ 2,135.40 |
| 11/15/2013 | Escrow Advance Recovery | $ - | $ - | $ 439.73 | $ - | $ - | $ 1,695.67 |
| 12/13/2013 | Monthly Mortgage Payment | $ - | $ 517.46 | $ - | $ - | $ 517.46 | $ 1,695.67 |
| 12/13/2013 | Escrow Advance Recovery | $ - | $ - | $ 517.46 | $ - | $ - | $ 1,178.21 |
| 12/26/2013 | Escrow Advance - Tax | $ 1,059.46 | $ - | $ - | $ - | $ 1,059.46 | $ 2,237.67 |
| 12/26/2013 | Escrow Disbursement - County Tax | $ - | $ - | $ - | $ 1,059.46 | $ - | $ 2,237.67 |
| 1/16/2014 | Monthly Mortgage Payment | $ - | $ 517.46 | $ - | $ - | $ 517.46 | $ 2,237.67 |
| 1/16/2014 | Escrow Advance Recovery | $ - | $ - | $ 517.46 | $ - | $ - | $ 1,720.21 |
| 1/24/2014 | Escrow Advance - Tax | $ 929.19 | $ - | $ - | $ - | $ 929.19 | $ 2,649.40 |
| 1/24/2014 | Escrow Disbursement - County Tax | $ - | $ - | $ - | $ 929.19 | $ - | $ 2,649.40 |
| 2/18/2014 | Monthly Mortgage Payment | $ - | $ 517.46 | $ - | $ - | $ 517.46 | $ 2,649.40 |
| 2/18/2014 | Escrow Advance Recovery | $ - | $ - | $ 517.46 | $ - | $ - | $ 2,131.94 |
| 3/17/2014 | Monthly Mortgage Payment | $ - | $ 517.46 | $ - | $ - | $ 517.46 | $ 2,131.94 |
| 3/17/2014 | Escrow Advance Recovery | $ - | $ - | $ 517.46 | $ - | $ - | $ 1,614.48 |
| 3/17/2014 | Escrow Advance - Insurance | $ 1,438.00 | $ - | $ - | $ - | $ 1,438.00 | $ 3,052.48 |
| 3/17/2014 | Hazard Insurance Disbursed | $ - | $ - | $ - | $ 1,438.00 | $ - | $ 3,052.48 |
| 3/18/2014 | Escrow Advance - Insurance | $ 1,124.00 | $ - | $ - | $ - | $ 1,124.00 | $ 4,176.48 |
| 3/18/2014 | Hazard Insurance Disbursed | $ - | $ - | $ - | $ 1,124.00 | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |

Case 14-17571-KCF   Claim 8-1   Filed 06/23/14   Desc Main Document   Page 31 of 34

# Annual Escrow Account
# Disclosure Statement

5/15/2014

350 Highland Drive
Lewisville, Texas  75067

| | | | | | | | | $ | - | $ | 4,176.48 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Subtotals** | **$** | **8,884.70** | **$** | **4,708.22** | **$** | **4,708.22** | **$** | **8,884.70** | **$** | **-** | **$** | **4,176.48** |

# Annual Escrow Account
## Disclosure Statement

**Nationstar**
MORTGAGE

5/15/2014

350 Highland Drive
Lewisville, Texas 75067

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| **Subtotals** | | **$ 8,884.70** | **$ 4,708.22** | **$ 4,708.22** | **$ 8,884.70** | **$ -** | **$ 4,176.48** |

Case 14-17571-KCF    Claim 8-1    Filed 06/23/14    Desc Main Document    Page 33 of 34

# Nationstar
### MORTGAGE

## Annual Escrow Account
## Disclosure Statement

5/15/2014

350 Highland Drive
Lewisville, Texas  75067

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| | | | | | | $ - | $ 4,176.48 |
| Totals | $ 8,884.70 | $ 4,708.22 | $ 4,708.22 | $ 8,884.70 | | $ - | $ 4,176.48 |

*Page 5 of 6*

# Nationstar MORTGAGE

350 Highland Drive
Lewisville, Texas  75067

**Annual Escrow Account
Disclosure Statement**

5/15/2014

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | |
|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
|  |  |  |  |  |  | $                    - | $          4,176.48 |
| Totals | $          8,884.70 | $          4,708.22 | $          4,708.22 | $          8,884.70 | $                    - | $          4,176.48 |

*Page 6 of 6*