1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                          : Case No. 14-17571(KCF)
                                : (Via Telephone)
    SCOTT RUQUET AND            : Trenton, New Jersey
    DONNA DeROSA-RUQUET,        : September 29, 2020
            Debtor.             : 10:07 A.M.


TRANSCRIPT OF HEARING TO ENFORCE LOAN MODIFICATION ORDER
BEFORE THE HONORABLE KATHRYN C. FERGUSON
UNITED STATES BANKRUPTCY COURT


A P P E A R A N C E S

For the Debtor:           DONNA DeROSA-RUQUET, Pro Se

For the Debtor:           SCOTT RUQUET, Pro Se

For the Creditor:         ROBERTSON, ANSCHUTZ, SCHNEID,
NationStar                CRANE & PARTNERS, P.L.L.C.
                          BY:  LAURA EGERMAN, ESQ.
                          130 Clinton Road - Lobby B, Suite 202
                          Fairfield, New Jersey 07004


Audio Operator:     Christine Kelly

Transcriber:        Isabel E. Cole
                    **COLE TRANSCRIPTION, L.L.C.**
                    **Certified Court Transcribers**
                    **P.O. BOX 34**
                    **WHITING, NEW JERSEY 08759**
                    **848-227-5001**

Proceedings were digitally recorded, transcript produced by transcription.

**2**

THE COURT:  Okay.  How about Number 2, <u>Ruquet</u>.  May I have your appearances please.

Now, you can unmute your phone.  I'm looking for Ms. Egerman and Ms. Ruquet.  Can you, you two may unmute your phones.

MS. DeROSA-RUQUET:  Donna DeRosa-Ruquet, Debtor.

THE COURT:  Thank you.

MR. RUQUET:  Scott Ruquet, Debtor.

THE COURT:  Ms. Egerman, I see you're on the call, but I'm not hearing anything from you.

All right.  I'm going to hold it for a few minutes.

(Whereupon, the Court continues with other matters and this matter then begins as follows:)

THE COURT:  I think that leaves us with <u>Ruquet</u>.  Ms. Ruquet has already entered an appearance.

Ms. Egerman, are you there?

MS. EGERMAN:  I am Your Honor.  I'm sorry.  My -- it says it's unmuted on both my cell phones.  Can you hear me this time?

THE COURT:  I can hear you this time.

MS. EGERMAN:  Okay.  I apologize.  I must have been having a technology glitch on my end because it said unmuted and I'm not certain why you couldn't hear me previously.

THE COURT:  Yes.

MS. EGERMAN:  Laura Egerman, RAS Citron, on behalf of

**3**

the Secured Creditor.

MS. KELLY:  Judge, I just wanted to let you know, we were having a technical difficulty.  I could not hear anything myself.  So that's why you probably couldn't hear Ms. Egerman.

MS. EGERMAN:  Okay.  And I did email chambers when I said I couldn't, at first when I tried to make my appearance just so they knew I was on the line.  So I apologize for any technical glitch on my end.

THE COURT:  It's quite all right, Ms. Egerman.  We're all here now.  Ms. Ruquet has already entered her appearance, as you probably know.

MS. EGERMAN:  Yes, I heard previously.  Thank you.

THE COURT:  Okay.  This is a Motion to Enforce a Previously Entered Loan Modification Order.  I have the papers that were filed by the Ruquets; I have NationStar's response filed on 9/22; I have the Debtors' reply filed on 9/23.

I guess I want you to take it from there, Ms. Egerman.

MS. EGERMAN:  Your Honor, the -- okay, there are two issues I'd like to actually address.  The first being there was a glitch on our end with having the Order recorded.  I'm trying to work out the difficulties.  I haven't been to my office since March, but it's my understanding that the Orders were received, were then sent to our, were scanned into our system, sent to our Geogia office and shredded.  The Clerk needs

**4**

original copies.  I have requested new copies.  Those should be taken care of with some expediency, and to the extent that there is an issue on title which there is not, which was not known on the title end in our firm, they will fix it.

The other issue is why I raised the issue of standing or responded to an issue of standing, is the proposed Order suggests that our client doesn't hold proper title.  The issue -- and again, seeks to have the mortgage avoided as a lien.  It was the last paragraph of the proposed Order.  To the extent that that issue has been resolved, I would suggest that if we need to relitigate the Order the Debtor needs to file a proper Motion to vacate or to reconsider, and we can go back to the issue of standing.  But to the extent that they're trying again to have the Order stricken on the issue of standing, I would say that there's no, there's no jurisdiction, at this point, to handle it.

Those are just the two issues we wanted to address.  I do acknowledge that there was an issue with recording, and I am working on fixing it.  I actually will go to my office to take care of it myself.

THE COURT:  Thank you.

Ms. Ruquet.

MS. DeROSA-RUQUET:  Good morning, Your Honor.

Can you hear me?

THE COURT:  Yes, I can.  I just wasn't sure whether

**5**

you or Mr. Ruquet was going to speak.

MS. DeROSA-RUQUET:  Oh, I was going to speak.  Is that okay with the Court?

THE COURT:  Yes, that's fine.  Yes, that's fine.

MS. DeROSA-RUQUET:  Okay.  Counsel's claim that she hasn't been in the office since March is false.  I have proof that she was in her office on a public Facebook post on August 13th.  And I have been saying over and over and over again to NationStar and Deutsche Bank that there are issues with the assignment and through like, the emails, it is obvious that I have done nothing but try to settle this and pay this mortgage.  And my only concern is clear title.  That's always been my concern.  I'm not trying to get out of any kind of loan and, I mean, it doesn't dignify, it doesn't even, I'm not gonna dignify the issue of standing with a response because that wasn't the basis for our Motion.

The basis for our Motion was to enforce the Orders of the Court, and it's been 120 days.  And you know, I notice Ms. Egerman didn't address the fact that we're having problems now with the statements which never happened before until they attempted to, you know, follow your Order for the modification, and I mean the only thing I could think of is that, I mean she has, I guess, Deutsche Bank National Trust Company can't really speak to the debt.  I don't know.  I don't why a corrective assignment hasn't been filed.  That's all I, that's the big

6

mystery to me.

I don't think it's that difficult.  They're filed all the time.  We file a corrected assignment and the County Clerk's email was quite clear.  And I feel like we're being held hostage here.  That's pretty much it.

THE COURT:  Okay.  Thank you.

MS. DeROSA-RUQUET:  I don't know.

THE COURT:  Anything else?

MS. DeROSA-RUQUET:  No, okay, we're pretty much both good.  Thank you.  Thank you, Your Honor.

THE COURT:  Thank you.

Anything else, Ms. Egerman?

MS. EGERMAN:  To clarify for the record, I'm just curious, did Ms. Ruquet just acknowledge that she's trying to follow me on social media and looking at things that I post?

MS. DeROSA-RUQUET:  No, no.  Ms. Ruquet.

I'm not following you on social media.

MS. EGERMAN:  Did you just indicate that I posted things?  I mean --

MS. DeROSA-RUQUET:  You did.  You posted something publicly that you were online in your office on August 13th. That's a public post.  Therefore, it's in a public forum.  That is used by attorneys all the time.

MS. EGERMAN:  My stuff is private.

MS. DeROSA-RUQUET:  Well, I mean I can have proof

**7**

that it's not.

THE COURT:  All right.  All right.

(Simultaneous Speaking)

THE COURT:  Whoa.  Whoa.  Whoa.

MS. DeROSA-RUQUET:  This is ridiculous.

THE COURT:  Whoa.

MS. DeROSA-RUQUET:  This is ridiculous.

THE COURT:  Stop.  Stop speaking.

We're not going to have this conversation, and you're not going to keep speaking when I speak.  I'm prepared to rule.

NationStar's opposition raises the issue of jurisdiction.  That's misplaced because although NationStar wants to couch this as a title action it is not.  It is a Motion to enforce two Orders of the Court.

It's well established that a federal court has the inherent power to enforce its own Orders.  That's from <u>EOHC v Secretary of the United States, Department of Homeland Security</u>, 950 F.3d 177.

But what NationStar said about this case being 77 months old and long past the time to close has some relevance. The Chapter 13 Trustee's report shows that this case was completed on October 7, 2019.  So the only thing that keeps this case open is these Motions.  This matter needs to be put to bed; but, that cannot happen until the Court is convinced that its prior Orders have been complied with, and that has not

**8**

been established.  In fact, the August email from the Ocean County Clerk definitively establishes that this Court's directive that the 2016 loan modification and this Court's April 2, 2020 Order to be filed with the Clerk and become part of the chain of title by June 14th was not complied with.

I understand that we are in the middle of unsettled times because of COVID; but, NationStar may not take it upon itself to ignore an Order of the Court.  If, because of COVID or any other glitch or reason, NationStar was not able to timely comply with the Order, then it was NationStar's responsibility to come before this Court and request an extension or to be relieved otherwise from the terms of that Order.  NationStar did not do that and that is sanctionable conduct.

It is beyond disingenuous for NationStar's Counsel to suggest that this matter should proceed as a quiet title action in the state court when the documents necessary for such an action have not been filed with the County Clerk and made part of the chain of title.  Once that is accomplished the Court might feel comfortable closing the case and allowing any future disputes to take place in the state court where they belong; but, right now, we're talking about Orders of this Court that are not being complied with.

Second, NationStar has apparently disregarded other portions of this Court's Order including the mortgage

9

statements no longer showing that a balloon payment was due at the end of the loan term and accepting the monthly payments of $542.61 plus escrow as sole payment.  The monthly statement attached to this Motion shows that the Debtors' payments are being listed as partial payments and listing unsecured cram-down balance of $63,954.23 which very much looks like the prohibited balloon payment.  That is also sanctionable conduct.

The only question is what the appropriate sanction should be.  The Debtor asks for the mortgage to be marked as satisfied in full.  Although that is an extreme sanction, NationStar is being put on notice today that the Court will seriously consider that form of relief.  For now, however, the Court will impose a sanction of $2500.  That is two-thousand-five-hundred-dollars to get NationStar's attention and make them take this matter seriously.  The monetary sanction is payable to the Court within three days of today.  It's a Bench Order.

NationStar has 14 days from today, October 13th, to record the required documents with the Ocean County Clerk's Office.  If NationStar needs to file an assignment to get that done so be it.  NationStar has had since May 15th to do that.

Next, the monthly statements must be corrected to properly reflect that the Debtor was current as of September 1, 2020 and that the payment from April 1, 2020 on is to be in the amount of $542.61 plus taxes and insurance.  After extensive

**10**

litigation before this Court in this case, at this point, the Court does not care what has to be done in terms of NationStar's internal accounting procedures or shredding procedures.  The September statement and every subsequent statement must stop showing an unsecured cram-down balance of $63,956.23 and it must stop showing the payments of $542.61 plus escrow as partial payments, period.  No payment of the full amount allowed by this quarter may be shown as in suspense, period.  The Court is indifferent to how that is accomplished, but it must be accomplished, period.  Make no mistake, this Court will grant the further sanction of discharging the entire mortgage if NationStar continues to disregard the Court's Order.

Additionally, no amount of attorney's fees may be listed on the statements.  This Court has already ordered that the monthly payments are capped at $542.61 plus taxes and insurance and that no fees or charges may be added to that including attorney's fees.  NationStar's internal accounting procedures are not this Court's concern, but they have one last chance to get it right or he mortgage will be declared discharged.

NationStar's previous bad faith conduct towards these Debtors, including NationStar's refusal to communicate with them, has necessitated consideration of this extreme sanction. this Court cannot trust that NationStar is abiding by this

**11**

Court's Orders until it sees at least two consecutive months of statements that show the Debtors' payments, if made within the 14-day grace period, as being immediately posted and not held in suspense; show that there is zero due at the end of the loan; and, do not reflect any attorney's fees that may be added to the loan amount.  This is, as I mentioned, a Bench Order and effective immediately.  The dates run from today, and not when the Court enters a written Order.

To recap, a $2500 sanction paid into the Court within three days.  The required documents to be filed with the Ocean County Clerk's Office by October 13th, and the next two mortgage statements properly reflecting this Court's previous Orders.

To ensure that all this is accomplished, the Court will adjourn the matter.  Two weeks prior to the return date NationStar's attorney must file a certification signed by someone with personal knowledge from NationStar -- let me just look at my calendar here -- that attaches the November, I guess October and November mortgage statements that reflect what was already discussed.  The person who signs that certification should be able to testify via Court Solutions, if needed, on the adjourned date.

The Motion will be granted in part and continued. And as I said, I'm looking for my calendar here because I'm concerned that we won't be able to get an October statement --

**12**

MS. DeROSA-RUQUET:  Your Honor, we already have our, I thought we already have our October statement.

THE COURT:  Okay.  Enough.  Thank you.

All right.  I'm going to adjourn this until December 14th at -- no, December 15th at 10:00.

And as I said, I expect any certifications to be filed two weeks before that date, Ms. Egerman, and for you to have your client available to testify by phone if necessary. Understood?

MS. EGERMAN:  Yes.

THE COURT:  Thank you.

MS. DeROSA-RUQUET:  Thank you, Your Honor.

MR. RUQUET:  Thank you.

MS. DeROSA-RUQUET:  Have a good day.

THE COURT:  You, too.

(Adjourned 10:20 a.m.)

                    I N D E X

Argument by Ms. Egerman            3

Argument by Ms. DeRosa-Ruquet      5

The Court:  Decision               7

13

CERTIFICATION:

I, ISABEL E. COLE, court approved transcriber, certify that

the foregoing is a correct transcript from the official

digital audio recording of the proceedings in the above-

entitled matter.

/s/Isabel E. Cole              Dated:  January 20, 2021

Isabel E. Cole

COLE TRANSCRIPTION, L.L.C.