1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                              : Case No. 14-17571(KCF)
                                    : (Via Telephone)
    SCOTT RUQUET AND                : Trenton, New Jersey
    DONNA DeROSA-RUQUET,            : December 15, 2020
                                    : 10:20 A.M.
              Debtors.             :

    TRANSCRIPT OF HEARING TO ENFORCE LOAN MODIFICATION ORDER
          BEFORE THE HONORABLE KATHRYN C. FERGUSON
             UNITED STATES BANKRUPTCY COURT

                  A P P E A R A N C E S

For the Debtor:           DONNA DeROSA-RUQUET, Pro Se

For the Debtor:           SCOTT RUQUET, Pro Se

For the Creditor:         ROBERTSON, ANSCHUTZ, SCHNEID,
NationStar                CRANE & PARTNERS, P.L.L.C.
                          BY:  DAVID NEEREN, ESQ.
                          130 Clinton Road - Lobby B, Suite 202
                          Fairfield, New Jersey 07004

Audio Operator:           Christine Kelly

Transcriber:              Isabel E. Cole
                          **COLE TRANSCRIPTION, L.L.C.**
                          **Certified Court Transcribers**
                          **P.O. BOX 34**
                          **WHITING, NEW JERSEY 08759**
                          **848-227-5001**

    Proceedings were digitally recorded, transcript produced
by transcription.

**2**

THE COURT:  All right.  Number 2, <u>Donna DeRosa and Scott Ruquet</u>.  May I have your appearances please.

MR. NEEREN:  Good morning, Your Honor.  David Neeren, for Mr. Cooper.

MR. RUQUET:  Good morning, Your Honor.  Scott Ruquet.

MS. DeROSA-RUQUET:  Good morning, Your Honor.  Donna DeRosa-Ruquet.  Hello?

THE COURT:  Hello.  You pronounce your names differently?

MS. DeROSA-RUQUET:  Oh, my -- no, DeRosa-Ruquet and Ruquet.

THE COURT:  Yes, okay.

And Mr. Neeren, you said for Mr. Cooper.  What does that mean?

MR. NEEREN:  So -- sorry, Mr. Cooper is the servicer for the Respondent, Deutsche Bank.

THE COURT:  What happened to NationStar?

MR. NEEREN:  Oh, NationStar is Mr. Cooper.  I'm sorry, Your Honor.  It's the same entity.  Mr. Cooper does business as NationStar.

THE COURT:  Okay.  All right.

We had a hearing on 9/29.  On 11/2 we have a certification filed by Ms. Egerman; we have a Debtor response filed on November 20th; we have a Certification of Kathy Winchester filed on December 4th; we have another Certification

**3**

of Ms. Egerman filed on December 4th; we have a Certification of Mr. Ruquet filed on December 8th; and, another certification from Mr. Ruquet.  One is in response to Ms. Winchester's certification; the other's in response to Ms. Egerman's certification.

Why don't you take it from there, Mr. Neeren.

MR. NEEREN:  Thank you, Your Honor.

So just to kind of give some color to why I'm appearing instead of Ms. Egerman today who's been handling this matter for several years.  I'm general counsel for RAS Citron in Pennsylvania and New Jersey, and Ms. Egerman -- look, we understand everyone including the Court is frustrated with this matter; but, I was required and compelled to step in to shield Ms. Egerman from the barrage of threats and harassment from the Ruquets threatening disciplinary action against her for being nothing more than candid and honest with the facts of this case; and also, you know, going so far as to remark on her social media use.  So I'm here today, Your Honor, to present a solution to close this bankruptcy and, and allow every party to move forward with a reasonable solution where everyone can, you know, proceed, and if something comes up down the road hopefully Your Honor would be inclined to open things up again.

But the Order that came about regarding, the Sanctions Order.  So what you ordered, $2500 to the Ruquets, which was paid, also required the recording of four Orders.

**4**

And then, also required NationStar, Mr. Cooper, to, you know, provide statements which demonstrate that the loan modification at issue has been accounted for properly.

I think there's really no argument that the recent statements from October and November demonstrate that the loan modification terms are in effect pursuant to Your Honor's instruction, and also the $2500 has been paid.  But the issue is the four Orders and the loan -- the four documents that required, that Your Honor required to be recorded.

Unfortunately, the loan modification and the Orders, as they are, as they are documents, are unable to be recorded in the Clerk's, with the Clerk at the County level.  Once that became apparent to back up all of these Orders and documents were timely submitted for recording.  It's part of Ms. Egerman's initial certification demonstrating the denials, the rejections and the reasons.  Ms. Egerman reached out to Your Honor to see if amended Orders were possible.  Your Honor declined to issue amended Orders.  The Ruquets declined to cooperate to amend the loan modification to allow it to be recorded.

But I think the solution, Your Honor, because the only way I see these Orders being recorded is to somehow open up a action in state court to get a judge to compel the County Clerk to record these documents, these certified documents. But my suggestion, Your Honor, is that, if Your Honor were

**5**

inclined to close the bankruptcy case, rule that none of the Orders need to be recorded because really, they're already of record in the bankruptcy.  The loan modification amends the note, modifies the note, and notes are not recorded.  These aren't recordable.

These aren't documents, Your Honor, respectfully that need to be recorded and certainly we understand the Court's concern and frustration and the length of the case and the length of the issues along with the Ruquets' concern and frustration.  But Judge, at this point, you know, to kind of put an end to this all, none of the Orders, respectfully, are, affect title to the property.

THE COURT:  Mr. Neeren, didn't the Clerk reject the proposed filings because there is no assignment?  And I still haven't seen --

MR. NEEREN:  No, Judge.

THE COURT:  Well, why would it --

MR. NEEREN:  They were rejected, Judge, and respectfully, the assignment of mortgage issue is a complete non-issue, but we'll get there, we'll get there if I need to. But the documents were rejected because they do not reference the mortgage.  They don't link to any recorded document.

The loan modification, like I said, does not link to a mortgage.  It links to the note.  It amends, modifies the note.  So there's no reference to a recorded mortgage with the

**6**

book and page number.  The Orders entered by Your Honor also don't reference the actual mortgage with identifying information necessary for the Clerk to link the document to the mortgage.

Right now the assignee of record is the Creditor. It's, it's the same Creditor.  The issue that the Ruquets have is that there is a break in the chain from a prior assignment of mortgage, which, Judge, Your Honor already held in this case that, already made a ruling and a Final Judgment and a Final Order that the Creditor has standing and is the proper party-in-interest because it's the holder of the note, as Ms. Winchester further certified in her letter.  So there's really no issue related to standing.

I know the Ruquets are concerned with mucking this matter up and trying to somehow obtain a free loan, but that's just not gonna happen, Judge.  And the attempt, when the Ruquets brought up the concern, Mr. Cooper endeavored to file a quiet title action to correct the chain of assignment to mortgage at the Ruquets' basic request, and then once the Ruquets were served then they brought it up to Your Honor that there was somehow something wrong with that application.

MS. DeROSA-RUQUET:  Excuse me.  I'm sorry.  I dispute that.  Your Honor, --

(Simultaneous Speaking)

THE COURT:  Excuse me.  Ms. Ruquet, no, no, no.  No,

**7**

we don't --

MS. DeROSA-RUQUET:  Okay.  I apologize.

THE COURT:  -- interrupt each other in court.  You'll have an opportunity to present your position.

MS. DeROSA-RUQUET:  Okay.

MR. NEEREN:  Thank you, Judge.

So in the kind of, the administrative function of just cleaning up title to address the Ruquets' concerns, the Ruquets complained, and NationStar withdrew that quiet title action, at their request.

So Judge, respectfully, the assignment of mortgage is a non-issue.  It's a matter of housekeeping.

THE COURT:  Okay.  And respectfully, if I were to do what you propose and let it go to the state court with a quiet title action, isn't this just dumping six years' worth of litigation by the side of the road and giving it to a court that's unfamiliar with all that litigation and trying to interpret what has been, at best, a long and tortuously winding road?

MR. NEEREN:  I'm a little confused, Judge.  So if we were to go to state court, like I said, Judge, there's the matter of housekeeping is a non-issue unless the case goes to foreclosure.  And from what I understand, I'm not sure about the December payment, I'm sure the Ruquets can give light as to whether or not they paid the December payment on time or have

**8**

not, but as far as I know, the loan is current.  There's no reason for there to be a state court action other than to raise one to get a state court judge to compel the Clerk to accept Your Honor's Orders for recording.

THE COURT:  So you're contemplating not a quiet title action but just some sort of action in Chancery to compel the Clerk to accept those documents?

MR. NEEREN:  I'm hoping that none of those actions are required, Judge.  If the Court is inclined to remove the requirement that these Orders and the loan modification which don't, in my opinion, Judge, don't need to be recorded, if that requirement is removed the bankruptcy case can close, the Ruquets can continue to pay their modified amount and hopefully remain in their home till the end of their days.  And that's the end of everything.

The issue, Judge, is if Your Honor is inclined to continue to compel these Orders and the loan modification to be recorded as is they are not recordable.  So if the Court is not inclined to issue amended Orders and inclined to amend the loan modification then it's impossible to record these Orders as is. And the only option that we would have, Judge, is for Your Honor to permit limited relief from the stay to commence an action to get a declaratory judgment for a state court judge to compel the Clerk to have these Orders recorded that, in our opinion, don't need to be recorded and are just going to delay

9

these issues, you know, for a long time.

THE COURT:  All right.  Anything else?

MR. NEEREN:  No, thank you, Judge.

THE COURT:  Ms. Ruquet.

MS. DeROSA-RUQUET:  Good morning, Your Honor.  Sorry for the interruption.

We were never served that Complaint, and that's the only thing I'm gonna say.

I stand on my papers.  My husband stands on --  we stand on our papers.  I'm not gonna address anything he says or that Ms. Egerman or anything.  It's irrelevant.  It's an attempt to get us upset.  It's an attempt to detract.  I don't know, maybe get me unstable on my seizure.  I don't care what the man says.  I'm here to enforce the Orders of this Court just like I said last time.  And so I'll abide by whatever the Court says, and that's basically it.

THE COURT:  Okay.  Well, Ms. Ruquet, what is your position on Mr. Neeren's proposal that I modify the Order to eliminate the recording requirement but leave the Order otherwise in place?

MS. DeROSA-RUQUET:  I think it's preposterous.

THE COURT:  Well, explain that to me.

MS. DeROSA-RUQUET:  I think what you said.  I think it would just be like -- I understand that a lot of different things transpired during the crisis and a lot of documents

weren't filed properly.  I understand that.  And I also understand it's counterintuitive for the Court to grant the relief that we asked; but, I believe that Mr. Neeren stands before you with unclean hands.  I believe everything he says he says with no good faith.  And I absolutely believe that, you know, through our papers that you understand our position.  That you know we're coming from the right place, and we just want clear title to the house which is like, if I owned a car I'd want clear title to a car.  I wouldn't want my car --

THE COURT:  I do.  I do.  Right, but Ms. Ruquet, you're not really addressing my question.  What Mr. Neeren is saying is that by virtue of this Court's Order your mortgage is deemed current today and that the Orders are not necessary to be recorded because they don't affect other creditors.

MS. DeROSA-RUQUET:  I think the Orders need to be recorded because they reflect the terms and conditions that the Court set down for the modification.  I think your modification as it sits does not, is not a factual representation of the modification.  I think that the, I think we had to, like you said, slowly and painfully litigate this to find out that, you know, you had to set down the terms of the modification.  Without the Orders --

THE COURT:  No, no, no.  Again, but I need you to focus on this for a minute.  The recording is about the relation of other of your creditors to your property not the

**11**

loan modification, not the amount due.  So why is it important that that document be filed to --

MS. DeROSA-RUQUET:  I'm not understanding your question, Your Honor.

THE COURT:  Okay.  When a mortgage is filed it doesn't say what the amount due is at any given moment.  It just says --

MS. DeROSA-RUQUET:  Right.

THE COURT:  -- that there exists a lien.

MS. DeROSA-RUQUET:  Right.

THE COURT:  Right?

MS. DeROSA-RUQUET:  Right.

THE COURT:  And so what Mr. Neeren -- and correct me if I'm wrong, Mr. Neeren -- but what he's suggesting is that the Orders have to do with the relationship between you and the Secured Creditor but don't add anything to what other creditors might need to know.  They know there's a lien already.

MS. DeROSA-RUQUET:  Who are the --

MR. NEEREN:  Exactly, Judge.

MS. DeROSA-RUQUET:  Yeah, who are the other creditors?  Who are we talking -- I mean I don't --

THE COURT:  Whoever might come along.  It could be a creditor that exists five years from -- again, that's what recording is about is notifying other creditors.  So I need you to focus on that.  Why do you need the document recorded; why

**12**

is it possibly relevant to other creditors?

MS. DeROSA-RUQUET:  Because I think that if someone else comes along and claims title to the house they need to know that those Orders are in place.  I mean if there's no clear title --

THE COURT:  But assuming for the moment, assuming for the moment that none of this had ever happened with --

MS. DeROSA-RUQUET:  Uh-huh.

THE COURT:  -- NationStar, what they would --

MS. DeROSA-RUQUET:  Uh-huh.

THE COURT:  -- what they would do with the title search was see that NationStar had a lien and then they would have to go to other sources to find out what that lien might be.

In this case, they would go to the title search; they would see NationStar still has a lien; and, they would have to go to this Court's Orders and then your payment history after this Court's Order to find out what the amount of the lien was.

MS. DeROSA-RUQUET:  Pretty much.  I don't --

THE COURT:  Right.

MS. DeROSA-RUQUET:  But they can't, they -- when we spoke to Ms. Martino, Ms. Martino said that, in fact, she was not aware that an assignment was an issue.  That they were rejected merely because of the book and page issue and that the email that we submitted from Ms. Sharow (phonetic) saying that,

**13**

at the very least, that NationStar or Mr. Cooper is not the lender of record, and so they're just not recognized, that their assignment was filed in error.  And she was very clear about it.

THE COURT:  Okay.  Okay.  Ms. Ruquet, really, I think you have paid enough attention over the course of the last six years to know that I am reading your papers carefully and I'm aware --

MS. DeROSA-RUQUET:  Yes.

THE COURT:  -- that there had been episode after episode of negligent or imperfect or incomplete behavior.  I got all that.

MS. DeROSA-RUQUET:  Right.

THE COURT:  I'm really looking at the proposal that was made this morning and the need to record the documents.

MS. DeROSA-RUQUET:  So if I'm understanding this correctly, Mr. Neeren is saying that he wants you to close the bankruptcy or at least alleviate, you know, release the stay, right?

THE COURT:  Um-hmm.

MS. DeROSA-RUQUET:  And order, and then file a Motion in Chancery to clear the title or -- I mean I'm sorry, to compel the state, the County Clerk to file the Orders.

THE COURT:  He says his first choice is to do none of those things.

**14**

MS. DeROSA-RUQUET:  Right.

THE COURT:  Again, Mr. Neeren, correct me if I'm wrong, but his first choice is to do none of those things.  To have me close the bankruptcy case and allow you to rely on this Court's Order.

MS. DeROSA-RUQUET:  Uh-huh.

THE COURT:  And allow anyone who might want to purchase your property to rely on this Court's Order.

MS. DeROSA-RUQUET:  Uh-huh.  Okay.  I, I --

MR. NEEREN:  Judge, would you like --

MS. DeROSA-RUQUET:  I don't feel comfortable doing -- I don't -- I think this goes back to the things you just mentioned about the, the issues of -- look, you know what, we're just two people.  We're not lawyers.  And I know that the Court can't act as our counsel and I know Mr. Neeren has his job to do, but I think that at the end of the day, you know, with the problems that we've had, I think it's fair to say that we don't really, you know, trust somebody.

I think that there was many times that they could have over the past six years, especially the past two years, been more transparent.  I think the emails that I submitted clearly show that where our intentions are.  And I --

THE COURT:  Okay.  Okay.  Okay.  But how is it that recording the document with the Clerk enhances your trust?

MS. DeROSA-RUQUET:  Because I think at this point, if

**15**

I've learned nothing over the past four years, I think that the Court keeps the inmates from running the asylum, and I think during title search it would be a lot easier.  And I also think it protects me when they start to mess up my payments, as you can see that they did as soon as you entered those Orders.  So I, you know, I just think that -- and at the end of the day I could make those payments and then they could say, "No, you owe us at the end of the loan $30,000," and when I'm trying to sell it I -- what, am I argue with them on the back end.

THE COURT:  But, but I think what Mr. Neeren is suggesting that is if you run into a problem with the way the payments are being recorded --

MS. DeROSA-RUQUET:  Well, I have a problem now.

THE COURT:  Please allow me to speak.

MS. DeROSA-RUQUET:  I'm sorry, Your Honor.

THE COURT:  Yeah, that if you were to run into a payment like that that you could ask the Court, this Court to reopen the case and to interpret its own Orders.

MS. DeROSA-RUQUET:  I think that's like holding me kind of hostage forever.

THE COURT:  I think it's holding me hostage.

MS. DeROSA-RUQUET:  What?

THE COURT:  Respectfully, I think it's holding me hostage.

MS. DeROSA-RUQUET:  I know.  And you know what, I

**16**

think it's like clouding the issue and I think like it's taking the long way around.  I think you entered an Order.  I think you've entered multiple Orders.

THE COURT:  Yes.

MS. DeROSA-RUQUET:  I think I filed a perfectly innocuous Motion just to enforce it.  There was no histrionics.  There was no nothing.  Nothing.  It was kind of like, "Can you just help me, can we enforce this," and let's be on our way.  And I got a barrage of litigation.  And they come on Friday nights, and they come on the day before Thanksgiving, and the emails from Ms. Egerman who's no longer even on the case, and they come in the form of insults such as the things Mr. Neeren said about me, how he tries to twist things and turn things because he lives in a dystopian form of the universe.  I don't know.

And you know, I have a lot of questions I'd like to ask him, like, "Do you ever stay with a law firm that doesn't close because of their practices such as Arden," but I don't think that's relevant.

You know, I just don't trust these people, at this point.  And I think that there were so many things that if they had good faith they would have acted in good faith long ago, before they got us to this point.  That's how I honestly feel.  I think it's, I'm just trying to protect us.  We're getting older and I, in 15 years who's gonna argue this and will you

**17**

even be sitting on the bench or in between.  It's, it's ridiculous.  And notwithstanding the fact that they're not complying with the partial payment part of the Order.  It's just not done.

There's too many -- it's like I would, I would be, I don't know, very like, you know, I'll always respect what the Court says, but I just feel like, you know, you entered those Orders for a reason and I just want to enforce them.  And it's clear, you know, Mr. Cooper, whoever Mr. Cooper is, you know, I think Mr. Cooper is whatever.  You know, they are, they're not the lender of record and they can sit and they can say that they're not a bank and that they don't trade loans, but they do.  It's in the <u>Financial Times</u> all the time, "Mr. Cooper is selling a $650 million portfolio."  Let's be, you know, let's be honest.

And look at the latest case with the all 58 attorney generals and 51 banking jurisdictions that, that just came down, that the Justice Department listed on their website. That included U.S. Bank and PNC.  This is ridiculous.  This is the, whatever reasons, mine was like this little anomaly and I think honestly with my ignorance to the law they could have, they could have like taken advantage of that, so to speak, a long time ago and we wouldn't even be here.  And I don't know what, you know, I mean I just know that something's not right and I'm just gonna keep fighting, you know, because it's the

**18**

only thing we have.

And Mr. Neeren, we don't live there.  We're gonna live out the end of our days in our house.  You don't even know that about our case.  It's not -- we don't -- it's not occupied by us.  Just so you know.  Notwithstanding the fact that --

MR. NEEREN:  Well, yeah, so I --

(Simultaneous Speaking)

MS. DeROSA-RUQUET:  Excuse me.  You spoke.  Now I'm gonna speak.

MR. NEEREN:  Judge --

THE COURT:  Whoa, whoa, whoa.  Let's not speak over each other.

MS. DeROSA-RUQUET:  Okay.  I would like to speak now.

THE COURT:  Go ahead, finish.  I want you to finish, Ms. Ruquet.

MS. DeROSA-RUQUET:  Me to finish?

THE COURT:  I want you to --

MS. DeROSA-RUQUET:  You want me to -- okay.  Yeah, Mr. Neeren, yeah, we don't, we don't live there.  And I just -- you, you -- I have reached out to you twice.  What is up with the letter saying that you were going to send me three foreclosure statements, my husband.  Why isn't my husband getting copies?

THE COURT:  This is beyond the scope of what we're talking about today.  All right.

**19**

MS. DeROSA-RUQUET:  So I submitted that in evidence. I submitted that in evidence.

THE COURT:  Mr. Neeren -- that doesn't make it within the scope of what we're talking about today.

MS. DeROSA-RUQUET:  Oh, all right.

THE COURT:  Mr. Neeren, anything else?  Mr. Neeren, anything else?

MR. NEEREN:  I mean -- no, Judge, not at all.  Thank you.

THE COURT:  All right.  Thank you.

Here's what I'm going to do.  I am going to close the record today and I'm going to read an opinion into the record next week at 10:00 or as part of my 10:00 list.  You are free to listen.  You are not free to speak at that time.

Thank you very much for your oral argument here today, Counsel and Ms. Ruquet.  Thank you.

MR. NEEREN:  Thank you, Your Honor.

MS. DeROSA-RUQUET:  Thank you, Your Honor.

(Adjourned at 10:44 a.m.)

I N D E X

Argument by Mr. Neeren                3

Argument by Ms. DeRosa-Ruquet         9

The Court:  Reserved                  19

20

CERTIFICATION:

I, ISABEL E. COLE, court approved transcriber, certify that

the foregoing is a correct transcript from the official

digital audio recording of the proceedings in the above-

entitled matter.


/s/Isabel E. Cole          Dated:  January 20, 2021

Isabel E. Cole

COLE TRANSCRIPTION, L.L.C.